NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

# COLLATERAL NOTE MAKER'S ESTOPPEL CERTIFICATE

Date: May 7, 2019

Debtor: Southern Star Capital, LLC d/b/a Reliance Mortgage Company, a Texas limited liability company

Debtor's Mailing Address: 5220 Spring Valley Rd., Suite 602
Dallas, Texas 75254

Secured Party: Citizens Bank

Secured Party's Mailing Address: Plano Banking Center
5151 Headquarters Dr., Suite 165
Plano, Texas 75024

Collateral Note: Note dated May 3, 2019, in the original principal amount of $1,650,000.00, executed by Collateral Note Maker and payable to Debtor as therein provided.

Collateral Note Maker: BM318, LLC

Collateral Note Maker's Mailing Address: 1755 Wittington Place, Suite 340
Dallas, Texas 75234

Deed of Trust: Deed of Trust securing Collateral Note, recorded in County Clerk File No. 201911244 of the real property records of Parker County, Texas.

Real Property: Legal description of the land:

BEING 118.34 acres situated in the JAMES BRADLEY SURVEY, ABSTRACT NO. 120, Parker County, Texas, being a portion of that certain tract of land described in deed as Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 118.34 acres being more particularly described as follows:

BEGINNING at the most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (Right-of-Way varies), from which a 2" steel fence corner post found in the south line of said Bear Creek Road bears S 01 °12'56" E, a distance of 40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6918277.984 and EAST: 2233063.538, for reference;

THENCE S 67°36'03" E, along the approximate centerline of said Bear Creek Road and along the most north line of said Parcel No. 2, a distance of 2856.45 feet to a point for the northeast corner of the herein described 118.34 acre tract;



EXHIBIT
Southern Star
3
tabbies

THENCE S 24° 50'49" W. leaving the approximate centerline of said Bear Creek Road. and being along the west line of a Fifty (50) foot wide Right-of-Way Agreement to ONEOK Arbuckle Pipeline, L.L.C., recorded in Book 2651, Page 405, Official Public Records. Parker County, Texas, at a distance of 23.85 feet, passing a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084". and continuing along the west line of said Fifty (50) foot wide Right-of-Way Agreement, in all, a distance of 205.78 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";

THENCE S 04°46'43" W. continuing along the west line of said Fifty(50) foot wide Right-of-Way Agreement, a distance of 1684.81 feet to a point in the approximate centerline of Bear Creek for the southeast corner of the herein described 118.34 acre tract;

THENCE along the approximate centerline of said Bear Creek, as follows:

N 61 °36'37" W, a distance of 807.44 feet to a point;
N 71 °14'04" W, a distance of 217.93 feet to a point;
N 85° 16'07" W, a distance of 121.44 feet to a point;
S 77°03'53" W, a distance of 141.01 feet to a point;
S 82° 12'39" W a distance of 239.64 feet to a point;
S 49°32'26" W, a distance of 208.64 feet to a point;
N 86° 11 '59" W, a distance of 114.28 feet to a point;
N 53°45'49" W a distance of 175.97 feet to a point;
N 47°13'56" W, a distance of 200.18 feet to a point;
N 80°08'35" W, a distance of 392.40 feet to a point in the west line of said Parcel No. 2, for the southwest corner of the herein described 118.34 acre tract, from which a 5/8" capped iron rod found at the southwest corner of said Parcel No. 2 bears S 01°17'05" E, a distance of 1216.41 feet, for reference;

THENCE N 01°17'05" W, along the west line of said Parcel No. 2, a distance of 2375.35 to the POINT OF BEGINNING and containing 118.34 acres of land, more or less.

## A. Reason for and Reliance on Certificate

Debtor has requested that Secured Party make a loan to be secured by the Collateral Note, and Secured Party has agreed to do so. As a condition for this loan, Secured Party requires Collateral Note Maker to verify the following information concerning the Collateral Note. Collateral Note Maker understands that Secured Party is relying on this information in connection with the closing of the loan.

## B. Representations

Collateral Note Maker represents to Secured Party that:

*B.1.* True and complete copies of the Collateral Note and Deed of Trust are attached as Exhibits B and C.

*B.2.* The Collateral Note and Deed of Trust have not been modified.

*B.3.* The present unpaid balance of the Collateral Note is $1,650,000.00.

*B.4.* The amount of accrued unpaid interest on the Collateral Note is $ Ø .

*B.5.* Collateral Note Maker has no claims, setoffs, or defenses to payment of the Collateral Note or against Debtor.

*B.6.* No default presently exists under the terms of the Collateral Note or Deed of Trust

or any other loan documents.

B.7. No amount is being held in escrow by Debtor.

C. Agreement

Collateral Note Maker agrees with Secured Party that-

C.1. The Collateral Note and Deed of Trust will not be modified without Secured Party's prior written consent.

C.2. Collateral Note Maker has been furnished with a copy of the collateral transfer of note and lien dated May 7, 2019, executed by Debtor to Secured Party and agrees to abide by its terms.

C.3. Secured Party is the current holder of the Collateral Note and is the only party entitled to receive payments on the Collateral Note.

C.4. Collateral Note Maker will make regularly scheduled monthly payments on the Collateral Note only to Debtor. On written request of Secured Party, Collateral Note Maker will make all payments on the Collateral Note directly to Secured Party.

D. Debtor's Consent

Debtor joins in this agreement to evidence its consent to Collateral Note Maker's obligations hereunder.

Southern Star Capital, LLC d/b/a Reliance Mortgage Company, a Texas limited liability company

Michael D. Anderson

MICHAEL D. ANDERSON, PRESIDENT

BM318, LLC

By: Tim Barton
Title: President

or any other loan documents.

*B.7.* No amount is being held in escrow by Debtor.

**C. Agreement**

Collateral Note Maker agrees with Secured Party that-

*C1.* The Collateral Note and Deed of Trust will not be modified without Secured Party's prior written consent.

*C2.* Collateral Note Maker has been furnished with a copy of the collateral transfer of note and lien dated May 7, 2019, executed by Debtor to Secured Party and agrees to abide by its terms.

*C3.* Secured Party is the current holder of the Collateral Note and is the only party entitled to receive payments on the Collateral Note.

*C4.* Collateral Note Maker will make regularly scheduled monthly payments on the Collateral Note only to Debtor. On written request of Secured Party, Collateral Note Maker will make all payments on the Collateral Note directly to Secured Party.

**D. Debtor's Consent**

Debtor joins in this agreement to evidence its consent to Collateral Note Maker's obligations hereunder.

Southern Star Capital, LLC d/b/a Reliance Mortgage Company, a Texas limited liability company

[signature]

MICHAEL D. ANDERSON, PRESIDENT

BM318, LLC

[signature]

By: Tim Barton
Title: President

STATE OF TEXAS )

COUNTY OF COLLIN )

the foregoing instrument and acknowledged to me that MICHAEL D. ANDERSON executed the same as the act of Southern Star Capital, LLC d/b/a Reliance Mortgage Company, a Texas limited liability company, as its PRESIDENT, for the purposes and consideration therein expressed.

Given under my hand and seal of office this 7th CO day of May, 2019.

CODY W OLYNYK
Notary ID #129405338
My Commission Expires
Apr 29, 2021

Notary Public, State of Texas
My commission expires: 4-29-21

STATE OF TEXAS )

COUNTY OF COLLIN )

The foregoing instrument and acknowledged to me that Tim Barton executed the same as the act of BM318, LLC, as its President, for the purposes and consideration therein expressed.

Given under my hand and seal of office this ______ day of ______________, 2019.

Notary Public, State of Texas
My commission expires: ________________

AFTER RECORDING RETURN TO:
Citizens Bank
Plano Banking Center
5151 Headquarters Dr., Suite 165
Plano, Texas 75024

STATE OF TEXAS )

COUNTY OF COLLIN )

the foregoing instrument and acknowledged to me that MICHAEL D. ANDERSON executed the same as the act of Southern Star Capital, LLC d/b/a Reliance Mortgage Company, a Texas limited liability company, as its PRESIDENT, for the purposes and consideration therein expressed.

Given under my hand and seal of office this 7th day of May, 2019.

CODY W OLXHYK
Notary ID #129405939
My Commission Expires
Apr 29, 2021

Notary Public, State of Texas
My commission expires: 4-29-21

STATE OF TEXAS )

COUNTY OF COLLIN )

The foregoing instrument and acknowledged to me that Tim Barton executed the same as the act of BM318, LLC, as its President, for the purposes and consideration therein expressed.

Given under my hand and seal of office this 16 day of July, 2019.

Bella D Khusal
My Commission Expires
09/24/2022
ID No. 131734480

Notary Public, State of Texas
My commission expires: 09/24/2022

AFTER RECORDING RETURN TO:
Citizens Bank
Plano Banking Center
5151 Headquarters Dr., Suite 165
Plano, Texas 75024

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

**COLLATERAL TRANSFER OF NOTE AND LIEN**

**Date:** May 7, 2019

**Borrower:** Southern Star Capital, LLC d/b/a Reliance Mortgage Company, a Texas limited liability company

**Borrower's Mailing Address:**
5220 Spring Valley Rd., Suite 602
Dallas, Texas 75254

**Secured Party:** Citizens Bank

**Secured Party's Mailing Address:**
Citizens Bank
Plano Banking Center
5151 Headquarters Dr., Suite 165
Plano, Texas 75024

**Classification of Collateral:** Instrument

**Collateral (including all accessions):** All of Borrower's interest in the Collateral Note and the Collateral Note Security including without limitation Borrower's rights under the Guaranty of Tim Barton to Southern Star Capital, LLC d/b/a Reliance Mortgage Company dated May 3, 2019, guarantying the Collateral Note described herein.

**Collateral Note and Lien:** Promissory Note dated May 3, 2019, in the original principal amount of $1,650,000.00 executed by BM318, LLC in favor of Southern Star Capital, LLC d/b/a Reliance Mortgage Company, and guaranteed by Guaranty of Timothy Barton to Southern Star Capital, LLC d/b/a Reliance Mortgage Company dated May 3, 2019, and secured by a Deed of Trust executed on May 3, 2019 to Robert W. Buchholz, Trustee for the benefit of Southern Star Capital LLC d/b/a Reliance Mortgage Company, and recorded at Clerk's File No. 201911244 Official Public Records of Parker County, Texas.

**Current balance:** $1,650,000.00

**Property description:**

**Legal description of the land:**
BEING 118.34 acres situated in the JAMES BRADLEY SURVEY, ABSTRACT NO. 120, Parker County, Texas, being a portion of that certain tract of land described in deed as Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 118.34 acres being more particularly described as follows:

BEGINNING at the most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (Right-of-Way varies), from which a 2" steel fence corner post found in the south line of said Bear Creek Road bears S 01 °12'36" E, a distance of 40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 69182~~.984 and EAST: 2233063.536, for reference;

THENCE S 67°36'03" E, along the approximate centerline of said Bear Creek Road and along the most north line of said Parcel No. 2, a distance of 2856.45 feet to a point for the northeast corner of the herein described 118.34 acre tract;

THENCE S 24° 50'49" W, leaving the approximate centerline of said Bear Creek Road, and being along the west line of a Fifty (50) foot wide Right-of-Way Agreement to ONEOK Arbuckle Pipeline, L.L.C., recorded in Book 2651, Page 405, Official Public Records, Parker County, Texas, at a distance of 23.85 feet, passing a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084", and continuing, along the west line of said Fifty (50) foot wide Right-of-Way Agreement, in all, a distance of 205.78 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";

THENCE S 04°46'43" W, continuing along the west line of said Fifty(50) foot wide Right-of-Way Agreement, a distance of 1684.81 feet to a point in the approximate centerline of Bear Creek for the southeast corner of the herein described 118.34 acre tract;

THENCE along the approximate centerline of said Bear Creek, as follows:
N 61 °36'37" W, a distance of 807.44 feet to a point;
N 71 °14'04" W, a distance of217.93 feet to a point;
N 85° 16'07" W, a distance of 121.44 feet to a point;
S 77°05'53" W, a distance of 141.01 feet to a point;
S 82° 12'59" W a distance of 239.64 feet to a point;
S 49°32'26" W, a distance of 208.64 feet to a point;
N 86° 11 '59" W, a distance of 114.28 feet to a point;
N 53°45'49" W a distance of 175.97 feet to a point;
N 47°13'56" W, a distance of 200.18 feet to a point;
N 80°08'35" W, a distance of 392.40 feet to a point in the west line of said Parcel No. 2, for the southwest corner of the herein described 118.34 acre tract, from which a 5/8" capped iron rod found at the southwest corner of said Parcel No. 2 bears S 01°17'05" E, a distance of 1216.41 feet, for reference;

THENCE N 01°17'05" W, along the west line of said Parcel No. 2, a distance of 2375.35 to the POINT OF BEGINNING and containing 118.34 acres of land, more or less.

**Obligation:**

Note in the amount of $1,650,000.00 executed by Southern Star Capital, LLC d/b/a Reliance Mortgage Company and payable to the order of Citizens Bank dated May 7, 2019.

Collateral Note Payments: All payments on the Collateral Note are to be made directly to Borrower until after the occurrence of an event of default, at which time Secured Party may notify the Collateral Note maker to make all future payments to Secured Party.

**A. Granting Clause**

Borrower grants to Secured Party a security interest in the Collateral and all its proceeds to secure Borrower's Obligation and all renewals of any of the Obligation. Borrower assigns all of its rights under the Guaranty of Tim Barton to Southern Star Capital, LLC d/b/a Reliance Mortgage Company dated May 3, 2019.

**B. Deliveries**

Simultaneously with Borrower's execution and delivery to Secured Party of this agreement, Borrower has endorsed and delivered to Secured Party the original Collateral Note, thereby making Secured Party the

person entitled to enforce the Collateral Note.

C. Borrower Represents the Following:

C.1. Borrower has the authority to grant this security interest, free from any setoff, claim, restriction, security interest, or encumbrance except liens for taxes not yet due.

C.2. All information about Borrower's financial condition is or will be accurate when provided to Secured Party.

C.3. The current balance of the Collateral Note is correct.

C.4. The Collateral Note has not been modified and is not in default.

C.5. There are no defenses or offsets to the Collateral Note.

C.6. The lien of the Collateral Note Security is a first lien.

C.7. The Collateral represents the valid, legally enforceable obligation of the Collateral Note maker.

C.8. Borrower will keep the records of payments on the Collateral Note at Borrower's Mailing Address.

D. Borrower Agrees to-

D.1. Defend the Collateral against all claims adverse to Secured Party's interest and keep the Collateral free from liens.

D.2. Pay all of Secured Party's expenses incurred, including reasonable attorney's fees and legal expenses, to (a) obtain, preserve, perfect, defend, or enforce this agreement; (b) dispose of, collect, or enforce the Collateral; or (c) collect or enforce the Obligation. These expenses will bear interest from the date of advance at the highest rate allowed by law and are payable on demand at the place where the Obligation is payable. These expenses and interest will become part of the Obligation and will be secured by this agreement.

D.3. Sign any documents that Secured Party considers necessary to obtain, maintain, and perfect this security interest.

D.4. Notify Secured Party immediately of any material change in the Collateral; change in Borrower's name, address, or location; change in any representation in this agreement; change that may affect this security interest; or any default.

D.5. Maintain accurate records of the Collateral; furnish Secured Party any requested information related to the Collateral; and allow Secured Party to inspect and copy all records relating to the Collateral.

D.6. Perform all obligations required under the Collateral Note Security.

D.7. Preserve the liability of all obligors on the Collateral and preserve the priority of all security for the Collateral.

D.8. On Secured Party's demand, deposit all payments received as proceeds of the Collateral in a special bank account designated by Secured Party, who alone will have power of withdrawal.

D.9. Cause the Collateral Note maker to pay and perform all obligations under the Collateral Note and the Collateral Note Security and inform Secured Party immediately of default in the payment or performance of the Collateral Note.

E. Borrower Agrees Not to-

E.1. Renew, extend, or modify the Collateral Note or grant releases of any part of the property securing the Collateral Note.

E.2. Modify any terms in the Collateral Note Security.

E.3. Commingle any payments on the Collateral with any of Borrower's other funds or property.

F. Default and Remedies

F.1. A default exists if-

a. Borrower fails to timely pay or perform any Obligation, covenant, or liability in any written agreement between Borrower and Secured Party;

b. any representation in this agreement is materially false when made;

c. a receiver is appointed for Borrower or any of the Collateral;

d. the Collateral is assigned for the benefit of creditors;

e. to the extent permitted by law, a bankruptcy or insolvency proceeding is commenced against or by any of the following parties: Borrower; the Collateral note maker; any partnership of which Borrower is a general partner; or any maker, drawer, acceptor, endorser, guarantor, surety, accommodation party, or other person liable on or for any part of the Obligation;

f. any of the following parties is terminated: Borrower; the Collateral note maker; any partnership of which Borrower is a general partner; or any maker, drawer, acceptor, endorser, guarantor, surety, accommodation party, or other person liable on or for any part of the Obligation; or

g. default exists under the Collateral Note or the Collateral Note Security.

F.2. Secured Party may at any time-

a. take control of any proceeds of the Collateral;

b. release any Collateral in Secured Party's possession to any Borrower, temporarily or otherwise;

c. take control of proceeds of insurance on the Collateral Note Security and reduce any part of the Obligation accordingly or permit Borrower to use such funds to repair or replace damaged or destroyed Collateral covered by insurance;

d. demand, collect, convert, redeem, settle, compromise, receipt for, realize on, sue for, and adjust the Collateral either in Secured Party's or Borrower's name, as Secured Party

desires; or

e. exercise all other rights available to an owner of such Collateral.

F.3. If a default exists, Secured Party may-

a. declare the unpaid principal and earned interest of the Obligation immediately due in whole or part;

b. enforce the Obligation; and

c. exercise any rights and remedies granted by law or this agreement.

F.4. Foreclosure of this security interest by suit does not limit Secured Party's remedies, including the right to sell the Collateral under the terms of this agreement. Secured Party may exercise all remedies at the same or different times, and no remedy is a defense to any other. Secured Party's rights and remedies include all those granted by law or otherwise, in addition to those specified in this agreement.

F.5. If the Collateral is sold after default, recitals in the bill of sale or transfer will be prima facie evidence of their truth and all prerequisites to the sale specified by this agreement and by law will be presumed satisfied.

G. Collateral Note/Enforcement of Power of Sale

G.1. Borrower has endorsed and delivered the Collateral Note to Secured Party. Secured Party is the holder of the Collateral Note, the person entitled to enforce the Collateral Note, and the sole party with power to appoint a substitute trustee or request the trustee to act. Any foreclosure action requested by Borrower is void.

G.2. Any foreclosure sale under the Collateral Note Security will be at such time and on such terms as Secured Party may, in its discretion, approve. If Secured Party approves a bid from Borrower without payment in full of the Collateral Note, Borrower must provide a mortgagee's title insurance policy with only such exceptions as Secured Party approves and execute such additional security documents as Secured Party may require.

G.3. Borrower assigns, transfers, and conveys to Secured Party all amounts due on the Collateral Note. Collateral Note maker is directed to make payments on the Collateral Note in accordance with the Collateral Note payments provision above.

G.4. Borrower indemnifies Secured Party from all claims made against or incurred by Secured Party from any action in connection with the Collateral Note or the Collateral Note Security documents.

H. General

H.1. Notice is reasonable if it is mailed, postage prepaid, to Borrower at Borrower's Mailing Address at least ten days before any public sale or ten days before the time when the Collateral may be otherwise disposed of without further notice to Borrower.

H.2. This security interest will neither affect nor be affected by any other security for any of the Obligation. Neither extensions of any of the Obligation nor releases of any of the Collateral will affect the priority or validity of this security interest as to any third person.

H.3. This agreement binds, benefits, and may be enforced by the successors in interest of the

parties, except as otherwise provided. Assignment of any part of the Obligation and Secured Party's delivery of any part of the Collateral will fully discharge Secured Party from responsibility for that part of the Collateral. All representations and obligations are joint and several as to each Borrower.

H.4. Secured Party's delay in exercising, partial exercise of, or failure to exercise any of its remedies or rights does not waive Secured Party's rights to subsequently exercise those remedies or rights. Secured Party's waiver of any default does not waive any further default by Borrower. Secured Party's waiver of any right in this agreement or of any default is binding only if it is in writing. Secured Party may remedy any default without waiving it.

H.5. This agreement may be amended only by an instrument in writing signed by Secured Party and Borrower.

H.6. The unenforceability of any provision of this agreement will not affect the enforceability or validity of any other provision.

H.7. This agreement will be construed according to Texas law. This agreement is to be performed in the county of Secured Party's Mailing Address.

H.8. Interest on the Obligation secured by this agreement will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the Obligation or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the Obligation or, if the principal of the Obligation has been paid, refunded. This provision overrides any conflicting provisions in this and all other instruments concerning the Obligation.

H.9. In no event may this agreement secure payment of any debt that may not lawfully be secured by a lien on real estate or create a lien otherwise prohibited by law.

H.10. When the context requires, singular nouns and pronouns include the plural.

Southern Star Capital, LLC d/b/a Reliance Mortgage Company, a Texas limited liability company,

Michael D. Anderson

MICHAEL D. ANDERSON, PRESIDENT

**STATE OF TEXAS** )

**COUNTY OF COLLIN** )

This instrument acknowledged before me by MICHAEL D. ANDERSON as the President of Southern Star Capital, LLC d/b/a Reliance Mortgage Company, a Texas limited liability company, for the purposes and consideration therein expressed on behalf of the company.

Given under my hand and seal of office this 7th day of MAY, 2019.

CODY W OLYNYK
Notary ID #129405339
My Commission Expires
Apr 29, 2021

Notary Public, State of Texas
My commission expires: 4-29-21

**AFTER RECORDING RETURN TO:**

Citizens Bank
Plano Banking Center
5151 Headquarters Dr., Suite 165
Plano, Texas 75024

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

2025-276417

# Deed of Trust

## Basic Information

**Date:** May 3, 2019.

**Grantor:** BM318, LLC

**Grantor's Mailing Address:**

BM318, LLC
c/o Tim Barton, President
1755 Wittington Place, Suite 340
Dallas, Texas 75234

**Trustee:** Robert W. Buchholz.

**Trustee's Mailing Address:**

420 S. Cesar Chavez Blvd., Suite 300
Dallas, Texas 75201

**Lender:** Southern Star Capital LLC d/b/a Reliance Mortgage Company

**Lender's Mailing Address:**

5220 Spring Valley Road, Suite 602
Dallas, Texas 75254

**Obligation**

Note:
Date: May 3, 2019.
Original principal amount: $1,650,000.00.
Borrower: BM318, LLC

Lender: Southern Star Capital LLC d/b/a Reliance Mortgage Company
Maturity date: May 1, 2020.
Terms of Payment: As provided in the note.

**Property (including any improvements):**

The property described in the attached Exhibit "A" which is incorporated herein by reference.

**Exceptions to Conveyance and Warranty:**

None.

**A. Granting Clause**

For value received and to secure payment of the Obligation, Grantor conveys the Property to Trustee in trust. Grantor warrants and agrees to defend the title to the Property, subject to the Other Exceptions to Conveyance and Warranty. On payment of the Obligation and all other amounts secured by this deed of trust, this deed of trust will have no further effect, and Lender will release it at Grantor's expense.

**B. Grantor's Obligations**

*B.1.* Grantor agrees to maintain all property and liability insurance coverages with respect to the Property, revenues generated by the Property, and operations on the Property that Lender reasonably requires ("Required Insurance Coverages"), issued by insurers and written on policy forms acceptable to Lender , and as to property loss, that are payable to Lender under policies containing standard mortgage clauses, and deliver evidence of the Required Insurance Coverages in a form acceptable to Lender before execution of this deed of trust and again at least ten days before the expiration of the Required Insurance Coverages.

*B.2* Grantor agrees to-

a. keep the Property in good repair and condition;

b. pay all taxes and assessments on the Property before delinquency, not authorize a taxing entity to transfer its tax lien on the Property to anyone other than Lender, and not request a deferral of the collection of taxes pursuant to section 33.06 of the Texas Tax Code;

c. defend title to the Property subject to the Other Exceptions to Conveyance and Warranty and preserve the lien's priority as it is established in this deed of trust;

d. obey all laws, ordinances, and restrictive covenants applicable to the Property;

e. keep any buildings occupied as required by the Required Insurance Coverages;

f. if the lien of this deed of trust is not a first lien, pay or cause to be paid all prior lien notes and abide by or cause to be abided by all prior lien instruments;

g. notify Lender of any change of address; and

**C. Lender's Rights**

*C.1.* Lender or Lender's mortgage servicer may appoint in writing one or more substitute trustees, succeeding to all rights and responsibilities of Trustee.

*C.2.* If the proceeds of the Obligation are used to pay any debt secured by prior liens, Lender is subrogated to all the rights and liens of the holders of any debt so paid.

*C.3.* Lender may apply any proceeds received under the property insurance policies covering the Property either to reduce the Obligation or to repair or replace damaged or destroyed improvements covered by the policy. If the Property is Grantor's primary residence and Lender reasonably determines that repairs to the improvements are economically feasible, Lender will make the property insurance proceeds available to Grantor for repairs.

*C.4.* Notwithstanding the terms of the Note to the contrary, and unless applicable law prohibits, all payments received by Lender from Grantor with respect to the Obligation or this deed of trust may, at Lender's discretion, be applied first to amounts payable under this deed of trust and then to amounts due and payable to Lender with respect to the Obligation, to be applied to late charges, principal, or interest in the order Lender in its discretion determines.

*C.5.* If Grantor fails to perform any of Grantor's obligations, Lender may perform those obligations and be reimbursed by Grantor on demand for any amounts so paid, including attorney's fees, plus interest on those amounts from the dates of payment at the rate stated in the Note for matured, unpaid amounts. The amount to be reimbursed will be secured by this deed of trust.

*C.6.* COLLATERAL PROTECTION INSURANCE NOTICE

In accordance with the provisions of Section 307.052(a) of the Texas Finance Code, the Beneficiary hereby notifies the Grantor as follows:

(A) the Grantor is required to:

(i) keep the collateral insured against damage in the amount the Lender specifies;

(ii) purchase the insurance from an insurer that is authorized to do business in the state of Texas or an eligible surplus lines insurer; and

(iii) name the Lender as the persons to be paid under the policy in the event of a loss;

(B) the Grantor must, if required by the Lender, deliver to the Lender a copy of the policy and proof of the payment of premiums; and

(C) if the Grantor fails to meet any requirement listed in Paragraph (A) or (B), the Lender may obtain collateral protection insurance on behalf of the Grantor at the Grantor's expense.

*C.7.* If a default exists in payment of the Obligation or performance of Grantor obligations and the

default continues after any required notice of the default and the time allowed to cure, Lender may-

a. declare the unpaid principal balance and earned interest on the Obligation immediately due;

b. exercise Lender's rights with respect to rent under the Texas Property Code as then in effect;

c. direct Trustee to foreclose this lien, in which case Lender or Lender's agent will cause notice of the foreclosure sale to be given as provided by the Texas Property Code as then in effect; and

d. purchase the Property at any foreclosure sale by offering the highest bid and then have the bid credited on the Obligation.

*C.8.* If Grantor fails to pay any part of principal or interest secured by a prior lien or liens on the Property when it becomes payable or defaults on any prior lien instrument, the entire debt secured by this deed of trust will immediately become payable at the option of Lender.

*C.9.* Any act or occurrence that would constitute default under the terms of any lien superior to the lien securing the Note will constitute a default under this Deed of Trust securing the Note.

*C.10.* Lender may remedy any default without waiving it and may waive any default without waiving any prior or subsequent default.

**D. Trustee's Rights and Duties**
If directed by Lender to foreclose this lien, Trustee will-

*D.1.* either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then in effect;

*D.2.* sell and convey all or part of the Property "AS IS" to the highest bidder for cash with a general warranty binding Grantor, subject to the Prior Liens and to the Other Exceptions to Conveyance and Warranty and without representation or warranty, express or implied, by Trustee;

*D.3.* from the proceeds of the sale, pay, in this order-

a. expenses of foreclosure, including a reasonable commission to Trustee;
b. to Lender, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;
c. any amounts required by law to be paid before payment to Grantor; and
d. to Grantor, any balance; and

*D.4.* be indemnified, held harmless, and defended by Lender against all costs, expenses, and liabilities incurred by Trustee for acting in the execution or enforcement of the trust created by this deed of trust, which includes all court and other costs, including attorney's fees, incurred by Trustee in defense of any action or proceeding taken against Trustee in that capacity.

E. General Provisions

*E.1.* If any of the Property is sold under this deed of trust, Grantor must immediately surrender possession to the purchaser. If Grantor does not, Grantor will be a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

*E.2.* Recitals in any trustee's deed conveying the Property will be presumed to be true.

*E.3.* Proceeding under this deed of trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

*E.4.* This lien will remain superior to liens later created even if the time of payment of all or part of the Obligation is extended or part of the Property is released.

*E.5.* If any portion of the Obligation cannot be lawfully secured by this deed of trust, payments will be applied first to discharge that portion.

*E.6.* Grantor assigns to Lender all amounts payable to or received by Grantor from condemnation of all or part of the Property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the Property. After deducting any expenses incurred, including attorney's fees and court and other costs, Lender will either release any remaining amounts to Grantor or apply such amounts to reduce the Obligation. Lender will not be liable for failure to collect or to exercise diligence in collecting any such amounts. Grantor will immediately give Lender notice of any actual or threatened proceedings for condemnation of all or part of the Property.

*E.7.* Grantor collaterally assigns to Lender all present and future rent from the Property and its proceeds. Grantor warrants the validity and enforceability of the assignment. Grantor will apply all rent to payment of the Obligation and performance of this deed of trust, but if the rent exceeds the amount due with respect to the Obligation and the deed of trust, Grantor may retain the excess. If a default exists in payment of the Obligation or performance of this deed of trust, Lender may exercise Lender's rights with respect to rent under the Texas Property Code as then in effect. Lender neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the Property. Lender may exercise Lender's rights and remedies under this paragraph without taking possession of the Property. Lender will apply all rent collected under this paragraph as required by the Texas Property Code as then in effect. Lender is not required to act under this paragraph, and acting under this paragraph does not waive any of Lender's other rights or remedies.

*E.8.* Interest on the debt secured by this deed of trust will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded.

*E.9.* In no event may this deed of trust secure payment of any debt that may not lawfully be secured

by a lien on real estate or create a lien otherwise prohibited by law.

*E.10.* When the context requires, singular nouns and pronouns include the plural.

*E.11.* The term *Note* includes all extensions, modifications, and renewals of the Note and all amounts secured by this deed of trust.

*E.12.* Grantor warrants that the extension of credit evidenced by the Note secured hereby is solely for business or commercial purposes, other than agricultural purposes. The Grantor further warrants that the credit transaction evidenced by the Note is specifically exempted under Regulation Z issued by the Board of Governors of the Federal Reserve System and Title I of the Consumer Credit Protection Act and that no disclosures are required to be given under such regulations and federal laws in connection with the above transaction. Grantor does not claim any part of the Property as residential or business homestead. Grantor acknowledges that Lenders rely on the truth of representations in this paragraph in making the Note secured by this deed of trust.

*E.13.* Grantor will furnish to Lender or other holder of the Note annually, before January 31st of each year, copies of tax receipts showing that all taxes on the Property have been paid. Failure to comply with the foregoing for any reason whatsoever shall constitute a default.

If Grantor fails to pay all taxes on the Property prior to January 31st of each year for the tax period covering the preceding calendar year for any reason whatsoever, including, but not limited to, protests of value, processing of tax account split-out requests, or failure of the tax authorities to certify the tax roll or account, at the option of Lender, Grantor shall immediately deposit with Lender, a sum equal to taxes, assessments and charges against the Property in the amount as estimated by Lender.

All such funds shall bear no interest whatsoever, may be mingled with the general funds of Lender and shall be applied by Lender toward the payment of taxes and assessments; provided, however, that, if a Default shall have occurred hereunder, such funds may at Lender's option be applied to the payment of the Obligation in the order determined by Lender in its sole discretion, and that Lender may at any time, in its sole discretion, apply all or any part of such funds toward the payment of any such taxes, assessments, charges, legal fees, penalties or premiums which are past due, together with any penalties or late charges with respect thereto.

Lender shall have the right to rely upon tax information furnished by applicable taxing authorities in the payment of such taxes and assessments and Lender shall have no obligation to make any protest of any such taxes or assessments. Any excess over the amounts required for such purposes shall be held by Lender for future use, applied to the Obligation or refunded to Grantor, at Lender's option, and any deficiency in such funds so deposited shall be made up by Grantor upon demand by Lender.

The conveyance or transfer of Grantor's interest in the Property for any reason (including, without limitation, the foreclosure of a lien or security interest or a transfer by operation of law) shall constitute an assignment or transfer of Grantor's interest in and rights to such funds held by Lender under this subparagraph but subject to the rights of Lender hereunder.

Grantor will annually furnish to Lender or other holder of the Note evidence of current paid-up Required Insurance Coverage naming Lender or other holder of the Note as an insured.

*E.14.* **GRANTOR MAY FURNISH ANY INSURANCE REQUIRED BY THIS DEED OF TRUST EITHER THROUGH EXISTING POLICIES OWNED OR CONTROLLED BY GRANTOR OR THROUGH EQUIVALENT COVERAGE FROM ANY INSURANCE COMPANY AUTHORIZED TO TRANSACT BUSINESS IN TEXAS.**

*E.15.* If all or any part of the Property is sold, transferred, or conveyed without the prior written consent of Lender or other holder of the Note, Lender or other holder of the Note may, at its sole option, declare the outstanding principal balance of the Note plus accrued interest immediately due and payable. Lender or other holder of the Note has no obligation to consent to any such sale or conveyance of the Property, and Lender or other holder of the Note is entitled to condition any consent on a change in the interest rate that will thereafter apply to the Note and any other change in the terms of the Note or Deed of Trust that Lender or other holder of the Note in its sole discretion deems appropriate. A lease for a period longer than one year, a lease with an option to purchase, or a contract for deed will be deemed to be a sale, transfer, or conveyance of the Property for purposes of this provision. The creation of a subordinate lien without the consent of Lender or other holder of the Note will be construed as a sale or conveyance of the Property, but any subsequent sale under a subordinate lien to which Lender or other holder of the Note has consented will not be construed as a sale or conveyance of the Property.

*E.16.* Grantor agrees not to grant any lien or security interest in the Property or to permit any junior encumbrance to be recorded or any claim to otherwise become an encumbrance against the Property. If an involuntary encumbrance is filed against the Property, Grantor agrees, within thirty days, to either remove the involuntary encumbrance or provide a bond acceptable to Lender against the involuntary encumbrance.

*E.17.* This deed of trust binds, benefits, and may be enforced by the successors in interest of all parties.

*E.18.* If Grantor and Borrower are not the same person, the term *Grantor* includes Borrower.

*E.19.* Grantor and each surety, endorser, and guarantor of the Obligation waive, to the extent permitted by law, all (a) demand for payment, (b) presentation for payment, (c) notice of intention to accelerate maturity, (d) notice of acceleration of maturity, (e) protest, (f) notice of protest and (g) rights under sections 51.003, 51.004, and 51.005 of the Texas Property Code.

*E.20.* Grantor will have full recourse liability for repayment of the principal and interest of the Note and the performance of all covenants and agreements of Grantor in this Deed of Trust.

*E.21.* Grantor agrees to pay reasonable attorney's fees, trustee's fees, and court and other costs of enforcing Lender's rights under this deed of trust if an attorney is retained for its enforcement.

*E.22.* Grantor agrees to execute, acknowledge, and deliver to Lender any document requested by Lender, at Lender's request from time to time, to

(a) correct any defect, error, omission, or ambiguity in this deed of trust or in any other document executed in connection with the Note or this deed of trust;
(b) comply with Grantor's obligations under this deed of trust and other documents;
(c) subject to and perfect the liens and security interests of this deed of trust and other documents any property intended to be covered thereby; and
(d) protect, perfect, or preserve the liens and the security interests of this deed of trust and other documents against third persons or make any recordings, file any notices, or obtain any consents requested by Lender in connection therewith. Grantor agrees to pay all costs of the foregoing.

*E.23.* Lender, as a matter of right and without regard to the sufficiency of the security for repayment of the Note and performance and discharge of the Obligations, without notice to Grantor and without any showing of insolvency, fraud, or mismanagement on the part of Grantor, and without the necessity of filing any judicial or other proceeding other than the proceeding for appointment of a receiver, shall be entitled to the appointment of a receiver or receivers of the Property or any part thereof, and of the Rents, and Grantor hereby irrevocably consents to the appointment of a receiver or receivers. Any receiver appointed pursuant to the provisions of this subsection shall have the usual powers and duties of receivers in such matters.

*E.24* Grantor shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Grantor shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The first sentence of this Section shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to the repair and maintenance of the Property.

Grantor shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Grantor has actual knowledge. If Grantor learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of Hazardous Substance affecting the Property is necessary, Grantor shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

*E.25.* If any provision of this deed of trust is determined to be invalid or unenforceable, the validity or enforceability of any other provision will not be affected.

*E.26.* The term Lender includes any mortgage servicer for Lender.

*E.27.* Grantor hereby grants Lenders a right of first refusal with respect to Grantor's power to

authorize any third party (other than Lenders pursuant to its rights as set forth in this instrument) to pay ad valorem taxes on the Property and authorize a taxing entity to transfer its tax lien on the Property to that third party. Grantor's authorization to any third party (other than Lenders) to pay the ad valorem taxes and receive transfer of a taxing entity's lien for ad valorem taxes shall be null and void and of no force and effect unless Lenders, within ten days after receiving written notice from Grantor, fail to pay the ad valorem taxes pursuant to Lenders' rights as set forth in this instrument.

*E.28.* Grantor warrants that the execution of this deed of trust shall not impair or affect any other security, which may be given to secure the payment of the Obligation secured hereby, and all such additional security shall be considered as cumulative. The taking of additional security, execution of releases and partial releases of the security (regardless of consideration for the release or partial release) or any extension of time of payment of the Obligation secured hereby shall not diminish the force, effect, or lien of this deed of trust and shall not affect or impair the liability of any maker, surety, or endorser for the payment of said Obligation.

*E.29.* In the event of any conflict between the provisions of this Deed of Trust and the Note, guaranty (if any) and any of the other documents executed in connection with this transaction, it is the intent of the parties hereto that the provisions of this Deed of Trust shall control. The parties hereto acknowledge that they were represented by competent counsel in connection with the negotiation, drafting and execution of the Deed of Trust, the Note, guaranty (if any) and any of the other documents executed in connection with this transaction and that such Deed of Trust, Note, guaranty (if any) and all of the other documents executed in connection with this transaction shall not be subject to the principle of construing their meaning against the party which drafted same.

*E.30.* GRANTOR AFTER CONSULTATION WITH AN ATTORNEY OF ITS OWN SELECTION (WHICH COUNSEL WAS NOT DIRECTLY OR INDIRECTLY IDENTIFIED, SUGGESTED, OR SELECTED BY THE OTHER PARTY), VOLUNTARILY WAIVES A TRIAL BY JURY OF ANY ISSUE ARISING IN AN ACTION OR PROCEEDING BETWEEN THE PARTIES OR THEIR SUCCESSORS, UNDER OR CONNECTED WITH THIS CONTRACT OR ITS PROVISIONS. GRANTOR AND LENDER ACKNOWLEDGE TO EACH OTHER THAT GRANTOR AND LENDER ARE NOT IN SIGNIFICANTLY DISPARATE BARGAINING POSITIONS.

*E.31* Additional Definitions used in this paragraph:

"Constituent Party": any (a) shareholder, member, general partner or managing member of Grantor, as applicable, or (b) any signatory to this Deed of Trust that signs on Grantor's behalf that is a corporation, general partnership, limited partnership, limited liability company, joint venture, trust, or other type of business organization, or(c) any Guarantor.

"Loan Documents": The Note, this Deed of Trust, the Guaranty, and any and all other documents now or hereafter executed by Grantor, Guarantor, or any other person or party in connection with the loan evidenced by the Note or in connection with the payment of the Obligation or the performance and discharge of the Obligations.

GRANTOR SHALL INDEMNIFY, DEFEND, PROTECT AND HOLD HARMLESS LENDER AND TRUSTEE, THEIR RESPECTIVE PARENTS, SUBSIDIARIES, DIRECTORS, OFFICERS, EMPLOYEES, REPRESENTATIVES, AGENTS, MEMBERS, SUCCESSORS, AND ASSIGNS FROM AND AGAINST ANY AND ALL LIABILITY, DAMAGE, LOSS, COST, OR EXPENSE (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' FEES AND EXPENSES), ACTION, PROCEEDING, CLAIM OR DISPUTE INCURRED OR SUFFERED BY THE FOREGOING PARTIES SO INDEMNIFIED WHETHER OR NOT AS THE RESULT OF THE NEGLIGENCE OF ANY PARTY SO INDEMNIFIED, WHETHER VOLUNTARILY OR INVOLUNTARILY INCURRED OR SUFFERED, IN RESPECT OF THE FOLLOWING:

(i) ANY LITIGATION CONCERNING THIS DEED OF TRUST, THE OTHER LOAN DOCUMENTS OR THE PROPERTY, OR ANY INTEREST OF GRANTOR OR LENDER THEREIN, OR THE RIGHT OF OCCUPANCY THEREOF BY GRANTOR OR LENDER, WHETHER OR NOT ANY SUCH LITIGATION IS PROSECUTED TO A FINAL, NON-APPEALABLE JUDGMENT;

(ii) ANY DISPUTE, INCLUDING DISPUTES AS TO THE DISBURSEMENT OF PROCEEDS OF THE NOTE NOT YET DISBURSED, AMONG OR BETWEEN ANY OF THE CONSTITUENT PARTIES OR OTHER PARTNERS OR VENTURERS OF GRANTOR IF GRANTOR IS A GENERAL OR LIMITED PARTNERSHIP, OR AMONG OR BETWEEN ANY EMPLOYEES, OFFICERS, DIRECTORS, SHAREHOLDERS, MEMBERS OR MANAGERS OF GRANTOR IF GRANTOR IS A CORPORATION OR LIMITED LIABILITY COMPANY, OR AMONG OR BETWEEN ANY MEMBERS, TRUSTEES OR OTHER RESPONSIBLE PARTIES IF GRANTOR IS AN ASSOCIATION, TRUST OR OTHER ENTITY;

(iii) ANY ACTION TAKEN OR NOT TAKEN BY LENDER OR TRUSTEE WHICH IS ALLOWED OR PERMITTED UNDER THIS DEED OF TRUST OR ANY OF THE OTHER LOAN DOCUMENTS RELATING TO GRANTOR, THE PROPERTY, ANY CONSTITUENT PARTIES OR OTHERWISE IN CONNECTION WITH THE LOAN DOCUMENTS, INCLUDING WITHOUT LIMITATION, THE PROTECTION OR ENFORCEMENT OF ANY LIEN, SECURITY INTEREST OR OTHER RIGHT, REMEDY OR RECOURSE CREATED OR AFFORDED BY THIS DEED OF TRUST OR THE OTHER LOAN DOCUMENTS;

(iv) ANY ACTION BROUGHT BY LENDER OR TRUSTEE AGAINST GRANTOR UNDER THIS DEED OF TRUST OR THE OTHER LOAN DOCUMENTS, WHETHER OR NOT SUCH ACTION IS PROSECUTED TO A FINAL, NON-APPEALABLE JUDGMENT;

(v) ALL CLAIMS, CAUSES OF ACTION, LEGAL PROCEEDINGS, LIABILITY, OR DISPUTES ARISING OUT OF OR IN ANY WAY RELATED TO THE PROPERTY AND ITS IMPROVEMENTS;

(vi) ALL CLAIMS, CAUSES OF ACTION, LEGAL PROCEEDINGS, LIABILITY, OR DISPUTES ARISING OUT OF OR IN ANY WAY RELATED TO THE SALE AND PURCHASE OF THE PROPERTY AS WELL AS ANY AGREEMENTS RELATED THERETO AS WELL AS ANY SUBSEQUENT RESALE AND/OR TRANSFER OF THE PROPERTY BY GRANTOR; AND

(vii) ANY AND ALL LOSS, DAMAGE, COSTS, EXPENSE, ACTION, CAUSES OF ACTION, OR LIABILITY (INCLUDING ATTORNEYS' FEES AND COSTS) DIRECTLY OR INDIRECTLY ARISING FROM OR ATTRIBUTABLE TO THE USE, GENERATION, MANUFACTURE, PRODUCTION, STORAGE, RELEASE, THREATENED RELEASE, DISCHARGE, DISPOSAL, OR PRESENCE OF A HAZARDOUS SUBSTANCE ON, IN, UNDER OR ABOUT THE PROPERTY, WHETHER KNOWN OR UNKNOWN AT THE TIME OF THE EXECUTION HEREOF, INCLUDING WITHOUT LIMITATION (A) ALL FORESEEABLE CONSEQUENTIAL DAMAGES OF ANY SUCH USE, GENERATION, MANUFACTURE, PRODUCTION, STORAGE, RELEASE, THREATENED RELEASE, DISCHARGE, DISPOSAL, OR PRESENCE, AND (B) THE COSTS OF ANY REQUIRED OR NECESSARY ENVIRONMENTAL INVESTIGATION OR MONITORING, ANY REPAIR, CLEANUP, 13 OR DETOXIFICATION OF THE PROPERTY, AND THE PREPARATION AND IMPLEMENTATION OF ANY CLOSURE, REMEDIAL, OR OTHER REQUIRED PLANS.

LENDER AND/OR TRUSTEE MAY EMPLOY AN ATTORNEY OR ATTORNEYS TO PROTEST OR ENFORCE ITS RIGHTS, REMEDIES AND RECOURSES UNDER THIS DEED OF TRUST AND THE OTHER LOAN DOCUMENTS, AND TO ADVISE AND DEFEND LENDER AND/OR TRUSTEE WITH RESPECT TO ANY SUCH ACTIONS AND OTHER MATTERS. GRANTOR SHALL REIMBURSE LENDER AND/OR TRUSTEE FOR THEIR RESPECTIVE ATTORNEYS' FEES AND EXPENSES (INCLUDING EXPENSES AND COSTS FOR EXPERTS) IMMEDIATELY UPON RECEIPT OF A WRITTEN DEMAND THEREFOR, WHETHER ON A MONTHLY OR OTHER TIME INTERVAL, AND WHETHER OR NOT AN ACTION IS ACTUALLY COMMENCED OR CONCLUDED. ALL OTHER REIMBURSEMENT AND INDEMNITY OBLIGATIONS HEREUNDER SHALL BECOME DUE AND PAYABLE WHEN ACTUALLY INCURRED BY LENDER AND/OR TRUSTEE. ANY PAYMENTS NOT MADE WITHIN FIVE (5) DAYS AFTER WRITTEN DEMAND THEREFOR SHALL BEAR INTEREST AT THE ANNUAL INTEREST RATE ON MATURED, UNPAID AMOUNTS FROM THE DATE OF SUCH DEMAND UNTIL FULLY PAID. THE PROVISIONS OF THIS SECTION E.31 SHALL SURVIVE REPAYMENT OF THE NOTE AND PERFORMANCE OF THE OBLIGATIONS, THE RELEASE OF THE LIEN OF THIS DEED OF TRUST, ANY FORECLOSURE (OR ACTION IN LIEU OF FORECLOSURE), THE TRANSFER BY GRANTOR OF ANY OR ALL OF ITS RIGHT, TITLE AND INTEREST IN OR TO THE PROPERTY AND THE EXERCISE BY LENDER OF ANY AND ALL REMEDIES SET FORTH HEREIN OR IN THE LOAN DOCUMENTS.

*E.32.* GRANTOR WAIVES ITS RIGHTS UNDER THE TEXAS DECEPTIVE TRADE PRACTICES–CONSUMER PROTECTION ACT, SECTION 17.41 ET SEQ. OF THE

**TEXAS BUSINESS AND COMMERCE CODE, A LAW THAT GIVES CONSUMERS SPECIAL RIGHTS AND PROTECTIONS. AFTER CONSULTATION WITH AN ATTORNEY OF ITS OWN SELECTION, GRANTOR VOLUNTARILY CONSENTS TO THIS WAIVER.**

**NOTICE**

**THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**NOTICE OF INDEMNIFICATION: GRANTOR HEREBY ACKNOWLEDGES AND AGREES THAT THIS DEED OF TRUST CONTAINS CERTAIN INDEMNIFICATION PROVISIONS (INCLUDING, WITHOUT LIMITATION, THOSE CONTAINED IN SECTION E.31 HEREOF) WHICH, IN CERTAIN CIRCUMSTANCES, COULD INCLUDE AN INDEMNIFICATION BY GRANTOR OF LENDER FROM CLAIMS OR LOSSES ARISING AS A RESULT OF LENDER'S OWN NEGLIGENCE.**

**BM318, LLC**

[signature]

**By: Tim Barton**
**Its: President**

**STATE OF TEXAS §**
**§**
**COUNTY OF DALLAS §**

Before me, the undersigned notary public, on this day personally appeared Tim Barton, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 3rd day of May 2019.

[signature]

Notary Public, State of Texas

[Seal: Bala D Khasal, My Commission Expires 03/24/2022, ID No. 131734450]

AFTER RECORDING RETURN TO:
SOUTHERN STAR CAPITAL
5220 SPRING VALLEY RD. STE 602
DALLAS TX 75254

EXHIBIT "A"

File Number: 2025-276417-RU

BEING 118.34 acres situated in the JAMES BRADLEY SURVEY, ABSTRACT NO. 120, Parker County, Texas, being a portion of that certain tract of land described in deed as Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 118.34 acres being more particularly described as follows:

BEGINNING at the most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (Right-of Way Varies), from which a 2" steel fence corner post found in the south line of said Bear Creek Road bears S 01°12'56" E, a distance of 40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6918277.984 and EAST: 2233063.538, for reference;

THENCE S 67°36'03" E, along the approximate centerline of said Bear Creek Road and along the most north line of said Parcel No. 2, a distance of 2856.45 feet to a point for the northeast corner of the herein described 118.34 acre tract;

THENCE S 24°50'49" W, leaving the approximate centerline of said Bear Creek Road, and being along the west line of a Fifty (50) foot wide Right-of-Way Agreement to ONEOK Arbuckle Pipeline, L.L.C., recorded in Book 2651, Page 405, Official Public Records, Parker County, Texas, at a distance of 23.85 feet, passing a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084", and continuing, along the west line of said Fifty (50) foot wide Right-of-Way Agreement, in all, a distance of 205.78 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";

THENCE S 04°46'43" W, continuing along the west line of said Fifty (50) foot wide Right-of-Way Agreement, a distance of 1684.81 feet to a point in the approximate centerline of Bear Creek for the southeast corner of the herein described 118.34 acre tract;

THENCE along the approximate centerline of said Bear Creek, as follows:

N 61°36'37" W, a distance of 807.44 feet to a point;

N 71°14'04" W, a distance of 217.93 feet to a point;

N 85°16'07" W, a distance of 121.44 feet to a point;

S 77°05'53" W, a distance of 141.01 feet to a point;

S 82°12'59" W, a distance of 239.64 feet to a point;

S 49°32'26" W, a distance of 208.64 feet to a point;

N 86°11'59" W, a distance of 114.28 feet to a point;

N 53°45'49" W, a distance of 175.97 feet to a point;

N 47°13'56" W, a distance of 200.18 feet to a point;

N 80°08'35" W, a distance of 392.40 feet to a point in the west line of said Parcel No. 2, for the southwest corner of the herein described 118.34 acre tract, from which a 5/8" capped iron rod found at the southwest corner of said Parcel No. 2 bears S 01°17'05" E, a distance of 1216.41 feet, for reference;

THENCE N 01°17'05" W, along the west line of said Parcel No. 2, a distance of 2375.35 to the POINT OF BEGINNING and containing 118.34 acres of land, more or less.

**FILED AND RECORDED**

**OFFICIAL PUBLIC RECORDS**

Lila Deakle

201911244
05/09/2019 03:33:29 PM
Fee: $78.00
Lila Deakle, County Clerk
Parker County, Texas
DEEDTRUST

# FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

Lila Deakle

201918475
07/23/2019 01:49:34 PM
Fee: $130.00
Lila Deakle, County Clerk
Parker County, Texas
CERTIFICAT