Robert W. Buchholz
420 S. Cesar Chavez Blvd.
Suite 300
Dallas, Texas 75201
214-754-5500
214-754-9100 fax
bob@attorneybob.com
Attorney for Southern Star Capital, LLC d/b/a Reliance Mortgage

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | **Chapter 11** |
| **BM318, LLC** | ) | |
| | ) | **Case No. 20-42789-mxm-11** |
| | ) | |
| **Debtor** | ) | |

# AMENDED MOTION OF SOUTHERN STAR CAPITAL, LLC d/b/a RELIANCE MORTGAGE COMPANY FOR RELIEF FROM AUTOMATIC STAY

## NOTICE - RESPONSE REQUIRED

**PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(b), A RESPONSE IS REQUIRED TO THIS MOTION, OR THE ALLEGATIONS IN THE MOTION MAY BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGHT MAY BE ENTERED BY DEFAULT.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT**

**Eldon B. Mahon U. S. Courthouse**
**501 W. 10th Street**
**Fort Worth, Texas 76102-3643**



**EXHIBIT "D"**

**BEFORE CLOSE OF BUSINESS ON NOVEMBER 16, 2020, WHICH IS AT LEAST 14 DAYS FROM THE DATE OF SERVICE HEREOF. A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY AND ANY TRUSTEE OR EXAMINER APPOINTED IN THE CASE. ANY RESPONSE SHALL INCLUDE A DETAILED AND COMPREHENSIVE STATEMENT AS TO HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE STAY IS TO BE CONTINUED.**

**TO THE HONORABLE COURT:**

SOUTHERN STAR CAPITAL LLC, d/b/a RELIANCE MORTGAGE COMPANY, a Texas limited liability company ("Movant") files this *Motion for Relief from Stay* (the "**Motion**") against BM318, LLC ("**Debtor**"), and would respectfully show the Court as follows:

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §157 and §1334.

2. This is a core proceeding. This Motion constitutes a contested matter pursuant to Rule 9014 of the Bankruptcy Rules.

3. This motion is brought pursuant to 11 U.S.C. §§ 105, 361, 362 and Bankruptcy Rule 4001.

4. Movant was the original lender and is the current servicer of a note and deed of trust on a piece of real property which is legally described in the attached Exhibit 1 which is incorporated herein by reference as if fully copied herein. The Note and Deed of Trust were transferred to Citizens Bank pursuant to a Collateral Transfer of Note and Lien agreement which was filed of record in the Parker County Deed Records. Pursuant to an agreement between Citizens Bank and Southern Star Capital, LLC, Southern Star Capital, LLC has the right to service the loan in question and to bring this action to lift the stay and to enforce the terms of the Note and Deed of Trust.

5. Movant agreed, on a short-term basis, to extend financing to Debtor secured by the real estate referenced herein.

6. On May 3, 2019, Debtor through Timothy Barton, its President, signed a Promissory Note in the amount of $1,650,000.00 (the "**Promissory Note**") and executed a Deed of Trust (the "**Deed of Trust**"), which was recorded on May 9, 2019 in the Deed Records of Parker County, Texas at Clerk's File No. 201911244. *See* Exhibits "2" and "3".

7. The Promissory Note interest rate was 11.0% and it matured on May 1, 2020. Also, on matured and unpaid amounts the Promissory Note required interest of the lesser of 18% or the Highest Lawful Rate permitted by law.

8. Debtor defaulted under the terms of the Promissory Note **by not making payments as required** and by not paying the note when due. The note, by its own terms, matured and became fully due and payable on May 1, 2020. Further, in the deed of trust Debtor agreed to the following waivers:

> *E.19.* Grantor and each surety, endorser, and guarantor of the Obligation waive, to the extent permitted by law, all (a) demand for payment, (b) presentation for payment, (c) notice of intention to accelerate maturity, (d) notice of acceleration of maturity, (e) protest, (f) notice of protest and (g) rights under sections 51.003, 51.004, and 51.005 of the Texas Property Code.

9. Movant originally posted the Property for the May 5, 2020, foreclosure date. It was then reposted for the August 7, 2020 foreclosure sale and then September 1, 2020 foreclosure sale. Prior to the sale Debtor sought a Temporary Injunction to prevent the sale from going forward which was denied by the 415th Judicial District Court of Parker County, Texas on September 1, 2020. *See* Exhibit 4. Within an hour of that ruling Debtor filed this case.

10. The status of the indebtedness as of May 1, 2020, the maturity date, is as follows:

| | | |
|---|---|---|
| a. | Principal Amount Due: | $1,650,000.00 |
| b. | First payment defaulted:<br>Note matured: | September 1, 2019.<br>May 1, 2020. |
| c. | Total interest due as of<br>May 1, 2020: | $136,125.00 |
| | Late Fees Due as of<br>May 1, 2020 | $9,075.00 |
| | Total Interest & Late Fees<br>Due as of May 1, 2020, 2020 | $145,200.00 |
| d. | Additional Collateral held<br>as of May 1, 2020: CD | $165,000.00 |
| | Accrued Interest on CD as<br>of May 1, 2020 | $1,567.50 |

e. Interest continues to accrue at the default rate of Eighteen Percent Per Annum, or the maximum legal rate as provided for in the note.

11. This balance remains unpaid and is accruing interest and other applicable charges.

12. Movant contends that based on the facts of this case cause exists for the requirements of Bankruptcy Rule 4001(a)(3) to be waived so that Movant may once again post the Property for foreclosure as **Debtor has defaulted in its payment obligations under the note and deed of trust**.

13. In accordance with the terms of the Deed of Trust Movant would allege that it is entitled to reasonable attorney's fees, including, but not limited to, fees, if any, for the preparation and filing of this Motion for Relief from Stay in the amount of at least $2,500.00.

14. By reason of the foregoing, Movant requests the Court to terminate the stay so Movant may proceed to foreclose in accordance with its Note and Deed of Trust.

15. Debtor has failed to provide adequate protection to Movant which constitutes cause to terminate the automatic stay of 11 U.S.C. § 362(a).

16. Movant reserves the right to assert an 11 U.S.C. § 362(d)(2) Cause of Action, if appropriate, at the hearing on Movant's Motion for Relief.

17. The provision of Rule 4001 (a) (3) should be waived and Movant be permitted to immediately enforce and implement any order granting relief from the automatic stay.

18. This Motion is supported by the affidavit of Mr. Al Keller which is attached as Exhibit “5”.

WHEREFORE, Movant prays that this Court enter an order, after notice and hearing, terminating the automatic stay as to Movant and allowing the posting and sale of the collateral at foreclosure. Movant further prays that the Court waive the provision of Rule 4001 (a) (3) and that Southern Star Capital, LLC d/b/a Reliance Mortgage be permitted to immediately enforce and implement any order granting relief from the automatic stay; that Movant be awarded its reasonable attorney’s fees and expenses for this Motion; and, that Movant be granted such other and further relief as is just.

Respectfully submitted,

By: */s/ Robert W. Buchholz*
______________________________

Robert W. Buchholz
Texas Bar No: 03290600
420 S. Cesar Chavez Blvd., Suite 300
Dallas, Texas 75201
Tel. (214) 754-5500
Fax. (214) 754-9100
Bob@attorneybob.com

## CERTIFICATE OF CONFERENCE

This will certify that the relief sought in this motion was discussed with the attorney for the alleged Debtor BM318, LLC, who stated that she is opposed to the relief requested.

*/s/ Robert W. Buchholz*
By: ______________________________
Robert W. Buchholz

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2020, a true and correct copy of the foregoing Motion for Relief from Stay was served via electronic means as listed on the Court's ECF noticing system which includes the Attorney for the Debtors and the U.S. Trustee, and by regular mail to the debor(s) at:

| | |
|---|---|
| BM318, LLC, Debtor<br>13901 Midway Rd., Ste. 102<br>Dallas, TX 75244 | VIA US MAIL |
| Joyce W. Lindauer<br>Joyce W. Lindauer Attorney, PLLC<br>1412 Main Street, Suite 500<br>Dallas, TX 75202<br>Attorney for Alleged Debtor | VIA ECF |
| Parties Having Filed NOA | VIA ECF |
| Office of United States Trustee | VIA ECF |

*/s/ Robert W. Buchholz*
By: ______________________________
Robert W. Buchholz

EXHIBIT "A"

File Number: 2025-276417-RU

BEING 118.34 acres situated in the JAMES BRADLEY SURVEY, ABSTRACT NO. 120, Parker County, Texas, being a portion of that certain tract of land described in deed as Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 118.34 acres being more particularly described as follows:

BEGINNING at the most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (Right-of Way varies), from which a 2" steel fence corner post found in the south line of said Bear Creek Road bears S 01°12'56" E, a distance of 40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6918277.984 and EAST: 2233063.538, for reference;

THENCE S 67°36'03" E, along the approximate centerline of said Bear Creek Road and along the most north line of said Parcel No. 2, a distance of 2856.45 feet to a point for the northeast corner of the herein described 118.34 acre tract;

THENCE S 24°50'49" W, leaving the approximate centerline of said Bear Creek Road, and being along the west line of a Fifty (50) foot wide Right-of-Way Agreement to ONEOK Arbuckle Pipeline, L.L.C., recorded in Book 2651, Page 405, Official Public Records, Parker County, Texas, at a distance of 23.85 feet, passing a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084", and continuing, along the west line of said Fifty (50) foot wide Right-of-Way Agreement, in all, a distance of 205.78 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";

THENCE S 04°46'43" W, continuing along the west line of said Fifty (50) foot wide Right-of-Way Agreement, a distance of 1684.81 feet to a point in the approximate centerline of Bear Creek for the southeast corner of the herein described 118.34 acre tract;

THENCE along the approximate centerline of said Bear Creek, as follows:

N 61°36'37" W, a distance of 807.44 feet to a point;

N 71°14'04" W, a distance of 217.93 feet to a point;

N 85°16'07" W, a distance of 121.44 feet to a point;

S 77°05'53" W, a distance of 141.01 feet to a point;

S 82°12'59" W, a distance of 239.64 feet to a point;

S 49°32'26" W, a distance of 208.64 feet to a point;

N 86°11'59" W, a distance of 114.28 feet to a point;

N 53°45'49" W, a distance of 175.97 feet to a point;

N 47°13'56" W, a distance of 200.18 feet to a point;

N 80°08'35" W, a distance of 392.40 feet to a point in the west line of said Parcel No. 2, for the southwest corner of the herein described 118.34 acre tract, from which a 5/8" capped iron rod found at the southwest corner of said Parcel No. 2 bears S 01°17'05" E, a distance of 1216.41 feet, for reference;

THENCE N 01°17'05" W, along the west line of said Parcel No. 2, a distance of 2375.35 to the POINT OF BEGINNING and containing 118.34 acres of land, more or less.

2025-276417

**Promissory Note**

**Date:** May 3, 2019.

**Borrower:** BM318, LLC.

**Borrower's Mailing Address:** BM318 LLC.
1755 Wittington Place, Suite 340
Dallas Texas 75234, attention Tim Barton, President.

**Lender:** Southern Star Capital, LLC d/b/a Reliance Mortgage Company

**Place for Payment:**

5220 Spring Valley Road, Suite 602
Dallas, Texas 75254.
or any other place that Lender may designate in writing.

**Principal Amount:** One Million Six Hundred Fifty Thousand Dollars, ($1,650,000.00).

**Annual Interest Rate:** Eleven Percent (11.0%)

**Maturity Date:** May 1, 2020.

**Annual Interest Rate on Matured, Unpaid Amounts:** Eighteen Percent (18%) or the highest lawful rate, whichever is less.

**Terms of Payment (principal and interest):**

The Principal Amount and all accrued and unpaid interest is due and payable on May 1, 2020, and the interest is due and payable monthly as it accrues.

The monthly interest payments are Fifteen Thousand One Hundred Twenty-Five and 00/100 dollars ($15,125.00) and are due and payable on the first day of each month with the first payment due on June 1, 2019.

**Late Charge:**

If any installment becomes overdue for more than ten days, at Lender's option a late payment charge equal to five percent (5%) of the amount of the late payment may be charged in order to defray the expense of handling the delinquent payment.

**Security for Payment:** This note is secured by a deed of trust and security agreement (the "deed of trust") dated May 3, 2019, from BM318, LLC to Robert W. Buchholz, trustee on the following described real property.

The property described in the attached Exhibit "A" which is which is incorporated herein by reference.

**Other Security for Payment:**
None.

**Promise to Pay**
Borrower promises to pay to the order of Lender the Principal Amount plus interest at the Annual Interest Rate. This note is payable at the Place for Payment and according to the Terms of Payment. All unpaid amounts are due by the Maturity Date. If any amount is not paid either when due under the Terms of Payment or on acceleration of maturity, Borrower promises to pay any unpaid amounts plus interest from the date the payment was due to the date of payment at the Annual Interest Rate on Matured, Unpaid Amounts.

**Waivers**
Borrower waives, to the extent permitted by law, all (1) demand for payment, (2) presentation for payment, (3) notice of intention to accelerate maturity, (4) notice of acceleration of maturity, (5) protest, (6) notice of protest, (7) rights under sections 51.003, 51.004 and 51.005 of the Texas Property Code, (8) rights under section 17.001 and chapter 43 of the Texas Civil Practice and Remedies Code and rule 31 of the Texas Rules of Civil Procedure.

**Attorney's Fees**
Borrower also promises to pay reasonable attorney's fees and court and other costs if an attorney is retained to collect or enforce the note. These expenses will bear interest from the date of advance at the Annual Interest Rate on Matured, Unpaid Amounts. Borrower will pay Lender these expenses and interest on demand at the Place for Payment. These expenses and interest will become part of the debt evidenced by the note and will be secured by any security for payment.

**Prepayment:** Borrower may prepay this note in any amount at any time before the Maturity Date without penalty or premium.

**Application of Prepayment:** Prepayments will be applied to installments on the last maturing principal, and interest on that prepaid principal will immediately cease to accrue.

**Usury Savings**
It is the intention of the parties hereto to act in strict compliance with "Applicable Law" (hereafter defined). Accordingly, it is agreed that notwithstanding any provision to the contrary in this note, "deed of trust" (defined above), or any other instrument securing or evidencing the indebtedness evidenced by this note, or in any other arrangements or agreements, no such provision shall ever be construed to create a contract to pay, as consideration for use, forbearance or detention of money, "interest," as that term may be defined by Applicable Law, at a rate in excess of the maximum lawful rate of nonusurious interest permitted by Applicable Law. If any excess of interest in such respect is provided for, or shall be adjudicated to be so provided for, in this note, the deed of trust, or in any other instrument securing or evidencing the indebtedness evidenced by this note, then in such event (a) the provisions of this paragraph shall govern and control; (b) neither Borrower nor its successors or assigns or any other party liable for the payment of the indebtedness shall be obligated to pay the amount of such interest to the extent that it is in excess

of the maximum lawful amount of nonusurious interest permitted by Applicable Law, and the same shall be construed as a mutual mistake of the parties hereto, and of any legal holder of this note, and (c) such excess of interest over the maximum lawful rate of nonusurious interest permitted by Applicable Law shall either be applied as credit against the then unpaid principal amount of the indebtedness owed under this note or refunded to Borrower. Any commitment, extension, brokerage, loan or other fees or sums paid pursuant to this note, the loan evidenced hereby, or the deed of trust and which under Applicable Law are deemed to constitute interest shall be treated as interest and taken into account in calculating the maximum lawful rate of nonusurious interest permitted by Applicable Law. If the holder of this note shall ever receive anything of value that is characterized as interest under Applicable Law and that would apart from this provision be in excess of the maximum lawful rate of nonusurious interest permitted by Applicable Law, an amount equal to the amount that would have been excessive interest shall, without penalty, be applied to the reduction of the principal amount owing on the indebtedness evidenced by this note in the inverse order of its maturity and not to the payment of interest, or refunded to Borrower or the other payor thereof if and to the extent such amount, which would have been excessive, exceeds such unpaid principal. The right to accelerate maturity of this note, or any other indebtedness, does not include the right to accelerate any interest that has not otherwise accrued on the date of such acceleration, and the holder hereof does not intend to charge or receive any unearned interest in the event of acceleration. All interest paid or agreed to be paid to the holder hereof shall, to the extent permitted by Applicable Law, be amortized, prorated, allocated, and spread throughout the full stated term (including any renewal or extension) of such indebtedness so that the amount of interest on account of such indebtedness does not exceed the maximum lawful amount of nonusurious interest permitted by Applicable Law. Further, notwithstanding anything to the contrary contained herein, if the indebtedness evidenced by this note or the or the deed of trust is paid in full by Borrower or its successors or assigns prior to the full stated term of this note (as such term may have been extended pursuant to the terms hereof) and the interest received for the actual period of the existence of the indebtedness evidenced by this note exceeds the maximum lawful rate of nonusurious interest permitted by Applicable Law, then Lender, or its successors or assigns, shall refund to Borrower, or its successors or assigns, the amount of the excess of such interest over the maximum amount of nonusurious interest permitted under Applicable Law, and neither Lender, nor its successors or assigns, shall be subject to any of the penalties, if any, provided by Applicable Law for contracting for, charging, or receiving interest in excess of the maximum lawful rate of nonusurious interest permitted by Applicable Law. To the extent that Title 4 of the Texas Finance Code is relevant for purposes of determining the maximum lawful rate of nonusurious interest permitted by Applicable Law, the parties hereby elect to determine the applicable rate ceiling under such article by using the indicated (weekly) rate ceiling from time to time in effect, subject to Lender's right subsequently to change such method in accordance with Applicable Law.

"Applicable Law" shall mean that law (including, without limitation, Texas law), regulation, or judicial determination in effect from time to time and applicable to this note (including future changes in law), which lawfully permits the contracting for, charging and collection of the highest permissible rate of interest on this note and the loan evidenced hereby, including laws, regulations, and judicial determinations of the State of Texas and of the United States of America.

**Other Clauses**

Each Borrower is responsible for all obligations represented by this note.

When the context requires, singular nouns and pronouns include the plural.

A default exists under this note if (1) (a) Borrower or (b) any other person liable on any part of this note or who grants a lien or security interest on property as security for any part of this note (an "Other Obligated Party") fails to timely pay or perform any obligation or covenant in any written agreement between Lender and Borrower or any Other Obligated Party; (2) any representation in this note or in any other written agreement between Lender and Borrower or any Other Obligated Party is materially false when made; (3) a receiver is appointed for Borrower, any Other Obligated Party, or any property on which a lien or security interest is created as security (the "Collateral Security") for any part of this note; (4) any Collateral Security is assigned for the benefit of creditors; (5) a bankruptcy or insolvency proceeding is commenced by Borrower, a partnership of which Borrower is a general partner, or an Other Obligated Party; (6) (a) a bankruptcy or insolvency proceeding is commenced against Borrower, a partnership of which Borrower is a general partner, or an Other Obligated Party and (b) the proceeding continues without dismissal for sixty days, the party against whom the proceeding is commenced admits the material allegations of the petition against it, or an order for relief is entered; (7) any of the following parties is terminated, begins to wind up its affairs, suffers a forfeiture of right to do business, is authorized to terminate or wind up its affairs by its governing body or persons, or any event occurs or condition exists that permits the termination or winding up of the affairs of any of the following parties: Borrower, a partnership of which Borrower is a general partner, or an Other Obligated Party; (8) any Collateral Security is impaired by loss, theft, damage, levy and execution, issuance of an official writ or order of seizure, or destruction, unless it is promptly replaced with collateral security of like kind and quality or restored to its former condition; or (9) any attachment, sequestration or similar writ is levied upon any property of Borrower or Other Obligated Party and is not discharged within a period of thirty days; (10) any final money judgment against Borrower or any Other Obligated Party is not paid within thirty days; (11) Borrower abandons any portion of the property of Borrower; or (12) if Borrower is an individual, the death or disability of Borrower or Other Obligated Party, if Other Obligated Party is an individual.

**BORROWER waives its rights under the Texas Deceptive Trade Practices–Consumer Protection Act, section 17.41 *et seq.* of the Texas Business and Commerce Code, a law that gives consumers special rights and protections. After consultation with an attorney of its own selection, BORROWER voluntarily consents to this waiver.**

If any provision of this note conflicts with any provision of a loan agreement, deed of trust, or security agreement of the same transaction between Lender and Borrower, the provisions of the deed of trust will govern to the extent of the conflict.

Borrower and Lender acknowledge that they were represented by competent counsel in connection with the negotiation, drafting and execution of this Note, deed of trust, and all other documents executed in connection with the same transaction between Lender and Borrower and that this Note, the deed of trust and all other documents executed in connection with the same transaction between Lender and Borrower shall not be subject to the principle of construing their meaning against the party which drafted same.

**BORROWER, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, HEREBY KNOWINGLY, INTENTIONALLY, IRREVOCABLY, UNCONDITIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THIS NOTE OR ANY CONDUCT, ACT OR OMISSION OF LENDER OR BORROWER, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH LENDER OR BORROWER, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.**

Borrower warrants to Lender and agrees that the proceeds of the Note will be used primarily for business or commercial purposes and not primarily for personal, family, or household purposes.

This note will be construed under the laws of the state of Texas, without regard to choice-of-law rules of any jurisdiction.

BM318, LLC



By: Tim Barton
Its: President

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

2025-276417

## Deed of Trust

### Basic Information

**Date:** May 3, 2019.

**Grantor:** BM318, LLC

**Grantor's Mailing Address:**

BM318, LLC
c/o Tim Barton, President
1755 Wittington Place, Suite 340
Dallas, Texas 75234

**Trustee:** Robert W. Buchholz.

**Trustee's Mailing Address:**

420 S. Cesar Chavez Blvd., Suite 300
Dallas, Texas 75201

**Lender:** Southern Star Capital LLC d/b/a Reliance Mortgage Company

**Lender's Mailing Address:**

5220 Spring Valley Road, Suite 602
Dallas, Texas 75254

**Obligation**

Note:
Date: May 3, 2019.
Original principal amount: $1,650,000.00.
Borrower: BM318, LLC

Lender: Southern Star Capital LLC d/b/a Reliance Mortgage Company
Maturity date: May 1, 2020.
Terms of Payment: As provided in the note.

**Property (including any improvements):**

The property described in the attached Exhibit "A" which is incorporated herein by reference.

**Exceptions to Conveyance and Warranty:**

None.

**A. Granting Clause**

For value received and to secure payment of the Obligation, Grantor conveys the Property to Trustee in trust. Grantor warrants and agrees to defend the title to the Property, subject to the Other Exceptions to Conveyance and Warranty. On payment of the Obligation and all other amounts secured by this deed of trust, this deed of trust will have no further effect, and Lender will release it at Grantor's expense.

**B. Grantor's Obligations**

*B.1.* Grantor agrees to maintain all property and liability insurance coverages with respect to the Property, revenues generated by the Property, and operations on the Property that Lender reasonably requires ("Required Insurance Coverages"), issued by insurers and written on policy forms acceptable to Lender , and as to property loss, that are payable to Lender under policies containing standard mortgage clauses, and deliver evidence of the Required Insurance Coverages in a form acceptable to Lender before execution of this deed of trust and again at least ten days before the expiration of the Required Insurance Coverages.

*B.2* Grantor agrees to-

a. keep the Property in good repair and condition;

b. pay all taxes and assessments on the Property before delinquency, not authorize a taxing entity to transfer its tax lien on the Property to anyone other than Lender, and not request a deferral of the collection of taxes pursuant to section 33.06 of the Texas Tax Code;

c. defend title to the Property subject to the Other Exceptions to Conveyance and Warranty and preserve the lien's priority as it is established in this deed of trust;

d. obey all laws, ordinances, and restrictive covenants applicable to the Property;

e. keep any buildings occupied as required by the Required Insurance Coverages;

f. if the lien of this deed of trust is not a first lien, pay or cause to be paid all prior lien notes and abide by or cause to be abided by all prior lien instruments;

g. notify Lender of any change of address; and

**C. Lender's Rights**

*C.1.* Lender or Lender's mortgage servicer may appoint in writing one or more substitute trustees, succeeding to all rights and responsibilities of Trustee.

*C.2.* If the proceeds of the Obligation are used to pay any debt secured by prior liens, Lender is subrogated to all the rights and liens of the holders of any debt so paid.

*C.3.* Lender may apply any proceeds received under the property insurance policies covering the Property either to reduce the Obligation or to repair or replace damaged or destroyed improvements covered by the policy. If the Property is Grantor's primary residence and Lender reasonably determines that repairs to the improvements are economically feasible, Lender will make the property insurance proceeds available to Grantor for repairs.

*C.4.* Notwithstanding the terms of the Note to the contrary, and unless applicable law prohibits, all payments received by Lender from Grantor with respect to the Obligation or this deed of trust may, at Lender's discretion, be applied first to amounts payable under this deed of trust and then to amounts due and payable to Lender with respect to the Obligation, to be applied to late charges, principal, or interest in the order Lender in its discretion determines.

*C.5.* If Grantor fails to perform any of Grantor's obligations, Lender may perform those obligations and be reimbursed by Grantor on demand for any amounts so paid, including attorney's fees, plus interest on those amounts from the dates of payment at the rate stated in the Note for matured, unpaid amounts. The amount to be reimbursed will be secured by this deed of trust.

*C.6.* **COLLATERAL PROTECTION INSURANCE NOTICE**

**In accordance with the provisions of Section 307.052(a) of the Texas Finance Code, the Beneficiary hereby notifies the Grantor as follows:**

**(A) the Grantor is required to:**

**(i) keep the collateral insured against damage in the amount the Lender specifies;**

**(ii) purchase the insurance from an insurer that is authorized to do business in the state of Texas or an eligible surplus lines insurer; and**

**(iii) name the Lender as the persons to be paid under the policy in the event of a loss;**

**(B) the Grantor must, if required by the Lender, deliver to the Lender a copy of the policy and proof of the payment of premiums; and**

**(C) if the Grantor fails to meet any requirement listed in Paragraph (A) or (B), the Lender may obtain collateral protection insurance on behalf of the Grantor at the Grantor's expense.**

*C.7.* If a default exists in payment of the Obligation or performance of Grantor obligations and the

default continues after any required notice of the default and the time allowed to cure, Lender may-

a. declare the unpaid principal balance and earned interest on the Obligation immediately due;

b. exercise Lender's rights with respect to rent under the Texas Property Code as then in effect;

c. direct Trustee to foreclose this lien, in which case Lender or Lender's agent will cause notice of the foreclosure sale to be given as provided by the Texas Property Code as then in effect; and

d. purchase the Property at any foreclosure sale by offering the highest bid and then have the bid credited on the Obligation.

*C.8.* If Grantor fails to pay any part of principal or interest secured by a prior lien or liens on the Property when it becomes payable or defaults on any prior lien instrument, the entire debt secured by this deed of trust will immediately become payable at the option of Lender.

C.9. Any act or occurrence that would constitute default under the terms of any lien superior to the lien securing the Note will constitute a default under this Deed of Trust securing the Note.

*C.10.* Lender may remedy any default without waiving it and may waive any default without waiving any prior or subsequent default.

**D. Trustee's Rights and Duties**
If directed by Lender to foreclose this lien, Trustee will-

*D.1.* either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then in effect;

*D.2.* sell and convey all or part of the Property "AS IS" to the highest bidder for cash with a general warranty binding Grantor, subject to the Prior Liens and to the Other Exceptions to Conveyance and Warranty and without representation or warranty, express or implied, by Trustee;

*D.3.* from the proceeds of the sale, pay, in this order-

a. expenses of foreclosure, including a reasonable commission to Trustee;
b. to Lender, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;
c. any amounts required by law to be paid before payment to Grantor; and
d. to Grantor, any balance; and

*D.4.* be indemnified, held harmless, and defended by Lender against all costs, expenses, and liabilities incurred by Trustee for acting in the execution or enforcement of the trust created by this deed of trust, which includes all court and other costs, including attorney's fees, incurred by Trustee in defense of any action or proceeding taken against Trustee in that capacity.

**E. General Provisions**

*E.1.* If any of the Property is sold under this deed of trust, Grantor must immediately surrender possession to the purchaser. If Grantor does not, Grantor will be a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

*E.2.* Recitals in any trustee's deed conveying the Property will be presumed to be true.

*E.3.* Proceeding under this deed of trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

*E.4.* This lien will remain superior to liens later created even if the time of payment of all or part of the Obligation is extended or part of the Property is released.

*E.5.* If any portion of the Obligation cannot be lawfully secured by this deed of trust, payments will be applied first to discharge that portion.

*E.6.* Grantor assigns to Lender all amounts payable to or received by Grantor from condemnation of all or part of the Property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the Property. After deducting any expenses incurred, including attorney's fees and court and other costs, Lender will either release any remaining amounts to Grantor or apply such amounts to reduce the Obligation. Lender will not be liable for failure to collect or to exercise diligence in collecting any such amounts. Grantor will immediately give Lender notice of any actual or threatened proceedings for condemnation of all or part of the Property.

*E.7.* Grantor collaterally assigns to Lender all present and future rent from the Property and its proceeds. Grantor warrants the validity and enforceability of the assignment. Grantor will apply all rent to payment of the Obligation and performance of this deed of trust, but if the rent exceeds the amount due with respect to the Obligation and the deed of trust, Grantor may retain the excess. If a default exists in payment of the Obligation or performance of this deed of trust, Lender may exercise Lender's rights with respect to rent under the Texas Property Code as then in effect. Lender neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the Property. Lender may exercise Lender's rights and remedies under this paragraph without taking possession of the Property. Lender will apply all rent collected under this paragraph as required by the Texas Property Code as then in effect. Lender is not required to act under this paragraph, and acting under this paragraph does not waive any of Lender's other rights or remedies.

*E.8.* Interest on the debt secured by this deed of trust will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded.

*E.9.* In no event may this deed of trust secure payment of any debt that may not lawfully be secured

by a lien on real estate or create a lien otherwise prohibited by law.

*E.10.* When the context requires, singular nouns and pronouns include the plural.

*E.11.* The term *Note* includes all extensions, modifications, and renewals of the Note and all amounts secured by this deed of trust.

*E.12.* Grantor warrants that the extension of credit evidenced by the Note secured hereby is solely for business or commercial purposes, other than agricultural purposes. The Grantor further warrants that the credit transaction evidenced by the Note is specifically exempted under Regulation Z issued by the Board of Governors of the Federal Reserve System and Title I of the Consumer Credit Protection Act and that no disclosures are required to be given under such regulations and federal laws in connection with the above transaction. Grantor does not claim any part of the Property as residential or business homestead. Grantor acknowledges that Lenders rely on the truth of representations in this paragraph in making the Note secured by this deed of trust.

*E.13.* Grantor will furnish to Lender or other holder of the Note annually, before January 31st of each year, copies of tax receipts showing that all taxes on the Property have been paid. Failure to comply with the foregoing for any reason whatsoever shall constitute a default.

If Grantor fails to pay all taxes on the Property prior to January 31st of each year for the tax period covering the preceding calendar year for any reason whatsoever, including, but not limited to, protests of value, processing of tax account split-out requests, or failure of the tax authorities to certify the tax roll or account, at the option of Lender, Grantor shall immediately deposit with Lender, a sum equal to taxes, assessments and charges against the Property in the amount as estimated by Lender.

All such funds shall bear no interest whatsoever, may be mingled with the general funds of Lender and shall be applied by Lender toward the payment of taxes and assessments; provided, however, that, if a Default shall have occurred hereunder, such funds may at Lender's option be applied to the payment of the Obligation in the order determined by Lender in its sole discretion, and that Lender may at any time, in its sole discretion, apply all or any part of such funds toward the payment of any such taxes, assessments, charges, legal fees, penalties or premiums which are past due, together with any penalties or late charges with respect thereto.

Lender shall have the right to rely upon tax information furnished by applicable taxing authorities in the payment of such taxes and assessments and Lender shall have no obligation to make any protest of any such taxes or assessments. Any excess over the amounts required for such purposes shall be held by Lender for future use, applied to the Obligation or refunded to Grantor, at Lender's option, and any deficiency in such funds so deposited shall be made up by Grantor upon demand by Lender.

The conveyance or transfer of Grantor's interest in the Property for any reason (including, without limitation, the foreclosure of a lien or security interest or a transfer by operation of law) shall constitute an assignment or transfer of Grantor's interest in and rights to such funds held by Lender under this subparagraph but subject to the rights of Lender hereunder.

Grantor will annually furnish to Lender or other holder of the Note evidence of current paid-up Required Insurance Coverage naming Lender or other holder of the Note as an insured.

***E.14.* GRANTOR MAY FURNISH ANY INSURANCE REQUIRED BY THIS DEED OF TRUST EITHER THROUGH EXISTING POLICIES OWNED OR CONTROLLED BY GRANTOR OR THROUGH EQUIVALENT COVERAGE FROM ANY INSURANCE COMPANY AUTHORIZED TO TRANSACT BUSINESS IN TEXAS.**

*E.15.* If all or any part of the Property is sold, transferred, or conveyed without the prior written consent of Lender or other holder of the Note, Lender or other holder of the Note may, at its sole option, declare the outstanding principal balance of the Note plus accrued interest immediately due and payable. Lender or other holder of the Note has no obligation to consent to any such sale or conveyance of the Property, and Lender or other holder of the Note is entitled to condition any consent on a change in the interest rate that will thereafter apply to the Note and any other change in the terms of the Note or Deed of Trust that Lender or other holder of the Note in its sole discretion deems appropriate. A lease for a period longer than one year, a lease with an option to purchase, or a contract for deed will be deemed to be a sale, transfer, or conveyance of the Property for purposes of this provision. The creation of a subordinate lien without the consent of Lender or other holder of the Note will be construed as a sale or conveyance of the Property, but any subsequent sale under a subordinate lien to which Lender or other holder of the Note has consented will not be construed as a sale or conveyance of the Property.

*E.16.* Grantor agrees not to grant any lien or security interest in the Property or to permit any junior encumbrance to be recorded or any claim to otherwise become an encumbrance against the Property. If an involuntary encumbrance is filed against the Property, Grantor agrees, within thirty days, to either remove the involuntary encumbrance or provide a bond acceptable to Lender against the involuntary encumbrance.

*E.17.* This deed of trust binds, benefits, and may be enforced by the successors in interest of all parties.

*E.18.* If Grantor and Borrower are not the same person, the term *Grantor* includes Borrower.

*E.19.* Grantor and each surety, endorser, and guarantor of the Obligation waive, to the extent permitted by law, all (a) demand for payment, (b) presentation for payment, (c) notice of intention to accelerate maturity, (d) notice of acceleration of maturity, (e) protest, (f) notice of protest and (g) rights under sections 51.003, 51.004, and 51.005 of the Texas Property Code.

*E.20.* Grantor will have full recourse liability for repayment of the principal and interest of the Note and the performance of all covenants and agreements of Grantor in this Deed of Trust.

*E.21.* Grantor agrees to pay reasonable attorney's fees, trustee's fees, and court and other costs of enforcing Lender's rights under this deed of trust if an attorney is retained for its enforcement.

*E.22.* Grantor agrees to execute, acknowledge, and deliver to Lender any document requested by Lender, at Lender's request from time to time, to

(a) correct any defect, error, omission, or ambiguity in this deed of trust or in any other document executed in connection with the Note or this deed of trust;
(b) comply with Grantor's obligations under this deed of trust and other documents;
(c) subject to and perfect the liens and security interests of this deed of trust and other documents any property intended to be covered thereby; and
(d) protect, perfect, or preserve the liens and the security interests of this deed of trust and other documents against third persons or make any recordings, file any notices, or obtain any consents requested by Lender in connection therewith. Grantor agrees to pay all costs of the foregoing.

*E.23.* Lender, as a matter of right and without regard to the sufficiency of the security for repayment of the Note and performance and discharge of the Obligations, without notice to Grantor and without any showing of insolvency, fraud, or mismanagement on the part of Grantor, and without the necessity of filing any judicial or other proceeding other than the proceeding for appointment of a receiver, shall be entitled to the appointment of a receiver or receivers of the Property or any part thereof, and of the Rents, and Grantor hereby irrevocably consents to the appointment of a receiver or receivers. Any receiver appointed pursuant to the provisions of this subsection shall have the usual powers and duties of receivers in such matters.

*E.24* Grantor shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Grantor shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The first sentence of this Section shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to the repair and maintenance of the Property.

Grantor shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Grantor has actual knowledge. If Grantor learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of Hazardous Substance affecting the Property is necessary, Grantor shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

*E.25.* If any provision of this deed of trust is determined to be invalid or unenforceable, the validity or enforceability of any other provision will not be affected.

*E.26.* The term Lender includes any mortgage servicer for Lender.

*E.27.* Grantor hereby grants Lenders a right of first refusal with respect to Grantor's power to

authorize any third party (other than Lenders pursuant to its rights as set forth in this instrument) to pay ad valorem taxes on the Property and authorize a taxing entity to transfer its tax lien on the Property to that third party. Grantor's authorization to any third party (other than Lenders) to pay the ad valorem taxes and receive transfer of a taxing entity's lien for ad valorem taxes shall be null and void and of no force and effect unless Lenders, within ten days after receiving written notice from Grantor, fail to pay the ad valorem taxes pursuant to Lenders' rights as set forth in this instrument.

*E.28.* Grantor warrants that the execution of this deed of trust shall not impair or affect any other security, which may be given to secure the payment of the Obligation secured hereby, and all such additional security shall be considered as cumulative. The taking of additional security, execution of releases and partial releases of the security (regardless of consideration for the release or partial release) or any extension of time of payment of the Obligation secured hereby shall not diminish the force, effect, or lien of this deed of trust and shall not affect or impair the liability of any maker, surety, or endorser for the payment of said Obligation.

*E.29.* In the event of any conflict between the provisions of this Deed of Trust and the Note, guaranty (if any) and any of the other documents executed in connection with this transaction, it is the intent of the parties hereto that the provisions of this Deed of Trust shall control. The parties hereto acknowledge that they were represented by competent counsel in connection with the negotiation, drafting and execution of the Deed of Trust, the Note, guaranty (if any) and any of the other documents executed in connection with this transaction and that such Deed of Trust, Note, guaranty (if any) and all of the other documents executed in connection with this transaction shall not be subject to the principle of construing their meaning against the party which drafted same.

*E.30.* **GRANTOR AFTER CONSULTATION WITH AN ATTORNEY OF ITS OWN SELECTION (WHICH COUNSEL WAS NOT DIRECTLY OR INDIRECTLY IDENTIFIED, SUGGESTED, OR SELECTED BY THE OTHER PARTY), VOLUNTARILY WAIVES A TRIAL BY JURY OF ANY ISSUE ARISING IN AN ACTION OR PROCEEDING BETWEEN THE PARTIES OR THEIR SUCCESSORS, UNDER OR CONNECTED WITH THIS CONTRACT OR ITS PROVISIONS. GRANTOR AND LENDER ACKNOWLEDGE TO EACH OTHER THAT GRANTOR AND LENDER ARE NOT IN SIGNIFICANTLY DISPARATE BARGAINING POSITIONS.**

*E.31* Additional Definitions used in this paragraph:

"Constituent Party": any (a) shareholder, member, general partner or managing member of Grantor, as applicable, or (b) any signatory to this Deed of Trust that signs on Grantor's behalf that is a corporation, general partnership, limited partnership, limited liability company, joint venture, trust, or other type of business organization, or(c) any Guarantor.

"Loan Documents": The Note, this Deed of Trust, the Guaranty, and any and all other documents now or hereafter executed by Grantor, Guarantor, or any other person or party in connection with the loan evidenced by the Note or in connection with the payment of the Obligation or the performance and discharge of the Obligations.

GRANTOR SHALL INDEMNIFY, DEFEND, PROTECT AND HOLD HARMLESS LENDER AND TRUSTEE, THEIR RESPECTIVE PARENTS, SUBSIDIARIES, DIRECTORS, OFFICERS, EMPLOYEES, REPRESENTATIVES, AGENTS, MEMBERS, SUCCESSORS, AND ASSIGNS FROM AND AGAINST ANY AND ALL LIABILITY, DAMAGE, LOSS, COST, OR EXPENSE (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' FEES AND EXPENSES), ACTION, PROCEEDING, CLAIM OR DISPUTE INCURRED OR SUFFERED BY THE FOREGOING PARTIES SO INDEMNIFIED WHETHER OR NOT AS THE RESULT OF THE NEGLIGENCE OF ANY PARTY SO INDEMNIFIED, WHETHER VOLUNTARILY OR INVOLUNTARILY INCURRED OR SUFFERED, IN RESPECT OF THE FOLLOWING:

(i) ANY LITIGATION CONCERNING THIS DEED OF TRUST, THE OTHER LOAN DOCUMENTS OR THE PROPERTY, OR ANY INTEREST OF GRANTOR OR LENDER THEREIN, OR THE RIGHT OF OCCUPANCY THEREOF BY GRANTOR OR LENDER, WHETHER OR NOT ANY SUCH LITIGATION IS PROSECUTED TO A FINAL, NON-APPEALABLE JUDGMENT;

(ii) ANY DISPUTE, INCLUDING DISPUTES AS TO THE DISBURSEMENT OF PROCEEDS OF THE NOTE NOT YET DISBURSED, AMONG OR BETWEEN ANY OF THE CONSTITUENT PARTIES OR OTHER PARTNERS OR VENTURERS OF GRANTOR IF GRANTOR IS A GENERAL OR LIMITED PARTNERSHIP, OR AMONG OR BETWEEN ANY EMPLOYEES, OFFICERS, DIRECTORS, SHAREHOLDERS, MEMBERS OR MANAGERS OF GRANTOR IF GRANTOR IS A CORPORATION OR LIMITED LIABILITY COMPANY, OR AMONG OR BETWEEN ANY MEMBERS, TRUSTEES OR OTHER RESPONSIBLE PARTIES IF GRANTOR IS AN ASSOCIATION, TRUST OR OTHER ENTITY;

(iii) ANY ACTION TAKEN OR NOT TAKEN BY LENDER OR TRUSTEE WHICH IS ALLOWED OR PERMITTED UNDER THIS DEED OF TRUST OR ANY OF THE OTHER LOAN DOCUMENTS RELATING TO GRANTOR, THE PROPERTY, ANY CONSTITUENT PARTIES OR OTHERWISE IN CONNECTION WITH THE LOAN DOCUMENTS, INCLUDING WITHOUT LIMITATION, THE PROTECTION OR ENFORCEMENT OF ANY LIEN, SECURITY INTEREST OR OTHER RIGHT, REMEDY OR RECOURSE CREATED OR AFFORDED BY THIS DEED OF TRUST OR THE OTHER LOAN DOCUMENTS;

(iv) ANY ACTION BROUGHT BY LENDER OR TRUSTEE AGAINST GRANTOR UNDER THIS DEED OF TRUST OR THE OTHER LOAN DOCUMENTS, WHETHER OR NOT SUCH ACTION IS PROSECUTED TO A FINAL, NON-APPEALABLE JUDGMENT;

(v) ALL CLAIMS, CAUSES OF ACTION, LEGAL PROCEEDINGS, LIABILITY, OR DISPUTES ARISING OUT OF OR IN ANY WAY RELATED TO THE PROPERTY AND ITS IMPROVEMENTS;

(vi) ALL CLAIMS, CAUSES OF ACTION, LEGAL PROCEEDINGS, LIABILITY, OR DISPUTES ARISING OUT OF OR IN ANY WAY RELATED TO THE SALE AND PURCHASE OF THE PROPERTY AS WELL AS ANY AGREEMENTS RELATED THERETO AS WELL AS ANY SUBSEQUENT RESALE AND/OR TRANSFER OF THE PROPERTY BY GRANTOR; AND

(vii) ANY AND ALL LOSS, DAMAGE, COSTS, EXPENSE, ACTION, CAUSES OF ACTION, OR LIABILITY (INCLUDING ATTORNEYS' FEES AND COSTS) DIRECTLY OR INDIRECTLY ARISING FROM OR ATTRIBUTABLE TO THE USE, GENERATION, MANUFACTURE, PRODUCTION, STORAGE, RELEASE, THREATENED RELEASE, DISCHARGE, DISPOSAL, OR PRESENCE OF A HAZARDOUS SUBSTANCE ON, IN, UNDER OR ABOUT THE PROPERTY, WHETHER KNOWN OR UNKNOWN AT THE TIME OF THE EXECUTION HEREOF, INCLUDING WITHOUT LIMITATION (A) ALL FORESEEABLE CONSEQUENTIAL DAMAGES OF ANY SUCH USE, GENERATION, MANUFACTURE, PRODUCTION, STORAGE, RELEASE, THREATENED RELEASE, DISCHARGE, DISPOSAL, OR PRESENCE, AND (B) THE COSTS OF ANY REQUIRED OR NECESSARY ENVIRONMENTAL INVESTIGATION OR MONITORING, ANY REPAIR, CLEANUP, 13 OR DETOXIFICATION OF THE PROPERTY, AND THE PREPARATION AND IMPLEMENTATION OF ANY CLOSURE, REMEDIAL, OR OTHER REQUIRED PLANS.

LENDER AND/OR TRUSTEE MAY EMPLOY AN ATTORNEY OR ATTORNEYS TO PROTEST OR ENFORCE ITS RIGHTS, REMEDIES AND RECOURSES UNDER THIS DEED OF TRUST AND THE OTHER LOAN DOCUMENTS, AND TO ADVISE AND DEFEND LENDER AND/OR TRUSTEE WITH RESPECT TO ANY SUCH ACTIONS AND OTHER MATTERS. GRANTOR SHALL REIMBURSE LENDER AND/OR TRUSTEE FOR THEIR RESPECTIVE ATTORNEYS' FEES AND EXPENSES (INCLUDING EXPENSES AND COSTS FOR EXPERTS) IMMEDIATELY UPON RECEIPT OF A WRITTEN DEMAND THEREFOR, WHETHER ON A MONTHLY OR OTHER TIME INTERVAL, AND WHETHER OR NOT AN ACTION IS ACTUALLY COMMENCED OR CONCLUDED. ALL OTHER REIMBURSEMENT AND INDEMNITY OBLIGATIONS HEREUNDER SHALL BECOME DUE AND PAYABLE WHEN ACTUALLY INCURRED BY LENDER AND/OR TRUSTEE. ANY PAYMENTS NOT MADE WITHIN FIVE (5) DAYS AFTER WRITTEN DEMAND THEREFOR SHALL BEAR INTEREST AT THE ANNUAL INTEREST RATE ON MATURED, UNPAID AMOUNTS FROM THE DATE OF SUCH DEMAND UNTIL FULLY PAID. THE PROVISIONS OF THIS SECTION E.31 SHALL SURVIVE REPAYMENT OF THE NOTE AND PERFORMANCE OF THE OBLIGATIONS, THE RELEASE OF THE LIEN OF THIS DEED OF TRUST, ANY FORECLOSURE (OR ACTION IN LIEU OF FORECLOSURE), THE TRANSFER BY GRANTOR OF ANY OR ALL OF ITS RIGHT, TITLE AND INTEREST IN OR TO THE PROPERTY AND THE EXERCISE BY LENDER OF ANY AND ALL REMEDIES SET FORTH HEREIN OR IN THE LOAN DOCUMENTS.

*E.32.* GRANTOR WAIVES ITS RIGHTS UNDER THE TEXAS DECEPTIVE TRADE PRACTICES–CONSUMER PROTECTION ACT, SECTION 17.41 ET SEQ. OF THE

**TEXAS BUSINESS AND COMMERCE CODE, A LAW THAT GIVES CONSUMERS SPECIAL RIGHTS AND PROTECTIONS. AFTER CONSULTATION WITH AN ATTORNEY OF ITS OWN SELECTION, GRANTOR VOLUNTARILY CONSENTS TO THIS WAIVER.**

**NOTICE**

**THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**NOTICE OF INDEMNIFICATION: GRANTOR HEREBY ACKNOWLEDGES AND AGREES THAT THIS DEED OF TRUST CONTAINS CERTAIN INDEMNIFICATION PROVISIONS (INCLUDING, WITHOUT LIMITATION, THOSE CONTAINED IN SECTION E.31 HEREOF) WHICH, IN CERTAIN CIRCUMSTANCES, COULD INCLUDE AN INDEMNIFICATION BY GRANTOR OF LENDER FROM CLAIMS OR LOSSES ARISING AS A RESULT OF LENDER'S OWN NEGLIGENCE.**

BM318, LLC

By: Tim Barton
Its: President

**STATE OF TEXAS** §
§
**COUNTY OF DALLAS** §

Before me, the undersigned notary public, on this day personally appeared Tim Barton, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 3rd day of May 2019.

Bella D Khusal
My Commission Expires
09/24/2022
ID No. 131734480
NOTARY PUBLIC STATE OF TEXAS

Notary Public, State of Texas

AFTER RECORDING RETURN TO.
SOUTHERN STAR CAPITAL
5220 SPRING VALLEY RD. STE 602
DALLAS TX 75254

EXHIBIT "A"

File Number: 2025-276417-RU

BEING 118.34 acres situated in the JAMES BRADLEY SURVEY, ABSTRACT NO. 120, Parker County, Texas, being a portion of that certain tract of land described in deed as Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 118.34 acres being more particularly described as follows:

BEGINNING at the most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (Right-of Way varies), from which a 2" steel fence corner post found in the south line of said Bear Creek Road bears S 01°12'56" E, a distance of 40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6918277.984 and EAST: 2233063.538, for reference;

THENCE S 67°36'03" E, along the approximate centerline of said Bear Creek Road and along the most north line of said Parcel No. 2, a distance of 2856.45 feet to a point for the northeast corner of the herein described 118.34 acre tract;

THENCE S 24°50'49" W, leaving the approximate centerline of said Bear Creek Road, and being along the west line of a Fifty (50) foot wide Right-of-Way Agreement to ONEOK Arbuckle Pipeline, L.L.C., recorded in Book 2651, Page 405, Official Public Records, Parker County, Texas, at a distance of 23.85 feet, passing a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084", and continuing, along the west line of said Fifty (50) foot wide Right-of-Way Agreement, in all, a distance of 205.78 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";

THENCE S 04°46'43" W, continuing along the west line of said Fifty (50) foot wide Right-of-Way Agreement, a distance of 1684.81 feet to a point in the approximate centerline of Bear Creek for the southeast corner of the herein described 118.34 acre tract;

THENCE along the approximate centerline of said Bear Creek, as follows:

N 61°36'37" W, a distance of 807.44 feet to a point;

N 71°14'04" W, a distance of 217.93 feet to a point;

N 85°16'07" W, a distance of 121.44 feet to a point;

S 77°05'53" W, a distance of 141.01 feet to a point;

S 82°12'59" W, a distance of 239.64 feet to a point;

S 49°32'26" W, a distance of 208.64 feet to a point;

N 86°11'59" W, a distance of 114.28 feet to a point;

N 53°45'49" W, a distance of 175.97 feet to a point;

N 47°13'56" W, a distance of 200.18 feet to a point;

N 80°08'35" W, a distance of 392.40 feet to a point in the west line of said Parcel No. 2, for the southwest corner of the herein described 118.34 acre tract, from which a 5/8" capped iron rod found at the southwest corner of said Parcel No. 2 bears S 01°17'05" E, a distance of 1216.41 feet, for reference;

THENCE N 01°17'05" W, along the west line of said Parcel No. 2, a distance of 2375.35 to the POINT OF BEGINNING and containing 118.34 acres of land, more or less.

# FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

Lila Deakle

**201911244**
**05/09/2019 03:33:29 PM**
**Fee: $79.00**
**Lila Deakle, County Clerk**
**Parker County, Texas**
**DEEDTRUST**

**CAUSE NO. CV20-0923**

| | | |
|---|---|---|
| **JMR100, LLC AND BM318, LLC** | § | **IN THE DISTRICT COURT** |
| | § | |
| **VS** | § | **415th JUDICIAL DISTRICT** |
| | § | |
| **SOUTHERN STAR CAPITAL D/B/A RELIANCE MORTGAGE COMPANY, MIKE ANDERSON, MARK ADAMS AND ROBERT W. BUCHHOLZ** | § § § § | **OF PARKER COUNTY, TEXAS** |

**ORDER DENYING TEMPORARY INJUNCTION**

The Court upon considering JMR100, LLC and BM318, LLC, Plaintiffs' application for a Temporary Injunction, the pleadings, the affidavits, and the arguments of counsel, finds a temporary injunction is not warranted at this time.

**THEREFORE, IT IS ORDERED** by this Court that Plaintiff's Application for a Temporary Injunction is **DENIED**.

SIGNED ON September 1, 2020.

PRESIDING JUDGE

**AFFIDAVIT OF AL J. KELLER IN SUPPORT OF MOTION FOR RELIEF FROM STAY**

STATE OF TEXAS )

COUNTY OF DALLAS )

BEFORE ME, the undersigned Notary, personally appeared Al J. Keller who after being duly sworn upon his oath, deposed and stated as follows:

1. "My name is Al J. Keller; I am over the age of 18, have never been convicted of a crime involving moral turpitude, and I am otherwise fully competent to testify and to make this affidavit.

2. I am the Chief Financial Officer of Southern Star Capital LLC d/b/a Reliance Mortgage, LLC, which is the servicer for the owner and holder of the Note and Deed of Trust referenced herein and I am authorized to make this affidavit.

3. I have care, custody and control of books, records and files relating to the loan made by Southern Star Capital, LLC, d/b/a Reliance Mortgage Company ("Movant") to BM318, LLC, ("Debtor"). I have personally worked on said books, records and files and, as to the following facts, I know them to be true of my own personal knowledge or have gained knowledge of them from Movant's books, records and files. Said books, records and files were prepared in the regular course of Movant's business at or near the time of the acts, conditions, or events to which they relate by a person who had personal knowledge of the event being recorded and a business duty to accurately record such event. I have reviewed all of Movant's books and records in connection with this matter. Based upon my review of Movant's books and records, I have personal knowledge of the facts contained herein and, if called upon to testify, I could and would competently testify;

4. At the time of filing the Chapter 11 petition, Movant was the servicer for a Note which was Originated by Movant in the principal amount of $1,650,000.00 dated May 3, 2019 and was named as the Lender is a certain Deed of Trust of the same date recorded in the Parker County, Texas Deed Records at Clerk's File No. 201911244. These documents were executed by BM318, LLC.

5. The indebtedness is secured by the Deed of Trust as contained in the documents on the real property described in the Deed of Trust.

6. A true and correct copy of the Legal Description of the Property is attached to the Motion for Lift of Stay as Exhibit "1". A true and correct copy of the Note is attached to the Motion for Lift of Stay as Exhibit "2". A true and correct copy of the Deed of Trust is attached to the Motion for Lift of Stay as Exhibit "3".

7. Debtor is in default on its obligations under the terms of the Note and Deed of Trust in that Debtor has failed to make its payments when due and owing. Debtor is due for the September 1, 2019 payment. The note matured and was fully due and payable on May 1, 2020.

8. The status of the indebtedness as of May 1, 2020, the maturity date, is as follows:

| | | |
|---|---|---|
| a. | Principal Amount Due: | $1,650,000.00 |
| b. | First payment defaulted:<br>Note matured: | September 1, 2019.<br>May 1, 2020. |
| c. | Total interest due as of<br>May 1, 2020: | $136,125.00 |
| | Late Fees Due as of<br>May 1, 2020 | $9,075.00 |
| | Total Interest & Late Fees<br>Due as of May 1, 2020, 2020 | $145,200.00 |
| d. | Additional Collateral held<br>as of May 1, 2020: CD | $165,000.00 |
| | Accrued Interest on CD as<br>of May 1, 2020 | $1,567.50 |

e. Interest continues to accrue at the default rate of Eighteen Percent Per Annum, or the maximum legal rate as provided for in the note.

9. In accordance with the agreement between the parties Southern Star Capital, LLC d/b/a Reliance Mortgage would state that it is entitled to reasonable post-petition attorney's fees, including, but not limited to, fees, if any, for the preparation and filing of this Motion of Relief from Stay in the amount of at least $2,500.00 plus costs.

10. By failing to make the payments as due, debtor has not provided Movant with adequate protection. Southern Star Capital, LLC d/b/a Reliance Mortgage feels that it does not have adequate protection of its interest in said collateral since the Debtor has made no effort to make any payments under the terms of the note.

FURTHER AFFIANT SAYETH NOT.

Al J. Keller

SUBSCRIBED AND SWORN TO before me the undersigned Notary by the said Al Keller, on this 17th day of September 2020, to certify which witness my official hand and seal of office.

NOTARY PUBLIC
STATE OF TEXAS
CODY W. OLYNYK
Notary ID #129405339
My Commission Expires
April 29, 2021

Notary Public - State of Texas