**File a Motion:**

20-42789-mxm11 BM318, LLC

| | | | | |
|---|---|---|---|---|
| Type: bk | Chapter: 11 v | Office: 4 (Ft. Worth) | Filed: 09/01/2020 | Closed: |
| Assets: y | Judge: mxm | Case Flag: REFORM, EXHIBITS | Reopen: | Dismissed: |
| | | | | Dismissed(jdb): |
| | | | Converted: | Discharged: |
| | | | | Discharged(jdb): |



**U.S. Bankruptcy Court**

**Northern District of Texas**

Notice of Electronic Filing

The following transaction was received from Joyce W. Lindauer entered on 4/6/2021 at 12:24 PM CDT and filed on 4/6/2021

**Case Name:** BM318, LLC
**Case Number:** 20-42789-mxm11
**Document Number:** 70

**Docket Text:**
Motion to sell property free and clear of liens under Section 363(f) Fee amount $188, Filed by Debtor BM318, LLC Objections due by 4/27/2021. (Attachments: # (1) Proposed Order) (Lindauer, Joyce)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**Sale Motion.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017686615 [Date=4/6/2021] [FileNumber=46632660-0 ] [a0345a12a7f1ea69b089ac26656a3a5d5d24779bcdd89fab9d9e4d775b4b7d982bb da9d0156c922708aa18dacc96a63121149580e31b69ad19a1e897c9245616]]
**Document description:**Proposed Order
**Original filename:**C:\fakepath\Sale Order.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017686615 [Date=4/6/2021] [FileNumber=46632660-1 ] [63d0aa2a5f9a45e0114b95007804846caa34e3cd928b9870dd65cadd3849ca1fb6a 7b5f9ce09a735ee573ceb9e81e45b16ca90b2373167f26b5f22cc5fbded6e]]

**20-42789-mxm11 Notice will be electronically mailed to:**

Robert W. Buchholz on behalf of Creditor Citizens Bank
bob@attorneybob.com

Robert W. Buchholz on behalf of Creditor Southern Star Capital, LLC
bob@attorneybob.com

Joyce W. Lindauer on behalf of Debtor BM318, LLC
joyce@joycelindauer.com, dian@joycelindauer.com;12113@notices.nextchapterbk.com

Scott A. Ritcheson on behalf of Creditor Citizens Bank
scottr@rllawfirm.net, mistyb@rllawfirm.net

Laurie A. Spindler on behalf of Creditor Parker CAD
Laurie.Spindler@lgbs.com, Dora.Casiano-Perez@lgbs.com;dallas.bankruptcy@lgbs.com

United States Trustee
ustpregion06.da.ecf@usdoj.gov

**20-42789-mxm11 Notice will not be electronically mailed to:**

**EXHIBIT "2"**

Joyce Lindauer
,

Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **BM318, LLC,** | § | **CASE NO. 20-42789-mxm-11** |
| | § | |
| **DEBTOR.** | § | **CHAPTER 11** |

**DEBTOR'S MOTION PURSUANT TO 11 U.S.C. §363 FOR APPROVAL OF AGREEMENT TO SELL 118.34 ACRES IN PARKER COUNTY, TEXAS FREE AND CLEAR OF LIENS**

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, ROOM 1254, DALLAS, TEXAS 75242 BEFORE CLOSE OF BUSINESS ON APRIL 27, 2021, WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF. ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY. IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

TO THE HONORABLE U.S. BANKRUPTCY JUDGE:

Comes now BM318, LLC, Debtor herein ("Debtor"), and files this its Motion Pursuant to 11 U.S.C. Section 363 for Approval of Agreement to Sell 118.34 Acres in Parker County, Texas Free and Clear of Liens, and would show the Court as follows:

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 1334 and 157(b).

2. Venue of the Debtors' chapter 11 cases in this district are proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

4. The statutory predicate for the relief sought is Section 363 of Title 11 of the United States Code (the "Bankruptcy Code").

5. The Debtor filed its voluntary petition herein on September 1, 2020. The Debtor is operating its business as Debtor-in-Possession pursuant to Sections 1107 and 1108 of the Code.

6. The Debtor owns 118.34 acres of unimproved land located in Parker County, Texas (the "Property"). By this Motion the Debtor seeks to sell the Property in order to reduce its total indebtedness and help fund payments under its plan of reorganization.

7. The Debtor has executed a contract to sell the Property (the "Contract") to Centurion American Acquisitions, LLC (the "Buyer"), subject to the Court's approval. Pursuant to the Contract, as consideration for the sale the Debtor will receive approximately $992,119.00 cash at closing, and the Buyer will pay off or assume the first lien debt owed by the Debtor to Southern Star Capital, LLC. The Buyer has deposited $250,000.00 earnest money with a title company, which will be applied to the purchase price at closing. A copy of the Contract is attached hereto as **Exhibit "A"** and incorporated herein by reference.

8. A first lien against the Property is held by Southern Star Capital, LLC to secure indebtedness in the approximate amount of $1,525,000.00, which will be paid or assumed by the Buyer at closing.

9. The Debtor requests that any order the Court may enter on this Motion authorize the sale of the Property free and clear of all liens and encumbrances.

10. Section 363 of the Bankruptcy Code authorizes a debtor to sell assets of the estate other than in the ordinary course of business and provides, in relevant part: "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate .... " 11 U.S.C. § 363(b)(1). Courts approve proposed sales of property pursuant to section 363(b) of the Bankruptcy Code if the sale falls within the reasonable business judgment of the debtor. See *Inst. Creditors of Cont'l. Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines),* 780 F.2d 1223, 1226 (5th Cir. 1986).

11. The sale of the Property pursuant to this Motion and the Contract is in the reasonable business judgment of the Debtor, and is in the best interests of the Debtor and its estate, because by virtue of this transaction the Debtor will be relieved of its obligations to Southern Star, the largest creditor in this case, and can use the money received from the sale to make payments under its plan of reorganization.

WHEREFORE, PREMISES CONSIDERED, the Debtor requests the Court to enter an order approving the sale of the Property free and clear of all liens and encumbrances pursuant to the Contract and granting such other and further relief as to which it may be justly entitled.

Dated: April 6, 2021.

Respectfully submitted,

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email: joyce@joycelindauer.com
kerry@joycelindauer.com
guy@joycelindauer.com
ATTORNEYS FOR BM318, LLC, DEBTOR

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 6, 2021, a true and correct copy of the foregoing document was served via United States first class mail, postage prepaid, upon the parties on the attached service list.

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC) 2-12-18

TREC
TEXAS REAL ESTATE COMMISSION

# UNIMPROVED PROPERTY CONTRACT

NOTICE: Not For Use For Condominium Transactions

EQUAL HOUSING OPPORTUNITY

**1. PARTIES:** The parties to this contract are BM318, LLC (Seller) and Centurion American Acquisitions, LLC (Buyer). Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

**2. PROPERTY:** Lot ______, Block ______, Approx.118.34 acres situated in the James Bradley Survey, Abstract 120 Addition, City of ______, County of Parker, Texas, known as a part of land described in deed as Parcel No. 2, to The Dixon Foundation recorded in Bk 2416, Pg 417 (address/zip code), or as described on attached exhibit together with all rights, privileges and appurtenances pertaining thereto, including but not limited to: water rights, claims, permits, strips and gores, easements, and cooperative or association memberships (the Property). RESERVATIONS: Any reservation for oil, gas, or other minerals, water, timber, or other interests is made in accordance with an attached addendum.

**3. SALES PRICE:**

A. Cash portion of Sales Price payable by Buyer at closing ............................ $ 2,700,000.00

B. Sum of all financing described in the attached: ☐ Third Party Financing Addendum, ☐ Loan Assumption Addendum, ☐ Seller Financing Addendum ............ $ [SEE ADDENDUM A]

C. Sales Price (Sum of A and B) ............................................................ $ 2,700,000.00

**4. LICENSE HOLDER DISCLOSURE:** Texas law requires a real estate license holder who is a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which the license holder owns more than 10%, or a trust for which the license holder acts as trustee or of which the license holder or the license holder's spouse, parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale. Disclose if applicable: ______

**5. EARNEST MONEY:** Within 2 days after the Effective Date, Buyer must deliver $ 250,000.00 as earnest money to Sendera Title c/o Jeanie Acord, as escrow agent, at 1800 Valley View Lane, Suite 160, Farmers Branch, Texas 75234 (address). Buyer shall deliver additional earnest money of $ N/A to escrow agent within N/A days after the Effective Date of this contract. If Buyer fails to deliver the earnest money within the time required, Seller may terminate this contract or exercise Seller's remedies under Paragraph 15, or both, by providing notice to Buyer before Buyer delivers the earnest money. If the last day to deliver the earnest money falls on a Saturday, Sunday, or legal holiday, the time to deliver the earnest money is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. The Title Company shall disburse the Earnest Money to Seller immediately after Purchaser's deposit of such. **Time is of the essence for this paragraph.**

**6. TITLE POLICY AND SURVEY:**

A. TITLE POLICY: Seller shall furnish to Buyer at ☑ Seller's ☐ Buyer's expense an owner's policy of title insurance (Title Policy) issued by Sendera Title (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:

(1) Restrictive covenants common to the platted subdivision in which the Property is located.
(2) The standard printed exception for standby fees, taxes and assessments.
(3) Liens created as part of the financing described in Paragraph 3.
(4) Utility easements created by the dedication deed or plat of the subdivision in which the Property is located.
(5) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.
(6) The standard printed exception as to marital rights.
(7) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.
(8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements:
☐ (i) will not be amended or deleted from the title policy; or
☑ (ii) will be amended to read, "shortages in area" at the expense of ☐ Buyer ☑ Seller.
(9) The exception or exclusion regarding minerals approved by the Texas Department of Insurance.

B. COMMITMENT: Within **10** days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address



**EXHIBIT "A"**

shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

C. SURVEY: The survey must be made by a registered professional land surveyor acceptable to the Title Company and Buyer's lender(s). (Check one box only)

☑ (1) Within 3 days after the Effective Date of this contract, Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit). **If Seller fails to furnish the existing survey or affidavit within the time prescribed, Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date.** If the existing survey or affidavit is not acceptable to Title Company or Buyer's lender(s), Buyer shall obtain a new survey at ☐ Seller's ☐ Buyer's expense no later than 3 days prior to Closing Date.

☐ (2) Within ______ days after the Effective Date of this contract, Buyer shall obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier.

☐ (3) Within ______ days after the Effective Date of this contract, Seller, at Seller's expense shall furnish a new survey to Buyer.

D. OBJECTIONS: Buyer may object in writing to (i) defects, exceptions, or encumbrances to title: disclosed on the survey other than items 6A(1) through (7) above; or disclosed in the Commitment other than items 6A(1) through (9) above; (ii) any portion of the Property lying in a special flood hazard area (Zone V or A) as shown on the current Federal Emergency Management Agency map; or (iii) any exceptions which prohibit the following use or activity: ______________________________.

Buyer must object the earlier of (i) the Closing Date or (ii) 5 days after Buyer receives the Commitment, Exception Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived. Provided Seller is not obligated to incur any expense, Seller shall cure any timely objections of Buyer or any third party lender within **10** days after Seller receives the objections (Cure Period) and the Closing Date will be extended as necessary. If objections are not cured within the Cure Period, Buyer may, by delivering notice to Seller within 5 days after the end of the Cure Period: (i) terminate this contract and the earnest money will be refunded to Buyer; or (ii) waive the objections. If Buyer does not terminate within the time required, Buyer shall be deemed to have waived the objections. If the Commitment or Survey is revised or any new Exception Document(s) is delivered, Buyer may object to any new matter revealed in the revised Commitment or Survey or new Exception Document(s) within the same time stated in this paragraph to make objections beginning when the revised Commitment, Survey, or Exception Document(s) is delivered to Buyer.

E. TITLE NOTICES:

(1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.

(2) MEMBERSHIP IN PROPERTY OWNERS ASSOCIATION(S): The Property ☐ is ☑ is not subject to mandatory membership in a property owners association(s). If the Property is subject to mandatory membership in a property owners association(s), Seller notifies Buyer under §5.012, Texas Property Code, that, as a purchaser of property in the residential community identified in Paragraph 2 in which the Property is located, you are obligated to be a member of the property owners association(s). Restrictive covenants governing the use and occupancy of the Property and all dedicatory instruments governing the establishment, maintenance, and operation of this residential community have been or will be recorded in the Real Property Records of the county in which the Property is located. Copies of the restrictive covenants and dedicatory instruments may be obtained from the county clerk. **You are obligated to pay assessments to the property owners association(s). The amount of the assessments is subject to change. Your failure to pay the assessments could result in enforcement of the association's lien on and the foreclosure of the Property.**

Section 207.003, Property Code, entitles an owner to receive copies of any document that governs the establishment, maintenance, or operation of a subdivision, including, but not limited to, restrictions, bylaws, rules and regulations, and a resale certificate from a property owners' association. A resale certificate contains information including, but not limited to, statements specifying the amount and frequency of regular assessments and the style and cause number of lawsuits to which the property owners' association is a party, other than lawsuits relating to unpaid ad valorem taxes of an individual member of the association. These documents must be made available to you by the property owners' association or the association's agent on your request.

**If Buyer is concerned about these matters, the TREC promulgated Addendum for Property Subject to Mandatory Membership in a Property Owners Association should be used.**

(3) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

(4) TIDE WATERS: If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.

(5) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(6) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

(7) PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, §5.014, Property Code, requires Seller to notify Buyer as follows: As a purchaser of this parcel of real property you are obligated to pay an assessment to a municipality or county for an improvement project undertaken by a public improvement district under Chapter 372, Local Government Code. The assessment may be due annually or in periodic installments. More information concerning the amount of the assessment and the due dates of that assessment may be obtained from the municipality or county levying the assessment. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of your property.

(8) TEXAS AGRICULTURAL DEVELOPMENT DISTRICT: The Property ☐ is ☑ is not located in a Texas Agricultural Development District. For additional information, contact the Texas Department of Agriculture.

(9) TRANSFER FEES: If the Property is subject to a private transfer fee obligation, §5.205, Property Code requires Seller to notify Buyer as follows: The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

(10) PROPANE GAS SYSTEM SERVICE AREA: If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code. An addendum containing the notice approved by TREC or required by the parties should be used.

(11) NOTICE OF WATER LEVEL FLUCTUATIONS: If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

**7. PROPERTY CONDITION:**

A. ACCESS, INSPECTIONS AND UTILITIES: Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect.
**NOTICE**: Buyer should determine the availability of utilities to the Property suitable to satisfy Buyer's needs.

B. ACCEPTANCE OF PROPERTY CONDITION: "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7B (1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.

(Check one box only)
☑ (1) Buyer accepts the Property As Is.
☐ (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: ______________________________

(Do not insert general phrases, such as "subject to inspections" that do not identify specific repairs and treatments.)

C. COMPLETION OF REPAIRS: Unless otherwise agreed in writing: (i) Seller shall complete all agreed repairs and treatments prior to the Closing Date; and (ii) all required permits must be obtained, and repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments. At Buyer's election, any transferable warranties received by Seller with respect to the repairs and treatments will be transferred to Buyer at Buyer's expense. If Seller fails to complete any agreed repairs and treatments prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days, if necessary, for Seller to complete repairs and treatments.

D. ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

E. SELLER'S DISCLOSURES: Except as otherwise disclosed in this contract, Seller has no knowledge of the following:
(1) any flooding of the Property which has had a material adverse effect on the use of the Property;
(2) any pending or threatened litigation, condemnation, or special assessment affecting the Property;
(3) any environmental hazards that materially and adversely affect the Property;
(4) any dumpsite, landfill, or underground tanks or containers now or previously located on the Property;
(5) any wetlands, as defined by federal or state law or regulation, affecting the Property; or
(6) any threatened or endangered species or their habitat affecting the Property.

**8. BROKERS' FEES:** All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

**9. CLOSING:**

A. The closing of the sale will be on or before May 1, 2021, or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.

B. At closing:
(1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property.
(2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.
(3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.
(4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.

**10. POSSESSION:**

A. Buyer's Possession: Seller shall deliver to Buyer possession of the Property in its present or required condition upon closing and funding.

B. Leases:
(1) After the Effective Date, Seller may not execute any lease (including but not limited to mineral leases) or convey any interest in the Property without Buyer's written consent.
(2) If the Property is subject to any lease to which Seller is a party, Seller shall deliver to Buyer copies of the lease(s) and any move-in condition form signed by the tenant within 7 days after the Effective Date of the contract.

**11. SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to the sale. TREC rules prohibit license holders from adding factual statements or business details for which a contract addendum or other form has been promulgated by TREC for mandatory use.)

**12. SETTLEMENT AND OTHER EXPENSES:**

A. The following expenses must be paid at or prior to closing:

(1) Expenses payable by Seller (Seller's Expenses):

(a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.

(b) Seller shall also pay an amount not to exceed $ N/A to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.

(2) Expenses payable by Buyer (Buyer's Expenses): Appraisal fees; loan application fees; origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.

B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

**13. PRORATIONS AND ROLLBACK TAXES:**

A. PRORATIONS: Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year.

B. ROLLBACK TAXES: If this sale or Buyer's use of the Property after closing results in the assessment of additional taxes, penalties or interest (Assessments) for periods prior to closing, the Assessments will be the obligation of Buyer. If Assessments are imposed because of Seller's use or change in use of the Property prior to closing, the Assessments will be the obligation of Seller. Obligations imposed by this paragraph will survive closing.

**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the Effective Date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds, if permitted by Seller's insurance carrier, and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

**16. MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**17. ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

**18. ESCROW:**

A. ESCROW: The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent.

B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow

agent may: (i) require a written release of liability of the escrow agent from all parties, (ii) require payment of unpaid expenses incurred on behalf of a party, and (iii) only deduct from the earnest money the amount of unpaid expenses incurred on behalf of the party receiving the earnest money.

C. DEMAND: Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.

D. DAMAGES: Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

E. NOTICES: Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

**19. REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

**20. FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by Internal Revenue Code and its regulations, or if Seller fails to deliver an affidavit or a certificate of non-foreign status to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

**21. NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by fax or electronic transmission as follows:

| To Buyer | | To Seller | |
|---|---|---|---|
| at: | Centurion American Acquisitions, LLC | at: | BM318, LLC |
| | Attn: Jack Dawson | | Attn: Tim Barton |
| Phone: | (469) 892-7200 | Phone: | ( ) |
| Fax: | (469) 892-7202 | Fax: | ( ) |
| E-mail: | jack@centurionamerican.com | E-mail: | tbarton@jmjdevelopment.com |

**22. AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (check all applicable boxes):

- ☐ Third Party Financing Addendum
- ☐ Seller Financing Addendum
- ☐ Addendum for Property Subject to Mandatory Membership in a Property Owners Association
- ☐ Buyer's Temporary Residential Lease
- ☐ Seller's Temporary Residential Lease
- ☐ Addendum for Reservation of Oil, Gas and Other Minerals
- ☐ Addendum for "Back-Up" Contract
- ☐ Addendum Concerning Right to Terminate Due to Lender's Appraisal
- ☐ Addendum for Coastal Area Property
- ☐ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum
- ☐ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway
- ☐ Addendum for Sale of Other Property by Buyer
- ☐ Addendum for Property in a Propane Gas System Service Area
- ☑ Other (list): Addendum A

**23. TERMINATION OPTION:** For nominal consideration, the receipt of which is hereby acknowledged by Seller, and Buyer's agreement to pay Seller $ 100 (Option Fee) within 3 days after the Effective Date of this contract, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within 30 days after the Effective Date of this contract (Option Period). Notices under this paragraph must be given by 5:00 p.m. (local time where the Property is located) by the date specified. If no dollar amount is stated as the Option Fee or if Buyer fails to pay the Option Fee to Seller within the time prescribed, this paragraph will not be a part of this contract and Buyer shall not have the unrestricted right to terminate this contract. If Buyer gives notice of termination within the time prescribed, the Option Fee will not be refunded; however, any earnest money will be refunded to Buyer. The Option Fee ☑ will ☐ will not be credited to the Sales Price at closing. **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

**24. CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate license holders from giving legal advice. READ THIS CONTRACT CAREFULLY.

| Buyer's Attorney is: | | Seller's Attorney is: | Vance McMurry |
|---|---|---|---|
| Travis Boghetich | | McMurry Law, PLLC | |
| Phone: | (469) 892-7220 | Phone: | (972) 746-9656 |
| Fax: | (469) 892-7202 | Fax: | ( ) |
| E-mail: | travis@centurionamerican.com | E-mail: | vance@mcmurrylegal.com |

**EXECUTED the ______ day of** March**, 20**21 **(Effective Date).**
**(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)**

Buyer

Seller

Buyer

Seller

**BROKER INFORMATION**
(Print name(s) only. Do not sign)

Other Broker Firm License No.

represents ☐ Buyer only as Buyer's agent
☐ Seller as Listing Broker's subagent

Associate's Name License No.

Associate's Email Address Phone

Licensed Supervisor of Associate License No.

Other Broker's Address Phone

City State Zip

Listing Broker Firm License No.

represents ☐ Seller and Buyer as an intermediary
☐ Seller only as Seller's agent

Listing Associate's Name License No.

Listing Associate's Email Address Phone

Licensed Supervisor of Listing Associate License No.

Listing Broker's Office Address Phone

City State Zip

Selling Associate's Name License No.

Selling Associate's Email Address Phone

Licensed Supervisor of Selling Associate License No.

Selling Associate's Office Address

City State Zip

Listing Broker has agreed to pay Other Broker__________________________ of the total sales price when the Listing Broker's fee is received. Escrow agent is authorized and directed to pay Other Broker from Listing Broker's fee at closing.

## OPTION FEE RECEIPT

Receipt of $__________ (Option Fee) in the form of __________
is acknowledged.

Seller or Listing Broker | Date

## EARNEST MONEY RECEIPT

Receipt of $__________ Earnest Money in the form of __________
is acknowledged.

Escrow Agent | Received by | Email Address | Date/Time

Address | Phone

City | State | Zip | Fax

## CONTRACT RECEIPT

Receipt of the Contract is acknowledged.

Escrow Agent | Received by | Email Address | Date

Address | Phone

City | State | Zip | Fax

## ADDITIONAL EARNEST MONEY RECEIPT

Receipt of $__________ additional Earnest Money in the form of __________
is acknowledged.

Escrow Agent | Received by | Email Address | Date/Time

Address | Phone

City | State | Zip | Fax

# PURCHASER'S ADDENDUM
# ADDITIONAL PROVISIONS

PROPERTY: Approximately 118.34 acres situated in the JAMES BRADLEY SURVEY, ABSTRACT NO. 120, Parker County, Texas, as further described in the Unimproved Property Contract ("Contract") between BM318, LLC ("Seller") and Centurion American Acquisitions, LLC ("Buyer.").

This Addendum modifies or adds to the provisions in the Contract and where a conflict exists, the terms contained in this Addendum shall control.

1. Property. The Property description as attached hereto and incorporated as "Exhibit A" shall automatically be amended with the description from the Survey provided pursuant to Section 6(C) and incorporated into the Contract as "Exhibit A".

2. Sales Price. The Sales Price shall be paid at Closing by Buyer as follows: (i) total cash payment of no less than Seven Hundred Thousand and 00/100 Dollars ($700,000.00) ("Cash") which includes the prior release and application of the Earnest Money Deposit and application of the Option Fee; (ii) assumption of or pay off of the existing Note and related loan documents by Buyer which shall not exceed $1,777,118.86 (the "Existing Loan" which includes credit for the Certificate of Deposit described below and otherwise shall not exceed $1,942,118.86 prior to crediting the Certificate of Deposit) including all accrued interest, late fees, and related costs to Southern Star Capital, LLC d/b/a Reliance Mortgage Company ("Southern Star") which releases Seller and guarantor(s) from all claims, obligations, and liabilities related thereto including as collaterally assigned by Southern Star to Citizens Bank, AND (iii) delivery to Seller of One Hundred Sixty-Five Thousand and 00/100 Dollars ($165,000.00) from Seller's Certificate of Deposit Account with Citizens Bank relating to Southern Star's collateralized loan. Seller is in process of negotiating with Southern Star a lower amount for the Existing Loan and any reduction shall likewise increase the amount of Cash paid at Closing. Likewise, the Cash amount may be increased by the amount of the Certificate of Deposit in lieu of the release and delivery of such funds from Citizens Bank upon which any rights of Seller in such funds shall be assigned to Buyer at Closing.

3. Seller Representations and Warranties:

    a. Liens and Debts. There are no mechanic's liens, Uniform Commercial Code liens or unrecorded liens against the Property, and Seller shall not allow any such liens to attach to the Property before Closing that will not be satisfied out of the Closing proceeds. All obligations of Seller arising from the ownership and operation of the Property and any business operated on the Property, including, but not limited to, taxes, leasing commissions, salaries, contracts, and similar agreements, have been paid or will be paid before the Closing. Except for obligations for which provisions are made in this Contract for prorating at the Closing and any indebtedness taken subject to or assumed there will be no obligations of Seller with respect to the Property outstanding as of the Closing.

    b. Litigation. Other than the bankruptcy case filed in the Northern District of Texas (Case No. 4:2020bk42789), there is no pending or threatened litigation, condemnation, or assessment affecting the Property. Seller shall promptly advise Buyer of any litigation, condemnation, or assessment affecting the Property that is instituted after the Effective Date.

    c. Material Defects. Seller has disclosed to Buyer any and all known conditions of a material nature with respect to the Property which could affect he health or safety of any occupant or negatively affect the value of the Property. Except as disclosed in writing by Seller to Buyer, the Property has no known latent structure defects or construction defects of a material nature,

and none of the improvements have been constructed with materials known to be a potential health hazard to occupants of the Property.

d. Permits and Licenses. All permits and licenses related to the Property are current and no known uncured default or violation exists in regards to such.

e. Hazardous Materials. Except as otherwise disclosed in writing by Seller to Buyer, the Property (including any improvements) does not contain any Hazardous Materials other than lawful quantities properly stored in containers in compliance with applicable laws. Hazardous Materials means any pollutants, toxic substances, oils, hazardous wastes, hazardous materials or hazardous substances as defined in or pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, as amended, the Clean Water Act as amended, or any other Federal, State, or local environmental law, ordinance, rule or resignation whether existing as of the Effective Date or subsequently enacted EXCEPT that reasonable quantities of such materials found as related to the typical use of a parking structure and as related to the operation of motor vehicles on the Property containing the parking structure shall be excluded.

f. Leases. There are no existing leases which affect the Property.

4. Additional Closing Obligations. At Closing, Seller, in addition to the items listed in the Contract, and at Seller's expense, will also deliver to Buyer:

a. A General Assignment all of Seller's right, title and interest in and to the following:

i. all surveys, engineering, soils, seismic, geological, environmental, reports, studies and certificates and other technical descriptions;

ii. all warranties, guaranties and indemnities received from third parties, and all claims, demands and causes of action against third parties, but only to the extent they are for the benefit of, and applicable to, the Property or the owner thereof, including, without limitation, any warranties, guaranties, indemnities, contractual rights, claims, demands and causes of action pertaining to the development, construction, design or completion of the Property and/or the common areas, streets, utilities or other subdivision infrastructure;

iii. all licenses, permits, governmental approvals, utility commitments for individual service to the Lots, utility rights (including rights to capacity or service) for individual service to the Lots, drainage and detention rights for service to the Lots, and development rights with respect to the Lots, inclusive of any prepaid impact fees, impact fee credits or other similar development credits;

iv. all rights under any plats (preliminary or final) of any portion of the Property or any rights-of-way abutting the Property or any portion thereof, including any boundary plats and any right-of-way plats, submitted, approved or recorded;

v. any and all rights to credits, refunds, and reimbursements from any municipality, municipal utility district or other governmental (or quasi-governmental) district, entity, political subdivision or authority, or any utility company or provider and any rights under any development agreements, reimbursement agreements or similar agreements or contracts with any municipality, municipal utility district or other governmental (or quasi-governmental) district, entity, political subdivision or authority; and

vi. all other rights, powers, privileges, options, or other benefits associated with, that pertain to, are attributable to, are appurtenant to, apply to, or which otherwise benefit the Property.

b. A surface waiver for any minerals not being conveyed to the Buyer;

c. Affidavit that there are no parties in possession of the Property.

5. Negative Covenants. After the Effective Date, Seller shall not, without Buyer's written consent (1) further encumber the Property or allow an encumbrance upon the title to the Property, or modify the terms of any existing encumbrance, if the encumbrance would still be in effect after Closing; or (2) enter into any lease or contract affecting the Property without consent of the Buyer, if the lease or contract would still be in effect after Closing or not terminable by the Buyer (without any termination fee or cost) following Closing. Seller shall immediately deliver any new lease or contract executed after the Effective Date to Buyer.

6. Survival. The representations, warranties, and covenants (collectively, "Representations") contained herein shall survive Closing of this Agreement for a period of one (1) year.

7. Breach of Representations. In the event of a breach of the Representations contained herein by Seller which are discovered Buyer following the Closing, Buyer may pursue any remedies available by law or in equity.

8. Earnest Money Release. Upon deposit, the Title Company shall release the Earnest Money to Seller which shall be non-refundable upon expiration of the Option Period except as otherwise provided herein. At the closing, the Earnest Money shall be applied against the Purchase Price. Nothing contained herein shall alter or amend Buyer's right to obtain a refund of the Earnest Money in the event of a Seller default or other provisions of the Contract entitling Buyer to a return of the Earnest Money.

9. Buyer's obligation to consummate the transaction contemplated by this Contract is expressly contingent upon the following conditions precedent: (1) at the time of Closing there exists no law, zoning restriction, deed restriction, ordinance, rule, regulation, standard or guideline which would prevent or adversely affect Buyer's contemplated use of the Property; (2) the agreement of Seller's lender to release One Hundred Sixty Five Thousand and 00/100 Dollars ($165,000.00) from Seller's Certificate of Deposit Account at Closing to Seller; and (3) Seller obtaining written approval from the Texas Northern Bankruptcy Court, wherein Seller is the debtor under that certain cause of action identified as Case No. 4:2020bk42789, to consummate the sale contemplated in this Contract. Otherwise, Buyer may terminate this Contract and be refunded its Earnest Money prior to Closing. Closing shall be extended, if necessary, to occur forty-five (45) business days following the Bankruptcy Court's order approving the sale of the Property under the terms of this Contract.

10. Seller shall maintain the Property in its current condition including maintaining insurance and other contracts on the Property and all covenants, representations, and warranties shall continue to be effective through the Closing.

11. Special Assessment Districts. If the Property is situated within a utility district or flood control district subject to the provisions of Section 50.301, Texas Water Code, then Seller shall give to Buyer as part of the Commitment the required written notice and Buyer agrees to acknowledge receipt of the notice in writing. The notice must set forth the current tax rate, the current bonded indebtedness and the authorized indebtedness of the district, and must comply with all other applicable requirements of the Texas Water Code. If the Property is subject to mandatory membership in a property owner's association, Seller shall notify Buyer of the current annual budget of the property owners' association, and the current authorized fees, dues and/or assessments relating to the Property.

12. Time for Performance. Strict compliance with the times for performance is required. If Seller fails to timely deliver to Buyer the updated Survey, Commitment, title documents, or any other documents as required to be delivered by Seller to Buyer pursuant to the provisions of the Contract, the date of expiration of the Option Period hereunder shall be extended by the number of days elapsing between the date such items should have been delivered and the date such items are actually delivered to Buyer.

**[SIGNATURES APPEAR ON FOLLOWING PAGE]**

IN WITNESS WHEREOF, the undersigned have executed this Addendum effective as of the date set forth in the Contract.

**SELLER**

BM318, LLC
a Texas limited liability company

By: TRWF, LLC
a Texas limited liability company
Its Manager

By: ____________________
Name: Tim Barton
Title: President

**BUYER**

Centurion American Acquisitions, LLC,
a Texas limited liability company

By: Pars Investments, Inc.,
a Texas corporation
Its Manager

By: ____________________
Name: Mehrdad Moayedi
Its: President

## Exhibit "A"
## Legal Description

BEING 118.34 acres situated in the JAMES BRADLEY SURVEY, ABSTRACT NO. 120, Parker County, Texas, being a portion of that certain tract of land described in deed as Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 118.34 acres being more particularly described as follows:

BEGINNING at the most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (Right-of-Way varies), from which a 2" steel fence corner post found in the south line of said Bear Creek Road bears S 01°12'56" E, a distance of 40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6918277.984 and EAST: 2233063.538, for reference;

THENCE S 67°36'03" E, along the approximate centerline of said Bear Creek Road and along the most north line of said Parcel No. 2, a distance of 2856.45 feet to a point for the northeast corner of the herein described 118.34 acre tract;

THENCE S 24°50'49" W, leaving the approximate centerline of said Bear Creek Road, and being along the west line of a Fifty (50) foot wide Right-of-Way Agreement to ONEOK Arbuckle Pipeline, L.L.C., recorded in Book 2651, Page 405, Official Public Records, Parker County, Texas, at a distance of 23.85 feet, passing a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084", and continuing, along the west line of said Fifty (50) foot wide Right-of-Way Agreement, in all, a distance of 205.78 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";

THENCE S 04°46'43" W, continuing along the west line of said Fifty (50) foot wide Right-of-Way Agreement, a distance of 1684.81 feet to a point in the approximate centerline of Bear Creek for the southeast corner of the herein described 118.34 acre tract;

THENCE along the approximate centerline of said Bear Creek, as follows:

N 61°36'37" W, a distance of 807.44 feet to a point;
N 71°14'04" W, a distance of 217.93 feet to a point;
N 85°16'07" W, a distance of 121.44 feet to a point;
S 77°05'53" W, a distance of 141.01 feet to a point;
S 82°12'59" W a distance of 239.64 feet to a point;
S 49°32'26" W, a distance of 208.64 feet to a point;
N 86°11'59" W, a distance of 114.28 feet to a point;
N 53°45'49" W a distance of 175.97 feet to a point;
N 47°13'56" W, a distance of 200.18 feet to a point;
N 80°08'35" W, a distance of 392.40 feet to a point in the west line of said Parcel No. 2, for the southwest corner of the herein described 118.34 acre tract, from which a 5/8" capped iron rod found at the southwest corner of said Parcel No. 2 bears S 01°17'05" E, a distance of 1216.41 feet, for reference;

THENCE N 01°17'05" W, along the west line of said Parcel No. 2, a distance of 2375.35 to the POINT OF BEGINNING and containing 118.34 acres of land, more or less.

Label Matrix for local noticing
0539-4
Case 20-42789-mxm11
Northern District of Texas
Ft. Worth
Tue Apr 6 12:05:26 CDT 2021

BM318 LLC
13901 Midway Road
Suite 102
Dallas, TX 75244-4388

Citizens Bank
c/o Scott A. Ritcheson
Ritcheson, Lauffer & Vincent, P.C.
821 ESE Loop 323, Ste. 530
Tyler, TX 75701-9779

Parker CAD
Linebarger Goggan Blair & Sampson, LLP
c/o Laurie A. Spindler
2777 N. Stemmons Freeway
Suite 1000
Dallas, TX 75207-2328

501 W. Tenth Street
Fort Worth, TX 76102-3637

Attorney General of Texas
Bankruptcy Div
PO Box 12548
Austin, TX 78711-2548

Barron Stark Engineers
6221 Southwest Blvd.
Suite 100
Fort Worth, TX 76132-1078

CITIZENS BANK
RITCHESON, LAUFFER & VINCENT, P.C.
821 ESE Loop 323, Suite 530
Tyler, Texas 75701-9779

Carnegie Development LLC
1755 Wittington Place
Suite 340
Dallas, TX 75234-1930

Coats Rose
14755 Preston Road
Suite 600
Dallas, TX 75254-6825

(p)TEXAS COMPTROLLER OF PUBLIC ACCOUNTS
REVENUE ACCOUNTING DIV - BANKRUPTCY SECTION
PO BOX 13528
AUSTIN TX 78711-3528

GEO Services LLC
PO Box 32564
Knoxville, TN 37930-2564

HR Sterling LLC
14819 Frisco Ranch Drive
Little Elm, TX 75068-2753

Internal Revenue Service
Mail Code DAL-5020
1100 Commerce Street
Dallas, Texas 75242-1100

JMJ Development LLC
1755 Wittington Place
Suite 340
Dallas, TX 75234-1930

Robert W. Buchholz
420 S. Cesar Chavez Blvd.
Suite 300
Dallas, TX 75201-5817

Scott A. Ritcheson
821 ESE Loop 323, Suite 530
Tyler, TX 75701-9779

South Central Water Company
PO Box 570177
Houston, TX 77257-0177

Southern Star Capital
d/b/a Reliance Mortgage Company
5220 Spring Valley Road
Suite 602
Dallas, TX 75254-1952

Southern Star Capital, LLC
c/o Robert W. Buchholz
555 Republic Drive, Suite 490
Plano, TX 75074-8848

U. S. Trustee's Office
1100 Commerce Street
Room 9C60
Dallas, TX 75242-1011

US Attny. General
10th and Constitution Ave.,NW
Main Justice Bldg. Rm. 5111
Washington, DC 20530-0001

United States Trustee
1100 Commerce Street
Room 976
Dallas, TX 75242-0996

Joyce W. Lindauer
Joyce W. Lindauer Attorney, PLLC
1412 Main Street
Suite 500
Dallas, TX 75202-4042

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Comptroller of Public Accts
Revenue Acctg Div Bankruptcy Sec
PO Box 13528
Austin, TX 78711

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **BM318, LLC,** | § | **CASE NO. 20-42789-mxm-11** |
| | § | |
| **DEBTOR.** | § | **CHAPTER 11** |

**ORDER GRANTING MOTION PURSUANT TO 11 U.S.C. §363**
**FOR APPROVAL OF AGREEMENT TO SELL 118.34 ACRES IN**
**PARKER COUNTY, TEXAS FREE AND CLEAR OF LIENS**

Came on for hearing the *Motion Pursuant to 11 U.S.C. Section 363 for Approval of Agreement to Sell 118.34 Acres in Parker County, Texas Free and Clear of Liens* (the "Sale Motion") filed by BM318, LLC (the "Debtor"), and the Court having considered the pleadings, evidence and arguments of counsel, and finding that the Sale Motion is well-founded and in the best interests of the Debtor, creditors and the bankruptcy estate, the Court makes the following findings of fact and conclusions of law:

1. This Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. §§ 1408 and 1409.

2. Debtor adequately marketed the 118.34 acres of unimproved land to be sold pursuant to the Sale Motion (the "Property") to yield the highest and best offer under the circumstances.

3. The Debtor has demonstrated good and sound business reasons and judgment in seeking to sell the Property pursuant to the Unimproved Property Contract attached as an exhibit to the Sale Motion (the "Contract"), and the Court has determined that the offer of the proposed buyer, Centurion American Acquisitions, LLC (the "Buyer") presents the best opportunity for the bankruptcy estate to realize the highest value possible for the benefit of the Debtor, the estate and creditors.

4. The Debtor provided adequate notice of the Sale Motion, the terms of the Contract and the hearing on the Sale Motion to creditors, holders of liens against the Property, and parties-in-interest, pursuant to the Federal Rules of Bankruptcy Procedure and the local Rules of this Court.

5. The transaction contemplated in the Sale Motion, as approved and implemented herein, are in compliance with and satisfy all applicable provisions of the Bankruptcy Code, including but not limited to Bankruptcy Code § 363(b), (f) and (o). The terms and conditions of the sale of the Property to the Buyer, as set out in the Contract, together with any other transactions described in the Contract, are approved by this Order as fair and reasonable.

6. The consideration offered by the Buyer constitutes full and adequate consideration and reasonably equivalent value for the Property. The transfer of the Assets to the Buyer represents

an arm's length transaction and has been negotiated in good faith between the parties. The Buyer, as transferee of the Property, is a good faith purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full protection of Bankruptcy Code § 363(m).

7. The Property is currently subject to the first-priority lien, claims and encumbrances of Southern Star Capital, LLC as described in Proof of Claim No. 2 filed herein (the "Southern Star Lien"), and other liens, claims and encumbrances scheduled by the Debtors herein or filed as proofs of claims.

8. The Debtors may sell the Property free and clear of the Southern Star Lien and all other liens, claims, encumbrances and other interests, pursuant to Bankruptcy Code § 363(f).

**BASED UPON THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

A. The Sale Motion is hereby granted and the sale of the Property to the Buyer, on the terms and subject to the conditions set forth in the Contract hereby is **APPROVED** in its entirety.

B. The Debtor is authorized to fully perform all terms and conditions of the Contract, together with all additional instruments and documents which may be reasonably necessary, convenient or desirable in performing under the Contract, and to take any and all further actions as may be necessary or appropriate in performing the obligations as contemplated by the Contract.

C. Any objections to the Sale Motion that were not withdrawn or settled on the record are overruled.

D. All claims in or against the Property shall attach to the net proceeds arising from the sale of the Property to the Buyer, if any, with the same force, validity, effect, priority and enforceability as such claims had prior to such sale. Any issues regarding the extent, validity,

perfection, priority and enforceability of such claims with respect to any net sale proceeds shall be determined by the Court upon proper application at a later date.

E. All of the Debtor's interests in the Property shall be, as of the closing of the Contract, transferred to, and vested in, the Buyer. Subject to the fulfillment of the terms and conditions of the Contract, this Order shall be considered and constitute for all purposes a full and complete general assignment, conveyance and transfer of the Property to the Buyer. All governmental recording offices and all other parties, persons or entities are hereby directed to accept this Order as such an assignment and conveyance, and, if necessary, this Order shall be accepted for recordation after the Closing as conclusive evidence of the free and clear, unencumbered transfer of title to the Property conveyed to the Buyer at the closing of the Contract.

F. This Court shall have exclusive jurisdiction to implement and enforce the terms and provisions of this Order, including any disputes or controversies relating hereto or with respect to the sale, the proceeds of sale, the transfer and/or assignment and delivery of the Property to the Buyer.

G. The terms and provisions of this Order shall be binding in all respects upon the Debtor, its creditors, any parties having received notice of these proceedings (actual or constructive), any affected third parties and other parties in interest, any persons or entities asserting a claim against, or an interest in, the Debtor's estate or to the Property sold, conveyed and assigned pursuant to this Order, the Buyer, and all successors, transferees or assigns of the above-mentioned parties, including, but not limited to, a chapter 11 trustee or chapter 7 trustee.

H. The Buyer, as transferee of the Property, is a good faith purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full protection of Bankruptcy Code § 363(m).

I. Each and every federal, state and local government agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Contract. All county and state offices are further directed to accept any and all termination statements under the Uniform Commercial Code for release of any liens or encumbrances against the Property.

J. Any and all parties asserting liens or encumbrances against the Property shall, to the extent necessary, execute contemporaneously with closing on the Contract (or as soon as reasonably practical thereafter as requested by the Buyer), any and all documents, releases or instruments necessary to release, remove or terminate the lien, liens or encumbrances which have been asserted against the Property.

# # # END OF ORDER # # #

Submitted by:
Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, TX 75202
Telephone: (972) 503-4033
Attorneys for Debtor