Case 20-42789-mxm11 Doc 113 Filed 01/21/22 Entered 01/21/22 13:56:20 Page 1 of 10

**EXHIBIT**
9

United States Department of Justice
Office of the United States Trustee
1100 Commerce St. Room 976
Dallas, Texas 75242
(214) 767-1247

Elizabeth Ziegler Young,
for the United States Trustee
elizabeth.a.young@usdoj.gov

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **In re:** | | |
| | § | |
| | § | |
| **BM318, LLC** | § | **Case No. 20-42789-mxm-11** |
| | § | **(Chapter 11)** |
| | § | |
| **Reorganized Debtor.** | § | |

**United States Trustee's Objection to First and Final Application to Approve Payment of Fees and Expenses to Debtor's Counsel** [docket no. 110]

TO THE HONORABLE MARK X. MULLIN, U.S. BANKRUPTCY JUDGE:

William T. Neary, the United States Trustee for Region 6 ("United States Trustee"), objects to the *First and Final Application to Approve Payment of Fees and Expenses to Debtor's Counsel* ("Application"). [docket no. 110]. The United States Trustee would respectfully show:

**Overview**

Joyce W. Lindauer Attorney, PLLC ("Applicant") seeks approval of $50,701.25 in fees and $2,457.16 in expenses for the period September 1, 2020 through August 2, 2021. However, Applicant's Application is untimely per the terms of the confirmed plan, which required fee applications to be filed no later than October 31, 2021, or within 60 days of the effective date. Applicant has not explained the delay in filing the Application. Cause exists to deny Applicant's

fees and expenses, or in the alternative, to reduce Applicant's fees as this final fee application is untimely. Furthermore, Applicant seeks fees for the services of Paul Geilich, a contract attorney, who was not employed by the estate. Any fees attributed to Mr. Geilich should be disallowed. Finally, many of the fee entries in the Application are vague and appear to be clumped which makes it difficult for parties to evaluate benefit to the estate. Accordingly, Applicant's fees should be reduced.

**Background**

1. On September 1, 2020 ("Petition Date"), BM318 LLC ("Debtor") filed a voluntary chapter 11 petition, commencing case no. 20-42789-mxm-11.

2. On September 17, 2020 Applicant filed an application seeking employment as of the Petition Date ("Employment Application"). [docket no. 15]

3. The Employment Application provided that Applicant would request the allowance of fees and expenses in accordance with both Fed. R. Bankr. P. 2016(b) and section 330(a) of the Bankruptcy Code.

4. The Employment Application provided for the employment of Ms. Lindauer, and both Ms. Kerry Alleyne and Mr. Guy Hollman as contract attorneys.

5. Both Ms. Alleyne and Mr. Hollman's affidavits are attached to the Employment Application.

6. However, Mr. Paul Geilich did not provide an affidavit, is not listed on the Employment Application, and did not file any subsequent affidavits during the administration of this case.

7. The Court subsequently approved Applicant's employment, effective as of the Petition Date, as counsel for Debtor. [docket no. 28]

8. On November 19, 2020, Debtor filed its Amended Plan of Reorganization. [docket no.

39]

9. Applicant drafted the Amended Plan.

10. The Amended Plan provides:

> **3.02** **<u>Time for Filing Claims</u>**. The holder of any Administrative Claim other than (i) a Fee Claim, (ii) a liability incurred and paid in the ordinary course of business by the Debtor, or (iii) an Allowed Administrative Claim, must file with the Bankruptcy Court and serve on the Debtor and its respective counsel, notice of such Administrative Claim within thirty (30) days after the Effective Date. At a minimum, such notice must identify (i) the name of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.
>
> Each Person asserting an Administrative Expense that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on the Debtor's counsel and the U. S. Trustee, a Fee Application within sixty (60) days after the Effective Date.
>
> A person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.
>
> Liabilities incurred from the Petition Date through the Effective Date in the ordinary course of business shall be paid in the ordinary course of business by the Debtor.

Amended plan at ¶ 3.2.

11. The Amended Plan further provides the Effective Date is the "the thirtieth (30th) day after the Confirmation Date." Amended Plan at Page 4.

12. On August 2, 2021, the Court confirmed the Debtor's Amended Plan of Reorganization. [docket no. 106]

13. On September 1, 2021, the Amended Plan went effective by its own terms, making October 31, 2021 the deadline to file fee claims in this case.

14. On January 18, 2022, Applicant filed its final fee application seeking approval of $50,701.25 in fees and $2,457.16 in expenses for the period September 1, 2020 to August 2, 2021. [docket no. 110]

15. The Application does not explain why it was filed more than two and a half months after the October 31, 2021 deadline.

16. The last entry on the Application is dated November 18, 2021 and provides that Ms. Gwinnup, paralegal, charged the estate $87.50 to "Finalize, file and serve fee application and related documents."

17. The Application does not provide for any voluntary reductions.

18. The Application contains $18,831.50 in charges performed by Paul Geilich from October 20, 2020 to November 18, 2021.

19. The Application contains the following entries, which are vague and clumped:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Larry Boyd | 3.60 | $125.00 | | | $450.00 | | 9/24/2020 | Claim Issues | Email V. McMurry for documents; draft response and objection to Southern Star Capital motion for relief of stay |
| Kerry Alleyne | 0.50 | $250.00 | | | $125.00 | | 9/29/2020 | Deposition / 2004 Exam | Review lift stay motion; telephone conversation with Citizens Bank regarding scheduling deposition of corporate rep and follow up by email regarding the same |
| Larry Boyd | 1.70 | $125.00 | | | $212.50 | | 11/4/2020 | Stay Issues | Reviewed Southern Star Capital motion for relief from stay for changes from original; drafted response to same |
| Paul Geilich | 3.30 | $325.00 | | | $1,072.50 | | 11/6/2020 | Case Administration | Review client information and draft plan of reorganization |
| Dian Gwinnup | 0.30 | $125.00 | | | $37.50 | | 11/6/2020 | Plan and Disclosure Statement | Gather documents and information needed to begin preparation of plan |
| Paul Geilich | 1.60 | $325.00 | | | $520.00 | | 11/6/2020 | Schedules & SoFA | Review claims, schedules and statement of financial affairs; draft disclosure statement |
| Paul Geilich | 2.50 | $325.00 | | | $812.50 | | 11/6/2020 | Schedules & SoFA | Review pleadings and schedules and continue drafting plan and disclosure statement |
| Paul Geilich | 0.50 | $325.00 | | | $162.50 | | 11/7/2020 | Plan and Disclosure Statement | Emails with Joyce Lindauer regarding plan funding |
| Paul Geilich | 0.60 | $325.00 | | | $195.00 | | 11/9/2020 | Plan and Disclosure Statement | Review and revise plan and disclosure statement |
| Paul Geilich | 1.30 | $325.00 | | | $422.50 | | 11/9/2020 | Plan and Disclosure Statement | Prepare for call with client (0.6); Conference call - Larry Martin, Michael Matthews & Joyce Lindauer regarding plan (0.7) |
| Joyce W. Lindauer | 1.80 | $395.00 | | | $711.00 | | 11/9/2020 | Plan and Disclosure Statement | Work on draft plan and disclosure statement |
| Paul Geilich | 0.40 | $325.00 | | | $130.00 | | 11/10/2020 | Stay Issues | Check schedules and Southern Star stay motion regarding accrued interest; emails with M. Mathews regarding same |
| Paul Geilich | 4.40 | $325.00 | | | $1,430.00 | | 11/11/2020 | Plan and Disclosure Statement | Review client projections and revise plan of reorganization and disclosure statement |
| Paul Geilich | 1.70 | $325.00 | | | $552.50 | | 11/11/2020 | Plan and Disclosure Statement | Emails with Tim Barton and Joyce Lindauer regarding changes to plan; Revise plan and disclosure statement |
| Joyce W. Lindauer | 1.50 | $395.00 | | | $592.50 | | 11/11/2020 | Plan and Disclosure Statement | Work on plan |
| Kerry Alleyne | 2.80 | $250.00 | | | $700.00 | | 12/29/2020 | Plan and Disclosure Statement | Prep for and attend disclosure statement hearing; telephone conversation with Larry Levick; review escrow agreement ; redact and send to opposing counsel |
| Larry Boyd | 0.50 | $125.00 | | | $62.50 | | 12/29/2020 | Real Estate Matters | Redaction of Deed in Escrow Agreement |
| Paul Geilich | 0.50 | $325.00 | | | $162.50 | | 12/30/2020 | Plan and Disclosure Statement | Review Southern Star objections to disclosure statement and 1st modification to disclosure statement |
| Joyce W. Lindauer | 1.30 | $395.00 | | | $513.50 | | 12/30/2020 | Plan and Disclosure Statement | Work on amendments to disclosure statement. |
| Kerry Alleyne | 1.70 | $250.00 | | | $425.00 | | 12/31/2020 | Plan and Disclosure Statement | Work on disclosure statement modification; amend schedules and statement of financial affairs and schedule G |
| Paul Geilich | 3.90 | $395.00 | | | $1,540.50 | | 4/5/2021 | Real Estate Matters | Review sales contract, settlement agreement with Southern Star and lien positions and draft motion to sale property |
| Paul Geilich | 4.10 | $395.00 | | | $1,619.50 | | 4/6/2021 | Claim Issues | Review loan agreements and correspondence with lender and draft fraudulent transfer complaint; legal research and fact investigation re: same |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Paul Geilich | 3.60 | $395.00 | | | $1,422.00 | | 4/7/2021 | Claim Issues | Review loan agreements and correspondence with lender and draft fraudulent transfer complaint; legal research re: same |
| Paul Geilich | 2.10 | $395.00 | | | $829.50 | | 4/29/2021 | Plan and Disclosure Statement | Review disclosure statement for disclosure of fraudulent transfer action v. Dixon Water Foundation; draft supplement to disclosure statement |
| Paul Geilich | 4.20 | $395.00 | | | $1,659.00 | | 4/29/2021 | Plan and Disclosure Statement | Draft amendments to plan and disclosure statement reflecting sale of property and payment of secured claims |
| Joyce W. Lindauer | 2.10 | $450.00 | | | $945.00 | | 4/29/2021 | Plan and Disclosure Statement | Work on plan changes, amending plan and disclosure statement. |

## Objection

Applicant should not be compensated for fees and expenses as this application is untimely

20. Deadlines in bankruptcy are strict and are designed to effectively move a case through the court system quickly and efficiently. In *In re Robintech, Inc*., 863 F.2d 393, 398 (5th Cir. 1989). "Under the Bankruptcy Code and rules, creditors play a zero sum game in which a failure to navigate effectively through various intricate procedures can mean total defeat. Moreover, because such procedures are thought to be necessary to protect the bankrupt and the creditors, exceptions cannot be made every time a creditor claims hardship." Id. at 398. Correspondingly, all parties in interest, including those requesting fees, must also effectively manage the administration of the case and be aware of all deadlines.

21. Extensions of deadlines in a court order is governed by Rule 9006(b)(1), which provides:

> Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request thereof is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

FED. R. BANKR. P. 9006(b)(1).

22. In *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the Supreme Court addressed the "excusable neglect" standard under Rule 9006(b)(1), finding that the rule grants a party "a reprieve to out-of-time filings that were delayed by 'neglect', which encompasses both simple, faultless omissions to act, and

omissions caused by carelessness". *Id.* at 388. To determine whether neglect is "excusable," the Supreme Court stated, "[T]he determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 394. The Supreme Court identified several factors including: (1) the danger of prejudice to the opposing party; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was in the control of the moving party; and (4) whether the moving party acted in good faith. *Id.* The Supreme Court noted that "inadvertence, ignorance of the rules, or mistakes construing the rules does not usually constitute 'excusable neglect.' " *Id.* at 392, 113 S.Ct. 1489.

23. Courts have denied compensation for failure to timely file fee applications where the parties could not demonstrate excusable neglect. *See In re Alda*, 464 B.R. 61 (B.A.P. 6th Cir. 2010) (affirming the bankruptcy court's denial of a fee application as untimely and holding "oversight" and "inadvertence," as insufficient reasons to meet the excusable neglect standard); *In re Anderson*, 253 B.R. 14, 18–19 (Bankr. E.D. Mich. 2000) (finding no excusable neglect and denying attorney compensation in 17 cases where the attorney failed to timely file a fee application per the deadline in the court's show cause order), *Beirne, Maynard & Parson, L.L.P. v. Cypresswood Land Partners, I,* No. CV H-09-2620, 2011 WL 13324169, at *10 (S.D. Tex. Mar. 31, 2011) (affirming the bankruptcy court's decision to deny the final fee application as untimely).

24. The Application was filed *after* the deadlines set forth in the Plan and Order Confirming Plan, so it should be dismissed or denied as untimely. Under the express terms of the Plan, fee applications were to be filed no later than sixty days from the Effective Date of the Plan. The Effective Date of the Plan was September 1, 2021. Therefore, all fee applications were to be

filed no later than October 31, 2021. The instant request was filed on January 18, 2022, more than two and half months after the deadline. The Applicant did not seek to extend the deadline. Moreover, the Applicant failed to articulate any grounds for excusable neglect in the Application, or otherwise explain why this application was tardy. Finally, the Applicant is billing the estate $87.50 for filing and serving this Application on November 18, 2021, nearly two months *before* the Application was actually filed, which is very concerning. The Application is not timely and therefore should be denied in total, or in the alternative, the fees approved be reduced appropriately.

<u>The Application should be reduced as one of the Attorney was not employed by the estate</u>

25. Professionals employed under section 327(a) may not "hold or represent an interest adverse to the estate" and must be "disinterested persons." 11 U.S.C. § 327(a). The debtors' professional carries the burden of proof to establish (a) that the firm is "disinterested" and (b) that the firm does not represent an interest adverse to the estate. 11 U.S.C. §327(a); *In re Big Mac Marine, Inc.*, 326 B.R. 150, 154 (B.A.P. 8th Cir. 2005)(citations omitted)(addressing burden of proof for employment under § 327(a)).

26. The Fifth Circuit has defined an "adverse interest" as either:

> (1) Possess[ing] or assert[ing] an economic interest that . . . tend[s] to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or
>
> (2) Possess[ing] a predisposition under circumstances that render such a bias against the estate.

*In re West Delta Oil Co., Inc.*, 432 F.3d 347, 356 (5th Cir. 2005)(citation omitted).

27. Section 328(c) provides that the court may deny a professional's compensation if "such professional person is not a disinterested person, or represents or holds an interest adverse to

Case 20-42789-mxm11 Doc 125 Filed 02/21/22 Entered 02/21/22 16:01:45 Desc 10

the interest of the estate with respect to the matter on which the professional person is employed." 11 U.S.C. § 328(c).

28. As Geilich is a contract employee whose employment was not 1) disclosed to parties in interest during his representation of the estate, 2) not properly employed by the estate and 2) who billed $18,831.50 in fees to the estate. As Geilich never submitted an affidavit of disinterestness, it is unclear if he has a conflict of interest that would preclude his employment. Moreover, his employment was not approved by the court. Indeed, the first mention of Mr. Geilich performing work for the estate was in the Application. As such, Mr. Geilich's fees should be denied in their entirety.

<u>Applicant's fees should be reduced as it seeks approval for vague and clumped time entries</u>

29. Section 330(a) provides that "the court may award [reasonable compensation and expenses] to a trustee, a privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103." 11 U.S.C. § 330(a).

30. Section 330(a)(2) provides that the Court may award compensation that is less than the amount of compensation that is requested. In determining the amount of reasonable compensation to be awarded to a professional person, the Court is charged to consider the nature, extent and value of such services taking into all relevant factors, including (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the services were rendered toward the completion of, a case under the Bankruptcy Code; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) whether the professional person is board certified or

otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonably based on the customary compensation charged by comparably skilled practitioners in cases other than cases under the Bankruptcy Code. 11 U.S.C. § 330(a)(3).

31. The professional seeking reimbursement of fees bears the burden of proving the reasonable value of the services. *In re Neville v. Eufaula Bank & Trust Co. (In re U.S. Golf Corp.)*, 639 F.2d 1197, 1207 (5th Cir. 1981); *see also Caplin & Drysdale Charter v. Babcock & Wilcox Co. (In re Babcock & Wilcox Co.)*, 526 F.3d 824, 827 (5th Cir. 2008). The Fifth Circuit has recognized this Court's expertise in evaluating fees and the amount of time spent. "Because judges are familiar with the fees charged by the legal profession and experienced at gauging the quality of legal work, no expert opinion evidence is required, though such evidence may be accepted." *American Beneficial. Life Ins. Co. v. Baddock (In re First Colonial Corp.)*, 544 F.2d 1291, 1300 (5th Cir. 1977) (applying hourly rate and time spent under predecessor to current statutory fee standard) (citations omitted).

32. The United States Bankruptcy Court for the Northern District of Texas has issued Standing Order 2000-7 which incorporates *Guidelines for Compensation and Expense Reimbursement of Professionals* ("Guidelines"). These Guidelines apply "to all professionals with the exception of chapter 7 and chapter 13 trustees." While "not intended to cover every situation," these Guidelines provide a useful metric by which the bankruptcy courts in this district examine reasonableness.

33. The Guidelines require counsel to segregate matters "[i]f a number of separate tasks are performed on a single day, the fee application should disclose the time spent for each such task, i.e., no 'grouping' or 'clumping.'" Complex Guidelines, § IID. Here, a mere sampling of Applicant's underlying time entries demonstrates that time entries were routinely clumped in

violation of the Guidelines. As set forth *supra* ¶ 14, the Application contains numerous examples of clumped, vague entries. For example, on April 6, 2021, Paul Geilich billed 4.1 hours to "Review loan agreements and correspondence with lender and draft fraudulent transfer complaint; legal research and fact investigation re: same." It is unclear how much time was spent on each topic, and the substance of why the work was done based on this time entry. The Application is full of similar entries. Accordingly, it is difficult if not impossible for interested parties to evaluate these fee requests. The Court should reduce Applicant's fees.

**Conclusion**

The United States Trustee respectfully requests that the Court sustain his objections. The United States Trustee requests any additional relief to which he may be entitled.

DATED: February 4, 2022

Respectfully submitted,

WILLIAM T. NEARY
UNITED STATES TRUSTEE

*/s/ Elizabeth Ziegler Young*
Elizabeth Ziegler Young
Trial Attorney
Texas State Bar No. 24086345 (Also NY)
Office of the United States Trustee
1100 Commerce Street, Room 976
Dallas, Texas 75242
(214) 767-1247
elizabeth.a.young@usdoj.gov

**Certificate of Service**

I certify that on February 4, 2022, all parties entitled to receive ECF notice received a copy of this document.

*/s/ Elizabeth Ziegler Young*
Elizabeth Ziegler Young