Kimberly P. Harris
Texas Bar No. 24002234
kharris@qslwm.com
Joshua L. Shepherd
Texas Bar No. 24058104
jshepherd@qslwm.com
QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, PC
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 871-2100
Facsimile: (214) 871-2111

**COUNSEL FOR INTERVENOR LUMAR LAND & CATTLE, LLC**

J. Robert Forshey
Texas Bar No. 07264200
bforshey@forsheyprostok.com
Emily S. Chou
Texas Bar No. 24006997
echou@forsheyprostok.com
FORSHEY PROSTOK, LLP
777 Main Street, Suite 1550
Fort Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151

**CO-COUNSEL FOR INTERVENOR LUMAR LAND & CATTLE, LLC**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| BM318, LLC, | § | Case No. 20-42789-MXM |
| Debtor | § | |
| BM318, LLC, | § | |
| Plaintiff, | § | |
| v. | § | Adv. Pro. No. 21-04051-MXM |
| THE DIXON WATER FOUNDATION, | § | |
| Defendant. | § | |
| LUMAR LAND & CATTLE, LLC | § | |
| Plaintiff-in-Intervention | § | |

**BRIEF BY LUMAR LAND & CATTLE, LLC IN SUPPORT OF**
**JOINT MOTION FOR APPROVAL OF COMPROMISE**
**AND SETTLEMENT OF ADVERSARY PROCEEDING NO. 21-04051**

TO THE HONORABLE MARK X. MULLIN, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Lumar Land & Cattle, LLC ("Lumar"), and files this Brief in support of the *Joint Motion for Approval of Compromise and Settlement of Adversary Proceeding No. 21-04051*

[Docket No. 147] ("Motion") jointly filed by BM318, LLC ("BM318") and Lumar.

## I. THE MOTION

1. The Motion seeks approval of a global settlement between Lumar and BM318. In connection with the Motion, BM318 is acting through Cortney C. Thomas, as the Receiver ("Receiver") for BM318, based on an *Order Appointing Receiver* [Docket No. 417] entered on November 29, 2023, in the following lawsuit in which the Securities and Exchange Commission (SEC) is the plaintiff:

> *Securities and Exchange Commission v. Timothy Barton, Carnegie Development, LLC, Wall007, LLC, et al*., Civil Action No. 3:22-cv-2118-x, United States District Court for the Northern District of Texas, Dallas Division

The Receiver is currently in control of BM318 in that capacity. At the time the above captioned adversary proceeding ("Adversary Proceeding") was commenced, ultimate control of BM318 was exercised by Timothy Barton, a defendant in the above referenced lawsuit commenced by the SEC.

2. Lumar asserts that the claims asserted by BM318 in the Adversary Proceeding, through its pre-receivership management and counsel, are without merit, and that the settlement proposed in the Motion is very fair to BM318 and should be approved. To be clear, the Receiver inherited the claims asserted by BM318 in this Adversary Proceeding. Any criticism of the merits of the claims, or BM318's good faith in filing the claims, is directed at BM318 and its prior counsel, and not at the Receiver and his counsel.

3. In reviewing proposed settlements,[1] the Fifth Circuit has instructed courts to apply the following factors, in addition to reviewing the terms and conditions of the settlement itself:

a. The probability of success in the litigation with due consideration for the uncertainty in fact and law;

[1] *Connecticut Life Ins. Co., v. United Cos. Fin. Corp*. (*In re Foster Mortgage Corp*.), 68 F.3d 914, 917 (5th Cir. 1995), citing in re *Jackson Brewing Co*., 624 F.2d 599, 602 (5th Cir. 1980).

b. The complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and

c. All other factors bearing on the wisdom of the compromise.

4. This Brief addresses the first factor relating to probability of success on the merits.

## II. BM318'S CLAIMS AGAINST DIXON

5. The Adversary Proceeding was originally commenced by BM318 against The Dixon Water Foundation ("Dixon"). BM318 purchased from Dixon 2,055 acres of largely unimproved land located in Parker County, Texas, known as the Bear Creek Ranch. Dixon owner financed the sale. BM318 was unable to pay the debt at maturity, and numerous loan modifications followed over a period of years.

6. The last loan modification was a Deed in Escrow Agreement ("Escrow Agreement") dated February 27, 2020, pursuant to which BM318 executed a Special Warranty Deed ("Deed") in favor of Dixon which was delivered into escrow. The Deed covered the remaining land financed by Dixon ("Dixon Land") and was delivered out of escrow and then recorded by Dixon on July 2, 2020. The transfer of the Dixon Land effected by the delivery of this Deed is the sole basis of BM318's avoidance claims in the Adversary Proceeding.

7. BM318 filed its bankruptcy case on September 1, 2020. BM318 proposed a Chapter 11 plan of reorganization (including all amendments, the "Plan") [Docket Nos. 39, 79, and 100] which was confirmed pursuant to a Confirmation Order [Docket No. 106] entered on August 2, 2021. Dixon objected to the Plan. To address Dixon's objection, BM318 filed a Third Plan Modification ("Third Modification") [Docket No. 100] which did two (2) things to protect Dixon. First, it provides that, if the transfer of the land back to Dixon pursuant to the Deed is ever avoided, Dixon retained all of its rights pursuant to all of its loan documents. Second, the Third Modification expressly confirms that nothing contained in the Plan in any manner modifies,

nullifies, or cancels Dixon's rights under its loan documents, including its rights under the Escrow Agreement.

## III. LUMAR ACQUIRES A PORTION OF THE LAND FROM DIXON

8. On January 24, 2021, Lumar entered into a contract with Dixon to acquire a 204-acre tract ("Lumar Land") from Dixon which constituted a part of the larger Dixon Land conveyed by the Deed from BM318 to Dixon. On April 23, 2021, Dixon executed and delivered a deed in favor of Lumar which was recorded a few days later in the Official Records of Parker County, Texas. Lumar was not the initial transferee of the Lumar Land from BM318. Dixon was the initial transferee, and Lumar was an immediate, or mediate, transferee, of the Lumar Land.

## IV. BM318 FILES THE ADVERSARY PROCEEDING

9. Shortly after the Plan was confirmed, on August 10, 2021, almost four months after the Lumar Land was conveyed by Dixon to Lumar, BM318 commenced the Adversary Proceeding against Dixon. In its Complaint, BM318 asserts two (2) claims to avoid the delivery of the Deed out of escrow. The first is a claim to avoid the delivery of the Deed as a preferential transfer pursuant to section 547 of the Bankruptcy Code.[2] The second is an alternative claim to avoid the delivery of the Deed, to the extent the transfer was not made on account of an antecedent debt, as a fraudulent transfer pursuant to section 548.

10. It is significant that the only transfer which BM318 seeks to avoid in the Adversary Proceeding is the delivery of the Deed out of escrow. BM318 asserts no claim to avoid either the Escrow Agreement or the delivery of the Deed into escrow, both events which occurred outside of the 90-day preference period. The time for amending pleadings in the Adversary Proceeding has passed. In addition, the two-year statute of limitations pursuant to section 546(a)(1) also expired on September 1, 2022. Both deadlines passed prior to the application of the litigation stay through the receivership lawsuit . Consequently, if the Adversary Proceeding ever goes to

---

[2] Section references, unless otherwise indicated, are to title 11 of the U.S. Code, which is the U.S. Bankruptcy Code.

trial, BM318 will be required to proceed based on a universe of limited avoidance claims solely relating to the delivery of the Deed from escrow. BM318 will not be able to attack either the execution and delivery of the Escrow Agreement or the delivery of the Deed into escrow.

11. On October 27, 2021, BM318 filed a Notice of Lis Pendens ("Lis Pendens") relating to the Adversary Proceeding in the Parker County Real Estate Records. This related to BM318's avoidance action against the Dixon Land, and also covered the Lumar Land as a part of the larger Dixon Land tract. This clouded Lumar's title and made it impossible for Lumar to market and sell any of the Lumar Land so long as the Lis Pendens was in place. Consequently, in order to protect its ability to sell the Lumar Land, Lumar sought leave to intervene in the Adversary Proceeding asserting its defenses pursuant to section 550(b), seeking declaratory relief that BM318's avoidance claims were without merit, and seeking to expunge the Lis Pendens. The Bankruptcy Court ultimately granted Lumar permission to intervene in the Adversary Proceeding. BM318 answered Lumar's complaint in intervention and asserted common law counterclaims against Lumar. However, as discussed below, BM318 failed to properly retain and preserve these claims pursuant to the Fifth Circuit's opinion in *United Operating*.

## V. BM318'S AVOIDANCE CLAIMS ARE WITHOUT MERIT

### A. BM318 held only a bare legal title to the Dixon Land.

12. In order to avoid a transfer under either section 547 or 548, there must be a transfer of an interest of the debtor in property. When the Deed was placed into escrow, pursuant to Texas real estate law,[3] equitable title to the Dixon Land passed from BM318 to

[3] *Hudgins v. Krawetz*, 558 S.W. 2d. 131, 134 (Tex, App.- San Antonio 1977, no writ); *Cowden v. Broderick Calvert*, 131 Tex. 434, 114 S.W. 2d 1166, 1169 (1938); *Neal v. Pickett*, 280 S.W. 2d 748, 750 (Tex. Comm'n App.1926, judgment adopted); *Comunidad Balboa, LLC v. City of Nassau Bay*, 352 S.W. 2d 72, 76 (Tex. App. – Houston [14th Dist.] 2011, no pet.); *In re Missionary Baptist Foundation, Inc*., 792 F.2d 502, 504 (5th Cir. 1986) ("Texas courts hold that when a grantor executes as escrow agreement and deposits the subject matter into escrow, he retains legal title to the subject matter, with equitable title passing to the ultimate grantee."), citing *Cowden*, 114 S.W. 2d at 1169, and *Hudgins,* 558 S.W. 2d at 134.

Dixon. This left BM318 with only a bare legal title to the Dixon Land. BM318 has not asserted a claim to avoid either the execution and delivery of the Escrow Agreement or the delivery of the Deed into escrow. The time for BM318 to amend its pleadings and the applicable statute of limitation have both passed as to these potential avoidance claims. Consequently, BM318 cannot challenge the transfer of the equitable title in the Dixon Land to Dixon, and can only challenge the delivery of the Deed out of escrow after equitable title had passed to Dixon.

13. The U.S. Supreme Court has held that section 547 requires a transfer of an interest of the debtor in property.[4] A transfer of bare legal title will not support a section 547 preference action because there was no transfer of an interest of the debtor in property.[5] Consequently, BM318's avoidance claims fail because, when the Deed was delivered out of escrow, BM318 had only a bare legal title. Dixon already held equitable title to the land. Passing this legal title pursuant to the Deed did not constitute a transfer of an interest of the debtor in property. Because a bare legal title has no value, such a transfer results in no diminution of the assets available for distribution to creditors.[6] The same analysis applies with equal force to a transfer pursuant to section 548 which also expressly requires a transfer by the debtor of an interest in property.[7] This is fatal to BM318's claims under both sections 547 and 548, both of

---

[4] *Begier v. IRS*, 496 U.S. 53, 57, 110 S. Ct. 110 L. Ed. 2d 46 (1990).

[5] *In re Maple Mortgage*, 81 F.3d, 592, 595 (5th Cir. 1996) ("The reach of this avoidance power is limited to 'property of the debtor'."); *Cage v. Wyo Ben, Inc*., (*In re Ramba, Inc*.), 437 F.3d 457, 460 (5th Cir. 2006) (A transfer of property in which debtor has no equitable interest does not reduce the assets available to pay creditors); *Sherman v. OTA Franchise Corp*. (In *re Essential Fin. Educ, Inc*.), 629 B.R. 401, 421 (Bankr N.D. Tex. 2021)(Legal title is insufficient for the debtor to have an interest in property); *Kelly v. McCormack* (*In re Mitchell*), 548 B.R. 862, 876 (Bankr. M.D. Ga. 2016)(Transfer of legal title does not diminish assets to pay creditors).

[6] *Kelly*, 548 B.R. at 876; *Cage v. Wyo Ben, Inc.*, 437 F.2d at 460; *Sherman*, 629 B.R. at 421.

[7] *Maple Mortgage*, 81 F.3d at 595 (Both section 547 and 548 require that the transfer to be avoided must be one of an interest of the debtor in property); *Mashburn v. Gentry* (*In re Gentry*), 2022 Bankr. LEXIS 161 *36-37 (Bankr. W.D. Ok. Jan. 21, 2022 ("the transfer of a bare legal title does not constitute fraudulent transfer"); *Rodriguez v. Nelabovige* (*In re Kirst*), 559 B.R. 757, 763 (Bankr. D. Colo. 2016); *Davis v. Hoa Thi Pham* (*In re Nguyen*), 783 F.3d 769, 776 (10th Cir. 2015) ("the bare legal title is not an interest that can be avoided the U.S.C., section 548(a)(1)(B)").

which require a transfer of an interest of the debtor in property. BM318's bare legal title does not constitute such an interest of the debtor in property and will not support an avoidance action under either section 547 or 548.

14. Moreover, under the facts of this case, it would be futile to avoid the delivery of the Deed from escrow, which is the only avoidance relief requested by, and now available to, BM318. Pursuant to the Third Modification, the Plan did not affect Dixon's rights under the Escrow Agreement, and all of Dixon's rights under the Escrow Agreement were expressly reserved in the event the transfer of the Dixon Land to Dixon based on the delivery of the Deed out of escrow is avoided. If the delivery of the Deed out of escrow is avoided, then the title to the Dixon Land, as between BM318 and Dixon, reverts back to its status prior to the delivery and recordation of the Deed. This means that the Deed would still be held in escrow, Dixon would still be vested with an equitable title to the Dixon Land, and BM318 would still have only a bare legal title. Since there will be no automatic stay in effect at that time, presumably Dixon could simply re-record the Deed based upon BM318's failure to make the required final payment on the debt due July 1, 2020.

**B. <u>BM318 was solvent negating any preference claim.</u>**

15. BM318's bankruptcy filings all reflect that BM318 was solvent. BM318's Schedules [Docket No. 20], SOFA [Docket No. 21], the monthly operating reports ("<u>MORs</u>") [see e.g. Docket Nos. 103 and 105] and its Second Amended Disclosure Statement [Docket No. 56] ("<u>Disclosure Statement</u>") all reflect that BM318 was solvent by approximately $1.2 million. The Disclosure Statement describes BM318's solvency, as reflected in its schedules, as follows:

**ARTICLE III**
**FINANCIAL PICTURE OF DEBTOR**
**Financial History And Background Of The Debtor**

*******

> 3.02 *In the Schedules of Assets and Liabilities* filed in the bankruptcy case, the Debtor lists assets with an aggregate value of $4,419,636.00 as of the Petition Date. This amount consists of real property in the amount of $4,250,000.00 and a certificate of deposit in the amount in the amount of $169,636.00.
>
> *In the Schedules of Assets and Liabilities*, the Debtor lists aggregate liabilities in the amount of $3,204,850.63 as of the Petition Date. The claim of Southern Star Capital, LLC as a fully secured claimant in the amount of $1,831,500.00. For a complete listing and explanation of the Debtor's liabilities as of the Petition Date, parties should refer to the Schedules of Assets and Liabilities and any amendments thereto filed in this bankruptcy case.[8]

16. The liquidation analysis in the Disclosure Statement reflects that, even in a liquidation scenario, after all creditors are paid in full, there remains a surplus of $173,276. The Disclosure Statement was approved by the Bankruptcy Court [Docket No. 57] and acceptances of the Plan were solicited, and the Plan was confirmed, based on a Disclosure Statement which represents that BM318 is solvent on a liquidation basis. As a consequence, BM318 is precluded from now asserting, for purposes of a section 547 claim, that it was insolvent in contravention of its own sworn schedules and the liquidation analysis which was an essential element relied upon by the Court in confirming the Plan. This directly calls into question BM318's good faith in asserting the preference claims which are the core of the Adversary Proceeding.

**C. <u>BM318's fraudulent transfer claims are without merit.</u>**

17. BM318's fraudulent transfer claims are asserted as an alternative claim to the preference claims. To the extent the transfer of the Deed out of escrow was not made on account of an antecedent debt, BM318 alleges that the transfer was constructively fraudulent

[8] *Id.*

under section 548(a)(1)(B). There are at least four problems with this fraudulent transfer claim, each of which is fatal.

18. First, the transfer was in effect a deed in lieu of foreclosure which was made on account of the antecedent debt owed by BM318 to Dixon. It was not a fraudulent transfer and would only be subject to avoidance as a preference.

19. Second, BM318 had only a bare legal title to the Dixon Land, with equitable title being vested in Dixon. BM318 had no equitable interest in the property to support an avoidance claim pursuant to section 548.[9]

20. Third, if the delivery of the Deed out of escrow was somehow avoided, as explained above, Dixon would still be vested with the equitable title to the land, BM318 would still have only a bare legal title, and Dixon could simply re-record the Deed.

21. Fourth, BM318's assertions of solvency (especially the liquidation analysis) are contrary to the elements of a constructively fraudulent transfer.

**D. <u>Lumar has a complete defense under section 550(a)(2).</u>**

22. Lumar also has a complete defense to BM318's avoidance claims pursuant to section 550(b). Dixon, not Lumar, is the initial transferee of the Lumar Land. Lumar is an immediate or mediate transferee entitled to the protections of section 550(a)(2). Lumar qualifies as a good faith transferee who took the conveyance from Dixon for value, in good faith and without knowledge of the voidability of the delivery of the Deed from the escrow.

23. Lumar paid full market value to Dixon for the land in an arm's length transaction. There is no basis to assert that Lumar failed to give value.

24. Lumar also acted in good faith. The sale transaction was negotiated at arms' length with Dixon. Lumar received before closing a commitment for a buyer's policy of title insurance which reflected that the title was held by Dixon, contained no unusual exclusions, and

---

[9] *Begier*, 496 U.S. at 57; *Maple Mortgage*, 81 F.3d at 595.

made no mention of either BM318 or its bankruptcy case. The Adversary Proceeding against Dixon was not filed until several months after the sale of the Lumar Land was closed. None of these circumstances suggest any dishonest or improper conduct by Lumar and, to the contrary, establish that Lumar acted in good faith.

25. Lastly, Lumar had no knowledge of the voidability of the transfer of the Deed from escrow. As mentioned above, Lumar received a clean title policy relating to the proposed transactions. A review of the filings in the bankruptcy case filed by BM318 would not have reflected any potential avoidance claims against Dixon or anyone else. The first mention of potential avoidance claims by BM318 against Dixon in any pleading was a reservation of claims against Dixon in a pleading filed by BM318 on May 5, 2021, which was several weeks after Lumar had closed on the Lumar Land. On the day of closing, a review of the bankruptcy pleadings would have given Lumar no indication that BM318 asserted that the delivery of the Deed from escrow was voidable as a fraudulent transfer. Indeed, the Third Modification expressly confirmed Dixon's rights under the Escrow Agreement, something which is (as explained above) inconsistent with the assertion of any avoidance action as to the escrow transaction. Moreover, in relation to the preference claims, BM318's schedules, SOFA, MORs and its Disclosure Statement on file on the day of closing all reflect that BM318 was solvent, even in a liquidation scenario. There was no reason to expect that an avoidance action would emerge from a case involving a solvent debtor wherein the filings never hinted at the existence of such an avoidance claim.

## VI. BM318'S COMMON LAW CLAIMS AGAINST LUMAR

26. BM318 sought to amend its Complaint to assert additional common law claims against Dixon, as well as several additional new parties. Both Dixon and Lumar objected to the amendment on the basis that BM318 had failed to preserve these common law claims as

required by the *United Operating* opinion and its progeny.[10] Indeed, BM318's motion to amend to assert these common law claims against Dixon was very odd since BM318 did absolutely nothing in either the Plan or Disclosure Statement to identify and preserve these alleged causes of action as required by well settled Fifth Circuit precedent. As a result, the Bankruptcy Court denied BM318's motion to amend on the basis that the claims had not been properly preserved as required by *United Operating*.[11]

27. BM318 asserts essentially the same common law claims against Lumar as counterclaims to Lumar's complaint in intervention. Because these were asserted as counterclaims, BM318 was not required to first obtain leave to amend. These claims were also not properly preserved by BM318 in the Plan and Disclosure Statement as required by *United Operating*. Reproduced below is a chart which reflects in the left column the common law claims BM318 attempted to assert in the proposed Amended Complaint against Dixon and which the Bankruptcy Court found that BM318 lacks standing to pursue. The right column reflects the counterclaims asserted by BM318 against Lumar. As can readily be seen, the claims asserted by BM318 against Lumar are the same claims, arising out of the same transactions and occurrences, which the Bankruptcy Court found that BM318 failed to properly preserve as against Dixon. The same analysis applies to Lumar. BM318 failed to properly identify and preserve the alleged claims against Lumar as required by applicable Fifth Circuit precedents.

---

[10] *Compton v. Anderson* (*In re MPF Holdings US LLC*), 701 F.3d 449, 453 (5th Cir. 2012), citing *Dynasty Oil & Gas, LLC v. Citizens Bank* (*In re United Operating, LLC*), 540 F.3d 351 (5th Cir. 2008).

[11] *See* Order entered on August 11, 2022, at Adv. docket no. 150.

| **Remaining Claims that the Court held BM318 lacks standing to pursue** | **Counterclaims asserted against Lumar in BM318's Original Answer** |
|---|---|
| Tortious Interference with a Contract | Count I - Tortious Interference with a Contract |
| Tortious Interference with a Prospective Contract | Count II - Tortious Interference – Prospective Contract |
| Breach of Fiduciary Duties | Count III - Breach of Fiduciary Duties |
| Fraud | Count IV – Fraud |
| Conversion | Count V – Conversion |
| Fraud in Real Estate Transaction | Count VI - Fraud in Real Estate Transaction (Tex. Bus. Comm. Code §27.01) |
| Constructive Fraud | N/A |
| Negligent Misrepresentation | N/A |
| Aiding and Abetting and/or Knowing Participation – Breach of Fiduciary Duties | N/A |
| Conspiracy to Commit Fraud and/or Fraud in Real Estate; Constructive Fraud, Conversion, Tortious Interference (Contract and Prospective Contract), and/or Breach of Fiduciary Duties | Count VII – Conspiracy |
| Vicarious Liability / Respondeat Superior | N/A |
| Alter-Ego/Piercing the Corporate Veil/Reverse Piercing the Corporate Veil | N/A |

28. The Bankruptcy Court's ruling that BM318's common law claims against Dixon were not properly preserved applies equally to the same common law claims asserted against Lumar based upon the same transactions and occurrences. BM318 also failed to take any steps to properly identify and preserve these common law claims against Lumar as required by *United Operating*.

29. Moreover, BM318's common law counterclaims against Lumar are completely frivolous. For example, Count I is a claim for tortious interference with the contract. However, BM318 is not a party to the contract which it apparently alleges was subject to the tortious interference. The party to that contract was an affiliated company known as JMJ Development, LLC. BM318 never explains how it has standing to assert a claim for interference with another party's contract. Count II is a tortious interference with a prospective contract. Texas law requires that, in order to assert such a claim, BM318 must be able to prove an independent tort which constitutes the interference.[12] BM318 alleges no such independent tort to support this claim, which is apparently based upon an unsupported and very vague allegation of some interference with a contract. Finally, in Count VI, BM318 alleges a statutory claim for fraud in a real estate transaction. An essential element of such a claim is that BM318 must establish that it entered into a contract relating to real estate based upon false promises or representations by Lumar. Lumar had no dealings with BM318, and there is no allegation that BM318 ever entered into any such contract in reliance on anything done by Lumar. In sum, these common law tort claims are so without merit as to be frivolous.

## **PRAYER**

WHEREFORE, for the reasons set forth above, Lumar respectfully requests that the Court grant the Motion and for all such other and further relief as the Court may deem just and proper.

---

[12] *Walmart Stores, Inc. v. Sturges*, 52 S.W. 3d 711, 726 (Tex. 2001).

Date: May 8, 2024

Respectfully submitted,

*/s/ J. Robert Forshey*_______
J. Robert Forshey
Texas Bar No. 07264200
bforshey@forsheyprostok.com
Emily S. Chou
Texas Bar No. 24006997
echou@forsheyprostok.com
**FORSHEY PROSTOK, LLP**
777 Main Street, Suite 1550
Fort Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151

**CO-COUNSEL FOR INTERVENOR LUMAR LAND & CATTLE, LLC**

**- And -**

Kimberly P. Harris
Texas Bar No. 24002234
kharris@qslwm.com
Joshua L. Shepherd
Texas Bar No. 24058104
jshepherd@qslwm.com
**QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 871-2100
Facsimile: (214) 871-2111

**COUNSEL FOR INTERVENOR LUMAR LAND & CATTLE, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 8, 2024, a true and correct copy of the foregoing document was served by electronic transmission via the Court's ECF system upon all parties registered to receive electronic notice, and by U.S. Mail first class postage prepaid on the parties on the attached Service List.

*/s/ J. Robert Forshey*_______
J. Robert Forshey