## AGREEMENT TO REAFFIRM AND ADOPT THE SETTLEMENT AND RELEASE AGREEMENT

### I. Parties

A. The parties (individually, a "Party" and, collectively, the "Parties") to this Agreement to Reaffirm and Adopt the Settlement and Release Agreement (Reaffirmation and Adoption Agreement") are as follows:

i. Cortney C. Thomas, in his capacity as the receiver ("Second Receiver") pursuant to the Second Receiver Order (as defined below); and

ii. Lumar Land & Cattle, LLC ("Lumar"), a Texas limited liability company.

### II. Definitions

B. As used in this Reaffirmation and Adoption Agreement, the following terms shall have the respective meanings set forth below:

i. The term "Settlement Agreement" shall mean the Settlement and Release Agreement executed among Cortney C. Thomas, in his capacity as the First Receiver (as defined below), and Lumar, a copy of which is attached as **Exhibit "1"** to this Reaffirmation and Adoption Agreement;

ii. The term "First Receiver Order" shall mean the Order Appointing Receiver entered as document no. 29 in the Receiver Lawsuit on October 18, 2022.

iii. The term "First Receiver" shall refer to Cortney C. Thomas acting in his capacity as the receiver pursuant to the First Receiver Order.

iv. The term "Second Receiver Order" shall mean the Order Appointing Receiver entered as document no. 417 in the Receiver Lawsuit on November 29, 2023.

v. The term "Fifth Circuit Appeal" shall refer to the following cause:

> *Securities and Exchange Commission, Plaintiff-Appellee v. Timothy Barton, Defendant-Appellant,* Cause No. 22-11132 in the Fifth Circuit Court of Appeals.

vi. All defined terms in the Settlement Agreement shall be given the same meaning in this Reaffirmation and Adoption Agreement, except that any term specifically defined in this Reaffirmation and Adoption Agreement shall be given the meaning set forth herein even if different from the definition in the Settlement Agreement.

### III. Recitals

C. Pursuant to the First Receiver Order, the First Receiver was appointed as receiver for various entities, including BM318.

D. The First Receiver Order was appealed by Timothy Barton ("Barton"), one of the defendants in the Receiver Lawsuit. Barton filed a Defendant's Notice of Appeal on November

17, 2022 as document no. 66 in the Receiver Lawsuit. The resulting appeal was docketed by the Fifth Circuit Court of Appeals ("Fifth Circuit") as the Fifth Circuit Appeal.

E. The Settlement Agreement was executed by the First Receiver on behalf of BM318 and by Lumar, respectively, on June 20, 2023 and June 26, 2023.

F. On June 28, 2023, the Fifth Circuit published an opinion ("Original Opinion") in the Fifth Circuit of Appeal vacating the First Receiver Order effective 90 days after the issuance of the mandate. The Original Opinion was reported as *SEC v. Barton*, 74 F.4th 640 (5th Cir. 2023).

G. After the Original Opinion was published, Barton filed a petition with the Fifth Circuit seeking a panel rehearing. On August 31, 2023, the Original Opinion was withdrawn by the Fifth Circuit and a second opinion ("Second Opinion") was published denying Barton's request for rehearing and substituting the Second Opinion in place of the Original Opinion. The Second Opinion is reported as *SEC v. Barton*, 2023 U.S. App. LEXIS 23125, 79 F.4th 573 (5th Cir. Aug. 31, 2023). The Second Opinion also vacated the First Receiver Order 90 days after the issuance of the mandate and granted in part Barton's motion for a stay which will remain in place until the First Receiver Order was vacated. 2023 U.S. App. LEXIS 23125 *19-20. However, the Second Opinion also states that, if a new receivership order were to be entered before the First Receiver Order is vacated, the stay granted in favor of Barton would have no effect on the actions of the new receiver under the new receivership order. *Id*. The mandate in the Fifth Circuit Appeal was issued on August 31, 2023.

H. The Securities and Exchange Commission, as the plaintiff in the Receiver Lawsuit, filed a Second Motion to Appoint a Receiver as document no. 309 in the Receiver Lawsuit. This second motion was granted pursuant to the Second Receiver Order. Cortney C. Thomas has been appointed to act as the Second Receiver pursuant to the Second Receiver Order.

I. As a result of the Original Opinion and Second Opinion vacating the First Receiver Order, the First Receiver and Lumar were unable to complete the process to obtain "Court Approval" of the Settlement Agreement, as such term is defined and described in section 2 of the Settlement Agreement.

J. The Second Receiver and Lumar both desire to complete and consummate the settlement reflected in the Settlement Agreement. For this purpose, the Parties desire to reaffirm and adopt the Settlement Agreement as set forth herein, and to proceed with the process for obtaining Court Approval and to thereafter complete and consummate the settlement contained in the Settlement Agreement.

## IV. Terms and Conditions

**ACCORDINGLY**, for value received, including in consideration of the mutual covenants contained herein, the receipt and sufficiency of which is hereby acknowledged by each of the Parties with all Parties intending to be legally bound, they hereby agree as follows:

1. **Recitals True and Correct.** The above recitals are true and correct and are hereby incorporated as an integral and substantive part of this Reaffirmation and Adoption Agreement.

2. **Reference to Settlement Agreement**. Reference is made to the Settlement Agreement for all purposes in relation to this Reaffirmation and Adoption Agreement. A true,

accurate, and complete copy of the Settlement Agreement, including all exhibits thereto, is attached as **Exhibit "1"** to this Reaffirmation and Adoption Agreement.

3. **Reaffirmation of Certain Terms**. The following terms of the Settlement Agreement are hereby restated and modified as follows:

3.1 Recital J is revised to read as follows:

J. Pursuant to paragraph 1 on pages 3 through 6 of 28 of the Second Receiver Order, the Second Receiver is appointed as receiver for BM318 as one of the "Receivership Entities", thereby granting the Second Receiver exclusive control and possession of BM318's assets of whatever kind and wherever located, including all intangible and tangible property, and which are included as a part of the "Receivership Property", as defined in paragraph 6.A. the Second Receiver Order. Paragraph 3 of the Second Receiver Order clothes the Second Receiver with all power, right, and authority possessed by the officers, directors, and managers of each of the Receivership Entities, including BM318. Paragraph 6 of the Second Receiver Order grants the Second Receiver broad powers over the Receivership Property, including the right to take any action which, prior to the entry of the Second Receiver Order, could have been taken by the officers, directors, managers, and agents of any of the Receivership Entities. BM318's claims and rights in relation to the Adversary Proceeding, including in the relation to the Lis Pendens, constitute Receivership Property subject to the Second Receiver's control pursuant to the Second Receiver Order. This includes the authority by the Second Receiver, subject to Court Approval, to fully settle and resolve all Claims asserted by BM318 in the Adversary Proceeding.

3.2 References in the Settlement Agreement to the "Receiver" shall mean the Second Receiver, and references to the "Receiver Order" shall mean the Second Receiver Order;

3.3 The term "Receivership Entities" shall include all entities subject to administration in the Receiver Lawsuit including, but not limited to, those identified in the Second Receiver Order and any supplements thereto, and expressly including BM318;

3.4 The "General Release" referred to in section 4 of the Settlement Agreement shall be in the form of the **Exhibit "2"** to this Reaffirmation and Adoption Agreement, which form of document shall replace the **Exhibit "B"** to the Settlement Agreement; and

3.5 The "Release of Lis Pendens" referred to in section 5 of the Settlement Agreement shall be in the form of the **Exhibit "3"** to this Reaffirmation and Adoption Agreement, which form of document shall replace the **Exhibit "C"** to the Settlement Agreement.

4. **Exhibits**. Reference is hereby made to all exhibits to this Reaffirmation and Adoption Agreement, all of which are hereby incorporated for all purposes as a part of this Reaffirmation and Adoption Agreement.

5. **Settlement Agreement Adopted**. As restated and modified in section 3 above, the Settlement Agreement is hereby adopted and reaffirmed by both Parties. In the event of any conflict between the Settlement Agreement and the exhibits thereto and this Reaffirmation and Adoption Agreement and the exhibits hereto, the Reaffirmation and Adoption Agreement and its exhibits shall control.

6. **Entire Agreement**. This Reaffirmation and Adoption Agreement constitutes the entire agreement between the Parties relating to the subject matter of this agreement and supersedes and replaces all prior negotiations, proposals or agreements, written or oral, of any nature or substance relating thereto. In entering into this Reaffirmation and Adoption Agreement, neither Party is relying upon, and hereby disclaims reliance on, any other representation, omission, or document not expressly contained in this Reaffirmation and Adoption Agreement.

7. **Binding Effect**. This Reaffirmation and Adoption Agreement shall be binding upon all Parties and their respective successors and assigns, although the effective date of the Settlement Agreement shall still be subject to first obtaining Court Approval.

8. **Representation by Counsel**. Each Party acknowledges that it was represented by and consulted with legal counsel of its own choosing before executing and delivering this Reaffirmation and Adoption Agreement, and that each Party had a reasonable and sufficient opportunity to consult with such legal counsel.

9. **Counterparts**. This Reaffirmation and Adoption Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The Parties agree that copies of this Reaffirmation and Adoption Agreement shall have the same effect and may be accepted with the same authority as the original and that this Reaffirmation and Adoption Agreement may be executed electronically and in counterparts.

10. **Authority**. Each Party represents to the other that, subject to Court Approval, they have the full legal right and authority required to enter into this Reaffirmation and Adoption Agreement and to compromise and settle all claims under the terms and conditions set forth herein. The Parties also represent that the signatures on behalf of the Parties, or their counsel, to this Reaffirmation and Adoption Agreement is sufficient, without further approval of third parties (other than Court Approval) to fully bind such Party to the terms hereof.

11. **Amendment**. This Reaffirmation and Adoption Agreement may only be amended, modified, or supplemented by a separate written document duly executed by authorized representatives of all Parties or their legal successors in interest.

12. **Governing Law**. This Reaffirmation and Adoption Agreement shall be construed in accordance with and governed by the laws of the State of Texas (excluding the laws applicable to conflicts or choice of law). The Parties agree that jurisdiction to adjudicate any dispute arising out of or related to performance of this Reaffirmation and Adoption Agreement lies solely in the Receivership Court.

13. **Headings**. Section or paragraph headings herein are for convenience of reference only and shall not impact or affect the interpretation of this Reaffirmation and Adoption Agreement.

14. **Interpretation**. This Reaffirmation and Adoption Agreement has been jointly drafted by counsel for both Parties and shall not be strictly interpreted or construed against either Party.

15. **Notices**. Any notice or communication required or permitted by this Reaffirmation and Adoption Agreement shall be given, made or sent as set forth in section 14 of the Settlement Agreement.

**IN WITNESS WHEREOF**, each of the Parties has executed this document on the dates reflected below.

**SECOND RECEIVER**:

By: ________________________________
Cortney C. Thomas, Second Receiver

Executed on this ____ day of ________, 2024

**LUMAR**:

Lumar Land & Cattle, LLC

By: ________________________________
Jim Martin, its Manager

Executed on this ____ day of ________, 2024

**Exhibit “1”**
**to**
**Reaffirmation and Adoption Agreement**

**<u>Settlement and Release Agreement</u>**

**SETTLEMENT AND RELEASE AGREEMENT**

**I. Parties**

A. The parties (individually, a "Party" and, collectively, the "Parties") to this Settlement and Release Agreement (collectively with all exhibits attached hereto, the "Settlement Agreement") are as follows:

i. Cortney C. Thomas, in his capacity as a receiver ("Receiver") pursuant to the Receiver Order entered in the Receiver Lawsuit (both as defined below); and

ii. Lumar Land & Cattle, LLC ("Lumar"), a Texas limited liability company.

**II. Definitions**

B. As used in this Settlement Agreement, the following terms shall have the respective meanings set forth below:

i. The term "Adversary Proceeding" shall refer to the following adversary proceeding commenced by BM318 as a part of the Bankruptcy Case:

> *BM318, LLC, Plaintiff v. The Dixon Water Foundation, Defendant, Lumar Land & Cattle, LLC, Plaintiff-in-intervention*, Adv. No. 21-04051-mxm, United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

ii. The term "Bankruptcy Case" shall refer to the following bankruptcy case commenced by BM318:

> *In re BM318, LLC*, Case No. 20-4789-mxm, United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

iii. The term "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Northern District of Texas, the bankruptcy court before which the Bankruptcy Case is pending.

iv. The term "BM318" shall mean BM318, LLC, a Texas limited liability company, the debtor in the Bankruptcy Case and the plaintiff in the Adversary Proceeding.

v. The term "Business Day" shall mean a day which is not a Saturday, Sunday, or legal holiday.

vi. The term "Claim" shall be broadly construed and shall include any claim, demand, action, liability, cause of action, obligation, damage, controversy, or right to payment, whether or not reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, secured or unsecured, whether known or unknown, suspected or unsuspected, and whether based on any contract or agreement or grounded in tort law or the common law, and whether arising under any law, regulation, or statute of the United States or any state or any subdivision thereof, as well as any equitable right or remedy and all remedial rights or claims of any kind, existing as of the date of this Settlement Agreement. This shall include any Claim by any Party asserted in, or sought to be asserted in, or which arises out of the transactions or occurrences which are the subject of, the Adversary Proceeding.

vii. The term "Closing" shall mean the transactions, payments, and deliveries among the Parties to consummate and perform the settlement pursuant to this Settlement Agreement.

viii. The term "Court Approval" shall mean the Bankruptcy Court's order approving this Settlement Agreement and the Receivership Court's order ratifying this Settlement Agreement (collectively, the "Approval Orders").

ix. The term "Dixon" shall mean The Dixon Water Foundation, f/k/a The Dixon Foundation, a non-profit foundation, the original defendant in the Adversary Proceeding.

x. The term "Effective Date" shall mean the date on which the Receivership Court enters an order in the Receiver Lawsuit ratifying this Settlement Agreement, following an order from the Bankruptcy Court approving this Settlement Agreement.

xi. The term "Lis Pendens" shall mean the Notice of Lis Pendens relating to BM318's claims in the Adversary Proceeding filed by BM318 on October 27, 2021, as Document no. 202142097 in the Official Records of Parker County, Texas.

xii. The term "Lumar Deed" shall mean the Special Warranty Deed with Vendor's Lien executed by Dixon, as grantor, to Lumar, as grantee, covering the Lumar Land and recorded on April 23, 2021, as Document no. 202116538 in the Official Records of Parker County, Texas.

xiii. The term "Lumar Land" shall refer to the 204.50-acre tract located in Parker County, Texas, and which is the subject of the Lumar Deed.

xiv. The term "Receivership Court" shall mean the United States District Court for the Northern District of Texas, the district court before which the Receiver Lawsuit is pending.

xv. The term "Receiver Lawsuit" shall refer to the following lawsuit in which the Receiver was appointed:

> *Securities and Exchange Commission, v. Timothy Barton, et al.*, Case 3:22-CV-2118-X, in the United States District Court for the Northern District of Texas, Dallas Division.

xvi. The term "Receiver Order" shall refer to the *Order Appointing Receiver* entered as Docket no. 29 in the Receiver Lawsuit on October 18, 2022.

xvii. The term "Receivership Entities" includes all entities subject to administration in the Receiver Lawsuit including, but not limited to, those entities identified in Receiver Order and later supplemental orders entered in the Receiver Lawsuit, including Docket nos. 62, 88, etc.

xviii. The term "Remaining Land" shall mean the 1,531.75-acre tract of land located in Parker County, Texas, which is the subject of BM318's claims in the Adversary Proceeding, but excluding therefrom the Lumar Land.

xix. The term "Special Warranty Deed" shall mean the deed conveying the Remaining Land from BM318, as grantor, to Dixon, as grantee, and recorded on July 2, 2020, as Document no. 202019524 in the Official Records of Parker County, Texas.

## III. Recitals

C. Dixon sold a tract of land consisting of approximately 2,055.77 acres to BM318 during 2018. The majority of the purchase price for this original tract was provided through owner financing by Dixon and was secured by a deed of trust against most of this land. The Remaining Land constitutes a portion of the original tract sold by Dixon to BM318. Dixon asserts that BM318 defaulted in the repayment of this debt. Ultimately, BM318 conveyed the Remaining Land to Dixon pursuant to the Special Warranty Deed which was recorded on July 2, 2020.

D. On September 1, 2020, BM318 commenced the Bankruptcy Case and acted as a debtor-in-possession. The Bankruptcy Court ultimately confirmed a plan of reorganization proposed by BM318 in the Bankruptcy Case which became effective on or about August 2, 2021.

E. On April 23, 2021, Dixon sold the Lumar Land to Lumar. This land was conveyed to Lumar pursuant to the Lumar Deed. The Lumar Land constitutes a part of the Remaining Land.

F. On August 10, 2021, BM318 commenced the Adversary Proceeding against Dixon seeking to avoid the transfer of the Remaining Land by BM318 to Dixon pursuant to the Special Warranty Deed as a preferential or fraudulent transfer pursuant to sections 547 and 548 of the Bankruptcy Code. Dixon asserts that these avoidance claims by BM318 are without merit.

G. On October 27, 2021, BM318 filed the Lis Pendens which relates to its claims in the Adversary Proceeding against Dixon in relation to the Remaining Land. The Lis Pendens covers the Lumar Land as a part of the Remaining Land.

H. Lumar sought to intervene in the Adversary Proceeding based on the Lis Pendens, which burdens the Lumar Land. The Bankruptcy Court granted Lumar leave to intervene in the

Adversary Proceeding. In the Adversary Proceeding, Lumar asserts that BM318's avoidance claims as to the Remaining Land are without merit, and further asserts that it is also entitled to the protections of section 550(b)(1) and (2) of the Bankruptcy Code. BM318 contests Lumar's assertions.

I. On September 23, 2022, the Receiver Lawsuit was filed. Thereafter, the Receiver was appointed to serve in such capacity through the Receiver Order. Based on the Receiver Order, further proceedings in the Adversary Proceeding are stayed.

J. Pursuant to paragraph 1 on pages 2 and 3 of 25 of the Receiver Order, the Receiver is appointed as receiver for BM318 as one of the "Receivership Entities," thereby granting the Receiver exclusive control and possession of BM318's assets of whatever kind and wherever located, including all tangible and intangible property, and which are included as a part of the "Receivership Assets" as defined in the Receivership Order. Paragraph 3 of the Receiver Order clothes the Receiver with all power, right, and authority possessed by the officers, directors, and managers of each of the Receivership Entities, including BM318. Paragraph 6 grants the Receiver broad powers over the Receivership Assets, including the right to take any action which, prior to the entry of the Receiver Order, could have been taken by the officers, directors, managers, and agents of any of the Receivership Entities. BM318's claims and rights in relation to the Adversary Proceeding, including in relation to the Lis Pendens, constitute Receivership Assets subject to the Receiver's control pursuant to the Receiver Order. This includes the authority by the Receiver, subject to Court Approval, to fully settle and resolve all Claims asserted by BM318 in the Adversary Proceeding.

K. The Receiver and Lumar have entered into an Agreement for Sale of Land and Delivery of Partial Releases ("Sale Agreement") effective as of January 31, 2023, by which the Receiver agreed to the release of certain tracts of land subject to the Lis Pendens, thereby permitting Lumar to sell such tracts of land subject to the further terms of the Sale Agreement. The Sale Agreement was approved through an Order entered in the Receiver Lawsuit on February 22,

2023. The Sale Agreement provides a procedure to release the Lis Pendens as to certain specific tracts to facilitate sales of portions of the Lumar Land. However, the Sale Agreement does not release any of the Receiver's rights except as to specific portions of the Lumar Land identified in Certifications made by Lumar to the Receiver and for which the Receiver has agreed to execute a Partial Release.

L. On April 25, 2023, a mediation was held in Dallas, Texas, among the Receiver, Lumar, and Dixon. The Receiver and Lumar agreed in principle to settlement terms which are incorporated in this Settlement Agreement, although subject to Court Approval. At the mediation, Dixon and the Receiver also negotiated in principle a separate agreement to resolve the disputes and issues between them in relation to the Adversary Proceeding, which agreement will be the subject of a separate settlement agreement between Dixon and the Receiver. Dixon is not a party to this Settlement Agreement.

## IV. Terms and Conditions

ACCORDINGLY, for value received, including in consideration of the mutual covenants set forth below, the receipt and sufficiency of which is hereby acknowledged by each of the Parties, they hereby agree as follows:

1. Recitals True and Correct. The above recitals are true and correct and are incorporated as an integral and substantive part of this Settlement Agreement.

2. Court Approval. This Settlement Agreement is subject to, and it shall not be effective until, an order approving this Settlement Agreement is entered by the Bankruptcy Court and an order ratifying this Settlement Agreement is entered by the Receivership Court ("Court Approval"). Upon the Parties' execution of this Settlement Agreement, the Receiver shall file a motion in the Receivership Lawsuit seeking an order from the Receivership Court lifting the stay of the Bankruptcy Case for the purpose of the Parties seeking approval of this Settlement Agreement by the Bankruptcy Court. Upon the Receivership Court's entry of an order lifting of the stay of the Bankruptcy Case, the Parties shall file a motion (and shall attach an executed

copy of this Settlement Agreement thereto) seeking an order from the Bankruptcy Court approving this Settlement Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019. Upon the Bankruptcy Court's entry of an order approving the Settlement Agreement, the Receiver shall file a motion in the Receivership Lawsuit (and shall attach an executed copy of this Settlement Agreement thereto) seeking an order from the Receivership Court ratifying this Settlement Agreement. The Parties agree to cooperate in good faith to effectuate the terms and conditions of this Settlement Agreement, including taking all necessary actions to acquire Court Approval. If this Settlement Agreement does not receive Court Approval, it shall be null and void.

3. Dismissal of Adversary Proceeding. BM318 agrees that within five (5) business days of this Settlement Agreement receiving Court Approval, BM318 shall make all appropriate filings to dismiss, with prejudice, the Adversary Proceeding as against Lumar, with each Party to bear its own costs, expenses, and attorneys' fees. The judgment ("Final Judgment") dismissing the Adversary Proceeding shall be in form and substance substantially identical to the attached **Exhibit "A".** Because Dixon is believed to desire the entry of a single Final Judgment dismissing the Adversary Proceeding, the attached proposed form of the Final Judgment encompasses the dismissal of the Adversary Proceeding as to Dixon, even though Dixon is not a party to this Settlement Agreement. The Receiver shall reasonably cooperate with Lumar to devise a form of Final Judgment reasonably acceptable to the Receiver, Lumar and Dixon. However, if Lumar, in the exercise of its sole discretion, determines that it wishes to proceed to dismiss the Adversary Proceeding as between BM318 and Lumar without including Dixon in the Final Judgment, the Receiver shall cooperate with Lumar to sever the Claims pending in the Adversary Proceeding between BM318 and Lumar and to enter a Final Judgment on that basis.

4. Mutual Releases. The Parties shall each execute and deliver to the other at Closing a mutual general release ("General Release") releasing all Claims against all Parties, which shall be in form and substance substantially identical to the attached **Exhibit "B."**

5. Release of Lis Pendens. The Receiver shall execute and deliver to Lumar at Closing a release ("Release of Lis Pendens") releasing both the Lis Pendens and all other rights, claims, and interests in the Lumar Land, which release shall be in form and substance substantially identical to the attached **Exhibit "C."**

6. The Closing. The Closing shall occur within seven (7) days of this Settlement Agreement receiving Court Approval. At the Closing, the Parties shall make the following deliveries as required by this Settlement Agreement:

6.1 Lumar shall pay to the Receiver the sum of $75,000 via wire transfer or through certified funds which the Receiver agrees to hold in trust until each Approval Order is final and non-appealable (the "Settlement Payment");

6.2 Both Parties shall approve the Final Judgment for entry, and the fully executed Final Judgment shall be delivered to legal counsel for Lumar for entry in the Adversary Proceeding;

6.3 All Parties shall execute and deliver, each to the other, a duplicate original of the General Release; and

6.4 The Receiver shall execute, acknowledge, and deliver to Lumar in recordable form the Release of Lis Pendens.

7. Event of Default; Right to Cure and Remedies. Lumar's failure to make the Settlement Payment by the Closing shall constitute an "Event of Default" under this Settlement Agreement. Lumar shall have seven (7) days to cure an Event of Default for failing to make the timely Settlement Payment. If Lumar fails to make the Settlement Payment, then the Receiver, at his sole discretion, may bring suit against Lumar to: (a) enforce this Settlement Agreement; or (b) bring any avoidance claims he may hold for the recovery of any funds that may have been transferred to Lumar by BM318 or other Receivership Entities.

8. Attorneys' Fees and Costs. Each Party shall bear its own attorneys' fees and expenses in connection with the Adversary Proceeding, the Receiver Lawsuit, and the negotiation, preparation, and execution of this Settlement Agreement.

9. Cooperation and Further Assurances. The Parties shall cooperate in good faith to close and effectuate the transactions contemplated by this Settlement Agreement. This cooperation shall include the execution and delivery of all documents and the performance of all acts reasonably necessary to consummate and/or perform this Settlement Agreement. This shall include, if necessary, reasonable cooperation between the Receiver and Lumar to agree to a form of Final Judgment acceptable to Dixon or, if a separate Final Judgment is entered which does not include Dixon, reasonable cooperation to agree to an appropriate form of the Final Judgment on that basis.

10. Dixon. Dixon is neither a party to this Settlement Agreement nor a third-party beneficiary hereof. The use of the defined terms "Party" or "Parties" herein does not include Dixon.

11. Entire Agreement. This Settlement Agreement constitutes the entire agreement between the Parties hereto and supersedes and replaces all prior negotiations, proposals or agreements, written or oral, of any nature or substance relative thereto. Neither Party is relying upon, and hereby disclaims reliance on, any other representation, omission, or document not expressly contained in this Settlement Agreement.

12. Binding Effect. Subject to approval by the Receivership Court and the Bankruptcy Court, this Settlement Agreement shall be binding upon all Parties and their respective successors and assigns.

13. Representation by Counsel. The Parties acknowledge and understand that they are executing and delivering this Settlement Agreement with full knowledge of any and all rights which they may have with respect to the Claims herein settled and released. Each acknowledges that it was represented by and consulted with an attorney of its own choosing

before executing and delivering this Settlement Agreement to review this document and the claims being settled and released, and that each Party had a reasonable and sufficient opportunity to do so.

14. Notices. Unless otherwise specifically provided herein, any communication pursuant to this Settlement Agreement shall be in writing addressed to the respective Party as set forth below and may be (a) personally served, (b) sent by overnight courier service or certified or registered United States mail, or (c) transmitted by e-mail, and shall be deemed to have been given (x) if delivered in person, when delivered, (y) if delivered by e-mail, on the date of transmission if transmitted on a business day before 5:00 p.m. (Central time) or, if not, on the next succeeding business day, and (z) if delivered by courier or certified or registered United States mail, when received. Such communications shall be addressed as follows:

If to the Receiver:

Cort C. Thomas
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
E-mail: cort@brownfoxlaw.com

With a copy to:

Charlene C. Koonce
C. Alan Carrillo
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
E-mail: charlene@brownfoxlaw.com
E-mail: alan@brownfoxlaw.com

If to Lumar:

Lumar Land & Cattle, LLC
5189 E I-20 Service Road N, Suite 106
Willow Park, Texas 76087
Attention: Jim Martin
E-Mail: jim@martinlandsales.com
E-Mail: ron@railheadrealty.com

With a copy to:

J. Robert Forshey
Forshey & Prostok, LLP
777 Main Street, Suite 1550
Fort Worth, Texas 76102
E-mail: bforshey@forsheyprostok.com

Kimberly P. Harris
Joshua L. Shepherd
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
E-mail: kharris@qslwm.com
E-mail: jshepherd@qslwm.com

15. Counterparts. This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The Parties agree that copies of this Settlement Agreement shall have the same effect and may be accepted with the same authority as the original and that this Settlement Agreement may be executed electronically and in counterparts.

16. Authority. Each Party represents to the other that, subject to Court Approval, they have the full legal right and authority required to enter into this Settlement Agreement and to compromise and settle all claims under the terms and conditions set forth herein. The Parties also represent that the signatures on behalf of the Parties, or their counsel, to this Settlement Agreement is sufficient, without further approval of third parties, other than Court Approval, to fully bind such Party to the terms hereof, including without limitation, each of the payment obligations and releases set forth herein.

17. Amendments. This Settlement Agreement may only be amended, modified, or supplemented by a separate written document duly executed by authorized representatives of the Parties or their legal successors in interest.

18. Severability. If any provision of this Settlement Agreement shall be held to be invalid or unenforceable, the validity or enforceability of the remaining provisions shall not in any way be affected or impaired thereby, but rather this Settlement Agreement shall be construed as if not containing the invalid or unenforceable provision. However, if such provision is an essential

element of this Settlement Agreement, such as the release provisions, then the Parties shall promptly attempt in good faith to negotiate a suitable replacement provision.

19. Governing Law. This Settlement Agreement shall be construed in accordance with and governed by the laws of the State of Texas (excluding the laws applicable to conflicts or choice of law). The parties agree that jurisdiction to interpret any dispute arising out of or related to performance of this Settlement Agreement lies solely in the Receivership Court.

20. Headings. Section or paragraph headings are for convenience of reference only and shall not impact or affect the interpretation of this Settlement Agreement.

21. Interpretation. This Settlement Agreement has been jointly drafted by counsel for both Parties and shall not be strictly interpreted or construed against either Party.

22. Exhibits. Reference is here made to all exhibits which are hereby incorporated as a part of this Settlement Agreement.

**IN WITNESS WHEREOF**, each of the Parties has executed this instrument on the dates indicated below.

**Executed on this 26th day of June, 2023**

Lumar Land & Cattle, ~~LLP~~, LLC

By: ______________________
Jim Martin, its Manager

**Executed on this 20th day of June, 2023**

Receiver:

By: ______________________, Receiver
Cortney C. Thomas, Receiver

**Exhibit A**
**to**
**<u>Settlement Agreement</u>**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| BM318, LLC, | § | Case No. 20-42789-MXM |
| | § | |
| Debtor | § | |
| | § | |
| BM318, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. Pro. No. 21-04051-MXM |
| | § | |
| THE DIXON WATER FOUNDATION, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| LUMAR LAND & CATTLE, LLC | § | |
| | § | |
| Plaintiff-in-Intervention | § | |

**FINAL JUDGMENT**

This adversary proceeding was commenced by BM318, LLC ("BM318"), as the plaintiff, against The Dixon Water Foundation ("Dixon"), as the defendant. Thereafter, Lumar Land & Cattle, LLC ("Lumar") was granted leave to intervene in this adversary proceeding. Cortney C. Thomas ("Receiver") has been appointed as Receiver for BM318 through the following lawsuit ("Receivership Lawsuit"):

> *Securities and Exchange Commission, Plaintiff v. Timothy Barton, et al., Defendants*, Case 3:22-cv-2118-X, in the United States District Court for the Northern District of Texas, Dallas Division.

The Receiver (acting on behalf of BM318) and Lumar have entered into a Settlement Release Agreement ("Lumar Settlement Agreement") which fully resolves all claims and disputes pending between them in this adversary proceeding. Dixon is not a party to the Lumar Settlement Agreement. The Lumar Settlement Agreement has been approved on behalf of the Receiver, acting on behalf of BM318, by both the district court in the Receivership Lawsuit and

by this Court as part of this bankruptcy case. Pursuant to the Lumar Settlement Agreement, the Receiver and Lumar have agreed to the entry of this Final Judgment fully and finally settling and dismissing all claims and disputes between them in this adversary proceeding.

The Receiver (also acting on behalf of BM318) and Dixon have entered into a separate Settlement Agreement ("Dixon Settlement Agreement") which fully resolves all matters pending between them in this adversary proceeding. Lumar is not a party to the Dixon Settlement Agreement. The Dixon Settlement Agreement has been approved on behalf of the Receiver, acting on behalf of BM318, by both the district court in the Receivership Lawsuit and by this Court in this bankruptcy case. Pursuant to the Dixon Settlement Agreement, the Receiver and Dixon have agreed to the entry of this Final Judgment fully and finally settling and dismissing all claims and disputes between them in this adversary proceeding.

ACCORDINGLY, it is hereby ORDERED, ADJUDGED and DECREED that:

1. All claims, causes of action, or other claims for any form of relief asserted in this adversary proceeding by any party are hereby dismissed with prejudice to the refiling of the same. This dismissal with prejudice shall encompass not only the claims actually asserted by any party in this adversary proceeding, but also any claim, cause of action or claim for relief which could have been asserted based upon the transactions or occurrences which form the subject matter of this adversary proceeding.

2. All attorney's fees and costs of court shall be borne by the party initially incurring the same.

3. This judgment is a final judgment fully and finally disposing of all claims, causes of action, or claims for relief asserted by any party in this adversary proceeding.

4. The Court retains jurisdiction to construe and enforce this Final Judgment.

**Approved for Entry**:

______________________________
Deborah Perry
Munsch Hardt Kopf & Harr, P.C.
500 N. Akard Street, Ste. 3800
Dallas, TX 75201

**Counsel for The Dixon Water Foundation**

______________________________
Charlene C. Koonce
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, TX 75225

**Counsel for Receiver, Cortney C. Thomas**

______________________________
J. Robert Forshey
Forshey & Prostok, LLP
777 Main Street, Suite 1550
Fort Worth, Texas 76102

**Counsel for Intervenor, Lumar Land & Cattle, LLC**

L:\BFORSHEY\Lumar Land & Cattle, LLC (BM318)(non-bnkrptcy)#6323\Barton - SEC Civil Suit 22-cv-02118 (Receivership)\Final Judgment (BF & KPH v) 5.18.23.doc

**Exhibit B**
**to**
**<u>Settlement Agreement</u>**

## Mutual General Release

### I. Parties

A. The parties (individually, a "Party" and, collectively, the "Parties") to this Mutual General Release ("Release") are as follows:

i. Cortney C. Thomas, in his capacity as a receiver ("Receiver") pursuant to the Receiver Order entered in the Receiver Lawsuit (both as defined below); and

ii. Lumar Land & Cattle, LLC ("Lumar"), a Texas limited liability company.

### II. Definitions

B. As used in this Release, the following terms shall have the respective meanings set forth below:

i. The term "Adversary Proceeding" shall refer to the following adversary proceeding commenced by BM318 as a part of the Bankruptcy Case:

> *BM318, LLC, Plaintiff v. The Dixon Water Foundation, Defendant, Lumar Land & Cattle, LLC, Plaintiff-in-intervention*, Adv. No. 21-04051-mxm, United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

ii. The term "Bankruptcy Case" shall refer to the following bankruptcy case commenced by BM318:

> *In re BM318, LLC*, Case No. 20-4789-mxm, United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

iii. The term "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Northern District of Texas, the court before whom the Bankruptcy Case is pending.

iv. The term "BM318" shall mean BM318, LLC, a Texas limited liability company, the debtor in the Bankruptcy Case and the Plaintiff in the Adversary Proceeding.

v. The term "<u>Claim</u>" shall be broadly construed and shall include any claim, demand, action, liability, cause of action, obligation, damage, controversy, or right to payment, whether or not reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, secured or unsecured, whether known or unknown, suspected or unsuspected, and whether based on any contract or agreement or grounded in tort law or the common law, and whether arising under any law, regulation or statute of the United States or any of state or any subdivision thereof, as well as any equitable right or remedy and all remedial rights or claims of any kind. This shall include any Claim by any Party asserted in, or sought to be asserted in, or which arises out of the transactions or occurrences which are the subject of, the Adversary Proceeding.

vi. The term "<u>Lumar Affiliates</u>" shall include the following persons or entities: (i) Jimmy Ray Martin, (ii) G.H. Lumar JV, (iii) Aledo West, LLC, (iv) G.H. Lumar LLC, (v) the Estate of Gary Z. Luker Sr., (vi) Ronald Hughes, (vii) Railhead Realty, LLC, and (ix) Lumar's members, managers, officers, representatives, employees, agents, attorneys (including Forshey & Prostok, LLP and Quilling, Selander, Lownds, Winslett & Moser, PC), accountants and other professionals (including Republic Title of Texas and New Reunion Title LLC d/b/a Reunion Title), both past or present, as to any Claim in any way related to or arising out of Lumar, the Lumar Land, the Receivership, or the Adversary Proceeding.

vii. The term "<u>Receiver Affiliates</u>" shall include (i) the Receivership Entities, and (ii) the Receiver's agents, representatives, attorneys, accountants, and other professionals, both past or present, as to any Claim relating to or arising out of the Receivership, Lumar, the Lumar Land, or the Adversary Proceeding.

viii. The term "<u>Receivership Court</u>" shall mean the United States Bankruptcy Court for the Northern District of Texas, the District Court before whom the Receiver Lawsuit is pending.

ix. The term "<u>Receiver Lawsuit</u>" shall refer to the following lawsuit in which the Receiver was appointed:

*Securities and Exchange Commission, Plaintiff v. Timothy Barton, et al., Defendants*, Case 3:22-CV-2118-X, in the United States District Court for the Northern District of Texas, Dallas Division.

**III. Recitals**

C. The Receiver and Lumar have entered into a Settlement and Release Agreement ("Settlement Agreement") which has been approved by the Receivership Court pursuant to an order entered in the Receiver Lawsuit on _______________, 2023, and by the Bankruptcy Court in an order entered on __________________, 2023 in the Bankruptcy Case. Reference is here made to the Settlement Agreement and the orders respectively entered by the Receivership Court and Bankruptcy Court approving the Settlement Agreement.

D. Pursuant to the Settlement Agreement, the Parties have agreed to the execution and delivery, each to the other, of this Release.

**IV. Mutual Release**

ACCORDINGLY, pursuant to the terms of the Settlement Agreement, and for other good and valuable consideration, including the mutual releases by the Parties herein, the receipt and sufficiency of which is hereby acknowledged by each Party, they hereby agree and release each other as set forth below:

1. Reference is here made to the Settlement Agreement for all purposes. The above recitals are true and correct and are hereby incorporated as an integral and substantive part of this Release.

2. Lumar hereby releases all Claims against the Receiver and each of the Receiver Affiliates.

3. The Receiver hereby releases all Claims against Lumar and each of the Lumar Affiliates.

4. This Release shall be immediately binding and effective as between the Parties upon execution and delivery, and all conditions precedent to the effectiveness of this Release have been satisfied by the occurrence, waiver, or performance thereof.

5. This Release shall be construed pursuant to Texas law.

6. This Release shall be binding upon, and inure to the benefit of, the Receiver and Lumar and their respective successors in interest and assignees.

7. This Release shall be effective on the date on which it has been signed by both Parties.

Executed this ____ day of ____________, 2023.

**RECEIVER**:

_________________________
Cortney C. Thomas, Receiver

Executed this ____ day of _________, 2023

**LUMAR**:

Lumar Land & Cattle, LLC

By: _____________________
Jim Martin, its manager

**Exhibit C**
**to**
**<u>Settlement Agreement</u>**

# RELEASE OF LIS PENDENS

## I. Parties

A. This Release of Lis Pendens Release is executed by Cortney C. Thomas, in his capacity as Receiver ("Receiver") pursuant to the Receiver Order entered in the Receiver Lawsuit (as both are defined below), to release the Lis Pendens (as defined below) and all other rights, title, interest, claims, and causes of action which encumber certain land owned by Lumar Land & Cattle, LLC ("Lumar"), a Texas limited liability company.

## II. Definitions

B. As used in this Partial Release, the following terms shall have the respective meanings set forth below:

i. The term "Adversary Proceeding" shall refer to the following adversary proceeding commenced by BM318 as a part of the Bankruptcy Case:

> *BM318, LLC, Plaintiff v. The Dixon Water Foundation, Defendant, Lumar Land & Cattle, LLC, Plaintiff-in-intervention*, Adv. No. 21-04051-mxm, United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

ii. The term "Bankruptcy Case" shall refer to the following bankruptcy case commenced by BM318:

> *In re BM318, LLC*, Case No. 20-4789-mxm, United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division

iii. The term "BM318" shall mean BM318, LLC, a Texas limited liability company, the debtor in the Bankruptcy Case and the plaintiff in the Adversary Proceeding.

iv. The term "Dixon" shall mean The Dixon Water Foundation, f/k/a The Dixon Foundation, a non-profit foundation, the original defendant in the Adversary Proceeding.

v. The term "Lis Pendens" shall mean the Notice of Lis Pendens relating to BM318's claims in the Adversary Proceeding and filed by BM318 on October 27, 2021, as Document No. 202142097 in the Official Records of Parker County, Texas.

vi. The term "Lumar Deed" shall mean the Special Warranty Deed with Vendor's Lien executed by Dixon, as grantor, to Lumar, as grantee, covering the Lumar Land and recorded on April 23, 2021, as Document no. 202116538 in the Official Records of Parker County, Texas.

vii. The term "Lumar Land" shall refer to the 204.50-acre tract located in Parker County, Texas, which is more fully described in the Lumar Deed and in the attached **Exhibit "A"**.

viii. The term "Original Tract" shall mean the 2,055.77-acre tract located in Parker County, Texas, which was sold by Dixon to BM318 in 2018.

ix. The term "Receiver Lawsuit" shall refer to the following lawsuit in which the Receiver was appointed:

> *Securities and Exchange Commission, Plaintiff v. Timothy Barton, et al., Defendants*, Case 3:22-CV-2118-X, in the United States District Court for the Northern District of Texas, Dallas Division.

x. The term "Receiver Order" shall refer to an *Order Appointing Receiver* entered as Docket no. 29 in the Receiver Lawsuit on October 18, 2022, a true and accurate copy of which is attached hereto as **Exhibit "B"**.

xi. The term "Remaining Land" shall mean the 1,531.75 acre tract of land located in Parker County, Texas, which is the subject of BM318's claims in the Adversary Proceeding but excluding therefrom the Lumar Land.

xii. The term "Special Warranty Deed" shall mean the deed conveying the Remaining Land from BM318, as grantor, to Dixon, as grantee, and recorded on July 2, 2020 as Document no. 202019524 in the Official Records of Parker County, Texas.

## III. Recitals

C. Dixon sold the Original Tract to BM318 during 2018. The majority of the purchase price for the Original Tract was provided through owner financing by Dixon and secured by a deed of trust against most of the Original Tract. The Remaining Land constitutes a portion of the Original Tract. Dixon asserts that BM318 defaulted in the repayment of this debt. Ultimately, BM318 conveyed the Remaining Land to Dixon pursuant to the Special Warranty Deed which was recorded on July 2, 2020.

D. On September 1, 2020, BM318 commenced the Bankruptcy Case and acted as a debtor-in-possession. The Bankruptcy Court ultimately confirmed a plan of reorganization proposed by BM318 in the Bankruptcy Case which became effective on August 2, 2021.

E. On April 23, 2021, Dixon sold the Lumar Land to Lumar. The land was conveyed to Lumar pursuant to the Lumar Deed. The Lumar Land constitutes a part of the Remaining Land. Lumar financed a portion of the purchase price through loans from the Bank evidenced by Note 1, which Lumar represents is secured by both Deed of Trust 1 and Deed of Trust 2. Lumar financed some of the costs to develop the Lumar Land for sale through a second loan from the Bank evidenced by Note 2, which Lumar represents is also secured by both Deed of Trust 1 and Deed of Trust 2.

F. On August 10, 2021, BM318 commenced the Adversary Proceeding against Dixon seeking to avoid the transfer of the Remaining Land by BM318 to Dixon pursuant to the Special Warranty Deed as a preferential or fraudulent transfer pursuant to sections 547 and 548 of the Bankruptcy Code. Dixon asserts that these avoidance claims by BM318 are without merit

G. On October 27, 2021, BM318 filed the Lis Pendens which relates to its claims in the Adversary Proceeding against Dixon in relation to the Remaining Land.

H. Lumar sought to intervene in the Adversary Proceeding based on the Lis Pendens which burdens the Lumar Tract as a part of the Remaining Land. The Bankruptcy Court granted Lumar leave to intervene in the Adversary Proceeding. In the Adversary Proceeding, Lumar

asserts that BM318's avoidance claims as to the Remaining Land are without merit, and further asserts that it is also entitled to the protections of section 550(b)(1) and (2) of the Bankruptcy Code. Lumar further asserts that, in addition to the lack of merit in BM318's avoidance claims, the Bank's rights in the Lumar Land pursuant to the Deed of Trust 1 and Deed of Trust 2 are further protected by section 550(b)(2) of the Bankruptcy Code. BM318 contests Lumar's assertions.

I. On September 23, 2022, the Receiver Lawsuit was filed. Thereafter, the Receiver was appointed to serve in such capacity through the Receiver Order. Based on the Receiver Order, further proceedings in the Adversary Proceeding are stayed.

J. Pursuant to paragraph 1 of the Receiver Order, the Receiver is appointed as receiver for BM318, as one of the "Receivership Entities," with exclusive control and possession of the BM318 assets, of whatever kind and wherever located, including all tangible and intangible property, and which are included as part of the "Receivership Assets". Paragraph 3 of the Receiver Order clothes the Receiver with all power, right and authority possessed by the officers, directors, and managers of each of the Receivership Entities, which includes BM318. Paragraph 6 grants the Receiver broad powers over the Receivership Assets, including the right to take any action which, prior to the entry of the Receiver Order, could have been taken by the officers, directors, managers, and agent of any of the Receivership Entities.

K. BM318's claims and rights in relation to the Adversary Proceeding, including in relation to the Lis Pendens, constitute Receivership Assets subject to the Receiver's control pursuant to the Receiver Order. This allows the Receiver to settle and resolve the Adversary Proceeding and release the Lis Pendens.

L. The Receiver has entered into this Partial Release based on the provisions of the Receiver Order, his control of BM318 as one of the Receivership Entities, and his control of all property of BM318 as part of the Receivership Assets.

M. The Receiver (acting on behalf of BM318) has entered into a Settlement Agreement ("Settlement Agreement") with Lumar to settle and resolve all claims among them in the Adversary Proceeding. This Settlement Agreement has been approved by the Receivership Court pursuant to an order entered on __________, 2023, and by the Bankruptcy Court pursuant to an order entered on _________________, 2023.

N. This Release is executed and delivered by the Receiver pursuant to the Settlement Agreement.

## IV. Release of Lis Pendens

FOR VALUE RECEIVED, pursuant to the terms of the Settlement Agreement, acting with regard to the Receivership Assets of BM318 as one of the Receivership Entities subject to the Receiver Order, the Receiver hereby releases the Lis Pendens as against the Lumar Land. By so releasing the Lis Pendens against the Lumar Land, the Receiver also releases all rights, title, interest, claims, and causes of action against the Lumar Land, including all claims relating to the Lumar Land asserted or which could have been asserted in the Adversary Proceeding.

Any other term hereof notwithstanding, by this Release the Receiver does not release, impair or impact any right, title, interest, claims, and causes of action of or by BM318 against any portion of the Remaining Land.

Executed and effective as of this _____________ day of _____________, 2023.

**RECEIVER**:

______________________________
Cortney C. Thomas, as Receiver
Pursuant to the Receivership Order

**ACKNOWLEDGMENT**:

STATE OF TEXAS

COUNTY OF DALLAS

This instrument was acknowledged before me on the _____ day of ________________, 202__, by Cortney C. Thomas, as Receiver for BM318, LLC.

My commission expires: _________________________

______________________________
Notary Public, State of Texas

**WHEN RECORDED, RETURN TO:**

J. Robert Forshey
Forshey & Prostok, LLP
777 Main Street, Suite 1550
Fort Worth, Texas 76102

L:\BFORSHEY\Lumar Land & Cattle, LLC (BM318)(non-bnkrptcy)#6323\Barton - SEC Civil Suit 22-cv-02118 (Receivership)\Release of Lis Pendens 5.3.23.docx

**EXHIBIT "A"**

The Lumar Land is described as follows:

**EXHIBIT "B"**

Receivership Order entered on October 18, 2022 in the following lawsuit:

> *Securities and Exchange Commission, Plaintiff v. Timothy Barton, et al., Defendants*, Case 3:22-CV-2118-X, in the United States District Court for the Northern District of Texas, Dallas Division.

**Exhibit "2"**
**to**
**Reaffirmation and Adoption Agreement**

**Mutual General Release**

# Mutual General Release

## I. Parties

K. The parties (individually, a "Party" and, collectively, the "Parties")[1] to this Mutual General Release ("Release") are as follows:

iii. Cortney C. Thomas, in his capacity as a receiver (" Second Receiver") pursuant to the Second Receiver Order entered in the Receiver Lawsuit (both as defined below); and

iv. Lumar Land & Cattle, LLC ("Lumar"), a Texas limited liability company.

## II. Definitions

L. As used in this Release, the following terms shall have the respective meanings set forth below:

vii. The term "Adversary Proceeding" shall refer to the following adversary proceeding commenced by BM318 as a part of the Bankruptcy Case:

> *BM318, LLC, Plaintiff v. The Dixon Water Foundation, Defendant, Lumar Land & Cattle, LLC, Plaintiff-in-intervention*, Adv. No. 21-04051-mxm, United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

viii. The term "Bankruptcy Case" shall refer to the following bankruptcy case commenced by BM318:

> *In re BM318, LLC*, Case No. 20-4789-mxm, United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

ix. The term "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Northern District of Texas, which is the court before whom the Bankruptcy Case is pending.

x. The term "BM318" shall mean BM318, LLC, a Texas limited liability company, the debtor in the Bankruptcy Case and the Plaintiff in the Adversary Proceeding.

xi. The term "Claim" shall be broadly construed and shall include any claim, demand, action, liability, cause of action, obligation, damage, controversy, or right to payment, whether or not reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, secured or unsecured, whether known or unknown, suspected or unsuspected, and whether based on any contract or agreement or grounded in tort law or the common law, and whether arising under any law, regulation or statute of the United States or any of state or any subdivision thereof, as well as any equitable right or remedy and all remedial rights or claims of any kind. This shall include any Claim by

[1] The Dixon Water Foundation, f/k/a The Dixon Foundation, a non-profit foundation, the original defendant in the Adversary Proceeding ("Dixon"), is neither a party to the Settlement Agreement (as defined herein) nor a third-party beneficiary hereof. The use of the defined terms "Party" or "Parties" herein does not include Dixon.

any Party asserted in, or sought to be asserted in, or which arises out of, the transactions or occurrences which are the subject of, the Adversary Proceeding.

xii. The term "Lumar Affiliates" shall include the following persons or entities: (i) Jimmy Ray Martin, (ii) G.H. Lumar JV, (iii) Aledo West, LLC, (iv) G.H. Lumar LLC, (v) the Estate of Gary Z. Luker Sr., (vi) Ronald Hughes, (vii) Railhead Realty, LLC, and (ix) Lumar's members, managers, officers, representatives, employees, agents, attorneys (including Forshey & Prostok, LLP and Quilling, Selander, Lownds, Winslett & Moser, PC), accountants and other professionals (including Republic Title of Texas and New Reunion Title LLC d/b/a Reunion Title), both past or present, as to any Claim in any way related to or arising out of Lumar, the Lumar Land, the Receivership, or the Adversary Proceeding.

xiii. The term "Second Receiver Affiliates" shall include (i) the Receivership Entities, and (ii) the Receiver's agents, representatives, attorneys, accountants, and other professionals, both past or present, as to any Claim relating to or arising out of the Receivership, Lumar, the Lumar Land, or the Adversary Proceeding.

xiv. The term "Receivership Court" shall mean the United States District Court for the Northern District of Texas, which is the district court before whom the Receiver Lawsuit is pending.

xv. The term "Receiver Lawsuit" shall refer to the following lawsuit in which the Receiver was appointed:

> *Securities and Exchange Commission v. Timothy Barton, et al.*, Case 3:22-CV-2118-X, in the United States District Court for the Northern District of Texas, Dallas Division.

xvi. The term "Second Receiver Order" shall mean the Order Appointing Receiver entered on November 29, 2023, as Document no. 417 in the Receiver Lawsuit appointing the Second Receiver.

## III. Recitals

M. The Second Receiver and Lumar have entered into a Settlement and Release Agreement ("Settlement Agreement"). The Settlement Agreement is subject to the Agreement to Reaffirm and Adopt the Settlement and Release Agreement (the "Reaffirmation and Adoption Agreement") among the Receiver and Lumar. References herein to the Settlement Agreement refer to the Settlement Agreement as restated and adopted through the Reaffirmation and Adoption Agreement.

N. The Receivership Court has entered an Order on ___________, 2024, as docket no. ___, modifying the litigation stay to allow the Parties to obtain approval of the Settlement Agreement.

O. The Settlement Agreement has been approved by the Bankruptcy Court pursuant to an order entered in the Bankruptcy Case on ______________, 2024 as docket no. ____, and ratified by the Receivership Court in an order entered on _________________, 2024, as docket no. ____ in the Receivership Lawsuit. Reference is here made to the Settlement Agreement and the orders respectively entered by the Receivership Court and Bankruptcy Court approving or ratifying the Settlement Agreement.

P. Pursuant to the Settlement Agreement, the Parties have agreed to the execution and delivery, each to the other, of this Release.

**IV. Mutual Release**

ACCORDINGLY, pursuant to the terms of the Settlement Agreement, and for other good and valuable consideration, including the mutual releases by the Parties herein, the receipt and sufficiency of which is hereby acknowledged by each Party, they hereby agree and release each other as set forth below:

1. The above recitals are true and correct and are hereby incorporated as an integral and substantive part of this Release.

2. Lumar hereby releases all Claims against the Second Receiver and each of the Second Receiver Affiliates.

3. The Second Receiver hereby releases all Claims against Lumar and each of the Lumar Affiliates.

4. This Release shall be immediately binding and effective as between the Parties upon execution and delivery, and all conditions precedent to the effectiveness of this Release have been satisfied by the occurrence, waiver, or performance thereof.

5. This Release shall be construed pursuant to Texas law.

6. This Release shall be binding upon, and inure to the benefit of, the Receiver and Lumar and their respective successors in interest and assignees.

7. This Release shall be effective on the date on which it has been signed by both Parties.

**RECEIVER:**

______________________________
Cortney C. Thomas, Second Receiver

Executed this ____ day of ____________, 2024.

**LUMAR**:

Lumar Land & Cattle, LLC

By: ____________________
Jim Martin, its manager

Executed this ____ day of _________, 2024

**Exhibit "3"**
**to**
**Reaffirmation and Adoption Agreement**

**Release of Lis Pendens**

# RELEASE OF LIS PENDENS

## I. Parties

A. This Release of Lis Pendens, ("Release") is executed by Cortney C. Thomas, in his capacity as Receiver ("Second Receiver") pursuant to the Second Receiver Order entered in the Receiver Lawsuit (as both are defined below), to release the Lis Pendens (as defined below) and all other rights, title, interest, claims, and causes of action which encumber certain land owned by Lumar Land & Cattle, LLC ("Lumar"), a Texas limited liability company.

## II. Definitions

B. As used in this Partial Release, the following terms shall have the respective meanings set forth below:

i. The term "Adversary Proceeding" shall refer to the following adversary proceeding commenced by BM318 as a part of the Bankruptcy Case:

> *BM318, LLC, Plaintiff v. The Dixon Water Foundation, Defendant, Lumar Land & Cattle, LLC, Plaintiff-in-intervention*, Adv. No. 21-04051-mxm, United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

ii. The term "Bankruptcy Case" shall refer to the following bankruptcy case commenced by BM318:

> *In re BM318, LLC*, Case No. 20-4789-mxm, United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

iii. The term "BM318" shall mean BM318, LLC, a Texas limited liability company, the debtor in the Bankruptcy Case and the plaintiff in the Adversary Proceeding.

iv. The term "Dixon" shall mean The Dixon Water Foundation, f/k/a The Dixon Foundation, a non-profit foundation, the original defendant in the Adversary Proceeding.

v. The term "Lis Pendens" shall mean the Notice of Lis Pendens relating to BM318's claims in the Adversary Proceeding and filed by BM318 on October 27, 2021, as Document No. 202142097 in the Official Records of Parker County, Texas.

vi. The term "Lumar Deed" shall mean the Special Warranty Deed with Vendor's Lien executed by Dixon, as grantor, to Lumar, as grantee, covering the Lumar Land and recorded on April 23, 2021, as Document no. 202116538 in the Official Records of Parker County, Texas.

vii. The term "Lumar Land" shall refer to the 204.50-acre tract located in Parker County, Texas, which is more fully described in the Lumar Deed and in the attached **Exhibit "A."**

viii. The term "Original Tract" shall mean the 2,055.77-acre tract located in Parker County, Texas, which was sold by Dixon to BM318 in 2018.

ix. The term "Receiver Lawsuit" shall refer to the following lawsuit in which the Receiver was appointed:

> *Securities and Exchange Commission v. Timothy Barton, et al.,* Case 3:22-CV-2118-X, in the United States District Court for the Northern District of Texas, Dallas Division.

x. The term "Second Receiver Order" shall refer to an Order Appointing Receiver entered as Docket no. 417 in the Receiver Lawsuit on November 29, 2023, a true and accurate copy of which is attached hereto as **Exhibit "B"** appointing the Second Receiver.

xi. The term "Remaining Land" shall mean the 1,531.75 acre tract of land located in Parker County, Texas, which is the subject of BM318's claims in the Adversary Proceeding but excluding therefrom the Lumar Land.

xii. The term "Special Warranty Deed" shall mean the deed conveying the Remaining Land from BM318, as grantor, to Dixon, as grantee, and recorded on July 2, 2020 as Document no. 202019524 in the Official Records of Parker County, Texas.

## III. Recitals

C. Dixon sold the Original Tract to BM318 during 2018. The majority of the purchase price for the Original Tract was provided through owner financing by Dixon and secured by a deed of trust against most of the Original Tract. The Remaining Land constitutes a portion of the Original Tract. Dixon asserts that BM318 defaulted in the repayment of this debt. Ultimately, BM318 conveyed the Remaining Land to Dixon pursuant to the Special Warranty Deed which was recorded on July 2, 2020.

D. On September 1, 2020, BM318 commenced the Bankruptcy Case and acted as a debtor-in-possession. The Bankruptcy Court ultimately confirmed a plan of reorganization proposed by BM318 in the Bankruptcy Case which became effective on August 2, 2021.

E. On April 23, 2021, Dixon sold the Lumar Land to Lumar. The land was conveyed to Lumar pursuant to the Lumar Deed. The Lumar Land constitutes a part of the Remaining Land. Lumar financed a portion of the purchase price through loans from a third party lender.

F. On August 10, 2021, BM318 commenced the Adversary Proceeding against Dixon seeking to avoid the transfer of the Remaining Land by BM318 to Dixon pursuant to the Special Warranty Deed as a preferential or fraudulent transfer pursuant to sections 547 and 548 of the Bankruptcy Code. Dixon asserts that these avoidance claims by BM318 are without merit.

G. On October 27, 2021, BM318 filed the Lis Pendens which relates to its claims in the Adversary Proceeding against Dixon in relation to the Remaining Land.

H. Lumar sought to intervene in the Adversary Proceeding based on the Lis Pendens, which burdens the Lumar Tract as a part of the Remaining Land. The Bankruptcy Court granted Lumar leave to intervene in the Adversary Proceeding. In the Adversary Proceeding, Lumar asserts that BM318's avoidance claims as to the Remaining Land are without merit, and further asserts that it is also entitled to the protections of section 550(b)(1) and (2) of the Bankruptcy Code. Lumar further asserts that, in addition to the lack of merit in BM318's avoidance claims,

the lender's rights in the Lumar Land pursuant to its deeds of trust are further protected by section 550(b)(2) of the Bankruptcy Code. BM318 contests Lumar's assertions.

I. On September 23, 2022, the Receiver Lawsuit was filed. Thereafter, the Second Receiver was appointed to serve in such capacity through the Second Receiver Order. Based on the Second Receiver Order, further proceedings in the Adversary Proceeding are stayed.

J. Pursuant to paragraph 1 of the Second Receiver Order, the Second Receiver is appointed as receiver for BM318, as one of the "Receivership Entities," with exclusive control and possession of the BM318 assets, of whatever kind and wherever located, including all tangible and intangible property, and which are included as part of the "Receivership Property". Paragraph 3 of the Second Receiver Order clothes the Second Receiver with all power, right and authority possessed by the officers, directors, and managers of each of the Receivership Entities, which includes BM318. Paragraph 6 grants the Second Receiver broad powers over the Receivership Property, including the right to take any action which, prior to the entry of the Second Receiver Order, could have been taken by the officers, directors, managers, and agent of any of the Receivership Entities.

K. BM318's claims and rights in relation to the Adversary Proceeding, including in relation to the Lis Pendens, constitute Receivership Assets subject to the Second Receiver's control pursuant to the Second Receiver Order. This allows the Receiver to settle and resolve the Adversary Proceeding and release the Lis Pendens.

L. The Second Receiver has executed this Release based on the provisions of the Second Receiver Order, his control of BM318 as one of the Receivership Entities, and his control of all property of BM318 as part of the Receivership Assets.

M. The Second Receiver (acting on behalf of BM318) has entered into a Settlement and Release Agreement ("Settlement Agreement") with Lumar to settle and resolve all claims among them in the Adversary Proceeding. The Settlement Agreement is subject to the Agreement to Reaffirm and Adopt the Settlement and Release Agreement ("Reaffirmation and Adoption Agreement") among the Second Receiver and Lumar. References herein to the Settlement Agreement refer to the Settlement Agreement subject to the Reaffirmation and Adoption Agreement.

N. The District Court has entered an Order on __________, 2024, as docket no. ____, modifying the litigation stay contained in the Second Receiver Order to allow the Parties to seek approval of the Settlement Agreement and the Reaffirmation and Adoption Agreement. This Settlement Agreement has been approved by the Bankruptcy Court pursuant to an order entered on __________, 2024, as docket no. ____, and ratified by the Receivership Court pursuant to an order entered on _______________, 2024, as docket no. _____.

O. This Release is executed and delivered by the Second Receiver pursuant to the Settlement Agreement.

## IV. Release of Lis Pendens

FOR VALUE RECEIVED, pursuant to the terms of the Settlement Agreement, acting with regard to the Receivership Assets of BM318 as one of the Receivership Entities subject to the Second Receiver Order, the Second Receiver hereby releases the Lis Pendens as against the Lumar Land. By so releasing the Lis Pendens against the Lumar Land, the Second Receiver

also releases all rights, title, interest, claims, and causes of action against the Lumar Land, including all claims relating to the Lumar Land asserted or which could have been asserted in the Adversary Proceeding.

Any other term hereof notwithstanding, by this Release the Second Receiver does not release, impair or impact any right, title, interest, claims, and causes of action of or by BM318 against any portion of the Remaining Land.

Executed and effective as of this _____________ day of _____________, 2024.

**SECOND RECEIVER**:

___________________________________
Cortney C. Thomas, as Second Receiver
Pursuant to the Second Receivership Order

**ACKNOWLEDGMENT**:

STATE OF TEXAS

COUNTY OF DALLAS

This instrument was acknowledged before me on the _____ day of ________________, 2024, by Cortney C. Thomas, as Receiver for BM318, LLC.

My commission expires: _________________________

______________________________
Notary Public, State of Texas

**WHEN RECORDED, RETURN TO:**

J. Robert Forshey
Forshey & Prostok, LLP
777 Main Street, Suite 1550
Fort Worth, Texas 76102