Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **BM318, LLC,** | § | **CASE NO. 20-42789-mxm-11** |
| | § | |
| **DEBTOR.** | § | **CHAPTER 11** |

# SECOND AMENDED DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF REORGANIZATION DATED NOVEMBER 19, 2020

Case 20-42789-mxm11 Doc 151-12 Filed 01/04/21 Entered 01/04/21 16:15:24 Page 2 of 67

# TABLE OF CONTENTS

ARTICLE I – INTRODUCTION ........ 3

ARTICLE II - REPRESENTATIONS ........ 9

ARTICLE III - FINANCIAL PICTURE OF THE DEBTOR ........ 11

ARTICLE IV - ANALYSIS AND VALUATION OF PROPERTY ........ 13

ARTICLE V- SUMMARY OF THE PLAN ........ 15

ARTICLE VI - PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS ........ 15

ARTICLE VII – MEANS FOR IMPLEMENTATION OF PLAN ........ 18

ARTICLE VIII - TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........ 19

ARTICLE IX – FEASIBILITY OF PLAN ........ 19

ARTICLE X – ALTERNATIVES TO DEBTOR'S PLAN ........ 20

ARTICLE XI - RISKS TO CREDITORS UNDER THE PLAN ........ 20

ARTICLE XII - TAX CONSEQUENCES TO THE DEBTOR ........ 20

ARTICLE XIII - PENDING LITIGATION ........ 23

ARTICLE XIV - SUMMARY OF SIGNIFICANT ORDERS ENTERED DURING THE CASE ........ 23

ARTICLE XV – CREDITOR'S POSITION ........ 23

EXHIBITS:

Plan of Reorganization ........ Exhibit A

Monthly Operating Reports ........ Exhibit B

Financial Projections ........ Exhibit C

Preliminary Plat Map, Survey, Lot Development Plan ........ Exhibit D

## ARTICLE I
## INTRODUCTION

**Identity of the Debtor**

**1.01** Debtor filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. Section 101, et seq. ("Code") on September 1, 2020 in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, initiating the above-styled and referenced bankruptcy proceeding. The Debtor is operating its business as Debtor-in-Possession pursuant to Sections 1107 and 1108 of the Code.

**Capitalized words in this Disclosure Statement shall have the meanings ascribed to them in the Debtor's Plan of Reorganization.**

**Purpose of This Disclosure; Source of Information**

**1.02** The Debtor submits this First Amended Disclosure Statement ("Disclosure Statement" or "Disclosure") pursuant to Section 1125 of the Code to all known Claimants of Debtor for the purpose of disclosing that information which the Court has determined is material, important, and necessary for Creditors of, and the Members of, Debtor in order to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of the Debtor's Plan. A copy of the Plan is attached hereto as **Exhibit "A"** and incorporated herein by this reference. The Plan sets forth in detail the repayment arrangement between the Reorganized Debtor and its creditors. This Disclosure Statement describes the operations of the Reorganized Debtor contemplated under the Plan.

The source of information for this Disclosure Statement is the Debtor's records and all filings in this case.

**Explanation of Chapter 11**

**1.03** Chapter 11 is the principal reorganization chapter of the Code. Pursuant to Chapter 11, a debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders. Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case. A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor. After a plan of reorganization has been filed, it must be accepted by holders of claims against, or interests in, the debtor. Section 1125 of the Code requires full disclosure before solicitation of acceptances of a plan of reorganization. This Disclosure Statement is presented to Claimants to satisfy the requirements of Section 1125 of the Code.

**Explanation of the Process of Confirmation**

**1.04** Even if all Classes of Claims accept the plan, its confirmation may be refused by the Court. Section 1129 of the Code sets forth the requirements for confirmation and, among other things, requires that a plan of reorganization be in the best interests of Claimants. It generally requires that the value to be distributed to Claimants and Equity Interest Holders may not be less than such parties would receive if the debtor were liquidated under Chapter 7 of the Code.

**1.05** Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. Chapter 11 of the Code does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court. The plan, however, must be accepted by: (i) at least the holder of one (1) class of claims by a majority in number and two-thirds (2/3) in amount of those claims of such class actually voting; or (ii) at least the holders of one (1) class of allowed interests by two-thirds (2/3) in amount of the allowed interests of such class actually voting.

**1.06** The Court may confirm the plan even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.

**1.07** Confirmation makes the plan binding upon the Debtor and all claimants, equity interest holders and other parties-in-interest, regardless of whether they have accepted the plan.

**Voting Procedures**

**1.08** **Unimpaired Class**. Administrative Claimants are not impaired under the Plan.

**1.09** **Impaired Classes**. The Class 1, 2, 3, 4, 5 and 6 Claimants and Equity Interest Holders are impaired as defined by Section 1124 of the Code. The Debtor is seeking the acceptance of the Plan by all Classes. Each holder of an Allowed Claim in Classes 1, 2, 3, 4, 5 and 6 may vote on the Plan by completing, dating and signing the ballot sent to each holder and filing the ballot as set forth below. One ballot will be sent to each Claimant or Equity Interest Holder eligible to vote on the Plan. For all Classes, the ballot must be returned to the Debtor's attorney, Joyce Lindauer, Attorney at Law, 1412 Main St., Suite 500, Dallas, Texas 75202. In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

**1.10** **Acceptances**. Ballots that are signed and returned but fail to indicate either an acceptance or rejection will not be counted.

**Best Interests of Creditors Test**

**1.11** Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the

estate's interest in the property that secures such claims. In order for the Plan to be confirmed, the Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation. Since **the Plan proposes to pay all secured and unsecured creditors in full** on their allowed claims, the Debtor believes that the creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Debtor believes that the Plan satisfies the requirements of Section 1129(a)(7).

**Definition of Impairment**

**1.12** As set forth in section 1124 of the Bankruptcy Code, a class of claims or equity interests is impaired under a plan of reorganization unless, with respect to each claim or equity interest of such class, the plan:

> leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or equity interest; or
>
> notwithstanding any contractual provision or applicable law that entitles the holder of a claim or equity interest to demand or receive accelerated payment of such claim or equity interest after the occurrence of a default:
>
> cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; reinstates the maturity of such claim or interest as it existed before such default; compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance on such contractual provision or such applicable law; and does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest.

**Classification and Treatment of Claims and Interests**

**1.13** The Plan classifies Claims separately in accordance with the Bankruptcy Code and provides different treatment for different classes of Claims.

**1.14** Only holders of Allowed Claims are entitled to receive distributions under the Plan. Allowed Claims are Claims that are not in dispute or have been litigated to a Final Order, are not contingent, are liquidated in amount, and are not subject to objection or estimation. Initial distributions or other transfers of Cash or other consideration specified in the Plan otherwise available to the holders of Allowed Claims will be made on the Effective Date, or (b) the date on which such Claim becomes an Allowed Claim), as otherwise provided in the Plan, or as may be ordered by the Bankruptcy Court.

**1.15** In accordance with the Plan, unless otherwise provided in the Plan or the Confirmation Order, the treatment of any Claim under the Plan will be in full satisfaction, settlement, release, and discharge of and in exchange for each and every Claim.

Case 20-42789-mxm11 Doc 561-1 Filed 05/15/24 Entered 05/15/24 16:13:59 Page 6 of 67

**Requirements for Confirmation of the Plan**

**1.16** At the confirmation hearing, the Bankruptcy Court must determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. As set forth in section 1129 of the Bankruptcy Code, these requirements are as follows:

> The plan complies with the applicable provisions of the Bankruptcy Code.
>
> The proponents of the plan comply with the applicable provisions of the Bankruptcy Code.
>
> The plan has been proposed in good faith and not by any means forbidden by law.
>
> Any payment made or promised by the Debtor, by the plan proponents, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in, or in connection with, the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of the Bankruptcy Court as reasonable.
>
> The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a joint plan with the Debtor, or a successor to the Debtor under the plan; and (B) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized Debtor, and the nature of any compensation for such insider.
>
> Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the Debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.
>
> With respect to each impaired class of claims or interests:
>
> (i) each holder of a claim or interest of such class has (A) accepted the plan or (B) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated on such date under chapter 7 of the Bankruptcy Code on such date; or (ii) if section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, the holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.
>
> With respect to each class of claims or interests:

(i) such class has accepted the plan; or

(ii) such class is not impaired under the plan.

Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that:

(i) with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of the Bankruptcy Code, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(ii) with respect to a class of claims of a kind specified in section 507(a)(3), 507(a)(4), 507(a)(5) or 507(a)(6) of the Bankruptcy Code, each holder of a claim of such class will receive: (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and

(iii) with respect to a claim of a kind specified in section 507(a)(7) of the Bankruptcy Code, the holder of a claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

If a class of claims is impaired under the plan, at least one class of claims that is impaired has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class.

Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

All fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on confirmation of the plan, have been paid or the plan provides for the payments of all such fees on the effective date of the plan.

The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114, at any time prior to confirmation of the plan, for the duration of the period the Debtor has obligated itself to provide such benefits.

The Debtor believes that the Plan satisfies all the statutory requirements of chapter 11 of the Bankruptcy Code, that The Debtor has complied with or will have complied with all the requirements of chapter 11, and that the Plan is proposed in good faith.

At the Confirmation Hearing, the Bankruptcy Court will determine whether holders of Allowed Claims or Allowed Equity Interests would receive greater distributions under the Plan than they would receive in a liquidation under chapter 7.

The Debtor believes that the feasibility requirement for confirmation of the Plan is satisfied by the fact that its contributions to the Debtor and the future operating revenues will be sufficient to satisfy the obligations under the Plan in addition to supporting sustainable growth of the enterprise. These facts and others demonstrating the confirmability of the Plan will be shown at the Confirmation Hearing.

**Cramdown**

**1.17** The bankruptcy court may confirm a plan of reorganization even though fewer than all the classes of impaired claims and interests accept it. For a plan of reorganization to be confirmed despite its rejection by a class of impaired claims or interests, the proponents of the plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or interests that has not accepted the plan.

**1.18** "Fair and equitable" has different meanings with respect to the treatment of secured and unsecured claims. As set forth in section 1129(b)(2) of the Bankruptcy Code, those meanings are as follows:

With respect to a class of secured claims, the plan provides:

(a)(i) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the Debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(ii) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(b) for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (a) and (b) of this subparagraph; or

(c) the realization by such holders of the "indubitable equivalent" of such claims.

With respect to a class of unsecured claims, the plan provides(a) that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

> (b) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115 subject to the requirements that a) the value, as of effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or (b) the value of property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

With respect to a class of interests, the plan provides:

> (a) that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled or the value of such interest; or
>
> (b) that the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

**1.19** In the event that one or more classes of impaired Claims reject the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejecting impaired class of Claims. The absolute priority rule requires that prior to the Debtor retaining or receiving any non-exempt property the senior classes of claims must be paid in full or vote to accept the Plan.

The Debtor believes the Plan does not discriminate unfairly against, and is fair and equitable with respect to, each impaired class of Claims.

## ARTICLE II
## REPRESENTATIONS

**2.01** This Disclosure Statement is provided pursuant to Section 1125 of the Code to all the Debtor's known Creditors and other parties in interest in connection with the solicitation of acceptance of its Plan of reorganization, as amended or modified. The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable investor, typical of the holders of Claims, to make an informed judgment in exercising its rights either to accept or reject the Plan.

**2.02** The information contained in this Disclosure Statement has been derived from information submitted by the Debtor, unless specifically stated to be from other sources.

**2.03** No representations concerning the Debtor are authorized by the Debtor other than those set forth in this Disclosure Statement. The Debtor recommends that any representation or inducement made to secure your acceptance or rejection of the Plan which is not contained in this Disclosure Statement should not be relied upon by you in reaching your decision on how to vote on the Plan. Any representation or inducement made to you not contained herein should be reported to the attorneys for the Debtor who shall deliver such information to the Court for such action as may be appropriate.

**2.04** ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE OR UPON THE MERITS OF THE PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

**2.05** THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS DISCLOSURE DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

**2.06** THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS, AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

**2.07** THE DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS DISCLOSURE ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

# ARTICLE III
# FINANCIAL PICTURE OF THE DEBTOR

## Financial History and Background of the Debtor

**3.01** The Debtor owns 118 acres of unimproved land located in Parker County, Texas, near the City of Aledo (the "Property"). The Debtor intends to divide and develop the Property into residential lots for sale to homebuilders or others for profit.

**3.02** In the Schedules of Assets and Liabilities filed in the bankruptcy case, the Debtor lists assets with an aggregate value of $4,419,636.00 as of the Petition Date. This amount consists of real property in the amount of $4,250,000.00 and a certificate of deposit in the amount in the amount of $169,636.00.

In the Schedules of Assets and Liabilities, the Debtor lists aggregate liabilities in the amount of $3,204,850.63 as of the Petition Date. The claim of Southern Star Capital, LLC (also herein referred to as "Southern Star Capital" or "Southern Star") is a Secured Claim and is the largest claim in this bankruptcy case, subject to the disputes raised in the state court litigation described below. The Debtor scheduled Southern Star Capital, LLC as a fully secured claimant in the amount of $1,831,500.00. For a complete listing and explanation of the Debtor's liabilities as of the Petition Date, parties should refer to the Schedules of Assets and Liabilities and any amendments thereto filed in this bankruptcy case.

**3.03** Southern Star Capital, LLC alleges that the Debtor fails to disclose its loan history with Southern Star Capital, LLC, primarily that it only made three payments since the inception of the loan. The Debtor discloses that it made three payments on this disputed debt and is entitled to be credited for additional payments. Debtor alleges that lender took $250,000.00 from a prior loan that was to be paid to the Debtor and never credited it to the Debtor. The allocation and application of the $250,000.00 is in dispute. Southern Star Capital, LLC, alleges that several state courts have rejected Debtor's legal arguments disputing the Southern Star debt. Debtor disagrees, the State courts have rejected the request for temporary injunction only to halt foreclosure proceedings during the course of the litigation. No determination or legal findings have been made regarding the substantive arguments of the cases.

The Debtor has disputed the secured claim being asserted by Southern Star Capital, LLC, including amounts owed to Debtor by Southern Star Capital, LLC as asserted, in state court litigation filed prior to the filing of this Case styled *JMR 100, LLC and BM318, LLC v. Southern Star Capital, LLC d/b/a Reliance Mortgage Company, Mike Anderson, Mark Adams, and Robert W. Buchholz* filed in the 45th Judicial District Court of Parker County Texas as Cause No. CV20-0923 (the "State Court Litigation"). Although Debtor gave a promissory note to Southern Star which was secured by a deed of trust (collectively, "Loan Documents"), Southern Star later assigned and pledged the Loan Documents to Citizens National Bank, and now Southern Star Capital claims to be the servicer for Citizens National Bank. If that is the case then Citizens National Bank may be the true lender in this case. Both the Collateral Assignment of Note and

Lien support the argument that Citizens National Bank is the true lender. In addition, the State Court Litigation includes claims by Debtor related to (i) a certificate of deposit belonging to Debtor in the amount of $165,000 being held by Southern Star Capital, LLC as security for the loan, (ii) $258,030.15 retained by Southern Star, LLC including certain interest and fees related thereto which has not been paid back, (iii) improper accounting and charging to the Debtor of origination fees and interest on money it received out of the Loan, and (iv) tortious interference by Southern Star in preventing the sale of the Property to pay off the Loan because Southern Star's principal, Mike Anderson, wanted all proceeds in excess of the amounts owed to Southern Star to be distributed to all of his other loans even though such other loans were not cross collateralized.

**Current Operations**

**3.04** The Debtor's current operations are reflected in its monthly operating reports filed with the Court. All the Debtor's monthly operating reports filed to date are attached hereto as ***Exhibit "B"***.

Southern Star Capital, LLC raises the interrelatedness of several entities for which Tim Barton, president of the Debtor is also president of. Mr. Barton nor any of his owned entities is a guarantor on the disputed Southern Star Capital debt. Southern Star Capital alleges incorrectly that Tim Barton is the principal for all these companies and that Mr. Barton, is currently in default for over $6,155,000.00 in loans. The debt of $6,155,000.00 asserted by Southern Star is the subject of litigation filed against Southern Star Capital, LLC in two state cases filed in Johnson County and Parker County. Mr. Barton is president of certain related entities but does not own the entities, and the entities are separate from the Debtor. Several of the Debtor's affiliates have loans with Southern Star Capital, LLC or are co-debtors with the Debtor on the disputed Southern Star Capital, LLC debt. The list of related entities to this Debtor for which Mr. Barton serves as president as well as their bankruptcy status is set forth below.

**JMR100, LLC**
Case No. 20-42790
Honorable Edward L. Morris
Northern District of Texas, Fort Worth Division

**LDG001, LLC**
Case No. 20-43110
Honorable Mark X. Mullin
Northern District of Texas, Fort Worth Division

The Debtor has a current obligation to pay adequate protection payments of $10,000.00 monthly to Southern Star Capital, LLC during this bankruptcy case. JMJ Development, LLC, a company owned by Mr. Barton paid the December 1, 2020 payment. JMJ Development, LLC has also paid pre-petition litigation expenses of the Debtor related to the dispute with Southern Star Capital, LLC.

Southern Star Capital alleges that Debtor's disclosure statement should include JMJ Development, LLC's liabilities. The Debtor disagrees that such information is necessary in the

context of the Debtor's disclosures as JMJ Development, LLC is not a related entity to the Debtor other than the fact that Tim Barton is the President of both the Debtor and JMJ Development, LLC.

The Debtor received a COVID grant of $8,000 in October 2020 from the SBA in November 2020.

**Future Income and Expenses Under the Plan**

**3.05** The Debtor's projections of plan payments are set forth on ***Exhibit "C"*** attached hereto. The Plan will be funded by the Debtor through the profits the Debtor will earn through the sale of developed residential lots to homebuilders or others. Southern Star Capital, LLC alleges that despite the Debtor's goal of developing its real property, no work has been done to develop it since the loan was made in May 2019 and it remains raw land. The Debtor disagrees. There are site plans and MUD in place, but events have affected the development plan. First the 2055 acres originally available to be developed was later reduced to 1652 acres. Following this, approximately 1534 acres was deeded back to the original seller to satisfy certain debt owed on the property as part of seller financing that was obtained when the 2055 acres was acquired. Part of this debt was $25,000,000.00 in unsecured debt claimed by Dixon Water Foundation. Third, the original plan to develop traditional sized lots (i.e. fifty front feet) was determined to not be feasible. The Debtor's goal has been revised to develop two acre lots which will also permit septic tanks and water wells, whereas traditionally sized lots do not.

The Debtor estimates the development cost will be approximately $2,700,000.00 as set forth in Section 6.01 of the Disclosure Statement. The Debtor is in discussions with different debtor-in-possession lenders and construction lenders to provide construction financing for the entire development.

Future management of the Debtor shall consist of the Debtor's Managing Member and staff.

**Source of Information for Disclosure Statement**

**3.06** The source of information for this Disclosure Statement is the Debtor and its records, as well as the filings in this case.

## ARTICLE IV
## ANALYSIS AND VALUATION OF PROPERTY

### 4.01 Real Property

As of the Petition Date, the Debtor owned undeveloped real property consisting of the Property, the value of which is scheduled by the Debtor as $4,250,000.00. The Debtor owns oil and gas interests that were conveyed as part of the original 2055 acres and was only a partial conveyance of such interests. At this time, Debtor is not able to specifically identify the interests associated with the 118 acres the Debtor owns. The Debtor received one royalty payment of

$2,782.25 on December 15, 2020 and those funds have been deposited in the debtor-in-possession account.

**4.02 Personal Property**

As of the Petition Date, the Debtor owned a certificate of deposit in the amount of $169,636.00.

**4.03 Liquidation Analysis**

Liabilities shown below are as scheduled by the Debtor, unless the Claimant has filed a proof of claim stating a different amount.

The Debtor estimates that the value of the Property in a forced liquidation sale, such as a foreclosure under Texas law, would yield net proceeds of approximately $3,000,000.00.

**Liabilities**

| | | |
|---|---|---|
| Administrative Expenses and UST Fees | | $10,000[1] |
| Priority Tax Claims | | $0.0 |
| Class 1 | Unsecured Priority Claims | $0.0 |
| Class 2 | Secured Claims of Southern Star Capital/ Citizens National Bank | $1,831,500.00 [2] |
| Class 3 | Secured Claims of Parker Central Appraisal Dist. | $653.00 |
| Class 4 | General Unsecured Claims | $150,486.00[3] |
| Class 5 | Insider Claims | $1,050,273.00 |
| Class 6 | Equity Interests | |
| | **Total Liabilities** | **$** 3,042,912.00 |

**Assets**

| | |
|---|---|
| Real Property | $ 3,000,000.00[4] |
| Certificate of Deposit | $169,636.00 |
| Oil and Gas Interests | *TBD (nominal) |
| | $ 3,169,636.00 |
| Less 10% liquidation costs for real property | <$ 300,000.00> |

1 Debtor's estimate.
2 As scheduled by the Debtor.
3 Southern Star Capital, LLC alleges that Debtor fails to disclose unsecured debt to Dixon Water Foundation and this debt is listed in the real property records of Parker County, Texas. As set forth above, this debt was released when the 1534 acres was deeded back to the original seller.
4 Debtor's estimate of the value of the Property in a forced sale is $3,000,000.00.

| | |
|---|---|
| Total Assets | $ 2,869,636.00 |
| **TOTAL ASSETS LESS TOTAL LIABILITIES** | **$ 173,276.00** |

***NOTE:***

- **This Plan pays 100% to Allowed Secured and Unsecured Claims, with interest.**

## ARTICLE V
## SUMMARY OF THE PLAN

The Debtor designates the following Classes of Claims and Interests pursuant to Bankruptcy Code Section 1123.

| **CLASSIFICATION OF CLAIMS** |
|---|
| Class 1: Priority Unsecured Claims other than Priority Tax Claims |
| Class 2: Allowed Secured Claims of Southern Star Capital, LLC/Citizens National Bank |
| Class 3: Allowed Secured Claims of Parker Central Appraisal District |
| Class 4: General Unsecured Claims |
| Class 5: Insider Claims |
| Class 6: Equity Interests |

## ARTICLE VI
## PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS

***A. NON-CLASSIFIED CLAIMS.*** The following Claims are not classified, pursuant to Bankruptcy Code Section 1123:

**Treatment of Administrative Claims**. Each holder of an Administrative Claim other than Professional Fee Administrative Claims shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other treatment as to which the Debtor and such holder shall have agreed upon in writing; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Bankruptcy Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto. On or before the Effective Date, the Debtor or Reorganized Debtor shall pay or have paid in full all Allowed Administrative Claims. All Allowed Administrative Claims shall be paid by the Reorganized Debtor when they are due until the Bankruptcy Case is closed pursuant to a final decree, order of dismissal, or order of conversion. Until entry of such an order, the Reorganized Debtor shall file with the Bankruptcy Court and serve upon the United States Trustee a quarterly financial report.

Any administrative ad valorem tax claims shall be paid pursuant to otherwise applicable state law.

**Treatment of Professional Fee Administrative Claims.** All persons who are awarded compensation or reimbursement of expenses by the Bankruptcy Court in accordance with sections 330 or 331 of the Bankruptcy Code or entitled to the priorities established pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code, shall be paid in full, in Cash, the amounts allowed by the Bankruptcy Court on the later of the Effective Date or the date on which the order allowing such Claim becomes a Final Order, or upon such other terms as may be mutually agreed upon between such holder of an Allowed Professional Fee Claim and the Reorganized Debtor.

**Treatment of Priority Tax Claims.** Priority Tax Claims shall be paid in full over sixty (60) months from the Effective Date at an interest rate of 5% per annum. Payments shall commence on the first day of the month following the Effective Date and continue on the first day of each month thereafter until paid in full.

**Title 28 U.S.C. Section 1930 Fees.** The Reorganized Debtor shall pay all post-Confirmation fees assessed by the Office of the United States Trustee until this Case is closed by the Court or the Reorganized Debtor is otherwise released from such obligations by the Court.

***B. CLASSIFIED CLAIMS.*** The following Claims are classified pursuant to Bankruptcy Code Section 1123, and are treated as follows:

**Class 1: Allowed Unsecured Priority Claims Other Than Priority Tax Claims**

Class 1 Claims shall consist of Unsecured Priority Claims other than Priority Tax Claims. The Debtor does not believe any such Claims exist. To the extent such Claims do exist, they shall be paid in full, with interest at the rate of 5% per annum, in six (6) equal monthly installments. Payments shall commence on the first (1st) day of the third (3rd) calendar month following the Effective Date and continue on the first day of each month thereafter until paid in full. Interest shall begin to accrue on the Effective Date. This Class is Impaired by the Plan and the holders of these Claims are entitled to vote to accept or reject the Plan.

**Class 2: Allowed Secured Claims of Southern Star Capital, LLC/Citizens National Bank**

The Class 2 Allowed Secured Claims of Southern Star Capital, LLC/Citizens National Bank[5] shall be paid in full. This Claim shall bear interest at the rate of five percent (5%) per annum, amortized over 5 years, accruing as of the Petition Date. Equal monthly installments of principal and interest shall commence on March 1, 2021 and continue on

[5] Southern Star Capital claims it is the servicing agent for Citizens National Bank as it relates to this loan. That would make Citizens National Bank the true secured creditor under this Plan.

the first day of each succeeding month until a final lump sum payment of the full remaining balance is made on July 1, 2022.

a. To the extent that Southern Star/Citizen National Bank's Allowed Claim is partially unsecured, the Claim shall be bifurcated into a Class 2 Secured Claim in the amount of the value of the Southern Star's/Citizen National Bank's Collateral (as agreed by the parties or determined by the Court) and a Class 4 Unsecured Claim for the remainder, pursuant to 11 U.S.C. Sec. 506(d).

b. If the Reorganized Debtor fails to make any payment as set out above, that failure shall be an event of default. If the Reorganized Debtor fails to cure a monetary event of default within ten (10) days after receipt of written notice of default from this Claimant, then the Claimant may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the Claimant may have under its loan documents or state law; and/or (c) seek such relief as may be appropriate in the Court.

c. Southern Star/Citizens National Bank shall retain any valid liens it had as of the Petition Date.

This Claim is Impaired and the holder of this Claim is entitled to vote to accept or reject the Plan.

**Class 3: Allowed Secured Claims of Parker CAD.**

Class 3 shall consist of the Allowed Secured Claims of Parker Central Appraisal District. Class 3 Claims shall be paid in full on the Effective Date.

If the Reorganized Debtor fails to make any payment as set out above, that failure shall be an event of default. If the Reorganized Debtor fails to cure an event of default within ten (10) days after receipt of written notice of default from this Claimant, then the Claimant may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the Claimant may have under applicable state law; and/or (c) seek such relief as may be appropriate in the Court.

This Claimant shall retain any valid liens it had as of the Petition Date. This Class is Impaired by the Plan and the holder of this Claim is entitled to vote to accept or reject the Plan.

If the Reorganized Debtor fails to make any payment as set out above, that failure shall be an event of default. If the Reorganized Debtor fails to cure an event of default within ten (10) days after receipt of written notice of default from this Claimant, then the Claimant may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the Claimant may have under applicable state law; and/or (c) seek such relief as may be appropriate in the Court.

Case 20-42789-mxm11 Doc 51 Filed 05/15/24 Entered 05/15/24 16:13:52 Page 18 of 67

**Class 4: Allowed General Unsecured Claims**

Class 4 shall consist of Allowed Unsecured Claims, other than the Claims of Class 5 Insiders. Class 4 Claims shall be paid in full in nine (9) equal monthly installments of principal and interest, commencing on the first (1st) day of the first calendar month following the Effective Date and continuing on the first day of each month thereafter until paid in full. Interest shall begin to accrue on the Effective Date at the rate of 2% per annum. This Class is Impaired and any holder of a Claim in this class is entitled to vote to accept or reject the Plan.

**Class 5: Allowed Insider Claims**

Class 5 shall consist of the Allowed Claims of Insiders of the Debtor. Class 6 Claims shall be paid in full without interest, but only after all other Claimants in the Case have been paid in full as set out above. Class 5 Claimants are Impaired and are deemed to have rejected the Plan, but their claims will not be counted for or against Confirmation.

**Class 6 - Equity Interests**

All Equity Interests in the Debtor shall be retained.

**ARTICLE VII**
**MEANS FOR IMPLEMENTATION OF PLAN**

**6.01 Implementation of Plan**. This Plan will be implemented, pursuant to § 1123(a)(5) of the Code, by the commencement of payments as called for above. The payments will be funded by the Debtor's sale of developed residential lots to homebuilders and others for profit.

On or about Confirmation of the Plan, the Debtor will obtain a bridge loan for approximately $100,000.00, secured by the Property, to fund its costs while it prepares and seeks approval of a final plat map from the appropriate authorities. Final approval of the plat is expected in January 2021. This bridge loan will be paid in full on or near the Effective Date of the Plan from the proceeds of a secured construction loan for approximately $2,700,000.00 to be obtained by the Debtor for the purpose of funding development of the Property and the initial payments to creditors under the Plan. Debtor has been in discussion with and has bids out to various construction lenders. Debtor believes it will be in a good position to receive a bridge loan and construction loan from Jim Martin Construction company or another construction lending company to implement the Plan, due to the lifting of restrictions due to COVID-19, the continued implementation or roll out of a COVID-19 vaccine, and the reopening of the economy. Southern Star Capital, LLC alleges that the Debtor has not attached a real budget to complete the development. Debtor believes its Budget and Draw Schedule, attached to its Disclosure Statement is a realistic estimation of what it will take to develop the parcels for sale based on its opinion and experience in real estate development.

The Debtor's projections for sources and uses of cash, including payments to be made under the Plan, are attached hereto as **Exhibit C**.

The Debtor's projections for the development and sale of lots are attached hereto as part of **Exhibit D**. The Debtor anticipates that it will finish development of the residential lots by July, 2021, and begin selling the lots at that time.

Prior to the Petition Date the Debtor employed a professional surveyor and draftsman to create a survey and a preliminary plat map of the projected division and development of the Property into residential lots. Copies of the survey and preliminary plat map are attached hereto as part of Exhibit D.

## ARTICLE VIII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01** **Rejection of Executory Contracts and Unexpired Leases**. All of the Debtor's unexpired leases of real property and executory contracts are hereby deemed rejected as of the Effective Date of the Plan unless specifically assumed by separate motion and order prior to the Confirmation Date or as part of Confirmation of a Plan in this case.

**7.02** **Reservation of Rights**. The Debtor shall have the right to assume or reject, pursuant to Bankruptcy Code Section 365, prior to the Confirmation Date, any executory contract or unexpired lease of real property (to the extent permitted under the Bankruptcy Code) and to the terms of this Plan.

**7.03** **Bar Date for Claims Based on Rejection**. If the rejection of an executory contract or an unexpired lease results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Reorganized Debtor or its properties or agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtor, by the earlier of (a) the end of the month following the period in which the Effective Date occurs or (b) such other deadline as the Court may set for asserting a Claim for such damages. Any Rejection Claim arising from the rejection of an unexpired lease or executory contract shall be treated as a General Unsecured Claim; *provided, however*, that any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission that such rejection gives rise to or results in a Claim or shall be deemed a waiver of any objections to such Claim if asserted.

## ARTICLE IX
## FEASIBILITY OF PLAN

**8.01** The Debtor asserts that its Plan is feasible based on **Exhibits "B" and "C"**. The funds necessary to fund the Plan will come from the ongoing sale of developed lots. All causes of action shall remain fully vested in the Reorganized Debtor. The failure to identify a claim or cause of action is not specifically a waiver of such claim or cause of action. To the extent of any recovery on claims and causes of action that belong to the Reorganized Debtor as disclosed herein, if any,

Case 20-42789-mxm11 Doc 56 Filed 05/15/24 Entered 01/04/21 05:15:24 Page 20 Desc

such funds will be contributed by the Reorganized Debtor (less costs and expenses associated with any litigation) to pay the Class 7 creditors with allowed claims.

**Procedure for Filing Proofs of Claims and Proofs of Interests**

**8.02** All proofs of claims and proofs of interests must be filed by those Claimants and Equity Interest Holders who have not filed such instruments on or before the Bar Date fixed by the Court.

**8.03** If Claimants have already filed a proof of claim with the Court or are listed in the Debtor's Schedules as holding non-contingent, liquidated and undisputed claims, a proof of claim need not be filed. The schedules and amendments thereto are on file with the Court and are open for inspection during regular Court hours. If the equity security interest of an Equity Interest Holder is properly reflected in the book and records of the Debtor, a proof of interest need not be filed.

## ARTICLE X
## ALTERNATIVES TO DEBTOR'S PLAN

**9.01** If this Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. It is also possible that the Debtor's case may be dismissed if this Plan is not confirmed.

## ARTICLE XI
## RISKS TO CREDITORS UNDER THE PLAN

**10.01** Claimants should be aware that there are a number of substantial risks involved in consummation of the Plan. The Plan contemplates that the sale of lots will generate income sufficient to pay the Debtor's obligations under the Plan. The Debtor does not "guarantee" that the expenses will equal those in the projections; however, the Debtor believes that the projections are reasonable. The Debtor anticipates that the Reorganized Debtor will meet its projections and will be able to pay back its creditors as set forth herein.

## ARTICLE XII
## TAX CONSEQUENCES TO THE DEBTOR

**11.01** TO ENSURE COMPLIANCE WITH U.S. TREASURY DEPARTMENT CIRCULAR 230, HOLDERS OF CLAIMS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF UNITED STATES FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED OR RELIED UPON, AND CANNOT BE USED OR RELIED UPON, BY HOLDERS OF CLAIMS OR INTERESTS OR ANY OTHER PERSONS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON HOLDERS OF CLAIMS OR ANY OTHER PERSONS UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS INCLUDED HEREIN IN CONNECTION WITH THE PROMOTION OR MARKETING (WITHIN THE MEANING OF U.S. TREASURY DEPARTMENT CIRCULAR 230) OF THE TRANSACTIONS OR

Case 20-42789-mxm11 Doc 515 Filed 11/25/20 Entered 11/25/20 16:13:52 Page 21 of 67 Desc

MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS AND INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISER.

A. Introduction

The following discussion summarizes certain material U.S. federal income tax consequences of the Plan to the Debtor and holders of Claims and Interests. The summary is provided for general informational purposes only and is based on the United States Internal Revenue Code of 1986, as amended (the "Tax Code"), the treasury regulations promulgated thereunder, judicial authority and current administrative rulings and practice, all as in effect as of the date hereof (except as otherwise noted below with regard to the American Recovery and Reinvestment Act of 2009), and all of which are subject to change, possibly with retroactive effect. Changes in any of these authorities or in their interpretation could cause the United States federal income tax consequences of the Plan to differ materially from the consequences described below. The United States federal income tax consequences of the Plan are complex and in important respects uncertain. No ruling has been requested from the Internal Revenue Service (the "Service"); no opinion has been requested from Debtors' or The Debtor's counsel concerning any tax consequence of the Plan; and no tax opinion is given by this Disclosure Statement.

The following discussion does not address all aspects of federal income taxation that may be relevant to a particular holder of a Claim or Interest in light of its particular facts and circumstances or to particular types of holders of Claims subject to special treatment under the Tax Code. For example, the discussion does not address issues of concern to broker-dealers or other dealers in securities, or foreign (non-U.S.) persons, nor does it address any aspects of state, local, or foreign (non-U.S.) taxation, or the taxation of holders of Interests in a Debtor. In addition, a substantial amount of time may elapse between the Confirmation Date and the receipt of a final distribution under the Plan. Events subsequent to the date of this Disclosure Statement, such as the enactment of additional tax legislation, court decisions or administrative changes, could affect the federal income tax consequences of the Plan and the transactions contemplated hereunder.

**THE DISCUSSION THAT FOLLOWS IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND PROFESSIONAL TAX ADVICE BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST. EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH ITS TAX ADVISORS REGARDING THE FEDERAL, STATE, LOCAL AND NON-U.S. TAX CONSEQUENCES OF THE PLAN.**

B. Certain Definitions

Except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined herein or in the Plan shall have the respective meanings assigned to them in this Article.

"***COD***" shall mean cancellation of indebtedness income.
"***NOL***" shall mean net operating loss.

C. Certain Material Federal Income Tax Consequences to the Debtor

Cancellation of a debtor's debt is generally taxable income to the Debtor. COD is the amount by which the indebtedness of a debtor discharged exceeds any consideration given in exchange therefore. Cancellation of a debt may not necessarily be COD, however. To the extent that a debtor is insolvent, or if a Debtor is in bankruptcy, as is the case here, the Tax Code permits the debtor to exclude the COD from its gross income. The statutory exclusion for COD in a title 11 case generally excludes COD from gross income if the discharge is granted by a court to a debtor under its jurisdiction in a title 11 case, as is sought herein.

The price for the bankruptcy COD exclusion (as well as the insolvency exclusion) is reduction of the debtor's tax attributes to the extent of the COD income, generally in the following order: NOLs for the year of the discharge and NOL carryovers from prior years; general business tax credit carryovers; minimum tax credit available as of the beginning of the year following the year of discharge; net capital loss for the year of discharge and capital loss carryovers from prior years; basis of the debtor's assets; passive activity loss and credit carryovers from the year of discharge; and foreign tax credit carryovers to or from the year of discharge. The reduction of attributes does not occur until after the end of the debtor's tax year in which the COD occurred, so they are available to the debtor in determining the amount of its income, loss and tax liability for the year of discharge.

As a result of the implementation of the Plan, the Debtor may have COD and potential attribute reduction. Because any reduction in tax attributes does not effectively occur until the first day of the taxable year following the taxable year in which the COD is incurred, any resulting COD, on its own, should not impair the ability of the Debtor to use their tax attributes (to the extent otherwise available) to reduce their tax liability, if any, otherwise resulting from the implementation of the Plan.

Under section 382 of the Tax Code, if a corporation undergoes an "ownership shift," the amount of its Pre-Change Losses that may be utilized to offset future taxable income generally is subject to an annual limitation. The Plan calls for an ownership change and as such any current owner of the Debtor should consult his own tax adviser concerning the effect of the Plan.

The United States federal income tax consequences of payment of Allowed Claims pursuant to the Plan will depend on, among other things, the consideration received, or deemed to have been received, by the holder of the Allowed Claim, whether such holder reports income on the accrual or cash method, whether such holder receives distributions under the Plan in more than one taxable year, whether such holder's Claim is allowed or disputed at the Effective Date, whether such holder has taken a bad debt deduction or worthless security deduction with respect to its Claim.

In general, a holder of a Claim should recognize gain or loss equal to the amount realized under the Plan in respect of its Claim less the amount of such holder's basis in its Claim. Any gain or loss recognized in the exchange may be long-term or short-term capital gain or loss or ordinary income or loss, depending upon the nature of the Claim and the holder, the length of time the holder held the Claim and whether the Claim was acquired at a market discount. If the holder

Case 20-42789-mxm11 Doc 51 Filed 12/15/20 Entered 12/15/20 17:22:42 Desc

realizes a capital loss, its deduction of the loss may be subject to limitations under the Tax Code. The holder's aggregate tax basis for any property received under the Plan generally will equal the amount realized. The amount realized by a holder generally will equal the sum of the cash and the fair market value of any other property received (or deemed received) by the holder under the Plan on the Effective Date and/or any subsequent distribution date, less the amount (if any) allocable to Claims for interest. All holders of Allowed Claims are urged to consult their tax advisors. A holder of a Claim constituting an installment obligation for tax purposes may be required to recognize currently any gain remaining with respect to the obligation if, pursuant to the Plan, the obligation is considered to be satisfied at other than its face value, distributed, transmitted, sold or otherwise disposed of within the meaning of Section 453B of the Tax Code.

If the creditors give up all or a portion of their debt in return for stock the Company would change the debt to equity on its books and the Creditor would own their stock with a cost basis equal to the amount of debt given up to purchase it.

D. Importance of Obtaining Professional Tax Assistance

The foregoing discussion is intended only as a summary of certain U.S. federal income tax consequences of the Plan, and is not a substitute for careful tax planning with a tax professional. The above discussion is for general information purposes only and is not tax advice. The tax consequences are in many cases uncertain and may vary depending on a holder's individual circumstances.

HOLDERS OF CLAIMS ARE URGED TO CONSULT WITH THEIR TAX ADVISORS ABOUT THE FEDERAL, STATE, LOCAL AND NON-U.S. TAX CONSEQUENCES OF THE PLAN.

## ARTICLE XIII
## PENDING LITIGATION

**12.01** As of the date of the filing of this Disclosure Statement the significant matters pending are as follows: Motion for Relief from Automatic Stay filed by Southern Star Capital, LLC. This motion is opposed by the Debtor.

## ARTICLE XIV
## SUMMARY OF SIGNIFICANT ORDERS ENTERED DURING THE CASE

**13.01** As of the date of the filing of this Disclosure Statement the following significant orders have been entered in this case: Employment of Professionals and those relating to general administration of the case.

## ARTICLE XV
## CREDITOR'S POSITION

**15.01** Southern Star contends that the Debtor failed to accurately disclosure in its sworn bankruptcy Schedules a transfer of a Deed in Lieu of Foreclosure of almost 2,000 acres which

shows an execution date of July 2, 2020 and which was recorded in the deed records of Parker County, Texas on July 2, 2020. Southern Star contends that this Deed in Lieu references an unsecured debt to The Dixon Water Foundation of over $27,000,000.00. Southern Star contends Debtor has refused to furnish to Southern Star any executed documents whereby one could reasonably ascertain whether such debt was released. The Debtor contends that it has provided such proof. Southern Star contends Debtor has also failed to list an oil and gas interest in its sworn bankruptcy Schedules. Southern Star Capital, LLC asserts that such failures to make these routine disclosures are evidence of bad faith. Debtor disagrees and contends these were oversights that are being addressed and have no material impact on what Southern Star or any other creditor for that matter may or may not get paid in this case.

Southern Star contends that Debtor's failure to provide specific information on its next steps in seeking financing is also evidence of bad faith. Debtor disagrees because it has evidence of financing that it is willing to provide to Southern Star or any other creditor requesting same. Southern Star contends that the only information provided by Debtor is the name of a construction company and further information that the construction company has a website without giving any other specifics about the website's location or the construction company. Debtor again disagrees as proof of funding is available and will be provided well before any hearing on Confirmation of a Plan. Southern Star contends that its review of a website for a construction company of that name shows no evidence that this construction company is a lender. Debtor disagrees and believes that Southern Star is not looking at the right company and the Debtor can direct Southern Star to the right information.

Debtor has said that JMJ Development, LLC provided the funds used to make the adequate protection payment to Southern Star and has indicated that JMJ Development, LLC will fund future payments to Southern Star Capital, LLC, Southern Star contends that the Debtor has refused to provide adequate information as to the financial viability of JMJ Development, LLC. Debtor contends that JMJ Development, LLC has no obligation to pay Southern Star but has made the payments for the Debtor. Debtor contends there is no reason to provide anything further on JMJ so long as it makes the payments in the short term to cover the adequate protection payments. There are already consequences to not making such payments whether made by the Debtor or another entity. Debtor contends that the Plan does not rely on funding from JMJ. Southern Star contends that such failure to provide this information is evidence of "bad faith." The Debtor disagrees and the Debtor would point out that if Southern Star does not desire to be paid it can refuse the payments whether made by the Debtor, JMJ or some other person.

Respectfully Submitted By:

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
**ATTORNEYS FOR THE DEBTOR**

*/s/Timothy Barton*

Managing Member of the Debtor as
Proponent of the Plan

Case 20-42789-mxm11 Doc 51 Filed 11/13/20 Entered 11/13/20 17:14:16 Page 1 of 42

Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **BM318, LLC,** | § | **CASE NO. 20-42789-mxm-11** |
| | § | |
| **DEBTOR.** | § | **CHAPTER 11** |

# DEBTOR'S PLAN OF REORGANIZATION DATED NOVEMBER 13, 2020

**TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:**

COMES NOW BM318, LLC, ("Debtor"), the Debtor in the above-styled and numbered case, and files this its Plan of Reorganization (the "Plan"). The Debtor owns 118 acres of unimproved land located in Parker County, Texas, near the City of Aledo, Texas (the "Property"). The Debtor intends to develop and divide the Property into residential lots for sale to homebuilders for a profit. The source and use of such funds are described in more detail in the Disclosure Statement accompanying this Plan. Periodic financial reports will be filed with the Court, as required by the Bankruptcy Code, covering the profitability, projections of cash receipts and disbursements for a reasonable period. These reports shall be available on the Court's PACER site using the Debtor's name and/or case number as referenced above or can be also obtained from Debtor's counsel by written request.



**EXHIBIT "A"**

# TABLE OF CONTENTS

ARTICLE I - DEFINITIONS AND USE OF TERMS .................................................................. 3

ARTICLE II - CONCEPT OF THE PLAN ........................................................................... 6

ARTICLE III - GENERAL TERMS AND CONDITIONS ................................................... 6

ARTICLE IV - DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS ...................... 7

ARTICLE V- PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS.............. 8

ARTICLE VI - MEANS FOR IMPLEMENTATION OF PLAN ............................................. 10

ARTICLE VII - TREATMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES ........................................................................... 11

ARTICLE VIII - ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS ........ 11

ARTICLE IX - EFFECT OF CONFIRMATION ..................................................................... 12

ARTICLE X - MISCELLANEOUS PROVISIONS.................................................................... 13

ARTICLE XI - MODIFICATION OF THE PLAN .................................................................. 14

ARTICLE XII - RETENTION OF JURISDICTION ................................................................ 15

## ARTICLE I
## DEFINITIONS AND USE OF TERMS

**Defined Terms**. Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this section 1.01.

"**Administrative Expense Claim**" means an administrative expense or claim described in Bankruptcy Code § 503 and entitled to administrative priority pursuant to Bankruptcy Code § 507(a)(1), including, but not limited to, Fee Claims.

"**Allowed Amount**" means the amount of any Allowed Claim.

"**Allowed Claim**" means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that: (i) a Proof of Claim or request for payment was timely filed, or, with leave of the Bankruptcy Court, late filed, and as to which no objection has been timely filed with the Bankruptcy Court, or, if filed, is allowed by a Final Order, unless otherwise provided in this Plan; (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and no objection has been timely filed or, if filed, is allowed by a Final Order; or (iii) with respect to an Administrative Expense Claim or Fee Claim, the Administrative Expense Claim or Fee Claim has been approved by a Final Order upon notice and application to the Bankruptcy Court.

"**Assets**" means property of the Estate.

"**Avoidance Actions**" means any and all rights, claims, and causes of action which a trustee, Debtor, or other appropriate party in interest would be able to assert on behalf of the Estate under applicable state statutes or the avoidance provisions of chapter 5 of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code §§ 506, 542-551, and 553.

"**Bankruptcy Case**" or "**Case**" means this bankruptcy case: Case No. 20-42789-mxm-11, styled as BM318, LLC, pending before the Bankruptcy Court.

"**Bankruptcy Code**" or "**Code**" means the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, as amended.

"**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, or other such court that may have jurisdiction with respect to the reorganization of the Debtor pursuant to Chapter 11 of the Bankruptcy Code.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended, and "**Bankruptcy Rule**" refers to a specific rule therein.

"**Bar Date**" means December 31, 2020, the deadline established by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c)(3), after which any Proof of Claim may not be timely filed, except Claims held by governmental agencies.

"**Business Day**" shall mean any day that is not a Saturday, Sunday, or one of the legal holidays listed in Bankruptcy Rule 9006(a).

"**Claim**" shall have the meaning set forth in Bankruptcy Code § 101(5).

"**Claimant**" or "**Creditor**" means the holder of a Claim or interest in Assets.

"**Class**" means any class into which Claims are classified pursuant to the Plan. Each subclass of a class shall be treated as a separate class.

**"Collateral"** means the real or personal property securing a Secured Claim.

"**Confirmation**" means the Bankruptcy Court's entry of the Confirmation Order.

"**Confirmation Date**" means the date on which the Order confirming this Plan is entered.

"**Confirmation Hearing**" means the hearing or hearings held before the Bankruptcy Court in which the Debtors will seek Confirmation of this Plan.

"**Confirmation Order**" means the Order confirming this Plan.

"**Contested**" when used with respect to a Claim, means a Claim against the Debtor: (i) that is listed in the Debtor's Schedules of Assets and Liabilities as disputed, contingent, or unliquidated; (ii) that is listed in the Debtor's Schedules of Assets and Liabilities as undisputed, liquidated, and not contingent and as to which a Proof of Claim has been filed with the Bankruptcy Court, to the extent the Proof of Claim amount exceeds the scheduled amount; (iii) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (iv) as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

"**Debtor**" means BM318, LLC, the Debtor herein. Where the context so requires, "**Debtor**" shall also include the Reorganized Debtor.

"**Disputed**" with respect to a Claim means either: (i) a Claim which has been objected to by the Debtor; or (ii) a Claim that is listed on the Debtor's bankruptcy schedules as "disputed, contingent or unliquidated" and for which such Creditor or Interest holder has not filed a Proof of Claim.

"**Effective Date**" means the thirtieth (30th) day after the Confirmation Date.

"**Estate**" means the bankruptcy estate of the Debtor in this Case.

"**Fee Claim**" means a Claim under Bankruptcy Code §§ 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in this Bankruptcy Case.

"**Fee Application**" means an application filed with the Bankruptcy Court for allowance of a Fee Claim.

"**Final Order**" means an Order as to which any appeal that has been taken has not been stayed following the expiration of the time for appeal or has been resolved, or as to which the time for appeal has expired.

"**Impaired**" means the treatment of an Allowed Claim or Interest pursuant to the Plan unless, with respect to such Claim or Interest, either: (i) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after occurrence of a default, the Debtor (A) cures any default that occurred before or after the commencement of the Chapter 11 Case on the Petition Date, other than default of the kind specified in § 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim or Interest as such maturity existed before such default; (C) compensates the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; or (iii) the Plan provides that on the Effective Date, the holder of such Claim or Interest receives, on account of such Claim or Interest, cash equal to the Allowed Amount of such Claim or Interest.

"**Insider**" has the meaning provided by § 101(31) of the Bankruptcy Code.

"**Interest**" means any equity or ownership interest in the Debtor.

"**Lien**" means any charge against or interest in property to secure payment of debt or performance of an obligation and includes a judicial lien, security interest, and deed of trust, mortgage and property tax lien.

"**Order**" means an Order of the Bankruptcy Court.

"**Petition Date**" means September 1, 2020, the date on which the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code.

"**Plan**" means this *Chapter 11 Plan of Reorganization*, including any amendments, modifications or corrections made thereto pursuant to the Bankruptcy Code.

"**Priority Tax Claim**" means a Claim entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

**"Priority Wage Claim"** means a Claim entitled to priority pursuant to Bankruptcy Code § 507(a)(4).

**"Priority Unsecured Claim"** means an Unsecured Claim entitled to priority under Bankruptcy Code § 507(a), except Priority Tax Claims and Priority Wage Claims.

"**Proof of Claim**" means a written statement setting forth a Creditor's Claim filed in this Case and conforming substantially to the appropriate official form.

**"Reorganized Debtor"** means the Debtor as it exists after Confirmation of the Plan.

"**Schedules and Statements**" means the Debtor's bankruptcy schedules A/B, D-H and the Statement of Financial Affairs.

"**Secured Claim**" means a Claim that is secured within the meaning of Bankruptcy Code § 506(a). Should the value of the Collateral securing a Secured Claim be less than the amount of the claim, the claim will be bifurcated into a Secured Claim equal to the value of the Collateral and a general unsecured claim for the remainder, pursuant to Bankruptcy Code § 506(d).

"**Unsecured Claim**" means any Claim that is not a Secured Claim or an Administrative Expense Claim and that is not entitled to priority treatment under Bankruptcy Code § 507.

## ARTICLE II
## CONCEPT OF THE PLAN

**2.01** The Plan is a plan of reorganization. The Debtor shall continue its business after the Confirmation Date. The Debtor owns 118 acres of unimproved land located in Parker County near Aledo, Texas (the "Property"). The Debtor intends to develop and divide the Property into residential lots for sale to homebuilders for a profit.

**2.02 The Plan will pay all Allowed Claimants 100% of their Claims, with interest**. The Plan will be funded by the Debtor through the profits it will earn from the sale of developed residential lots.

## ARTICLE III
## GENERAL TERMS AND CONDITIONS

**3.01** **Treatment of Claims**. This Plan is intended to resolve all Claims against the Debtor and/or property of the Debtor of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to Bankruptcy Code Section 502(a). However, only Allowed Claims will receive payments under the Plan. The Plan is designed to ensure that Claimants shall receive at least as much pursuant to this Plan as they would receive in a liquidation pursuant to Chapter 7 of the Bankruptcy Code.

**3.02** **Time for Filing Claims**. The holder of any Administrative Claim other than (i) a Fee Claim, (ii) a liability incurred and paid in the ordinary course of business by the Debtor, or (iii) an Allowed Administrative Claim, must file with the Bankruptcy Court and serve on the Debtor and its respective counsel, notice of such Administrative Claim within thirty (30) days after the Effective Date. At a minimum, such notice must identify (i) the name of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

Each Person asserting an Administrative Expense that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on the Debtor's counsel and the U. S. Trustee, a Fee Application within sixty (60) days after the Effective Date.

A person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

Liabilities incurred from the Petition Date through the Effective Date in the ordinary course of business shall be paid in the ordinary course of business by the Debtor.

**3.03** **Modification to the Plan**. In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified or amended upon application of the Debtor, or corrected prior to the Confirmation Date, provided that notice and an opportunity for hearing have been given to any affected party. The Plan may be modified at any time after Confirmation and before the Effective Date, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, the circumstances warrant such modification and Debtor consents thereto in writing.

## ARTICLE IV
## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

The Debtor designates the following Classes of Claims and Interests pursuant to Bankruptcy Code Section 1123.

| **CLASSIFICATION OF CLAIMS** |
|---|
| Class 1: Priority Unsecured Claims other than Priority Tax Claims |
| Class 2: Allowed Secured Claims of Southern Star Capital, LLC |
| Class 3: Allowed Secured Claims of Parker Central Appraisal District |
| Class 4: General Unsecured Claims |
| Class 5: Insider Claims |
| Class 6: Equity Interests |

**ARTICLE V**
**PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS**

***A. NON-CLASSIFIED CLAIMS.*** The following Claims are not classified, pursuant to Bankruptcy Code Section 1123:

**Treatment of Administrative Claims**. Each holder of an Administrative Claim other than Professional Fee Administrative Claims shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other treatment as to which the Debtor and such holder shall have agreed upon in writing; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Bankruptcy Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto. On or before the Effective Date, the Debtor or Reorganized Debtor shall pay or have paid in full all Allowed Administrative Claims. All Allowed Administrative Claims shall be paid by the Reorganized Debtor when they are due until the Bankruptcy Case is closed pursuant to a final decree, order of dismissal, or order of conversion. Until entry of such an order, the Reorganized Debtor shall file with the Bankruptcy Court and serve upon the United States Trustee a quarterly financial report. Any administrative ad valorem tax claims shall be paid pursuant to otherwise applicable state law.

**Treatment of Professional Fee Administrative Claims.** All persons who are awarded compensation or reimbursement of expenses by the Bankruptcy Court in accordance with sections 330 or 331 of the Bankruptcy Code or entitled to the priorities established pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code, shall be paid in full, in Cash, the amounts allowed by the Bankruptcy Court on the later of the Effective Date or the date on which the order allowing such Claim becomes a Final Order, or upon such other terms as may be mutually agreed upon between such holder of an Allowed Professional Fee Claim and the Reorganized Debtor.

**Treatment of Priority Tax Claims.** Priority Tax Claims shall be paid in full over sixty (60) months from the Effective Date at an interest rate of 5% per annum. Payments shall commence on the first day of the month following the Effective Date and continue on the first day of each month thereafter until paid in full.

**Title 28 U.S.C. Section 1930 Fees.** The Reorganized Debtor shall pay all post-Confirmation fees assessed by the Office of the United States Trustee until this Case is closed by the Court or the Reorganized Debtor is otherwise released from such obligations by the Court.

***B. CLASSIFIED CLAIMS.*** The following Claims are classified pursuant to Bankruptcy Code Section 1123, and are treated as follows:

**Class 1: Allowed Unsecured Priority Claims Other Than Priority Tax Claims**

Class 1 Claims shall consist of Unsecured Priority Claims other than Priority Tax Claims. The Debtor does not believe any such Claims exist. To the extent such Claims do exist, they shall be paid in full, with interest at the rate of 5% per annum, in six (6) equal monthly installments. Payments shall commence on the first (1st) day of the third (3rd) calendar month following the Effective Date and continue on the first day of each month thereafter until paid in full. Interest shall begin to accrue on the Effective Date. This Class is Impaired by the Plan and the holders of these Claims are entitled to vote to accept or reject the Plan.

**Class 2: Allowed Secured Claims of Southern Star Capital, LLC**

The Class 2 Allowed Secured Claims of Southern Star Capital, LLC shall be paid in full. This Claim shall bear interest at the rate of five percent (5%) per annum, amortized over 5 years, accruing as of the Petition Date. Equal monthly installments of principal and interest shall commence on March 1, 2021 and continue on the first day of each succeeding month until a final lump sum payment of the full remaining balance is made on July 1, 2022.

a. To the extent Southern Star's Allowed Claim is partially unsecured, the Claim shall be bifurcated into a Class 2 Secured Claim in the amount of the value of the Southern Star's Collateral (as agreed by the parties or determined by the Court) and a Class 4 Unsecured Claim for the remainder, pursuant to 11 U.S.C. Sec. 506(d).

b. If the Reorganized Debtor fails to make any payment as set out above, that failure shall be an event of default. If the Reorganized Debtor fails to cure a monetary event of default within ten (10) days after receipt of written notice of default from this Claimant, then the Claimant may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the Claimant may have under its loan documents or state law; and/or (c) seek such relief as may be appropriate in the Court.

c. Southern Star shall retain any valid liens it had as of the Petition Date.

This Claim is Impaired and the holder of this Claim is entitled to vote to accept or reject the Plan.

**Class 3: Allowed Secured Claims of Parker CAD.**

Class 3 shall consist of the Allowed Secured Claims of Parker Central Appraisal District. Class 3 Claims shall be paid in full on the Effective Date.

If the Reorganized Debtor fails to make any payment as set out above, that failure shall be an event of default. If the Reorganized Debtor fails to cure an event of default within ten (10) days after receipt of written notice of default from this Claimant, then the

Claimant may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the Claimant may have under applicable state law; and/or (c) seek such relief as may be appropriate in the Court.

This Claimant shall retain any valid liens it had as of the Petition Date. This Class is Impaired by the Plan and the holder of this Claim is entitled to vote to accept or reject the Plan.

If the Reorganized Debtor fails to make any payment as set out above, that failure shall be an event of default. If the Reorganized Debtor fails to cure an event of default within ten (10) days after receipt of written notice of default from this Claimant, then the Claimant may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the Claimant may have under applicable state law; and/or (c) seek such relief as may be appropriate in the Court.

**Class 4: Allowed General Unsecured Claims**

Class 4 shall consist of Allowed Unsecured Claims, other than the Claims of Class 5 Insiders. Class 4 Claims shall be paid in full in nine (9) equal monthly installments of principal and interest, commencing on the first (1st) day of the first calendar month following the Effective Date and continuing on the first day of each month thereafter until paid in full. Interest shall begin to accrue on the Effective Date at the rate of 2% per annum. This Class is Impaired and any holder of a Claim in this class is entitled to vote to accept or reject the Plan.

**Class 5: Allowed Insider Claims**

Class 5 shall consist of the Allowed Claims of Insiders of the Debtor. Class 6 Claims shall be paid in full without interest, but only after all other Claimants in the Case have been paid in full as set out above. Class 5 Claimants are Impaired and are deemed to have rejected the Plan, but their claims will not be counted for or against Confirmation.

**Class 6 - Equity Interests**

All Equity Interests in the Debtor shall be retained.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF PLAN

**6.01 Implementation of Plan.** This Plan will be implemented, pursuant to Section 1123(a)(5) of the Code, by the commencement of payments as called for above. Details of the Debtor's plan for development of the Property are included in the Disclosure Statement submitted together with this Plan. Site maps, a preliminary plat map, a survey, sales comparables, lot development plans, projected costs and full financial projections in support of this Plan are attached to the Disclosure Statement and incorporated herein by this reference as if set forth in full for all purposes.

Upon the Effective Date, all property of the Debtor and its Estate shall vest in the Reorganized Debtor, subject to the Allowed Secured Claims described in this Plan.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01 Rejection of Executory Contracts and Unexpired Leases**. All executory contracts and unexpired leases not assumed by the Debtor as of the Confirmation Date shall be deemed as rejected by this Plan.

**7.02 Reservation of Rights**. The Debtor shall have the right to assume or reject, pursuant to Bankruptcy Code Section 365, prior to the Confirmation Date, any executory contract or unexpired lease of real property (to the extent permitted under the Bankruptcy Code).

**7.03 Bar Date for Claims Based on Rejection**. If the rejection of an executory contract or an unexpired lease results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Plan Proponent or their properties or agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Reorganized Debtor, by the earlier of (a) the end of the month following the period in which the Effective Date occurs or (b) such other deadline as the Court may set for asserting a Claim for such damages. Any Rejection Claim arising from the rejection of an unexpired lease or executory contract shall be treated as a General Unsecured Claim; *provided, however*, that any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission that such rejection gives rise to or results in a Claim or shall be deemed a waiver of any objections to such Claim if asserted.

## ARTICLE VIII
## ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS

**8.01 The Debtor's Causes of Action**. Except as otherwise released pursuant to the Plan, all Claims recoverable under Section 550 of the Bankruptcy Code, all Claims against third parties on account of an indebtedness, and all other Claims of any kind or character whatsoever owed to or in favor of the Debtor or Reorganized Debtor or the Estate to the extent not specifically compromised and released pursuant to this Plan or any agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by the Reorganized Debtor for the benefit of the Creditors subsequent to the Effective Date. This Plan shall not estop the Debtor or Reorganized Debtor from asserting any claim or cause of action whether disclosed or not.

**8.02 Objections to Claims.** Any party authorized by the Bankruptcy Code may object to the allowance of Pre-Petition Date Claims at any time prior to sixty (60) days after the Effective Date and, as to Rejection Claims, at any time prior to sixty (60) days after the filing of any such Rejection Claim. Any proof of Claim filed after the Court sets bar dates shall be of no force and

effect and shall be deemed disallowed. All Contested Claims shall be litigated to Final Order; *provided, however,* that the Debtor or Reorganized Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court. Notwithstanding the foregoing, a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

No distributions under this Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim. If a Claim is disputed in whole or in part because the Debtor or Reorganized Debtor asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of its Allowed Claim. In addition, any party authorized by the Bankruptcy Code, at any time, may request that the Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of any prior objections.

## ARTICLE IX
## EFFECT OF CONFIRMATION

**9.01 Discharge and Release of Debtor**. Pursuant to Bankruptcy Code Section 1141(d), confirmation of this Plan does discharge the Debtor.

**9.02 Legal Binding Effect**. The provisions of this Plan, pursuant to the Bankruptcy Code Section 1141 shall bind the Debtor and all Creditors, whether or not they accept this Plan. The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.

**9.03 Discharge**. Confirmation of the Plan shall result in the inability to commence or continue any judicial, administrative, or other action or proceeding on account of any Pre-Petition Date Claims against the Debtor or Reorganized Debtor.

Except as provided in the Plan, from and after the Confirmation Date, all holders of Claims against the Debtor are restrained and enjoined by the Confirmation of the Plan: (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor or Reorganized Debtor, or its property; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Assets or the Debtor or Reorganized Debtor on account of such Claims; (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Assets, or the Debtor or Reorganized Debtor on account of such Claims; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor or Reorganized Debtor on account of such Claims; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan on account of such Claims; provided, however, that each holder of a Contested Claim may continue to prosecute its proof of Claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce its rights under the Plan and any agreements executed or delivered pursuant to or in connection with

the Plan. Creditors shall not pursue claims against non-debtor third parties at the same time as their claims are being paid through the Plan.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

**10.01** **Request for Relief Under Bankruptcy Code Section 1129**. In the event any Impaired Class shall fail to accept this Plan in accordance with Bankruptcy Code Section 1129(a), the Plan Proponent reserves the right to, and does hereby request the Bankruptcy Court to confirm the Plan in accordance with Bankruptcy Code Section 1129(b).

**10.02** **Revocation**. The Plan Proponent reserves the right to revoke and withdraw this Plan at any time prior to the Confirmation Date.

**10.03** **Effect of Withdrawal or Revocation**. If the Plan Proponent revokes or withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

**10.04** **Due Authorization by Creditors**. Each and every Claimant who elects to participate in the distributions provided herein warrants that it is authorized to accept in consideration of its Claim against the Debtor the distributions provided in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

**10.05** **Entire Agreement**. This Plan, as described herein, the Confirmation Order, and all other documents and instruments to effectuate this Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents.

**10.06** **Section 1146 Exemption.** Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer or exchange or any security under this Plan or the making or delivery of any instrument or transfer pursuant to, in implementation of or as contemplated by this Plan or the transfer of any property pursuant to this Plan shall not be taxed under any federal, state or local law imposing a stamp, transfer or similar tax or fee.

**10.07** **Provisions Governing Distributions.** All payments and distributions under the Plan shall be made by the Reorganized Debtor as indicated. Any payments or distributions to be made by the Plan Proponent pursuant to the Plan shall be made as soon as reasonably practicable after the Effective Date, except as otherwise provided for in the Plan, or as may be ordered by the Bankruptcy Court. Any payment or distribution by the Reorganized Debtor pursuant to the Plan, to the extent delivered by the United States Mail, shall be deemed made when deposited into the United States Mail.

Payments of Cash to be made by the Reorganized Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim or proofs of interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or proof of interest is filed). All Claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date. After such date, all unclaimed property shall remain the property of the Reorganized Debtor and the Claim of any other holder with respect to such unclaimed property shall be discharged and forever barred.

Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof. Requests for reissuance of any check shall be made directly to the Plan Proponent by the holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of such a voided check within ninety (90) days after the date of delivery of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall become Unclaimed Property and returned to the Reorganized Debtor.

No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

**10.08** **Governing Law.** Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Arkansas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

**10.09** **Default**. Unless otherwise stated in this Plan, if the Reorganized Debtor fails to satisfy any of the obligations under this Plan and such default is not cured within 30 business days of the date of transmission of notice of the default to the Reorganized Debtor , then the defaulted party may pursue all of its remedies outside of the Bankruptcy Court, including, but not limited to, foreclosure on its lien(s) on property. For purposes of this provision, notice shall be provided to the Reorganized Debtor, c/o Joyce Lindauer, Esq. via facsimile at (972) 503-4034 and email at joyce@joycelindauer.com.

## ARTICLE XI
## MODIFICATION OF THE PLAN

**11.01** The Debtor may propose amendments to or modifications of this Plan at any time prior to Confirmation, upon notice to all parties-in-interest. After Confirmation, the Reorganized Debtor may, with approval of the Court and so long as it does not materially or adversely affect the interest of creditors, modify to remedy any defect or omission or reconcile any inconsistencies in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of this Plan.

## ARTICLE XII
## RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan or the Effective Date having occurred, the Court will retain jurisdiction for the following purposes:

**12.01** **Allowance of Claims**. To hear and determine the allowability of all Claims upon objections to such Claims.

**12.02** **Executory Contracts and Unexpired Leases Proceedings**. To act with respect to proceedings regarding the assumption of any executory contract or unexpired lease of the Debtor pursuant to Section 365 and 1123 of the Code and Article VII of the Plan.

**12.03** **Plan Interpretation**. To resolve controversies and disputes regarding the interpretation of the Plan.

**12.04** **Plan Implementation**. To implement and enforce the provisions of the Plan and enter orders in aid of confirmation and implementation of the Plan.

**12.05** **Plan Modification**. To modify the Plan pursuant to Section 1127 of the Code and applicable Bankruptcy Rules.

**12.06** **Adjudication of Controversies**. To adjudicate such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court against the Debtor.

**12.07** **Injunctive Relief**. To issue any injunction or other relief as appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or in the Confirmation Order.

**12.08** **Interpleader Action**. To entertain interpleader actions concerning assets to be distributed or other assets of the Estate.

**12.09** **Correct Minor Defects**. To correct any defect, cure any omission or reconcile any inconsistency or ambiguity in the Plan, the Confirmation Order or any document executed or to be executed in connection therewith, as may be necessary to carry out the purposes and intent of the Plan, provided that the rights of any holder or an Allowed Claim are not materially and adversely affected thereby.

**12.10** **Authorization of Fees and Expenses**. To review and authorize payment of professional fees incurred prior to the Effective Date.

**12.11** **Post-Confirmation Orders Regarding Confirmation**. To enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated.

**12.12** **Final Decree**. To enter a final decree closing the Case pursuant to Bankruptcy Rule 3022.

Dated: November 13, 2020.

Respectfully Submitted,

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR

*/s/Timothy Barton*

Managing Member of the Debtor as
Proponent of the Plan

Monthly Operating Report
ACCRUAL BASIS

| | |
|---|---|
| CASE NAME: | BM318, LLC BM318 |
| CASE NUMBER: | 20-42789 |
| JUDGE: | Mullin |

## UNITED STATES BANKRUPTCY COURT

## NORTHERN & EASTERN DISTRICTS OF TEXAS

## REGION 6

## MONTHLY OPERATING REPORT

**MONTH ENDING:** September (MONTH) 2020 (YEAR)

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERATING REPORT (ACCRUAL BASIS-1 THROUGH ACCRUAL BASIS-7) AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT, AND COMPLETE. DECLARATION OF THE PREPARER (OTHER THAN RESPONSIBLE PARTY) IS BASED ON ALL INFORMATION OF WHICH PREPARER HAS ANY KNOWLEDGE.

RESPONSIBLE PARTY:

[signature]
ORIGINAL SIGNATURE OF RESPONSIBLE PARTY — President
TITLE

Timothy Barton
PRINTED NAME OF RESPONSIBLE PARTY — 10/20/2020
DATE

PREPARER:

[signature]
ORIGINAL SIGNATURE OF PREPARER — Staff Accountant
TITLE

PRALHAD REGMI
PRINTED NAME OF PREPARER — 10/20/2020
DATE

**EXHIBIT "B"**

**Monthly Operating Report**
ACCRUAL BASIS-1

| | |
|---|---|
| CASE NAME: | BM318, LLC |
| CASE NUMBER: | 20-42789 |

COMPARATIVE BALANCE SHEET

| | SCHEDULE AMOUNT | MONTH | MONTH | MONTH |
|---|---|---|---|---|
| **ASSETS** | | | | |
| 1. UNRESTRICTED CASH | | | | |
| 2. RESTRICTED CASH | | 165,000 | | |
| 3. TOTAL CASH | | | | |
| 4. ACCOUNTS RECEIVABLE (NET) | | | | |
| 5. INVENTORY | | | | |
| 6. NOTES RECEIVABLE | | | | |
| 7. PREPAID EXPENSES | | | | |
| 8. OTHER (ATTACH LIST) | | 2,973,869.86 | | |
| 9. TOTAL CURRENT ASSETS | | 3,138,869.86 | | |
| 10. PROPERTY, PLANT & EQUIPMENT | | | | |
| 11. LESS: ACCUMULATED DEPRECIATION/DEPLETION | | | | |
| 12. NET PROPERTY, PLANT & EQUIPMENT | | | | |
| 13. DUE FROM INSIDERS | | | | |
| 14. OTHER ASSETS - NET OF AMORTIZATION (ATTACH LIST) | | | | |
| 15. OTHER (ATTACH LIST) | | | | |
| 16. **TOTAL ASSETS** | | 3,138,869.86 | | |
| **POSTPETITION LIABILITIES** | | | | |
| 17. ACCOUNTS PAYABLE | | 621,835.12 | | |
| 18. TAXES PAYABLE | | | | |
| 19. NOTES PAYABLE | | | | |
| 20. PROFESSIONAL FEES | | | | |
| 21. SECURED DEBT | | | | |
| 22. OTHER (ATTACH LIST) | | 1,007,189.79 | | |
| 23. TOTAL POSTPETITION LIABILITIES | | 1,629,024.91 | | |
| **PREPETITION LIABILITIES** | | | | |
| 24. SECURED DEBT | | 1,650,000 | | |
| 25. PRIORITY DEBT | | | | |
| 26. UNSECURED DEBT | | | | |
| 27. OTHER (ATTACH LIST) | | | | |
| 28. TOTAL PREPETITION LIABILITIES | | 1,650,000 | | |
| 29. **TOTAL LIABILITIES** | | 3,279,024.91 | | |
| **EQUITY** | | | | |
| 30. PREPETITION OWNERS' EQUITY | | -140,155.05 | | |
| 31. POSTPETITION CUMULATIVE PROFIT OR (LOSS) | | | | |
| 32. DIRECT CHARGES TO EQUITY (ATTACH EXPLANATION) | | | | |
| 33. TOTAL EQUITY | | -140,155.05 | | |
| 34. **TOTAL LIABILITIES & OWNERS' EQUITY** | | 3,138,869.86 | | |

**Monthly Operating Report**
**ACCRUAL BASIS-2**

| | |
|---|---|
| CASE NAME: | BM318, LLC |
| CASE NUMBER: | 20-42789 |

| INCOME STATEMENT | MONTH | MONTH | MONTH | MONTH |
|---|---|---|---|---|
| **REVENUES** | | | | |
| 1. GROSS REVENUES | | | | |
| 2. LESS: RETURNS & DISCOUNTS | | | | |
| 3. NET REVENUE | | | | |
| **COST OF GOODS SOLD** | | | | |
| 4. MATERIAL | | | | |
| 5. DIRECT LABOR | | | | |
| 6. DIRECT OVERHEAD | | | | |
| 7. TOTAL COST OF GOODS SOLD | | | | |
| 8. GROSS PROFIT | | | | |
| **OPERATING EXPENSES** | | | | |
| 9. OFFICER / INSIDER COMPENSATION | | | | |
| 10. SELLING & MARKETING | | | | |
| 11. GENERAL & ADMINISTRATIVE | | | | |
| 12. RENT & LEASE | | | | |
| 13. OTHER (ATTACH LIST) | | | | |
| 14. TOTAL OPERATING EXPENSES | | | | |
| 15. INCOME BEFORE NON-OPERATING INCOME & EXPENSE | | | | |
| **OTHER INCOME & EXPENSES** | | | | |
| 16. NON-OPERATING INCOME (ATTACH LIST) | | | | |
| 17. NON-OPERATING EXPENSE (ATTACH LIST) | | | | |
| 18. INTEREST EXPENSE | | | | |
| 19. DEPRECIATION / DEPLETION | | | | |
| 20. AMORTIZATION | | | | |
| 21. OTHER (ATTACH LIST) | | | | |
| 22. NET OTHER INCOME & EXPENSES | | | | |
| **REORGANIZATION EXPENSES** | | | | |
| 23. PROFESSIONAL FEES | | | | |
| 24. U.S. TRUSTEE FEES | | | | |
| 25. OTHER (ATTACH LIST) | | | | |
| 26. TOTAL REORGANIZATION EXPENSES | | | | |
| 27. INCOME TAX | | | | |
| 28. NET PROFIT (LOSS) | | | | |

**Monthly Operating Report**
ACCRUAL BASIS-3

| | |
|---|---|
| CASE NAME: | BM318, LLC |
| CASE NUMBER: | 20-42789 |

| CASH RECEIPTS AND DISBURSEMENTS | MONTH | MONTH | MONTH | QUARTER |
|---|---|---|---|---|
| 1. CASH - BEGINNING OF MONTH | | | | |
| **RECEIPTS FROM OPERATIONS** | | | | |
| 2. CASH SALES | | | | |
| **COLLECTION OF ACCOUNTS RECEIVABLE** | | | | |
| 3. PREPETITION | | | | |
| 4. POSTPETITION | | | | |
| 5. TOTAL OPERATING RECEIPTS | | | | |
| **NON-OPERATING RECEIPTS** | | | | |
| 6. LOANS & ADVANCES (ATTACH LIST) | | | | |
| 7. SALE OF ASSETS | | | | |
| 8. OTHER (ATTACH LIST) | | | | |
| 9. TOTAL NON-OPERATING RECEIPTS | | | | |
| 10. TOTAL RECEIPTS | | | | |
| 11. TOTAL CASH AVAILABLE | | | | |
| **OPERATING DISBURSEMENTS** | | | | |
| 12. NET PAYROLL | | | | |
| 13. PAYROLL TAXES PAID | | | | |
| 14. SALES, USE & OTHER TAXES PAID | | | | |
| 15. SECURED / RENTAL / LEASES | | | | |
| 16. UTILITIES | | | | |
| 17. INSURANCE | | | | |
| 18. INVENTORY PURCHASES | | | | |
| 19. VEHICLE EXPENSES | | | | |
| 20. TRAVEL | | | | |
| 21. ENTERTAINMENT | | | | |
| 22. REPAIRS & MAINTENANCE | | | | |
| 23. SUPPLIES | | | | |
| 24. ADVERTISING | | | | |
| 25. OTHER (ATTACH LIST) | | | | |
| 26. TOTAL OPERATING DISBURSEMENTS | | | | |
| **REORGANIZATION EXPENSES** | | | | |
| 27. PROFESSIONAL FEES | | | | |
| 28. U.S. TRUSTEE FEES | | | | |
| 29. OTHER (ATTACH LIST) | | | | |
| 30. TOTAL REORGANIZATION EXPENSES | | | | |
| 31. TOTAL DISBURSEMENTS | | | | |
| 32. NET CASH FLOW | | | | |
| 33. CASH - END OF MONTH | | | | |

**Monthly Operating Report**
ACCRUAL BASIS-4

CASE NAME: BM318, LLC

CASE NUMBER: 20-42789

| ACCOUNTS RECEIVABLE AGING | SCHEDULE AMOUNT | MONTH | MONTH | MONTH |
|---|---|---|---|---|
| 1. 0-30 | | | | |
| 2. 31-60 | | | | |
| 3. 61-90 | | | | |
| 4. 91+ | | | | |
| 5. TOTAL ACCOUNTS RECEIVABLE | | | | |
| 6. AMOUNT CONSIDERED UNCOLLECTIBLE | | | | |
| 7. ACCOUNTS RECEIVABLE (NET) | | | | |

AGING OF POSTPETITION TAXES AND PAYABLES

MONTH: ____________

| TAXES PAYABLE | 0-30 DAYS | 31-60 DAYS | 61-90 DAYS | 91+ DAYS | TOTAL |
|---|---|---|---|---|---|
| 1. FEDERAL | | | | | |
| 2. STATE | | | | | |
| 3. LOCAL | | | | | |
| 4. OTHER (ATTACH LIST) | | | | | |
| 5. TOTAL TAXES PAYABLE | | | | | |
| 6. ACCOUNTS PAYABLE | | | | | |

STATUS OF POSTPETITION TAXES

MONTH: ____________

| FEDERAL | BEGINNING TAX LIABILITY | AMOUNT WITHHELD AND/ OR ACCRUED | AMOUNT PAID | ENDING TAX LIABILITY |
|---|---|---|---|---|
| 1. WITHHOLDING | | | | |
| 2. FICA-EMPLOYEE | | | | |
| 3. FICA-EMPLOYER | | | | |
| 4. UNEMPLOYMENT | | | | |
| 5. INCOME | | | | |
| 6. OTHER (ATTACH LIST) | | | | |
| 7. TOTAL FEDERAL TAXES | | | | |
| STATE AND LOCAL | | | | |
| 8. WITHHOLDING | | | | |
| 9. SALES | | | | |
| 10. EXCISE | | | | |
| 11. UNEMPLOYMENT | | | | |
| 12. REAL PROPERTY | | | | |
| 13. PERSONAL PROPERTY | | | | |
| 14. OTHER (ATTACH LIST) | | | | |
| 15. TOTAL STATE & LOCAL | | | | |
| 16. TOTAL TAXES | | | | |

**Monthly Operating Report**
**ACCRUAL BASIS-5**

**CASE NAME:** BM318, LLC
[illegible]
**CASE NUMBER:** 20.42789

**MONTH:** September 2020

| BANK RECONCILIATIONS | Account #1 | Account #2 | Account #3 | TOTAL |
|---|---|---|---|---|
| A. BANK: | | | | |
| B. ACCOUNT NUMBER: | | | | |
| C. PURPOSE (TYPE): | | | | |
| 1. BALANCE PER BANK STATEMENT | | | | |
| 2. ADD: TOTAL DEPOSITS NOT CREDITED | | | | |
| 3. SUBTRACT: OUTSTANDING CHECKS | | | | |
| 4. OTHER RECONCILING ITEMS | | | | |
| 5. MONTH END BALANCE PER BOOKS | | | | |
| 6. NUMBER OF LAST CHECK WRITTEN | | | | [illegible] |

| INVESTMENT ACCOUNTS<br>BANK, ACCOUNT NAME & NUMBER | DATE OF PURCHASE | TYPE OF INSTRUMENT | PURCHASE PRICE | CURRENT VALUE |
|---|---|---|---|---|
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |
| 11. TOTAL INVESTMENTS | | | | |

| CASH | |
|---|---|
| 12. CURRENCY ON HAND | |
| 13. **TOTAL CASH - END OF MONTH** | |

**Monthly Operating Report**
**ACCRUAL BASIS-6**

CASE NAME: BM318, LLC

CASE NUMBER: 20-42789

MONTH: September

**PAYMENTS TO INSIDERS AND PROFESSIONALS**

| INSIDERS | | | |
|---|---|---|---|
| NAME | TYPE OF PAYMENT | AMOUNT PAID | TOTAL PAID TO DATE |
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. TOTAL PAYMENTS TO INSIDERS | | | |

| PROFESSIONALS | | | | | |
|---|---|---|---|---|---|
| NAME | DATE OF COURT ORDER AUTHORIZING PAYMENT | AMOUNT APPROVED | AMOUNT PAID | TOTAL PAID TO DATE | TOTAL INCURRED & UNPAID * |
| 1. | | | | | |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| 6. TOTAL PAYMENTS TO PROFESSIONALS | | | | | |

**POSTPETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS**

| NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENTS DUE | AMOUNTS PAID DURING MONTH | TOTAL UNPAID POSTPETITION |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. TOTAL | | | |

**Monthly Operating Report**
ACCRUAL BASIS-7

CASE NAME: BM318, LLC

CASE NUMBER: 20-42789

MONTH: September 2020

**QUESTIONNAIRE**

| | | YES | NO |
|---|---|---|---|
| 1. | HAVE ANY ASSETS BEEN SOLD OR TRANSFERRED OUTSIDE THE NORMAL COURSE OF BUSINESS THIS REPORTING PERIOD? | | X |
| 2. | HAVE ANY FUNDS BEEN DISBURSED FROM ANY ACCOUNT OTHER THAN A DEBTOR IN POSSESSION ACCOUNT? | | X |
| 3. | ARE ANY POSTPETITION RECEIVABLES (ACCOUNTS, NOTES, OR LOANS) DUE FROM RELATED PARTIES? | | X |
| 4. | HAVE ANY PAYMENTS BEEN MADE ON PREPETITION LIABILITIES THIS REPORTING PERIOD? | | X |
| 5. | HAVE ANY POSTPETITION LOANS BEEN RECEIVED BY THE DEBTOR FROM ANY PARTY? | | X |
| 6. | ARE ANY POSTPETITION PAYROLL TAXES PAST DUE? | | X |
| 7. | ARE ANY POSTPETITION STATE OR FEDERAL INCOME TAXES PAST DUE? | | X |
| 8. | ARE ANY POSTPETITION REAL ESTATE TAXES PAST DUE? | | X |
| 9. | ARE ANY OTHER POSTPETITION TAXES PAST DUE? | | X |
| 10. | ARE ANY AMOUNTS OWED TO POSTPETITION CREDITORS DELINQUENT? | | X |
| 11. | HAVE ANY PREPETITION TAXES BEEN PAID DURING THE REPORTING PERIOD? | | X |
| 12. | ARE ANY WAGE PAYMENTS PAST DUE? | | X |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "YES," PROVIDE A DETAILED EXPLANATION OF EACH ITEM. ATTACH ADDITIONAL SHEETS IF NECESSARY.

$ -

**INSURANCE**

| | | YES | NO |
|---|---|---|---|
| 1. | ARE WORKER'S COMPENSATION, GENERAL LIABILITY AND OTHER NECESSARY INSURANCE COVERAGES IN EFFECT? | X | |
| 2. | ARE ALL PREMIUM PAYMENTS PAID CURRENT? | X | |
| 3. | PLEASE ITEMIZE POLICIES BELOW. | | |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "NO," OR IF ANY POLICIES HAVE BEEN CANCELLED OR NOT RENEWED DURING THIS REPORTING PERIOD, PROVIDE AN EXPLANATION BELOW. ATTACH ADDITIONAL SHEETS IF NECESSARY.

**INSTALLMENT PAYMENTS**

| TYPE OF POLICY | CARRIER | PERIOD COVERED | PAYMENT AMOUNT & FREQUENCY |
|---|---|---|---|
| N/A | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# BM318 LLC
## Other Current Assets
### As of September 30, 2020

| | Total |
|---|---|
| 1320 Construction in Process | |
| 1345 Permits | 17,050.00 |
| 1349 Real Estate Taxes | 4,988.89 |
| 1351 Interest | 2,292,007.60 |
| 1352 Insurance. | 12,621.90 |
| 1353 Debt Financing Cost | 73,250.00 |
| 1356 Development Fee | 310,000.00 |
| 1358 Consulting and Professional Fees | 59,006.84 |
| 1361 Engineering-Structural | 66,070.00 |
| 1362 Engineering-MEP | 18,429.28 |
| 1363 Legal | 57,480.83 |
| 1367 Meals & Entertainment | 861.74 |
| 1371 Closing Cost | 61,837.03 |
| 1372 General and Administration | 265.75 |
| **Total 1320 Construction in Process** | **$ 2,973,869.86** |

Tuesday, Oct 20, 2020 04:05:11 PM GMT-7 - Accrual Basis

# BM318 LLC
## Other Liabilities
### As of September 30, 2020

| | |
|---|---|
| **2710 Intercompany Loan Payable** | |
| **2711 Carnegie Development** | 651,814.79 |
| **2713 JMJ Development LLC** | 355,375.00 |
| **Total 2710 Intercompany Loan Payable** | **$ 1,007,189.79** |

Tuesday, Oct 20, 2020 04:09:07 PM GMT-7 - Accrual Basis

**Monthly Operating Report**
**ACCRUAL BASIS**

| | | |
|---|---|---|
| **CASE NAME:** | 20-42789-mxm | BM318 LLC |
| **CASE NUMBER:** | | |
| **JUDGE:** | | |

## UNITED STATES BANKRUPTCY COURT

## NORTHERN & EASTERN DISTRICTS OF TEXAS

## REGION 6

## MONTHLY OPERATING REPORT

**MONTH ENDING:** November (MONTH) 2020 (YEAR)

**IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERATING REPORT (ACCRUAL BASIS-1 THROUGH ACCRUAL BASIS-7) AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT, AND COMPLETE. DECLARATION OF THE PREPARER (OTHER THAN RESPONSIBLE PARTY) IS BASED ON ALL INFORMATION OF WHICH PREPARER HAS ANY KNOWLEDGE.**

**RESPONSIBLE PARTY:**

| | |
|---|---|
| [signature] | President |
| ORIGINAL SIGNATURE OF RESPONSIBLE PARTY | TITLE |
| Timothy barton | 12/21/2020 |
| PRINTED NAME OF RESPONSIBLE PARTY | DATE |

**PREPARER:**

| | |
|---|---|
| [signature] | Staff Accountant |
| ORIGINAL SIGNATURE OF PREPARER | TITLE |
| Pralhad Regmi | 12/21/2020 |
| PRINTED NAME OF PREPARER | DATE |

**Monthly Operating Report**
**ACCRUAL BASIS-1**

| | |
|---|---|
| CASE NAME: | 20-42789-mxm-11 |
| CASE NUMBER: | |

**COMPARATIVE BALANCE SHEET**

| | SCHEDULE AMOUNT | MONTH | MONTH | MONTH |
|---|---|---|---|---|
| **ASSETS** | | | | |
| 1. UNRESTRICTED CASH | | 4,601.43 | | |
| 2. RESTRICTED CASH | | 165,000 | | |
| 3. TOTAL CASH | | | | |
| 4. ACCOUNTS RECEIVABLE (NET) | | | | |
| 5. INVENTORY | | | | |
| 6. NOTES RECEIVABLE | | | | |
| 7. PREPAID EXPENSES | | | | |
| 8. OTHER (ATTACH LIST) | | 2,777,405.30 | | |
| 9. TOTAL CURRENT ASSETS | | 2,947,006.73 | | |
| 10. PROPERTY, PLANT & EQUIPMENT | | 2,007,870 | | |
| 11. LESS: ACCUMULATED DEPRECIATION/DEPLETION | | | | |
| 12. NET PROPERTY, PLANT & EQUIPMENT | | 2,007,870 | | |
| 13. DUE FROM INSIDERS | | | | |
| 14. OTHER ASSETS - NET OF AMORTIZATION (ATTACH LIST) | | | | |
| 15. OTHER (ATTACH LIST) | | | | |
| 16. **TOTAL ASSETS** | | 4,954,876.73 | | |
| **POSTPETITION LIABILITIES** | | | | |
| 17. ACCOUNTS PAYABLE | | 572,867.04 | | |
| 18. TAXES PAYABLE | | | | |
| 19. NOTES PAYABLE | | | | |
| 20. PROFESSIONAL FEES | | | | |
| 21. SECURED DEBT | | | | |
| 22. OTHER (ATTACH LIST) | | 1,021,791.22 | | |
| 23. TOTAL POSTPETITION LIABILITIES | | 1,594,658.26 | | |
| **PREPETITION LIABILITIES** | | | | |
| 24. SECURED DEBT | | 1,650,000 | | |
| 25. PRIORITY DEBT | | | | |
| 26. UNSECURED DEBT | | 149,900 | | |
| 27. OTHER (ATTACH LIST) | | | | |
| 28. TOTAL PREPETITION LIABILITIES | | 1,799,900 | | |
| 29. **TOTAL LIABILITIES** | | 3,394,558.26 | | |
| **EQUITY** | | | | |
| 30. PREPETITION OWNERS' EQUITY | | 1,552,318.47 | | |
| 31. POSTPETITION CUMULATIVE PROFIT OR (LOSS) | | 8,000 | | |
| 32. DIRECT CHARGES TO EQUITY (ATTACH EXPLANATION) | | | | |
| 33. TOTAL EQUITY | | 1,560,318.47 | | |
| 34. **TOTAL LIABILITIES & OWNERS' EQUITY** | | 4,954,876.73 | | |

Note:
The Legal/Professional Fees from Reed Smith LLP is unknown.

**Monthly Operating Report**
**ACCRUAL BASIS-2**

| | | |
|---|---|---|
| CASE NAME: | 0 | 20-42789-mxm-11 |
| CASE NUMBER: | 0 | |

| INCOME STATEMENT | MONTH | MONTH | MONTH | MONTH |
|---|---|---|---|---|
| **REVENUES** | | | | |
| 1. GROSS REVENUES | | | | |
| 2. LESS: RETURNS & DISCOUNTS | | | | |
| 3. NET REVENUE | | | | |
| **COST OF GOODS SOLD** | | | | |
| 4. MATERIAL | | | | |
| 5. DIRECT LABOR | | | | |
| 6. DIRECT OVERHEAD | | | | |
| 7. TOTAL COST OF GOODS SOLD | | | | |
| 8. GROSS PROFIT | | | | |
| **OPERATING EXPENSES** | | | | |
| 9. OFFICER / INSIDER COMPENSATION | | | | |
| 10. SELLING & MARKETING | | | | |
| 11. GENERAL & ADMINISTRATIVE | | | | |
| 12. RENT & LEASE | | | | |
| 13. OTHER (ATTACH LIST) | | | | |
| 14. TOTAL OPERATING EXPENSES | | | | |
| 15. INCOME BEFORE NON-OPERATING INCOME & EXPENSE | | | | |
| **OTHER INCOME & EXPENSES** | | | | |
| 16. NON-OPERATING INCOME (ATTACH LIST) | 8,000 | | | |
| 17. NON-OPERATING EXPENSE (ATTACH LIST) | | | | |
| 18. INTEREST EXPENSE | | | | |
| 19. DEPRECIATION / DEPLETION | | | | |
| 20. AMORTIZATION | | | | |
| 21. OTHER (ATTACH LIST) | | | | |
| 22. NET OTHER INCOME & EXPENSES | | | | |
| **REORGANIZATION EXPENSES** | | | | |
| 23. PROFESSIONAL FEES | | | | |
| 24. U.S. TRUSTEE FEES | | | | |
| 25. OTHER (ATTACH LIST) | | | | |
| 26. TOTAL REORGANIZATION EXPENSES | | | | |
| 27. INCOME TAX | | | | |
| 28. NET PROFIT (LOSS) | 8,000 | | | |

**Monthly Operating Report**
**ACCRUAL BASIS-3**

| | |
|---|---|
| **CASE NAME:** | 20-42789-mxm-11 |
| **CASE NUMBER:** | |

| **CASH RECEIPTS AND DISBURSEMENTS** | MONTH | MONTH | MONTH | QUARTER |
|---|---|---|---|---|
| 1. CASH - BEGINNING OF MONTH | | | | |
| **RECEIPTS FROM OPERATIONS** | | | | |
| 2. CASH SALES | | | | |
| **COLLECTION OF ACCOUNTS RECEIVABLE** | | | | |
| 3. PREPETITION | | | | |
| 4. POSTPETITION | | | | |
| 5. TOTAL OPERATING RECEIPTS | | | | |
| **NON-OPERATING RECEIPTS** | | | | |
| 6. LOANS & ADVANCES (ATTACH LIST) | | | | |
| 7. SALE OF ASSETS | | | | |
| 8. OTHER (ATTACH LIST) | | | | |
| 9. TOTAL NON-OPERATING RECEIPTS | | | | |
| 10. TOTAL RECEIPTS | | | | |
| 11. TOTAL CASH AVAILABLE | | | | |
| **OPERATING DISBURSEMENTS** | | | | |
| 12. NET PAYROLL | | | | |
| 13. PAYROLL TAXES PAID | | | | |
| 14. SALES, USE & OTHER TAXES PAID | | | | |
| 15. SECURED / RENTAL / LEASES | | | | |
| 16. UTILITIES | | | | |
| 17. INSURANCE | | | | |
| 18. INVENTORY PURCHASES | | | | |
| 19. VEHICLE EXPENSES | | | | |
| 20. TRAVEL | | | | |
| 21. ENTERTAINMENT | | | | |
| 22. REPAIRS & MAINTENANCE | | | | |
| 23. SUPPLIES | | | | |
| 24. ADVERTISING | | | | |
| 25. OTHER (ATTACH LIST) | | | | |
| 26. TOTAL OPERATING DISBURSEMENTS | | | | |
| **REORGANIZATION EXPENSES** | | | | |
| 27. PROFESSIONAL FEES | | | | |
| 28. U.S. TRUSTEE FEES | | | | |
| 29. OTHER (ATTACH LIST) | | | | |
| 30. TOTAL REORGANIZATION EXPENSES | | | | |
| 31. TOTAL DISBURSEMENTS | | | | |
| 32. NET CASH FLOW | | | | |
| 33. CASH - END OF MONTH | | | | |

**Monthly Operating Report**
**ACCRUAL BASIS-4**

| | |
|---|---|
| CASE NAME: | 20-42789-mxm-11 |
| CASE NUMBER: | |

| ACCOUNTS RECEIVABLE AGING | SCHEDULE AMOUNT | MONTH | MONTH | MONTH |
|---|---|---|---|---|
| 1. 0-30 | | | | |
| 2. 31-60 | | | | |
| 3. 61-90 | | | | |
| 4. 91+ | | | | |
| 5. TOTAL ACCOUNTS RECEIVABLE | | | | |
| 6. AMOUNT CONSIDERED UNCOLLECTIBLE | | | | |
| 7. ACCOUNTS RECEIVABLE (NET) | | | | |

**AGING OF POSTPETITION TAXES AND PAYABLES** MONTH: ____________

| TAXES PAYABLE | 0-30 DAYS | 31-60 DAYS | 61-90 DAYS | 91+ DAYS | TOTAL |
|---|---|---|---|---|---|
| 1. FEDERAL | | | | | |
| 2. STATE | | | | | |
| 3. LOCAL | | | | | |
| 4. OTHER (ATTACH LIST) | | | | | |
| 5. TOTAL TAXES PAYABLE | | | | | |
| 6. ACCOUNTS PAYABLE | | | | | |

**STATUS OF POSTPETITION TAXES** MONTH: ____________

| FEDERAL | BEGINNING TAX LIABILITY | AMOUNT WITHHELD AND/ 0R ACCRUED | AMOUNT PAID | ENDING TAX LIABILITY |
|---|---|---|---|---|
| 1. WITHHOLDING | | | | |
| 2. FICA-EMPLOYEE | | | | |
| 3. FICA-EMPLOYER | | | | |
| 4. UNEMPLOYMENT | | | | |
| 5. INCOME | | | | |
| 6. OTHER (ATTACH LIST) | | | | |
| 7. TOTAL FEDERAL TAXES | | | | |
| **STATE AND LOCAL** | | | | |
| 8. WITHHOLDING | | | | |
| 9. SALES | | | | |
| 10. EXCISE | | | | |
| 11. UNEMPLOYMENT | | | | |
| 12. REAL PROPERTY | | | | |
| 13. PERSONAL PROPERTY | | | | |
| 14. OTHER (ATTACH LIST) | | | | |
| 15. TOTAL STATE & LOCAL | | | | |
| 16. TOTAL TAXES | | | | |

**Monthly Operating Report**
**ACCRUAL BASIS-5**

| | |
|---|---|
| **CASE NAME:** | 20-42789-mxm-11 |
| **CASE NUMBER:** | |

**MONTH:** ____________

| **BANK RECONCILIATIONS** | Account #1 | Account #2 | Account #3 | TOTAL |
|---|---|---|---|---|
| **A. BANK:** | | | | |
| **B. ACCOUNT NUMBER:** | | | | |
| **C. PURPOSE (TYPE):** | | | | |
| 1. BALANCE PER BANK STATEMENT | | | | |
| 2. ADD: TOTAL DEPOSITS NOT CREDITED | | | | |
| 3. SUBTRACT: OUTSTANDING CHECKS | | | | |
| 4. OTHER RECONCILING ITEMS | | | | |
| 5. MONTH END BALANCE PER BOOKS | | | | |
| 6. NUMBER OF LAST CHECK WRITTEN | | | | |

**INVESTMENT ACCOUNTS**

| BANK, ACCOUNT NAME & NUMBER | DATE OF PURCHASE | TYPE OF INSTRUMENT | PURCHASE PRICE | CURRENT VALUE |
|---|---|---|---|---|
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |
| 11. TOTAL INVESTMENTS | | | | |

**CASH**

| | |
|---|---|
| 12. CURRENCY ON HAND | |
| 13. **TOTAL CASH - END OF MONTH** | |

**Monthly Operating Report**
**ACCRUAL BASIS-6**

| | |
|---|---|
| **CASE NAME:** | 20-42789-mxm-11 |
| **CASE NUMBER:** | |

MONTH: ____________________

**PAYMENTS TO INSIDERS AND PROFESSIONALS**

| INSIDERS | | | |
|---|---|---|---|
| NAME | TYPE OF PAYMENT | AMOUNT PAID | TOTAL PAID TO DATE |
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. TOTAL PAYMENTS TO INSIDERS | | | |

| PROFESSIONALS | | | | | |
|---|---|---|---|---|---|
| NAME | DATE OF COURT ORDER AUTHORIZING PAYMENT | AMOUNT APPROVED | AMOUNT PAID | TOTAL PAID TO DATE | TOTAL INCURRED & UNPAID * |
| 1. | | | | | |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| 6. TOTAL PAYMENTS TO PROFESSIONALS | | | | | |

**POSTPETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS**

| NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENTS DUE | AMOUNTS PAID DURING MONTH | TOTAL UNPAID POSTPETITION |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. TOTAL | | | |

**Monthly Operating Report**
**ACCRUAL BASIS-7**

| | |
|---|---|
| CASE NAME: 20-42789-mxm-11 | |
| CASE NUMBER: | |

MONTH: ____________________

**QUESTIONNAIRE**

| | | YES | NO |
|---|---|---|---|
| 1. | HAVE ANY ASSETS BEEN SOLD OR TRANSFERRED OUTSIDE THE NORMAL COURSE OF BUSINESS THIS REPORTING PERIOD? | | |
| 2. | HAVE ANY FUNDS BEEN DISBURSED FROM ANY ACCOUNT OTHER THAN A DEBTOR IN POSSESSION ACCOUNT? | | |
| 3. | ARE ANY POSTPETITION RECEIVABLES (ACCOUNTS, NOTES, OR LOANS) DUE FROM RELATED PARTIES? | | |
| 4. | HAVE ANY PAYMENTS BEEN MADE ON PREPETITION LIABILITIES THIS REPORTING PERIOD? | | |
| 5. | HAVE ANY POSTPETITION LOANS BEEN RECEIVED BY THE DEBTOR FROM ANY PARTY? | | |
| 6. | ARE ANY POSTPETITION PAYROLL TAXES PAST DUE? | | |
| 7. | ARE ANY POSTPETITION STATE OR FEDERAL INCOME TAXES PAST DUE? | | |
| 8. | ARE ANY POSTPETITION REAL ESTATE TAXES PAST DUE? | | |
| 9. | ARE ANY OTHER POSTPETITION TAXES PAST DUE? | | |
| 10. | ARE ANY AMOUNTS OWED TO POSTPETITION CREDITORS DELINQUENT? | | |
| 11. | HAVE ANY PREPETITION TAXES BEEN PAID DURING THE REPORTING PERIOD? | | |
| 12. | ARE ANY WAGE PAYMENTS PAST DUE? | | |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "YES," PROVIDE A DETAILED EXPLANATION OF EACH ITEM. ATTACH ADDITIONAL SHEETS IF NECESSARY.

**INSURANCE**

| | | YES | NO |
|---|---|---|---|
| 1. | ARE WORKER'S COMPENSATION, GENERAL LIABILITY AND OTHER NECESSARY INSURANCE COVERAGES IN EFFECT? | | |
| 2. | ARE ALL PREMIUM PAYMENTS PAID CURRENT? | | |
| 3. | PLEASE ITEMIZE POLICIES BELOW. | | |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "NO," OR IF ANY POLICIES HAVE BEEN CANCELLED OR NOT RENEWED DURING THIS REPORTING PERIOD, PROVIDE AN EXPLANATION BELOW. ATTACH ADDITIONAL SHEETS IF NECESSARY.

**INSTALLMENT PAYMENTS**

| TYPE OF POLICY | CARRIER | PERIOD COVERED | PAYMENT AMOUNT & FREQUENCY |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# BM318 LLC
## Other Current Assets
### As of November 30, 2020

| | Total |
|---|---|
| **1320 Construction in Process** | |
| **1340 Survey** | 13,100.31 |
| **1341 Appraisal** | 5,000.00 |
| **1342 Environmental** | 2,450.00 |
| **1343 Studies** | 42,222.28 |
| **1345 Permits** | 17,050.00 |
| **1349 Real Estate Taxes** | 4,988.89 |
| **1351 Interest** | 2,003,221.60 |
| **1352 Insurance.** | 12,621.90 |
| **1353 Debt Financing Cost** | 73,250.00 |
| **1356 Development Fee** | 315,000.00 |
| **1358 Consulting and Professional Fees** | 25,520.17 |
| **1361 Engineering** | 46,643.59 |
| **1362 Architectural** | 416.65 |
| **1363 Legal** | 86,955.39 |
| **1367 Meals & Entertainment** | 861.74 |
| **1371 Closing Cost** | 61,837.03 |
| **1372 General and Administration** | 66,265.75 |
| **Total 1320 Construction in Process** | **$ 2,777,405.30** |

Monday, Dec 21, 2020 03:05:21 PM GMT-7 - Accrual Basis

# BM318 LLC
## Other Liabilities
### As of November 31, 2020

| | |
|---|---|
| **2710 Intercompany Loan Payable** | |
| **2711 Carnegie Development** | 651,814.79 |
| **2713 JMJ Development LLC** | 369,976.43 |
| **Total 2710 Intercompany Loan Payable** | **$ 1,021,791.22** |

Monday, Dec 21, 2020 02:19:02 PM GMT-7 - Accrual Basis

## BM 318 LLC

**Aledo, Texas**

### Cash Flow Summary

| Calendar Month | | | Closing | Jan-21 | Feb-21 | Mar-21 | Apr-21 | May-21 | Jun-21 | Jul-21 | Aug-21 | Sep-21 | Oct-21 | Nov-21 | Dec-21 | Jan-22 | Feb-22 | Mar-22 | Apr-22 | May-22 | Jun-22 | Jul-22 | Aug-22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Project Month | | | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| Quarter | | Total | 0 | 1 | 1 | 1 | 2 | 2 | 2 | 3 | 3 | 3 | 4 | 4 | 4 | 5 | 5 | 5 | 6 | 6 | 6 | 7 | 7 |
| **Lot Sales** | | **46** | | | | | | | | | | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 2 |
| **SOURCES OF CASH** | | | | | | | | | | | | | | | | | | | | | | | |
| Equity | | $ - | | | | | | | | | | | | | | | | | | | | | |
| Bridge Lender Draws | | $ 100,170 | $ - | $ 17,767 | $ 82,403 | | | | | | | | | | | | | | | | | | |
| Construction Loan Draws | $ (0) | $ 2,566,283 | | | | $ 351,939 | $ 223,843 | $ 628,343 | $ 487,093 | $ 155,093 | $ 252,993 | $ 74,913 | $ 229,136 | $ 54,136 | $ 36,265 | $ 36,265 | $ 36,265 | $ - | $ - | $ - | $ - | | |
| Southern Star CD Release | | $ 169,636 | $ 72,500 | $ 97,136 | | | | | | | | | | | | | | | | | | | |
| Lot Sales Net of Costs | 0.0% | $ 5,691,700 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 494,930 | $ 494,930 | $ 494,930 | $ 494,930 | $ 494,930 | $ 494,930 | $ 494,930 | $ 494,930 | $ 494,930 | $ 494,930 | $ 494,930 | $ 247,465 |
| **TOTAL SOURCES OF CASH** | | **$ 8,527,788** | **$ 72,500** | **$ 114,903** | **$ 82,403** | **$ 351,939** | **$ 223,843** | **$ 628,343** | **$ 487,093** | **$ 155,093** | **$ 252,993** | **$ 569,844** | **$ 724,066** | **$ 549,066** | **$ 531,195** | **$ 531,195** | **$ 531,195** | **$ 494,930** | **$ 494,930** | **$ 494,930** | **$ 494,930** | **$ 494,930** | **$ 247,465** |
| **USES OF CASH** | | | | | | | | | | | | | | | | | | | | | | | |
| Land Hard Costs | | $ 1,536,777 | $ - | $ - | $ - | $ 172,180 | $ 145,730 | $ 550,230 | $ 408,980 | $ 76,980 | $ 179,230 | $ 1,150 | $ 1,150 | $ 1,150 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Land Other Development Costs | | $ 612,000 | $ 72,500 | $ 114,903 | $ 82,403 | $ 25,128 | $ 25,128 | $ 25,128 | $ 25,128 | $ 25,128 | $ 20,778 | $ 20,778 | $ 175,000 | $ - | $ - | $ - | | | | | | | |
| Unsecured Creditors | | $ 150,486 | $ - | $ - | $ - | $ 16,721 | $ 16,721 | $ 16,721 | $ 16,721 | $ 16,721 | $ 16,721 | $ 16,721 | $ 16,721 | $ 16,721 | $ - | $ - | | | | | | | |
| Bridge Lender Pay Down | | $ 101,647 | $ - | $ - | $ - | $ 101,647 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | | | | | | | | | |
| Construction Loan Paydown | | $ 2,697,007 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 494,930 | $ 494,930 | $ 494,930 | $ 494,930 | $ 494,930 | $ 222,355 | $ - | $ - | $ - | $ - | $ - | $ - |
| Southern Star Loan Payoff | | $ 2,067,357 | $ - | $ - | $ - | $ 36,265 | $ 36,265 | $ 36,265 | $ 36,265 | $ 36,265 | $ 36,265 | $ 36,265 | $ 36,265 | $ 36,265 | $ 36,265 | $ 36,265 | $ 36,265 | $ 36,265 | $ 36,265 | $ 36,265 | $ 36,265 | $ 1,487,120 | $ - |
| Net Cash Flow | | $ 1,362,514 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 272,575 | $ 458,666 | $ 458,666 | $ 458,666 | $ 458,666 | $ (992,189) | $ 247,465 |
| **TOTAL USES OF CASH** | | **$ 8,527,788** | **$ 72,500** | **$ 114,903** | **$ 82,403** | **$ 351,939** | **$ 223,843** | **$ 628,343** | **$ 487,093** | **$ 155,093** | **$ 252,993** | **$ 569,844** | **$ 724,066** | **$ 549,066** | **$ 531,195** | **$ 531,195** | **$ 531,195** | **$ 494,930** | **$ 494,930** | **$ 494,930** | **$ 494,930** | **$ 494,930** | **$ 247,465** |
| **Southern Star Loan** | | | | | | | | | | | | | | | | | | | | | | | |
| Beginning Equity Balance | | | $ 1,921,700 | $ 1,929,707 | $ 1,937,748 | $ 1,945,821 | $ 1,917,664 | $ 1,889,390 | $ 1,860,997 | $ 1,832,487 | $ 1,803,857 | $ 1,775,108 | $ 1,746,240 | $ 1,717,251 | $ 1,688,141 | $ 1,658,910 | $ 1,629,558 | $ 1,600,083 | $ 1,570,485 | $ 1,540,764 | $ 1,510,919 | $ 1,480,949 | $ - |
| Interest Accrued | 5.00% | $ 145,657 | $ 8,007 | $ 8,040 | $ 8,074 | $ 8,108 | $ 7,990 | $ 7,872 | $ 7,754 | $ 7,635 | $ 7,516 | $ 7,396 | $ 7,276 | $ 7,155 | $ 7,034 | $ 6,912 | $ 6,790 | $ 6,667 | $ 6,544 | $ 6,420 | $ 6,295 | $ 6,171 | $ - |
| Repayments | - | $ (2,067,357) | $ - | $ - | $ - | $ (36,265) | $ (36,265) | $ (36,265) | $ (36,265) | $ (36,265) | $ (36,265) | $ (36,265) | $ (36,265) | $ (36,265) | $ (36,265) | $ (36,265) | $ (36,265) | $ (36,265) | $ (36,265) | $ (36,265) | $ (36,265) | $ (1,487,120) | $ - |
| Ending Equity Balance | | $ (1,921,700) | $ 1,929,707 | $ 1,937,748 | $ 1,945,821 | $ 1,917,664 | $ 1,889,390 | $ 1,860,997 | $ 1,832,487 | $ 1,803,857 | $ 1,775,108 | $ 1,746,240 | $ 1,717,251 | $ 1,688,141 | $ 1,658,910 | $ 1,629,558 | $ 1,600,083 | $ 1,570,485 | $ 1,540,764 | $ 1,510,919 | $ 1,480,949 | $ - | $ - |
| | | $ - | | | | | | | | | | | | | | | | | | | | | |
| **DIP Loan** | | | | | | | | | | | | | | | | | | | | | | | |
| Beginning Loan Balance | | | $ - | $ - | $ 17,767 | $ 100,392 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Construction Draws | | $ 100,170 | $ - | $ 17,767 | $ 82,403 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Capitalized Interest | 15.00% | $ 1,477 | | $ - | $ 222 | $ 1,255 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Repayments | 100.0% | $ (101,647) | | $ - | $ - | $ (101,647) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Ending Loan Balance | | $ - | $ - | $ 17,767 | $ 100,392 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Construction Loan** | | | | | | | | | | | | | | | | | | | | | | | |
| Beginning Loan Balance | | | $ - | $ - | $ - | $ - | $ 351,939 | $ 579,302 | $ 1,213,437 | $ 1,712,665 | $ 1,884,884 | $ 2,156,726 | $ 1,758,276 | $ 1,510,064 | $ 1,084,370 | $ 636,548 | $ 184,248 | $ - | $ - | $ - | $ - | $ - | $ - |
| Construction Draws | | $ 2,566,283 | | | | $ 351,939 | $ 223,843 | $ 628,343 | $ 487,093 | $ 155,093 | $ 252,993 | $ 74,913 | $ 229,136 | $ 54,136 | $ 36,265 | $ 36,265 | $ 36,265 | $ - | $ - | $ - | $ - | $ - | $ - |
| Capitalized Interest | 12.00% | $ 130,725 | | $ - | $ - | $ - | $ 3,519 | $ 5,793 | $ 12,134 | $ 17,127 | $ 18,849 | $ 21,567 | $ 17,583 | $ 15,101 | $ 10,844 | $ 6,365 | $ 1,842 | $ - | $ - | $ - | $ - | $ - | $ - |
| Repayments | 100.0% | $ (2,697,007) | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ (494,930) | $ (494,930) | $ (494,930) | $ (494,930) | $ (494,930) | $ (222,355) | $ - | $ - | $ - | $ - | $ - | $ - |
| Ending Loan Balance | | $ - | $ - | $ - | $ - | $ 351,939 | $ 579,302 | $ 1,213,437 | $ 1,712,665 | $ 1,884,884 | $ 2,156,726 | $ 1,758,276 | $ 1,510,064 | $ 1,084,370 | $ 636,548 | $ 184,248 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

# EXHIBIT "C"

# BM 318 LLC

**Aledo, Texas**

## Budget & Draw Schedule

| Month | | | | Jan-21 | Feb-21 | Mar-21 | Apr-21 | May-21 | Jun-21 | Jul-21 | Aug-21 | Sep-21 | Oct-21 | Nov-21 | Dec-21 | Jan-22 | Feb-22 | Mar-22 | Apr-22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Phase | | | Closing | Engineering | | Excavation/Storm | | Paving | | Franchise/Final Grading | | Lot Sales | | | | | | | |
| Project Month | | Total | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| **Hard Costs-JRM Construction** | | | | | | | | | | | | | | | | | | | |
| Paving | | $810,000 | | | | | | $364,500 | $364,500 | | $81,000 | | | | | | | | |
| Lime Stabilization | | $115,000 | | | | | | $115,000 | | | | | | | | | | | |
| On-Site Water | | $0 | | | | | | | | | | | | | | | | | |
| Sanitary Sewer | | $0 | | | | | | | | | | | | | | | | | |
| Storm Sewer | | $85,000 | | | | $21,250 | $21,250 | $21,250 | | | $21,250 | | | | | | | | |
| Excavation, grubbing, site work | | $150,000 | | | | $75,000 | $75,000 | | | | | | | | | | | | |
| SWPPP/Erosion Control | | $36,800 | | | | $27,600 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | | | | | |
| Offsite Sewer | | $0 | | | | | | | | | | | | | | | | | |
| Entry | | $30,000 | | | | | | | | $15,000 | $15,000 | | | | | | | | |
| Fencing | | $35,000 | | | | | | | | $17,500 | $17,500 | | | | | | | | |
| Construction Staking | | $15,000 | | | | $5,000 | $5,000 | $5,000 | | | | | | | | | | | |
| Contingency | | $95,760 | | | | $15,960 | $15,960 | $15,960 | $15,960 | $15,960 | $15,960 | | | | | | | | |
| Supervision | | $57,000 | | | | $9,500 | $9,500 | $9,500 | $9,500 | $9,500 | $9,500 | | | | | | | | |
| Overhead & Profit | 7.5% | $107,217 | | | | $17,870 | $17,870 | $17,870 | $17,870 | $17,870 | $17,870 | | | | | | | | |
| Total Construction | | **$1,536,777** | **$0** | **$0** | **$0** | **$172,180** | **$145,730** | **$550,230** | **$408,980** | **$76,980** | **$179,230** | **$1,150** | **$1,150** | **$1,150** | **$0** | **$0** | **$0** | **$0** | **$0** |
| **Other Development Costs** | | | | | | | | | | | | | | | | | | | |
| Unsecured Creditors | | $150,486 | | | | $16,721 | $16,721 | $16,721 | $16,721 | $16,721 | $16,721 | $16,721 | $16,721 | $16,721 | | | | | |
| Southern Star | | $435,178 | | | | $36,265 | $36,265 | $36,265 | $36,265 | $36,265 | $36,265 | $36,265 | $36,265 | $36,265 | $36,265 | $36,265 | $36,265 | | |
| Engineering/Survey | | $145,000 | $0 | $61,625 | $61,625 | $4,350 | $4,350 | $4,350 | $4,350 | $4,350 | | | | | | | | | |
| Studies & Testing | | $15,000 | | $15,000 | | | | | | | | | | | | | | | |
| Government Fees | | $5,000 | | $5,000 | | | | | | | | | | | | | | | |
| General & Administrative | | $12,000 | | $1,333 | $1,333 | $1,333 | $1,333 | $1,333 | $1,333 | $1,333 | $1,333 | $1,333 | | | | | | | |
| Legal & Organization | | $12,500 | | $12,500 | | | | | | | | | | | | | | | |
| Real Estate/Rollback Taxes | | $175,000 | | | | | | | | | | | $175,000 | | | | | | |
| Development Fee | | $100,000 | | $11,111 | $11,111 | $11,111 | $11,111 | $11,111 | $11,111 | $11,111 | $11,111 | $11,111 | | | | | | | |
| Closing | | $25,000 | $25,000 | | | | | | | | | | | | | | | | |
| Funding Fees | | $35,000 | $35,000 | | | | | | | | | | | | | | | | |
| Insurance | | $12,500 | $12,500 | | | | | | | | | | | | | | | | |
| Contingency | | $75,000 | | $8,333 | $8,333 | $8,333 | $8,333 | $8,333 | $8,333 | $8,333 | $8,333 | $8,333 | | | | | | | |
| Total Soft Costs | | **$1,197,665** | **$72,500** | **$114,903** | **$82,403** | **$78,113** | **$78,113** | **$78,113** | **$78,113** | **$78,113** | **$73,763** | **$73,763** | **$227,986** | **$52,986** | **$36,265** | **$36,265** | **$36,265** | **$0** | **$0** |
| **Total Development Costs** | | **$2,734,442** | **$72,500** | **$114,903** | **$82,403** | **$250,293** | **$223,843** | **$628,343** | **$487,093** | **$155,093** | **$252,993** | **$74,913** | **$229,136** | **$54,136** | **$36,265** | **$36,265** | **$36,265** | **$0** | **$0** |

# LOCATION MAP







**EXHIBIT "D"**

# MOST RECENT 12 MONTH SALES COMPARABLES

| Street Number | Street Name | Status | Listing Date | List Price | Close Date | Close Price | Lot Size Area | Price per Acre |
|---|---|---|---|---|---|---|---|---|
| 7 | Angelina | Active | 10/8/2020 | 149,000 | | | 2.15 | 148,998 |
| 0 | Nueces | Active | 9/16/2019 | 159,000 | | | 2.39 | 158,998 |
| 8 | Angelina | Active | 10/8/2020 | 159,000 | | | 2.10 | 158,998 |
| 3 | Angelina | Active | 10/8/2020 | 165,000 | | | 2.06 | 164,998 |
| 1 | Nueces Trail | Active | 10/8/2020 | 187,500 | | | 2.03 | 187,498 |
| 0 | Angelina | Active | 9/8/2019 | 219,900 | | | 2.56 | 219,897 |
| 0 | Angelina | Sold | 2/4/2020 | 169,000 | 5/6/2020 | 160,550 | 2.11 | 168,998 |
| 3 | Rustic View lane | Sold | 5/6/2020 | 219,000 | 7/21/2020 | 209,000 | 3.46 | 218,997 |
| 409 | Kolb | Sold | 11/15/2019 | 83,500 | 3/10/2020 | 79,000 | 2.03 | 83,498 |
| 405 | Kolb | Sold | 11/15/2019 | 83,500 | 6/8/2020 | 83,500 | 2.06 | 83,498 |
| 413 | Kolb | Sold | 11/15/2019 | 92,500 | 7/20/2020 | 85,000 | 2.01 | 92,498 |
| 304 | Kolb | Sold | 11/15/2019 | 95,000 | 4/29/2020 | 92,500 | 2.01 | 94,998 |
| 308 | Kolb | Sold | 11/15/2019 | 95,000 | 8/25/2020 | 95,000 | 2.01 | 94,998 |
| 309 | Kolb | Sold | 11/15/2019 | 97,500 | 8/7/2020 | 95,000 | 2.01 | 97,498 |
| 305 | Kolb | Sold | 11/15/2019 | 97,500 | 6/30/2020 | 95,000 | 2.01 | 97,498 |
| 301 | Kolb | Sold | 11/15/2019 | 105,000 | 7/15/2020 | 102,500 | 2.01 | 104,998 |
| 180 | Maravilla | Sold | 11/15/2019 | 112,000 | 9/9/2020 | 110,000 | 2.07 | 111,998 |
| 201 | Swift | Sold | 11/15/2019 | 115,000 | 7/30/2020 | 110,500 | 2.01 | 114,998 |
| 185 | Overlook | Sold | 11/15/2019 | 112,000 | 9/17/2020 | 112,000 | 2.01 | 111,998 |
| 179 | Maravilla | Sold | 11/15/2019 | 118,000 | 1/24/2020 | 115,000 | 3.10 | 117,997 |
| 176 | Maravilla | Sold | 11/15/2019 | 115,000 | 7/27/2020 | 115,000 | 2.76 | 114,997 |
| 181 | Overlook | Sold | 11/15/2019 | 129,500 | 5/28/2020 | 123,000 | 2.08 | 129,498 |
| 184 | Maravilla | Sold | 11/15/2019 | 125,000 | 7/23/2020 | 123,000 | 2.38 | 124,998 |
| 169 | Overlook | Sold | 11/15/2019 | 135,000 | 8/17/2020 | 127,000 | 2.01 | 134,998 |
| 177 | Overlook | Sold | 11/15/2019 | 135,000 | 1/2/2020 | 130,000 | 2.03 | 134,998 |
| 410 | Kolb | Sold | 5/2/2020 | 130,000 | 6/16/2020 | 130,000 | 2.36 | 129,998 |
| 173 | Overlook | Sold | 11/15/2019 | 135,000 | 7/24/2020 | 132,500 | 2.02 | 134,998 |
| 0 | Rustic View | Sold | 9/16/2019 | 147,000 | 8/12/2020 | 139,000 | 2.11 | 65,877 |
| 175 | Maravilla | Sold | 11/15/2019 | 145,000 | 9/21/2020 | 139,000 | 3.00 | 46,333 |
| 172 | Maravilla | Sold | 11/15/2019 | 145,000 | 9/29/2020 | 139,000 | 2.47 | 56,275 |
| 0 | Brazos Ct/Angelina | Sold | 7/31/2018 | 149,000 | 5/5/2020 | 142,000 | 2.04 | 69,608 |
| 177 | Overlook | Sold | 9/29/2020 | 155,000 | 10/30/2020 | 150,000 | 2.03 | 73,892 |
| 2 | Angelina | Sold | 9/16/2019 | 159,000 | 12/9/2019 | 151,050 | 2.44 | 61,906 |
| 0 | Angelina | Sold | 1/9/2020 | 219,000 | 1/31/2020 | 205,000 | 3.45 | 59,420 |
| 227 | Angelina | Sold | 10/10/2019 | 259,000 | 3/5/2020 | 245,000 | 3.42 | 71,637 |
| | | | Number | 35 | | | | |
| | | | Average | 140,469 | | 128,797 | 2.31 | 115,523 |
| | | | Median | 135,000 | | 123,000 | 2.07 | 111,998 |



# 118.34-Acre Survey



**PRELIMINARY PLAT**
**(TO BE AMENDED0**

