# DEED IN ESCROW AGREEMENT

THIS DEED IN ESCROW AGREEMENT (this "**Agreement**") is made as of February 27th, 2020 (the "**Effective Date**"), by and among BM3 1 8, LLC, a Texas limited liability company ("**Borrower**"), and THE DIXON WATER FOUNDATION F/K/A THE DIXON FOUNDATION, a Texas non-profit corporation ("**Lender**"), and AMERICAN ESCROW COMP ANY ("**Escrow Agent**").

## RECITALS:

A. Borrower owes certain indebtedness, liabilities and obligations to Lender pursuant to that certain Promissory Note (as amended or modified, the "**Note**"), dated November 26, 2018, executed by, Borrower payable to the order of Lender in the original principal amount of $32,946,900.00 (the "**Loan**"), which Note is secured by that certain property located in Parker County, Texas pursuant to that certain Deed of Trust, Security Agreement and Financing Statement dated as of November 26, 2018 and filed under Document Number 201829927 with the Official Public Records of Parker County, Texas (the "**Deed of Trust**"; together with the Note, the First Modification (hereinafter defined), the Second Modification (hereinafter defined), the Third Modification (hereinafter defined), the Fourth Modification (hereinafter defined), the Fifth Modification (hereinafter defined) and any other document executed in connection with the Loan, the "**Loan Documents**")

B. The Deed of Trust covered certain "Property" more particularly described therein (collectively, the "**Original Property**"). Pursuant to that certain (i) Partial Release of Lien dated September 11, 2019 executed by Lender and recorded in the Official Public Records of Parker County, Texas, Lender released the First Release Tract (as defined in the Deed of Trust) from the encumbrance of the Deed of Trust, and (ii) Partial Release of Lien dated January 31, 2020 executed by Lender and recorded in the Official Public Records of Parker County, Texas, Lender released approximately 23.95 acres from the Original Property (the "**23 Acre Tract**"), from the encumbrance of the Deed of Trust. For purposes herein the defined term "Property" shall mean the Original Property less and except the First Release Tract and the 23 Acre Tract.

C. The Note and Deed of Trust were modified pursuant to (i) that certain Loan Modification and Forbearance Agreement dated July 26, 2019, executed by Borrower and Lender (the "**First Modification**"), (ii) that certain Second Loan Modification Agreement dated October 1, 2019, executed by Borrower and Lender (the "**Second Modification**"), (iii) that certain Third Loan Modification Agreement dated December 17, 2019, executed by Borrower and Lender (the "**Third Modification**"), (iv) that certain Fourth Loan Modification Agreement dated January 8, 2020, executed by Borrower and Lender (the "**Fourth Modification**"), and that certain Fifth Loan Modification Agreement dated January 31, 2020, executed by Borrower and Lender (the "**Fifth Modification**").

D. Borrower is in default under the Loan Documents as a result of (the "**Specified Defaults**") Borrower's failure to pay the installment of interest in the amount of $1,091,181.00 due on January 24, 2020 pursuant to the Fourth Modification, which included amounts due on October 1, 2019 (as extended), January 1, 2020 (as extended) and April 1, 2020 (the "**Payment Default**"). Although Lender is in receipt of certain partial payments in connection with the Partial Release for the 23 Acre Tract, Borrower is still deficient. By letters dated January 27, 2020 and January 30, 2020 (collectively, the "**Default Letters**"), Lender accelerated the entire unpaid principal balance of the Note,

together with all sums due and owing under the Loan Documents and requested such amount ("**Final Payment**") to be paid by no later than 5:00 p.m. Central time on January 31, 2020, as extended to February 7, 2020 (as extended, the "**Deadline**"). In lieu of the payment thereof, Lender also notified Borrower in the Default Letters that it would accept a special warranty deed in lieu of foreclosure (the "**Deed in Lieu**") by no later than the Deadline. Borrower acknowledges (a) the Payment Default has occurred, that no further notice is required under the Loan Documents, (b) that the Payment Default has not been cured and continues to exist under the Loan Documents, (c) that Lender is entitled to exercise any and all of its rights and remedies under the Loan Documents in connection with the Payment Default and any other defaults or Events of Default which presently exist and may be continuing on the date hereof, and (d) that neither the Final Payment, nor the Deed in Lieu were tendered to Lender by the Deadline.

E. Borrower has notified Lender that Borrower is actively pursuing the refinancing of its indebtedness and liabilities to Lender and, in order to provide time for Borrower to pursue the various options for such refinancing, Borrower has requested Lender to forbear from exercising its rights and remedies arising as a result of the Specified Defaults, including (but not limited to) foreclosure.

F. Lender has agreed to such forbearance, subject to the terms and conditions of this Agreement.

**AGREEMENT**:

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, the parties hereto hereby covenant, agree, represent and warrant as follows:

1. Forbearance and Escrowed Documents. Lender hereby agrees to forbear from exercising its rights and remedies arising as a result of the Specified Defaults, including (but not limited to) foreclosure subject to the terms and conditions of this Agreement. Borrower and Lender have executed, acknowledged (where applicable) and delivered into escrow with Escrow Agent the documents identified on **Exhibit A** attached hereto and made a part hereof for all purposes (collectively, the "**Escrowed Documents**").

2. Receipt by Escrow Agent. Escrow Agent hereby acknowledges receipt of the Escrowed Documents, fully-executed and acknowledged (where applicable) by Borrower and Lender and agrees to establish an escrow (the "**Escrow**") and hold the executed and acknowledged Escrowed Documents in such Escrow pursuant to the provisions of this Agreement.

3. Release of Escrowed Documents in the Event of Default. If another Event of Default under the Loan Documents occurs (other than the Specified Default or failure to make the quarterly installment of interest due April 1, 2020), or if Lender (or the Escrow Agent) does not receive the Final Payoff (hereinafter defined) in full by no later than 5:00 PM Central Time on July 1, 2020 ("**Escrow Agreement Deadline**"), Lender may send notice to Escrow Agent of such Event of Default or failure, and Escrow Agent shall remove the Escrowed Documents from Escrow, date the effective date of all such documents to be the date stipulated as the "Closing Date" in such notice letter (the "**Closing Date**") and deliver the same as follows:

a. The Special Warranty Deed shall be recorded in the Real Property Records of Parker County, Texas and the recorded copy shall be delivered to Lender (the "**Deed**");

b. The Bill of Sale shall be delivered to Lender or its designee;

c. The Non-Foreign Certificate shall be delivered to Lender or its designee;

d. Except as set forth below, the Release of Borrower shall be delivered to Borrower but which may not be recorded until 180 days following the Closing Date; and

e. The Release of Lender shall be delivered to Lender.

If another Event of Default under the Loan Documents occurs (other than (i) the Specified Default, (ii) the failure to make the quarterly installment of interest due April 1, 2020, or (iii) the failure to pay the Final Payoff by the Escrow Agreement Deadline), and Lender sends the notice above to Escrow Agent of such Event of Default, the Release of Borrower will be returned to Lender with the other Escrowed Documents and will not be effective or available for Borrower. For purposes herein, the defined term "**Final Payoff**" shall mean an amount equal to $27,500,658.00 in principal and accrued interest, plus any and all costs and expenses of Lender as of the date of such payment. Lender will need to confirm the Final Payoff amount prior to payment and acceptance. If the Final Payoff is indefeasibly paid in United States Dollars and in immediately available funds to the Lender by Borrower on or before the Escrow Agreement Deadline, Lender will send notice to Escrow Agent of such payment and Escrow Agent shall remove the Escrowed Documents from Escrow and return each of them to Borrower.

4. Closing in the Event of Default. On the Closing Date if (i) the Final Payoff has not been remitted to the Escrow Agent or Lender by the Escrow Agreement Deadline, or (ii) another Event of Default under the Loan Documents has occurred (other than the Specified Default or failure to make the quarterly installment of interest due April 1, 2020), Borrower, and any other related party or other party in connection with the Loan, shall execute and deliver, or cause to be executed and delivered, to Lender or Lender's designee such further assignments, instruments, affidavits and agreements of further assurance, approvals, consents and other documents, including (without limitation) modifications to the Escrowed Documents (if Lender reasonably determines that the transactions contemplated by this Agreement must be modified, rearranged, or restructured) and endorsements and assignments of checks, deposits and accounts assigned to Lender, as may be reasonably necessary, expedient or proper in the opinion of Lender in order to consummate any and all conveyances, transfers, sales and assignments contemplated by this Agreement, or as may be required to be executed and delivered on the Closing Date pursuant to this Agreement, or as Lender may reasonably require to effect a full and complete transfer to Lender or its designee. Borrower shall be responsible for all of Lender's costs and expenses in connection with this Agreement, including without limitation, attorney's fees and expenses, recording fees and fees from the Escrow Agent. In addition, Borrower shall be responsible for its own costs and expenses in connection with this Agreement, including without limitation, attorney's fees and expenses.

5. Intentionally Omitted.

6. Transfer Absolute. Borrower acknowledges and agrees that at the time the Escrowed Documents and all additional documents and actions contemplated by this Agreement are properly delivered to Lender by the Escrow Agent on the Closing Date pursuant to the provisions of this Agreement, then: (a) (i) such delivery is intended to effect a present and absolute conveyance and unconditional transfer to Lender or its designee pursuant to the Escrowed Documents effective upon the

Closing Date, (ii) such items are not given as a mortgage, trust conveyance, deed of trust, or security instrument of any kind, and (iii) Borrower has no further interest (including rights of redemption) or claims in and to the Property or to the proceeds and profits which may be derived therefrom, of any kind whatsoever; (b) Borrower shall, concurrently with the delivery to Lender of the Escrowed Documents, deliver to Lender, its nominee, designee or assignee possession and enjoyment of the Property and the other property transferred pursuant to the Escrowed Documents, and Lender, its nominee, designee or assignee shall thereafter have the immediate right to occupy, operate, use, sell and transfer the same or any part thereof for its own account, at its sole and absolute discretion; (c) such delivery of the Escrowed Documents and possession of the Property as described in this Section 6 shall be in lieu of remitting the Final Payoff to Lender and shall be in full accord and satisfaction of any and all payment obligations of Borrower and any guarantor under the Loan Documents and this Agreement; (d) Lender, its nominee, designee or assignee shall, as of the Closing Date and thereafter, have the sole and absolute right to record, distribute, assign or take any other action deemed necessary or desirable by Lender, in Lender's sole and absolute discretion, with respect to the Escrowed Documents and any other documents and information delivered or obtained by Lender in connection with this Agreement, and (e) title to the Property shall remain subject to the Deed of Trust to the full extent of the Loan, and delivery of the Deed by Borrower to Lender shall not result in a merger of Lender's interest as lienholder under the Deed of Trust with Lender's interest as title holder pursuant to the Deed.

7. Foreclosure. While Lender, as consideration to Borrower, has agreed to forbear from exercising its remedies in connection with the Specified Default, nothing contained in this Agreement shall preclude Lender from pursuing a foreclosure under the Deed of Trust, after the Closing Date if Escrow Agent has delivered the Escrowed Documents to Lender, and Lender determines that it is in the best interest of Lender to foreclose the liens and security interests created by the Loan Documents in order to clear title of any encumbrances on the Property that are not Permitted Encumbrances (as defined in the Deed). Lender shall have such right to foreclose upon any such liens and security interests; provided, however, that if Lender does not initiate a foreclosure proceeding under this Section 7 within one hundred eighty (180) days after the Closing Date, such right to foreclose shall terminate, unless the one hundred eighty (180) day period ends prior to the expiration of the Cure Period, in which case the one hundred eighty (180) day period will be extended until sixty (60) days after the expiration of the Cure Period. Notwithstanding the foregoing to the contrary, prior to such foreclosure, Lender will provide notice to Borrower of any such encumbrances and of its desire to proceed with foreclosure. Borrower will have thirty (30) days (the "**Cure Period**") after delivery of such notice to remove, to the reasonable satisfaction of Lender, any such encumbrances, at its sole cost and expense, before Lender will proceed with foreclosure.

8. Enforcement. The provisions of this Agreement shall be enforceable by any means available at law or in equity, including (without limitation) an action for specific performance.

9. Provisions Regarding Escrow Agent.

a. In the event that, for any reason in Escrow Agent's good faith and reasonable judgment, there is any dispute or uncertainty concerning any action to be taken hereunder, Escrow Agent shall have the right to take no action until it shall have received instructions in writing concurred to by Borrower and Lender or until directed by a judgment or decree of a court of competent jurisdiction in the State of Texas or in a Federal court in such State, whereupon Escrow Agent shall take such action in accordance with such instructions or such order, irrespective of its finality or being subject to appeal, unless restrained otherwise by Borrower or Lender.

b. Escrow Agent shall not be liable to the other parties hereto or to anyone else for any action taken or omitted by it, in good faith and in the exercise of reasonable judgment, except for acts of willful misconduct or gross negligence.

c. Promptly after the receipt by Escrow Agent of notice of any demand or claim or the commencement of any action, suit or proceeding, Escrow Agent shall, if a claim in respect thereof is to be made against any of the other parties hereto, notify such other parties hereto in writing.

d. From time to time on and after the date hereof, the other parties hereto shall deliver or cause to be delivered to Escrow Agent such further documents and instruments and shall do and cause to be done such further acts as Escrow Agent shall reasonably request (it being understood that Escrow Agent shall have no obligation to make any such request and the parties hereto shall have no obligation to incur any cost or expense or any additional liability with respect to any such request) to carry out more effectively the provisions and purposes of this Agreement, to evidence compliance herewith or to assure itself that it is protected in acting hereunder.

e. Escrow Agent is not a party to, or bound by any agreement which may be deposited under, evidenced by, or which arises out of the foregoing instructions.

f. Escrow Agent acts hereunder as a depository only and is not responsible or liable in any manner whatsoever for the sufficiency, correctness, genuineness, or validity of any instrument deposited with it hereunder, or with respect to form or execution of the same, or the identity, authority, or rights of any person executing or depositing the same.

g. Escrow Agent shall not be required to take or be bound by notice of any default of person, or to take action with respect to such default involving any expense or liability, unless notice in writing is given to an officer of Escrow Agent of such default and unless it is indemnified in a manner satisfactory to it against any such expense or liability. These instructions shall not be subject to rescission or modification except upon receipt by Escrow Agent of written instructions of all the parties hereto or their successors in interest, and no such modification shall be effective unless and until consented to in writing by Escrow Agent.

h. Escrow Agent shall be protected in acting upon any notice, request, waiver, consent, receipt, or other paper or document believed by Escrow Agent to be genuine and to be signed by the proper party or parties.

i. Escrow Agent shall not be liable for any error of judgment or for any act done or step taken or omitted by it in good faith, or for any mistake of fact or law, or for anything which it may do or refrain from doing in connection herewith, except its own gross negligence or willful misconduct, and Escrow Agent shall have no duties to anyone except those signing these instructions.

j. For its ordinary services hereunder, Escrow Agent shall be entitled to a fee of $750.00, payable concurrently with its acceptance hereof.

k. Escrow Agent may resign as Escrow Agent hereunder upon giving 20 days prior written notice to that effect to each of the parties to this Agreement. In addition, Lender may, at any time and in its sole and absolute discretion, appoint a successor to act as Escrow Agent under this Agreement. In such event, the successor Escrow Agent shall be a reputable law firm or a nationally recognized title insurance company, selected by Lender and approved by Borrower, which approval shall not be unreasonably withheld or delayed. Such party that will no longer be serving as Escrow Agent shall deliver, against receipt, to such successor Escrow Agent, the Escrowed Documents, if any, held by such party, to be held by such successor Escrow Agent pursuant to the terms and provisions of this Agreement. If no such successor has been designated on or before the effective date of such party's resignation, its obligations as Escrow Agent shall continue until such successor is appointed; provided, however, its sole obligation thereafter shall be to safely keep all documents and instruments then held by it and to deliver the same to the person, firm or corporation designated as its successor. If no successor Escrow Agent is designated and qualified within 10 days after Escrow Agent's resignation is effective, such party that will no longer be serving as Escrow Agent may apply to any court of competent jurisdiction for the appointment of a successor Escrow Agent.

This paragraph is in no way intended to limit Reunion Title's obligation under any policy or commitment of title insurance issued for or on behalf of Lender or to limit Reunion Title's responsibility to act in accordance with any closing instruction letter or other instruction for the delivery of title coverage made for or on behalf of Lender.

**10. ADDITIONAL ACKNOWLEDGMENTS BY BORROWER. BORROWER, AFTER CONSULTING WITH COUNSEL OF THEIR CHOICE AND HAVING BEEN AFFORDED A REASONABLE TIME TO REVIEW AND CONSIDER THIS AGREEMENT AND EACH OF THE MATTERS CONTEMPLATED BY THIS AGREEMENT, HEREBY FURTHER ACKNOWLEDGES AND AGREES AS FOLLOWS:**

**a. DEFAULT HAS OCCURRED UNDER THE LOAN, SUCH DEFAULTS ARE MATERIAL IN NATURE AND HAVE NOT BEEN CURED AS OF THE DATE HEREOF, AND BORROWER IS INCAPABLE OF CURING OR UNWILLING TO CURE (OR BOTH) SUCH DEFAULTS WITHIN A COMMERCIALLY REASONABLE PERIOD OF TIME HEREAFTER.**

**b. AS OF THE EFFECTIVE DATE BORROWER IS NOT CAPABLE OF REPAYING THE INDEBTEDNESS SECURED BY THE DEED OF TRUST.**

**c. THIS AGREEMENT, AND THE DELIVERY OF THE ESCROWED DOCUMENTS AS CONTEMPLATED HEREIN, ARE BEING CARRIED OUT IN CONNECTION WITH A SO-CALLED "WORK-OUT" OF THE LOAN.**

**d. LENDER HAS AGREED TO FOREBEAR FROM EXERCISING CERTAIN APPLICABLE REMEDIES (INCLUDING, WITHOUT LIMITATION, FORECLOSURE OF THE PROPERTY) IN CONNECTION WITH THE SPECIFIED DEFAULT, AND SUCH FORBEARANCE BY LENDER IS VALUABLE AND MEANINGFUL CONSIDERATION TO BORROWER IN EXCHANGE FOR BORROWER'S EXECUTION OF THIS AGREEMENT AND COMPLIANCE WITH THE TERMS OF THIS AGREEMENT (INCLUDING, WITHOUT LIMITATION, DELIVERY OF THE**

**ESCROWED DOCUMENTS AND CONDITIONAL AUTHORIZATION TO RELEASE THE ESCROWED DOCUMENTS AS PROVIDED HEREIN).**

e. **BORROWER OR IS A SOPHISTICATED COMMERCIAL REAL ESTATE BORROWER, INVESTOR AND DEVELOPER, EXPERIENCED IN COMMERCIAL REAL ESTATE TRANSACTIONS OF THIS NATURE, AND IS REPRESENTED BY KNOWLEDGEABLE LEGAL COUNSEL OF THEIR CHOOSING IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT.**

f. **WHILE THE EXECUTION OF THIS AGREEMENT IS THE RESULT OF DEFAULTS BY BORROWER IN CONNECTION WITH THE LOAN, AFTER TAKING INTO CONSIDERATION SUCH DEFAULTS, THERE IS NO DISPARITY BETWEEN RELATIVE BARGAINING POWER AND NEGOTIATING STRENGTH OF BORROWER AND LENDER.**

11. Release. So long as no other Event of Default under the Loan Documents occurs (other than the Specified Default or failure to make the quarterly installment of interest due April 1, 2020) and Borrower delivers the Final Payoff on or before to the Escrow Agreement Deadline, then (i) the obligations of Borrower under this Agreement shall terminate, (ii) all obligations (other than any obligations under the Loan Documents that survive repayment thereof) of Borrower under the Loan Documents shall terminate, (iii) the Deed of Trust along with any other security instruments shall be released by Lender, at Borrower's cost and expense, (iv) the Deed, Bill of Sale, and Non-Foreign Certificate shall be released to Borrower, and (v) the Release of Lender shall be delivered to Lender by the Escrow Agent.

12. Miscellaneous.

a. No failure or delay on the part of a party to this Agreement in exercising any power or right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power preclude any other or further exercise thereof or the exercise of any other right or power hereunder. No waiver of any provision of this Agreement and no consent to any departure by any party from strict compliance with this Agreement shall be effective unless the same shall be in writing and signed by the party against whom such waiver or consent is being sought to be enforced and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. No notice to or demand on any party to this Agreement in any case shall, of itself, entitle such party to any other or further notice or demand in similar of other circumstances.

b. This Agreement may only be modified, amended, changed, discharged or terminated by an agreement in writing signed by the parties hereto.

c. Each of the parties to this Agreement (and the undersigned representatives of such parties, if any) has the full power, authority and legal right to execute this Agreement and to keep and observe all of the terms, covenants and provisions of this Agreement on such parties' respective parts to be performed or observed.

d. Any notice, request, direction or demand given or made under this Agreement shall be in writing and shall be deemed delivered (i) upon delivery, if delivered in person or by facsimile transmission with receipt acknowledged by the recipient

thereof and confirmed by telephone by sender, (ii) 1 Business Day after having been deposited for overnight delivery with any reputable overnight courier service, or (iii) 2 Business Days after having been deposited in any post office or mail depository regularly maintained by the U. S. Postal Service and sent by registered or certified mail, postage prepaid, return receipt requested, to the addresses listed set forth in the Loan Documents.

e. If any term, covenant or provision of this Agreement shall be held to be invalid, illegal or unenforceable in any respect, this Agreement shall be construed without such term, covenant or provision.

f. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

g. This Agreement may be executed in 1 or more counterparts by some or all of the parties hereto, each of which counterparts shall be an original and all of which together shall constitute one and the same agreement, even though all of the parties hereto may not have executed the same counterpart of this Agreement.

h. If any party to this Agreement commences any legal action to enforce its rights or another party's obligations under this Agreement, the prevailing party in any such action shall be entitled to recover its attorneys' fees and expenses incurred in prosecuting and/or defending against any such action from the nonprevailing party.

[Remainder of page left intentionally blank]

IN WITNESS WHEREOF, Borrower, Lender and Escrow Agent have caused this Agreement to be executed effective as of the date first written above.

**BORROWER:**

BM318, LLC,
a Texas limited liability company

By: TRWF, LLC
a Texas limited liability company
its managing member

By: ____________________________
Tim Barton, President

Address:

13901 Midway Road
Suite 102
Farmers Branch, Texas 75244
Attention: Mark Adams
Email: MAdams@jmjdevelopment.net

IN WITNESS WHEREOF, Borrower, Lender and Escrow Agent have caused this Agreement to be executed effective as of the date first written above.

**LENDER:**

THE DIXON WATER FOUNDATION
F/K/A THE DIXON FOUNDATION, a
Texas non-profit corporation

By: ______________________________
Name: Robert J. Potts
Title: President & CEO

Address:

P.O. Box 177
Marfa, Texas 79843
Attention: Robert Potts
Email: rpotts@dixonwater.org

IN WITNESS WHEREOF, Borrower, Lender and Escrow Agent have caused this Agreement to be executed effective as of the date first written above.

**ESCROW AGENT:**

AMERICAN ESCROW COMPANY

By: [signature]
Name: William A. Kramer
Title: Executive Chairman

Address:

American Escrow Company
2626 Howell Street, 10th Floor
Dallas, TX 75204
Attn: Shauna Dawson
Phone: 214-754-7768
Email: sdawson@republictitle.com

With copy to:

American Escrow Company
2626 Howell Street, 10th Floor
Dallas, TX 75204
Attn: Bill Kramer
Phone: 214-855-8850
Email: bkramer@republictitle.com

**EXHIBITS**

| | |
|---|---|
| EXHIBIT A | Escrowed Documents |
| EXHIBIT B | Special Warranty Deed |
| EXHIBIT C | Bill of Sale |
| EXHIBIT D | Non-Foreign Certificate |
| EXHIBIT E | Release of Borrower |
| EXHIBIT F | Release of Lender |

# **EXHIBIT A**

## ESCROWED DOCUMENTS

1. Special Warranty Deed in the form of **Exhibit B** attached hereto and incorporated into the Agreement by this reference (the "**Deed**").

2. Bill of Sale in the form of **Exhibit C** attached hereto and incorporated into the Agreement by this reference (the "**Bill of Sale**").

3. The IRC Section 1445 Non-Foreign Certificate in the form of **Exhibit D** attached hereto and incorporated into the Agreement by this reference (the "**Non-Foreign Certificate**").

4. The Release of Borrower in the form of **Exhibit E** attached hereto and incorporated into the Agreement by this reference ("**Release of Borrower**").

5. The Release of Lender in the form of **Exhibit F** attached hereto and incorporated into the Agreement by this reference ("**Release of Lender**").

**EXHIBIT B**

**SPECIAL WARRANTY DEED**

THE STATE OF TEXAS §
§ KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF PARKER §

THAT BM318, LLC, a Texas limited liability company ("**Grantor**"), for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to Grantor, cash in hand paid by Grantee, herein below named, the receipt and sufficiency of which are hereby acknowledged and confessed, has GRANTED, BARGAINED, SOLD and CONVEYED, and by these presents does hereby GRANT, BARGAIN, SELL and CONVEY unto THE DIXON WATER FOUNDATION F/K/A THE DIXON FOUNDATION, a Texas non-profit corporation (herein the "**Grantee**"), all of the following ("**Property**"):

(a) the real property (the "**Land**") located in Parker County, Texas and more particularly described in Exhibit "A" attached hereto and made a part hereof for all purposes;

(b) all buildings and other improvements of every type or character situated upon, under, through or within the Land, as well as all appurtenances, betterments and additions thereto;

(c) all of Grantor's right, title and interest in and to all strips, gores and rights-of-way abutting, adjacent, contiguous or adjoining the Land; and

(d) all and singular, the benefits, privileges, easements, tenements, hereditaments, and appurtenances to the Land, or in anywise appertaining to the Land, and any and all right, title, and interest of Grantor in and to adjacent roads, and rights-of-way.

TO HAVE AND TO HOLD the Property, together with all and singular any other rights and appurtenances thereto in anywise belonging unto Grantee, and its successors and assigns, FOREVER; and Grantor does hereby bind itself and its successors and assigns to WARRANT AND FOREVER DEFEND, all and singular, the Property, subject to the permitted encumbrances set forth in Exhibit "B" attached hereto and made a part hereof for all purposes ("**Permitted Encumbrances**") and the Indebtedness (as defined below), unto Grantee, and its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof by, through, or under Grantor, but not otherwise.

BUT IT IS HEREBY EXPRESSLY ACKNOWLEDGED AND AGREED that:

A. This Special Warranty Deed, and the conveyances being made hereby, are being executed, delivered and accepted and shall be interpreted and construed as an absolute conveyance to Grantee of all of the right, title and interest of Grantor in and to the Property, including specifically but without limitation, any equity or rights of redemption of Grantor therein or thereto; the conveyances being made hereby are not intended as a mortgage, trust conveyance, deed of trust, or security instrument of any kind whatsoever; and Grantor shall have no further interest (including rights of redemption) or claims in and to the Property or to the rents, issues, proceeds and profits that may be derived thereof, of any kind whatsoever;

B. Notwithstanding the above provisions hereof, all of the liens and security interests (hereinafter collectively called the "**Liens**") that evidence or secure the payment of the indebtedness owned and held by Grantee, said indebtedness being described in Exhibit "C" attached hereto (the "**Indebtedness**"), including, without implied limitation, (i) the liens and security interests described in Exhibit C attached hereto, and (ii) other liens and security interests related to the foregoing, are NOT RELEASED or RELINQUISHED in any manner or respect whatsoever, which Liens shall remain valid and continuous and in full force and effect, until the earlier to occur of (a) the release of the Liens by written instrument (the "**Release**") executed by Grantee, or its successors and assigns, and recorded in the applicable real estate records, which Release may be made as, if and when Grantee, or its successors and assigns, shall determine in the exercise of its sole discretion; or (b) the expiration of one hundred eighty (180) days following the date hereof if, during such one hundred eighty (180) days, Grantee has not initiated any foreclosure proceedings related to such Liens or Indebtedness; provided, if such one hundred eighty (180) day period ends prior to the expiration of the thirty (30) day contractual cure period agreed upon by Grantee and Grantor for the benefit of Grantor, then the one hundred eighty (180) day period will be extended until sixty (60) days after the expiration of such cure period.

C. Neither Grantor nor Grantee intend that there be, and there shall not in any event be, a merger of any of the Liens with the title or other interest of Grantee by virtue of this conveyance and the parties expressly provide that each such interest in the Liens on one hand and title on the other be, and remain at all times, SEPARATE and DISTINCT;

D. The title and other interest of Grantee in the Property acquired under this Special Warranty Deed will not merge with the liens and security interests of Grantee in the Property under the Liens and for purposes of priority as between (i) intervening or inferior liens, claims or encumbrances on or against the Property, and (ii) the Liens, any and all rights of Grantee to exercise its remedies of foreclosure by private power of sale pursuant to nonjudicial foreclosure or by judicial foreclosure of any of the Liens or any other remedies to enforce the Liens are expressly preserved hereby and for purposes of limitations and any other applicable time bar defenses, the same are hereby expressly extended;

E. The priority of the Liens is intended to be and shall remain in full force and effect and nothing herein or in any instruments executed in connection herewith shall be construed to subordinate the priority of the Liens to any other liens or encumbrances whatsoever;

F. If the conveyance of the Property from Grantor to Grantee is voided, avoided, or set aside for any reason whatsoever, then (i) if the Liens shall have been previously released in whole or in part, the same shall be automatically revived and reinstated; (ii) Grantee shall have the right to foreclose the Liens and take such other action as is permitted thereby or pursuant to the other documents evidencing the Liens to enforce the Liens; and (iii) all costs incurred by Grantee in connection with this Special Warranty Deed and any other cost of enforcement of the Liens shall be deemed a part of the Indebtedness secured by the Liens and shall be due and payable by Grantor upon demand of Grantee.

G. Grantor hereby acknowledges that, after the recording of conveyance hereunder, among other changes of ownership named therein, Grantor shall have no further interest or claim with respect to the Property including, without limitation, the rights to the following:

1. the rights to manage the Property;
2. the right to occupy or use the Property in any manner;
3. the right to receive any revenues from the Property;

4. the right to receive any proceeds from the sale, transfer, financing or operation of the Property; or

5. the right to repurchase, redeem or regain any right, title or interest in the Property or any portion thereof.

H. Grantor is duly authorized to execute and deliver this Special Warranty Deed and any and all other related documents and instruments, and to consummate the transactions and perform the obligations contemplated hereby and thereby.

I. This Special Warranty Deed constitutes the legal, valid and binding obligation of Grantor enforceable in accordance with its terms, except as may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws or by legal or equitable principles relating to or limiting rights of creditors generally. Neither the execution and delivery of this Special Warranty Deed, nor the consummation of the transactions contemplated hereby will (a) violate any judgment, order, ruling, injunction, decree or award of any court, administrative agency or governmental body against, or binding upon, Grantor; or (b) to Grantor's knowledge, constitute a violation by Grantor of any law or regulation of any jurisdiction as such law or regulation relates to or affects Grantor or its properties or businesses.

J. All representations, warranties, covenants and agreements of the parties made in this Special Warranty Deed shall survive the execution and delivery hereof.

K. Grantor agrees not to take any action, or cause any action to be taken, to attempt to modify, rescind, revoke, avoid or otherwise invalidate this Special Warranty Deed or the transfer of any property or other consideration received by Grantee hereunder or provided for herein. It is expressly agreed and understood and the parties intend that all payments, property and other consideration paid or conveyed to Grantee by Grantor hereunder shall be final and forever.

L. This Special Warranty Deed and all documents and instruments to be executed and delivered in connection herewith and therewith and all information furnished to Grantee, is made and furnished in good faith, for value and valuable consideration, and have not been made under or induced by any fraud, duress, or undue influence exercised by Grantee or any other person.

M. If any provision of this Special Warranty Deed is held to be illegal, invalid, or unenforceable, such provision shall be fully severed from this Special Warranty Deed. This Special Warranty Deed shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part hereof, and the remaining provisions shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision or by its severance from this Special Warranty Deed. Furthermore, in lieu of each such illegal, invalid, or unenforceable provision, there shall be added automatically, as a part of this Special Warranty Deed, a provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible and be legal, valid, and enforceable.

N. This Special Warranty Deed shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, successors, and assigns.

[Signatures on following pages.]

EXECUTED as of the ____ day of __________________, 2020.

**GRANTOR:**

BM318, LLC,
a Texas limited liability company

By: TRWF, LLC
a Texas limited liability company
its managing member

By: ______________________________
Tim Barton, President

STATE OF ____________ §
§
COUNTY OF __________ §

The foregoing instrument was ACKNOWLEDGED before me this _____ day of ____________, 2020, by Tim Barton, President of TRWF, LLC, a Texas limited liability company, the managing member of BM318, LLC, a Texas limited liability company, on behalf of said limited liability company.

[S E A L]

______________________________
Notary Public, State of Texas

My Commission Expires:

____________________

______________________________
Printed Name of Notary Public

Notary No.: _________________________

Attachments:

Exhibit A - Land
Exhibit B - Permitted Encumbrances
Exhibit C - Liens and Indebtedness

**EXHIBIT A**
The Land

**TRACT 1**

BEING 2055.70 acres of land situated in the JAMES BRADLEY SURVEY, ABSTRACT No. 119, JAMES BRADLEY SURVEY, ABSTRACT No. 120, JOHN D. BAY SURVEY, ABSTRACT NO. 195, J.H. REAN SURVEY, ABSTRACT No. 1106, T.J. BENDERMAN SURVEY, ABSTRACT No. 2519, I. & G.N. RR. CO., SECTION NO. 3, BLOCK 1, ABSTRACT NO. 1799 and the PETER B. HOLDER SURVEY, ABSTRACT No. 614, Parker County, Texas, being a portion of those certain tracts of land described in deed as Parcel No. 1 and Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 2055.70 acres being more particularly described as follows:

BEGINNING at the most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (Right-of-Way varies), from which a 2" steel fence corner post found in the south line of said Bear Creek Road bears S 01°12'56" E, a distance of 40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6918277.984 and EAST: 2233063.538, for reference;

THENCE along Bear Creek Road, as follows:
S 67°36'03" E, a distance of 3869.57 feet to the most northerly northeast corner of said Parcel No. 2;
S 02°12'27" E, a distance of 1472.57 feet to a point;
S 55°59'27" E, a distance of 1165.45 feet to a point;
S 71°46'27" E, a distance of 801.00 feet to a point;
S 70°43'19" E, a distance of 221.91 feet to a point;
S 70°45'54 E, a distance of 1742.88 feet to a point for the most northerly northeast corner of the herein described 2055.70 acre tract;

THENCE S 24°06'27" W, leaving said Bear Creek Road, passing the northwest corner of that certain tract of land described in deed to Kevin Reeves, recorded in Instrument Number 2017-02400, Official Public Records, Parker County, Texas, and continuing along the most west line of said Reeves tract, in all, a distance of 1186.42 feet to a point from which a 5/8" iron rod found bears N 60°42'50" W, a distance of 0.42 feet, for reference;

THENCE along the southwesterly lines of said Reeves tract as follows:

S 60°42'50" E, a distance of 230.94 feet to a 5/8" iron rod found;
S 14°49'14" E, a distance of 744.61 feet to a 5/8" iron rod found;
N 72°21'34" E, a distance of 390.26 feet to a point from which a 3" steel pipe fence post bears N 06°43'26" W, a distance of 1.25 feet for reference;
S 00°10'37" W, a distance of 764.25 feet to a 1/2" iron rod found at the southwest corner of said Reeves tract, being in the north line of a Seventy (70) foot wide Transmission Easement and Right-of-Way recorded in Book 2684, Page 531 and Book 2734, Page 1161, Official Public Records, Parker County, Texas;

THENCE along the south line of said Reeves tract and the north line of said Transmission Easement and Right-of-Way, as follows:

N 89°17'27" E, a distance of 766.57 feet to a point;
S 87°58'20" E, a distance of 852.96 feet to a point;

S 87°37'59" E, a distance of 500.58 feet to a point in the west occupied line of said Bear Creek Road, at the southeast corner of said Reeves tract;

THENCE S 20°01'40" E, along the west occupied line of said Bear Creek Road, a distance of 75.70 feet to a 5/8" capped iron rod found stamped "Brooks Baker", being in the most easterly south line of said Parcel No. 2;

THENCE along the most easterly south line of said Parcel No. 2, as follows:

N 87°38'33" W, a distance of 529.23 feet to a point;
N 87°58'55" W, a distance of 851.08 feet to a point;
S 89°16'51" W, a distance of 765.97 feet to a point at the most southerly southwest corner of said Parcel No. 2 and being in the east line of said Parcel No. 1;

THENCE S 03°54'04" E, along the east line of said Parcel No. 1 and along the called east line of said BENDERMAN SURVEY, a distance of 10017.79 feet to a 2" pipe in concrete at the southeast corner of said Parcel No. 1 and being the called southeast corner of said BENDERMAN SURVEY;

THENCE S 89°26'10" W, along the south line of said Parcel No. 1 and along the called south line of said BENDERMAN SURVEY, a distance of 1606.98 feet to a 5/8" capped iron rod found stamped "Brooks Baker";

THENCE S 89°48'07" W, continuing along the south line of said Parcel No. 1 and continuing along the called south line of said BENDERMAN SURVEY, a distance of 3711.27 feet to a 2" pipe in concrete found at the most southerly southwest corner of said Parcel No. 1;

THENCE N 01°35'25" W, along the most southerly west line of said Parcel No. 1, a distance of 1216.91 feet to a 2" pipe in concrete found at an interior corner of said Parcel No. 1 and being in the called south line of said J.H. REAN SURVEY;

THENCE N 89°19'15" W, along the most westerly south line of said Parcel No. 1 and along the called south line of said J.H. REAN SURVEY, a distance of 660.00 feet to a 2" pipe in concrete found at the most westerly southwest corner of said Parcel No. 1 and being the called southwest corner of said J.H. REAN SURVEY;

THENCE along the west line of said Parcel No. 1 and along the called west line of said J.H. REAN SURVEY, as follows:

N 00°01'41" W, a distance of 2676.89 feet to a 5/8" iron rod found;
N 00°04'03" W, a distance of 1981.74 feet to a 5/8" iron rod found;
N 00°10'29" E, a distance of 1520.50 feet to a 5/8" iron rod found;
N 00°04'43" W, a distance of 1097.99 feet to a 5/8" iron rod found;
N 00°02'24" W, a distance of 901.55 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";
N 00°25'07" W, a distance of 984.78 feet to a 2" pipe in concrete found at an interior corner of said Parcel No. 1;

THENCE N 89°37'52" W along the most northerly south line of said Parcel No. 1, a distance of 2013.88 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084, at the most westerly southwest corner of said Parcel No. 1;

THENCE N 00°45'08" W, along the most westerly west line of said Parcel No. 1, a distance of 1196.14 feet to a 5/8" rod found;

THENCE N 01°17'22" W, continuing along the most westerly west line of said Parcel No. 1, a distance of 1964.12 to a 5/8" capped iron rod found stamped "Brooks Baker" at the northwest corner of said Parcel No. 1 and being the southwest corner of said Parcel No. 2, from which a 5/8" capped iron rod found (not legible) bears S 88°46'12" E, a distance of 728.31 feet for reference;

THENCE N 01°17'05" W, along the west line of said Parcel 2, a distance of 3591.76 feet to the POINT OF BEGINNING and containing 2055.70 acres, more or less.

**SAVE AND EXCEPT** that certain 381.66 acres tract of land as conveyed to GH Lumar JV in Warranty Deed, filed 09/13/2019, recorded in cc#2019-24134, Real Property Records, Parker County, Texas.

**SAVE AND EXCEPT** that certain 23.95 acres of land, situated in Parker County, Texas, out of the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 119, the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 120, the JOHN D. BAY SURVEY, ABSTRACT NUMBER 195 and the J. H. REAN SURVEY, ABSTRACT NUMBER 1106, and being part of a 2055.70 acre tract of land that is described in a deed from The Dixon Water Foundation to BM 318, LLC, dated November 26, 2018, recorded in Instrument No. 201829926, Official Public Records of Parker County, Texas and further described as follows:

BEGINNING at a railroad spike set in Bear Creek Road, and being an internal corner of said 2055.70 acre tract, and being in the East line of a 381.66 acres tract of land that is described in a deed from BM 318, LLC to GH Lumar JV, dated September 11, 2019, recorded in Instrument No. 201924134, Official Public Records of Parker County, Texas, for the Northwest corner of this tract;

THENCE South 55 degrees 59 minutes 27 seconds East, 840.04 feet, along Bear Creek Road, with the North line of said 2055.70 acre tract, to a railroad spike set at the calculated Northeast corner of a 60 foot wide access easement that is described in deed to GH Lumar JV, for the Northeast corner of this tract;

THENCE South 33 degrees 46 minutes 16 seconds West, 811.29 feet, to a 1/2 inch iron rod set, South 09 degrees 44 minutes 07 seconds West, 103.49 feet to a 1/2 inch iron rod set, South 32 degrees 59 minutes 06 seconds East 349.92 feet, to a 1/2 inch iron rod set, South 09 degrees 47 minutes 14 seconds East, 797.08 feet, to a 1/2 inch iron rod set, and South 00 degrees 31 minutes 28 seconds East, 655.53 feet, to a 1/2 inch iron rod set, for the Southeast corner of this tract;

THENCE North 80 degrees 56 minutes 20 seconds West, 369.25 feet, to a 1/2 inch iron rod set in the East line of said 381.66 acre tract, for the Southwest corner of this tract;

THENCE with the East line of said 381.66 acre tract, as follows North 02 degrees 12 minutes 27 seconds West, 1405.48 feet, to a 1/2 inch iron rod set, North 69 degrees 20 minutes 36 seconds West, 89.55 feet, to a 1/2 inch iron rod set, and North 02 degrees 12 minutes 27 seconds West, 1487.68 feet, to the Point of Beginning and containing 23.95 acres of land.

**SAVE AND EXCEPT**

BEING 118.34 acres situated in the JAMES BRADLEY SURVEY, ABSTRACT NO. 120, Parker County, Texas, being a portion of that certain tract of land described in deed as Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 118.34 acres being more particularly described as follows:

BEGINNING at the most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (Right-of-Way varies), from which a 2" steel

fence corner post found in the south line of said Bear Creek Road bears S 01°12'56" E, a distance of 40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6918277.984 and EAST: 2233063.538, for reference;

THENCE S 67°36'03" E, along the approximate centerline of said Bear Creek Road and along the most north line of said Parcel No. 2, a distance of 2856.45 feet to a point for the northeast corner of the herein described 118.34 acre tract;

THENCE S 24°50'49" W, leaving the approximate centerline of said Bear Creek Road, and being along the west line of a Fifty (50) foot wide Right-of-Way Agreement to ONEOK Arbuckle Pipeline, L.L.C., recorded in Book 2651, Page 405, Official Public Records, Parker County, Texas, at a distance of 23.85 feet, passing a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084", and continuing, along the west line of said Fifty (50) foot wide Right-of-Way Agreement, in all, a distance of 205.78 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";

THENCE S 04°46'43" W, continuing along the west line of said Fifty (50) foot wide Right-of-Way Agreement, a distance of 1684.81 feet to a point in the approximate centerline of Bear Creek for the southeast corner of the herein described 118.34 acre tract;

THENCE along the approximate centerline of said Bear Creek, as follows:

N 61°36'37" W, a distance of 807.44 feet to a point;

N 71°14'04" W, a distance of 217.93 feet to a point;

N 85°16'07" W, a distance of 121.44 feet to a point;

S 77°05'53" W, a distance of 141.01 feet to a point;

S 82°12'59" W a distance of 239.64 feet to a point;

S 49°32'26" W, a distance of 208.64 feet to a point;

N 86°11'59" W, a distance of 114.28 feet to a point;

N 53°45'49" W a distance of 175.97 feet to a point;

N 47°13'56" W, a distance of 200.18 feet to a point;

N 80°08'35" W, a distance of 392.40 feet to a point in the west line of said Parcel No. 2, for the southwest corner of the herein described 118.34 acre tract, from which a 5/8" capped iron rod found at the southwest corner of said Parcel No. 2 bears S 01°17'05" E, a distance of 1216.41 feet, for reference;

THENCE N 01°17'05" W, along the west line of said Parcel No. 2, a distance of 2375.35 to the POINT OF BEGINNING and containing 118.34 acres of land, more or less.

---

**TRACT 2**

TOGETHER WITH ACCESS EASEMENT CREATED BY THAT CERTAIN ACCESS EASEMENT, FILED 02/06/2020, RECORDED IN CC#202003138, REAL PROPERTY RECORDS, PARKER COUNTY, TEXAS.

# EXHIBIT B

Permitted Encumbrances

1. Easement granted by Aleene, Princess of Liechtenstein to James P. Dunigan, filed 12/08/1976, recorded in Volume 657, Page 418, Real Property Records, Parker County, Texas.

2. Easement granted by Jane McFarland Dixon to James P. Dunigan, Inc., filed 12/08/1976, recorded in Volume 657, Page 421, Real Property Records, Parker County, Texas.

3. Easement granted by Aleene McFarland Liechtenstein, et al to James P. Dunigan, filed 12/08/1976, recorded in Volume 657, Page 437, Real Property Records, Parker County, Texas.

4. Easement granted by Aleene McFarland Liechtenstein to Southwestern Gas Pipeline, Inc., filed 05/03/1978, recorded in Volume 723, Page 630, Real Property Records, Parker County, Texas.

5. Easement granted by R. McFarland Dixon to Tri-County Electric Cooperative, Inc., filed 01/26/1997, recorded in Volume 1720, Page 479, Real Property Records, Parker County, Texas.

6. Easement granted by R. McFarland Dixon to Devon Gas Services, LP, filed 04/04/2003, recorded in Volume 2094, Page 1408, Real Property Records, Parker County, Texas.

7. Easement granted by R. McFarland Dixon to Southwestern Gas Pipeline, Inc., filed 11/22/2004, recorded in Volume 2276, Page 466, Real Property Records, Parker County, Texas.

8. Easement granted by R. McFarland Dixon to Southwestern Gas Pipeline, Inc., filed 02/13/2005, recorded in Volume 2299, Page 938, Real Property Records, Parker County, Texas.

9. Easement granted by Estate of R. McFarland Dixon to Eagle Mountain Pipeline Company, LP, filed 04/21/2005, recorded in Volume 2319, Page 1469, Real Property Records, Parker County, Texas.

10. Easement granted by Estate of R.M. Dixon to Southwestern Gas Pipeline, Inc., filed 05/18/2005, recorded in Volume 2328, Page 1493, Real Property Records, Parker County, Texas.

11. Easement granted by The Dixon Foundation to Southwestern Gas Pipeline, Inc., filed 07/19/2006, recorded in Volume 2454, Page 601, Real Property Records, Parker County, Texas.

12. Easement granted by The Dixon Foundation to Southwestern Gas Pipeline, Inc., filed 03/13/2007, recorded in Volume 2519, Page 240, Real Property Records, Parker County, Texas.

13. Easement granted by The Dixon Foundation to Southwestern Gas Pipeline, Inc., filed 03/13/2007, recorded in Volume 2519, Page 246, Real Property Records, Parker County, Texas.

14. Easement granted by The Dixon Water Foundation to Tri-County Electric Cooperative, Inc., filed 05/19/2008, recorded in Volume 2635, Page 862, Real Property Records, Parker County, Texas.

15. Easement granted by The Dixon Water Foundation to Oneok Arbuckle Pipeline, LLC, filed 07/28/2008, recorded in Volume 2651, Page 405, Real Property Records, Parker County, Texas.

16. Easement rights as awarded to Brazos Electric Power Cooperative, Inc., in Cause #CIV 08-0739, certified copy filed 01/07/2009, recorded in Volume 2684, Page 531, Real Property Records, Parker County, Texas.

Modification of Easement filed 08/25/2009, recorded in Volume 2734, Page 1161, Real Property Records, Parker County, Texas.

17. Easement granted by The Dixon Water Foundation to Oneok Arbuckle Pipeline, LLC, filed 04/06/2009, recorded in Volume 2703, Page 1266, Real Property Records, Parker County, Texas.

18. Easement granted by The Dixon Water Foundation to Oneok Arbuckle Pipeline, LLC, filed 04/06/2009, recorded in Volume 2703, Page 1275, Real Property Records, Parker County, Texas.

19. Easement granted by Dixon Water Foundation to Crosstex North Texas Gathering, LP, filed 02/11/2011, recorded in Volume 2829, Page 14, Real Property Records, Parker County, Texas.

20. Easement granted by The Dixon Water Foundation to Targa NGL Pipeline Company, LLC, filed 04/16/2018, recorded in cc#2018-8660, Real Property Records, Parker County, Texas.

21. Easement granted by The Dixon Water Foundation to Targa NGL Pipeline Company, LLC, filed 04/16/2018, recorded in cc#2018-8659, Real Property Records, Parker County, Texas.

    Amendment, filed 01/22/2019, recorded in cc#2019-1501, Real Property Records, Parker County, Texas.

22. Overhead electric lines and power poles along the Northerly portion of property, as shown on survey by Charles F. Stark, RPLS #5084, dated 11/13/2018.

23. Easement rights as granted to GH Lumar JV, in Warranty Deed, filed 09/13/2019, recorded in cc#2019-24134, Real Property Records, Parker County, Texas.

**EXHIBIT C**

Liens and Indebtedness

Promissory Note (the "**Note**"), dated November 26, 2018, executed by, BM318, LLC, a Texas limited liability company payable to the order of THE DIXON WATER FOUNDATION F/K/A THE DIXON FOUNDATION, a Texas non-profit corporation in the original principal amount of $32,946,900.00, which Note is secured by that certain Deed of Trust, Security Agreement and Financing Statement dated as of November 26, 2018 and filed under Document Number 201829927 with the Official Public Records of Parker County, Texas of which $27,500,658.00 in principal and accrued interest is owed as of February 17, 2020, plus any and all costs and expenses of Lender as of the date of such payment.

# EXHIBIT C

## BILL OF SALE

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF PARKER | § | |

THIS BILL OF SALE (this "**Bill of Sale**") is made and entered into as of the __ day of __________ 2020, by **BM318, LLC**, a Texas limited liability company ("**Seller**") to **THE DIXON WATER FOUNDATION F/K/A THE DIXON FOUNDATION**, a Texas non-profit corporation ("**Buyer**").

A. Seller, by Special Warranty Deed (the "**Deed**") of even date herewith, has conveyed to Buyer the land described in Exhibit A attached hereto ("**Land**"), together with all improvements located thereon ("**Improvements**");

B. Seller and Buyer intend that Seller also convey to Buyer all of Seller's right, title, and interest in and to all matters affecting or appurtenant to the Land and Improvements.

NOW, THEREFORE, Seller, for and in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, hereby agrees as follows:

24. Seller has BARGAINED, SOLD, TRANSFERRED, ASSIGNED and CONVEYED, and by these present does hereby BARGAIN, SELL, TRANSFER, ASSIGN and CONVEY to Buyer all of Seller's right, title, and interest in and to all of the following ("**Property**"):

(a) All the fixtures, equipment, compressors, engines, electrical systems, plumbing fixtures, systems and equipment, maintenance equipment, tools, appliances, furniture, landscaping equipment, utility lines and systems, infrastructure and all other machinery, supplies, building materials, replacement parts, and other personal property whatsoever owned by Seller or in which Seller has any interest which relates to and is used in connection with the Land or the Improvements;

(b) all easements, agreements, permits, licenses, and rights whether or not of record, appurtenant to the Land or the Improvements and the use of all strips and rights-of-way abutting, adjacent, contiguous, or adjoining the Land, which are not conveyed by the Deed;

(c) all licenses, permits, certificates of occupancy, approvals, franchises and other rights and privileges issued by any federal, state, county or municipal authority relating to the use, maintenance, or operation of the Land or the Improvements, running to, or in favor of Seller;

(d) all service, supply, and maintenance contracts, and equipment leases;

(e) all instruments, documents, chattel paper and general intangible personal property now owned or hereafter acquired by the Seller in connection with the development, disposition, ownership, leasing, and operation of the Land, the Improvements and all personal property located thereon or otherwise used in connection with the Land or the Improvements, including trademarks, patents, copyrights and other similar rights, franchises or agreements applicable thereto (including any trade styles and trade names, contract rights, brochures, manuals, lists of prospective occupants, advertising material, utility contracts, and telephone numbers);

(f) all utility deposits made (and any refunds thereof) and any and all other funds deposited as security or in escrow for the fulfillment of any of the obligations of Seller in connection with the Land or the Improvements (including all tax and insurance premiums or other escrow accounts);

(g) all plans and specifications, contracts, subcontracts and agreements, working drawings, site, elevation and as-built surveys, and reports, studies and tests of any kind, character, or description prepared for use in connection with the Land or the Improvements;

(h) all warranties and/or guarantees of manufacturers, vendors, contractors, and subcontractors relating to the construction, development or work performed or to be performed in connection with the Land or the Improvements;

(i) all claims, demands or causes of action Seller has or may have arising out of or relating to or caused by any defects in the design or construction of the Improvements against any contractors, architects or any subcontractors, suppliers, materialmen, or vendors, or of any other matters relating to the Land or the Improvements or operations thereof (but not related liabilities, none of which are assumed by Buyer);

(j) all accounts receivable, prepaid amounts, cash and deposits which belong to Seller and/or otherwise relate to the Land or the Improvements and the operation thereof, including all cash on hand and all cash and deposits in all bank accounts, all operating accounts, all reserve accounts, all lockbox accounts, all debt service reserves, all replacement reserves, all interest reserves, all deferred maintenance reserves, and all cash which remains after payment of the expenses of the Property;

(k) all accounting and financial records, correspondence, records, bills, invoices, lease files, credit reports and other documents relating to the Land or the Improvements and the operations thereof; and

(l) all unpaid awards or proceeds, including condemnation awards or insurance proceeds relating to the Land or the Improvements, and all rights to any tax refunds for taxes paid for the Land and the Improvements;

(m) and all products and proceeds of the foregoing.

25. This Bill of Sale shall be binding on Seller, its successors and assigns, and shall inure to the benefit of Buyer, its successors and assigns.

26. This Bill of Sale may be executed in one or more counterparts, each of which when so executed shall be deemed to be an original, but all of which when taken together shall constitute one and the same instrument. Delivery of an executed counterpart of this Bill of Sale by facsimile, PDF format or other electronic means shall be equally as effective as delivery of an executed original counterpart.

[Signatures on following pages.]

EXECUTED as of the date first above written.

**SELLER:**

BM318, LLC,
a Texas limited liability company

By: TRWF, LLC
a Texas limited liability company
its managing member

By: ______________________________
Tim Barton, President

**BUYER:**

THE DIXON WATER FOUNDATION F/K/A THE DIXON FOUNDATION, a Texas non-profit corporation

By: ______________________________
Name: ______________________________
Title: ______________________________

**EXHIBIT A**
The Land

**TRACT 1**

BEING 2055.70 acres of land situated in the JAMES BRADLEY SURVEY, ABSTRACT No. 119, JAMES BRADLEY SURVEY, ABSTRACT No. 120, JOHN D. BAY SURVEY, ABSTRACT NO. 195, J.H. REAN SURVEY, ABSTRACT No. 1106, T.J. BENDERMAN SURVEY, ABSTRACT No. 2519, I. & G.N. RR. CO., SECTION NO. 3, BLOCK 1, ABSTRACT NO. 1799 and the PETER B. HOLDER SURVEY, ABSTRACT No. 614, Parker County, Texas, being a portion of those certain tracts of land described in deed as Parcel No. 1 and Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 2055.70 acres being more particularly described as follows:

BEGINNING at the most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (Right-of-Way varies), from which a 2" steel fence corner post found in the south line of said Bear Creek Road bears S 01°12'56" E, a distance of 40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6918277.984 and EAST: 2233063.538, for reference;

THENCE along Bear Creek Road, as follows:
S 67°36'03" E, a distance of 3869.57 feet to the most northerly northeast corner of said Parcel No. 2;
S 02°12'27" E, a distance of 1472.57 feet to a point;
S 55°59'27" E, a distance of 1165.45 feet to a point;
S 71°46'27" E, a distance of 801.00 feet to a point;
S 70°43'19" E, a distance of 221.91 feet to a point;
S 70°45'54 E, a distance of 1742.88 feet to a point for the most northerly northeast corner of the herein described 2055.70 acre tract;

THENCE S 24°06'27" W, leaving said Bear Creek Road, passing the northwest corner of that certain tract of land described in deed to Kevin Reeves, recorded in Instrument Number 2017-02400, Official Public Records, Parker County, Texas, and continuing along the most west line of said Reeves tract, in all, a distance of 1186.42 feet to a point from which a 5/8" iron rod found bears N 60°42'50" W, a distance of 0.42 feet, for reference;

THENCE along the southwesterly lines of said Reeves tract as follows:

S 60°42'50" E, a distance of 230.94 feet to a 5/8" iron rod found;
S 14°49'14" E, a distance of 744.61 feet to a 5/8" iron rod found;
N 72°21'34" E, a distance of 390.26 feet to a point from which a 3" steel pipe fence post bears N 06°43'26" W, a distance of 1.25 feet for reference;
S 00°10'37" W, a distance of 764.25 feet to a 1/2" iron rod found at the southwest corner of said Reeves tract, being in the north line of a Seventy (70) foot wide Transmission Easement and Right-of-Way recorded in Book 2684, Page 531 and Book 2734, Page 1161, Official Public Records, Parker County, Texas;

THENCE along the south line of said Reeves tract and the north line of said Transmission Easement and Right-of-Way, as follows:

N 89°17'27" E, a distance of 766.57 feet to a point;
S 87°58'20" E, a distance of 852.96 feet to a point;
S 87°37'59" E, a distance of 500.58 feet to a point in the west occupied line of said Bear Creek Road, at the southeast corner of said Reeves tract;

THENCE S 20°01'40" E, along the west occupied line of said Bear Creek Road, a distance of 75.70 feet to a 5/8" capped iron rod found stamped "Brooks Baker", being in the most easterly south line of said Parcel No. 2;

THENCE along the most easterly south line of said Parcel No. 2, as follows:

N 87°38'33" W, a distance of 529.23 feet to a point;
N 87°58'55" W, a distance of 851.08 feet to a point;
S 89°16'51" W, a distance of 765.97 feet to a point at the most southerly southwest corner of said Parcel No. 2 and being in the east line of said Parcel No. 1;

THENCE S 03°54'04" E, along the east line of said Parcel No. 1 and along the called east line of said BENDERMAN SURVEY, a distance of 10017.79 feet to a 2" pipe in concrete at the southeast corner of said Parcel No. 1 and being the called southeast corner of said BENDERMAN SURVEY;

THENCE S 89°26'10" W, along the south line of said Parcel No. 1 and along the called south line of said BENDERMAN SURVEY, a distance of 1606.98 feet to a 5/8" capped iron rod found stamped "Brooks Baker";

THENCE S 89°48'07" W, continuing along the south line of said Parcel No. 1 and continuing along the called south line of said BENDERMAN SURVEY, a distance of 3711.27 feet to a 2" pipe in concrete found at the most southerly southwest corner of said Parcel No. 1;

THENCE N 01°35'25" W, along the most southerly west line of said Parcel No. 1, a distance of 1216.91 feet to a 2" pipe in concrete found at an interior corner of said Parcel No. 1 and being in the called south line of said J.H. REAN SURVEY;

THENCE N 89°19'15" W, along the most westerly south line of said Parcel No. 1 and along the called south line of said J.H. REAN SURVEY, a distance of 660.00 feet to a 2" pipe in concrete found at the most westerly southwest corner of said Parcel No. 1 and being the called southwest corner of said J.H. REAN SURVEY;

THENCE along the west line of said Parcel No. 1 and along the called west line of said J.H. REAN SURVEY, as follows:

N 00°01'41" W, a distance of 2676.89 feet to a 5/8" iron rod found;
N 00°04'03" W, a distance of 1981.74 feet to a 5/8" iron rod found;
N 00°10'29" E, a distance of 1520.50 feet to a 5/8" iron rod found;
N 00°04'43" W, a distance of 1097.99 feet to a 5/8" iron rod found;
N 00°02'24" W, a distance of 901.55 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";
N 00°25'07" W, a distance of 984.78 feet to a 2" pipe in concrete found at an interior corner of said Parcel No. 1;

THENCE N 89°37'52" W along the most northerly south line of said Parcel No. 1, a distance of 2013.88 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084, at the most westerly southwest corner of said Parcel No. 1;

THENCE N 00°45'08" W, along the most westerly west line of said Parcel No. 1, a distance of 1196.14 feet to a 5/8" rod found;

THENCE N 01°17'22" W, continuing along the most westerly west line of said Parcel No. 1, a distance of 1964.12 to a 5/8" capped iron rod found stamped "Brooks Baker" at the northwest corner of said Parcel No. 1 and being the southwest corner of said Parcel No. 2, from which a 5/8" capped iron rod found (not legible) bears S 88°46'12" E, a distance of 728.31 feet for reference;

THENCE N 01°17'05" W, along the west line of said Parcel 2, a distance of 3591.76 feet to the POINT OF BEGINNING and containing 2055.70 acres, more or less.

**SAVE AND EXCEPT** that certain 381.66 acres tract of land as conveyed to GH Lumar JV in Warranty Deed, filed 09/13/2019, recorded in cc#2019-24134, Real Property Records, Parker County, Texas.

**SAVE AND EXCEPT** that certain 23.95 acres of land, situated in Parker County, Texas, out of the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 119, the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 120, the JOHN D. BAY SURVEY, ABSTRACT NUMBER 195 and the J. H. REAN SURVEY, ABSTRACT NUMBER 1106, and being part of a 2055.70 acre tract of land that is described in a deed from The Dixon Water Foundation to BM 318, LLC, dated November 26, 2018, recorded in Instrument No. 201829926, Official Public Records of Parker County, Texas and further described as follows:

BEGINNING at a railroad spike set in Bear Creek Road, and being an internal corner of said 2055.70 acre tract, and being in the East line of a 381.66 acres tract of land that is described in a deed from BM 318, LLC to GH Lumar JV, dated September 11, 2019, recorded in Instrument No. 201924134, Official Public Records of Parker County, Texas, for the Northwest corner of this tract;

THENCE South 55 degrees 59 minutes 27 seconds East, 840.04 feet, along Bear Creek Road, with the North line of said 2055.70 acre tract, to a railroad spike set at the calculated Northeast corner of a 60 foot wide access easement that is described in deed to GH Lumar JV, for the Northeast corner of this tract;

THENCE South 33 degrees 46 minutes 16 seconds West, 811.29 feet, to a 1/2 inch iron rod set, South 09 degrees 44 minutes 07 seconds West, 103.49 feet to a 1/2 inch iron rod set, South 32 degrees 59 minutes 06 seconds East 349.92 feet, to a 1/2 inch iron rod set, South 09 degrees 47 minutes 14 seconds East, 797.08 feet, to a 1/2 inch iron rod set, and South 00 degrees 31 minutes 28 seconds East, 655.53 feet, to a 1/2 inch iron rod set, for the Southeast corner of this tract;

THENCE North 80 degrees 56 minutes 20 seconds West, 369.25 feet, to a 1/2 inch iron rod set in the East line of said 381.66 acre tract, for the Southwest corner of this tract;

THENCE with the East line of said 381.66 acre tract, as follows North 02 degrees 12 minutes 27 seconds West, 1405.48 feet, to a 1/2 inch iron rod set, North 69 degrees 20 minutes 36 seconds West, 89.55 feet, to a 1/2 inch iron rod set, and North 02 degrees 12 minutes 27 seconds West, 1487.68 feet, to the Point of Beginning and containing 23.95 acres of land.

**SAVE AND EXCEPT**

BEING 118.34 acres situated in the JAMES BRADLEY SURVEY, ABSTRACT NO. 120, Parker County, Texas, being a portion of that certain tract of land described in deed as Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 118.34 acres being more particularly described as follows:

BEGINNING at the most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (Right-of-Way varies), from which a 2" steel

fence corner post found in the south line of said Bear Creek Road bears S 01°12'56" E, a distance of 40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6918277.984 and EAST: 2233063.538, for reference;

THENCE S 67°36'03" E, along the approximate centerline of said Bear Creek Road and along the most north line of said Parcel No. 2, a distance of 2856.45 feet to a point for the northeast corner of the herein described 118.34 acre tract;

THENCE S 24°50'49" W, leaving the approximate centerline of said Bear Creek Road, and being along the west line of a Fifty (50) foot wide Right-of-Way Agreement to ONEOK Arbuckle Pipeline, L.L.C., recorded in Book 2651, Page 405, Official Public Records, Parker County, Texas, at a distance of 23.85 feet, passing a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084", and continuing, along the west line of said Fifty (50) foot wide Right-of-Way Agreement, in all, a distance of 205.78 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";

THENCE S 04°46'43" W, continuing along the west line of said Fifty (50) foot wide Right-of-Way Agreement, a distance of 1684.81 feet to a point in the approximate centerline of Bear Creek for the southeast corner of the herein described 118.34 acre tract;

THENCE along the approximate centerline of said Bear Creek, as follows:

N 61°36'37" W, a distance of 807.44 feet to a point;

N 71°14'04" W, a distance of 217.93 feet to a point;

N 85°16'07" W, a distance of 121.44 feet to a point;

S 77°05'53" W, a distance of 141.01 feet to a point;

S 82°12'59" W a distance of 239.64 feet to a point;

S 49°32'26" W, a distance of 208.64 feet to a point;

N 86°11'59" W, a distance of 114.28 feet to a point;

N 53°45'49" W a distance of 175.97 feet to a point;

N 47°13'56" W, a distance of 200.18 feet to a point;

N 80°08'35" W, a distance of 392.40 feet to a point in the west line of said Parcel No. 2, for the southwest corner of the herein described 118.34 acre tract, from which a 5/8" capped iron rod found at the southwest corner of said Parcel No. 2 bears S 01°17'05" E, a distance of 1216.41 feet, for reference;

THENCE N 01°17'05" W, along the west line of said Parcel No. 2, a distance of 2375.35 to the POINT OF BEGINNING and containing 118.34 acres of land, more or less.

---

**TRACT 2**

TOGETHER WITH ACCESS EASEMENT CREATED BY THAT CERTAIN ACCESS EASEMENT, FILED 02/06/2020, RECORDED IN CC#202003138, REAL PROPERTY RECORDS, PARKER COUNTY, TEXAS.

# EXHIBIT D

## IRC SECTION 1445 CERTIFICATION

| | |
|---|---|
| SUBJECT PROPERTY: | That certain tract of land ("**Land**"), situated in the County of Parker, Texas described by metes and bounds in Exhibit A attached hereto. |
| SELLER: | BM318, LLC, a Texas limited liability company |
| BUYER: | The Dixon Water Foundation f/k/a The Dixon Foundation, a Texas non-profit corporation |

To inform Buyer that the withholding of tax is not required upon the disposition of a U.S. real property interest by Seller, the undersigned hereby certifies the following:

1. Seller is not a foreign corporation, foreign partnership, foreign trust or foreign estate (as those terms are defined in the Internal Revenue Code and Income Tax Regulations);

2. Seller's U.S. employer identification number is _____________; and

3. Seller's office address 13901 Midway Road, Suite 102, Farmers Branch, Texas 75244; and

4. Seller is not a disregarded entity as defined in Section 1.445-2(b)(2)(iii) of the Internal Revenue Code and Income Tax Regulations.

Seller understands that this certification may be disclosed to the Internal Revenue Service by Buyer and that any false statement contained herein could be punished by fine, imprisonment, or both.

Under penalties of perjury, the undersigned declares that it has examined this certification and to the best of its knowledge and belief, it is true, correct and complete.

[Signature on following page.]

EXECUTED this ___ day of ____________________, 2020.

**SELLER**:

BM318, LLC,
a Texas limited liability company

By: TRWF, LLC
a Texas limited liability company
its managing member

By: ______________________________
Tim Barton, President

**EXHIBIT A**
The Land

**TRACT 1**

BEING 2055.70 acres of land situated in the JAMES BRADLEY SURVEY, ABSTRACT No. 119, JAMES BRADLEY SURVEY, ABSTRACT No. 120, JOHN D. BAY SURVEY, ABSTRACT NO. 195, J.H. REAN SURVEY, ABSTRACT No. 1106, T.J. BENDERMAN SURVEY, ABSTRACT No. 2519, I. & G.N. RR. CO., SECTION NO. 3, BLOCK 1, ABSTRACT NO. 1799 and the PETER B. HOLDER SURVEY, ABSTRACT No. 614, Parker County, Texas, being a portion of those certain tracts of land described in deed as Parcel No. 1 and Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 2055.70 acres being more particularly described as follows:

BEGINNING at the most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (Right-of-Way varies), from which a 2" steel fence corner post found in the south line of said Bear Creek Road bears S 01°12'56" E, a distance of 40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6918277.984 and EAST: 2233063.538, for reference;

THENCE along Bear Creek Road, as follows:
S 67°36'03" E, a distance of 3869.57 feet to the most northerly northeast corner of said Parcel No. 2;
S 02°12'27" E, a distance of 1472.57 feet to a point;
S 55°59'27" E, a distance of 1165.45 feet to a point;
S 71°46'27" E, a distance of 801.00 feet to a point;
S 70°43'19" E, a distance of 221.91 feet to a point;
S 70°45'54 E, a distance of 1742.88 feet to a point for the most northerly northeast corner of the herein described 2055.70 acre tract;

THENCE S 24°06'27" W, leaving said Bear Creek Road, passing the northwest corner of that certain tract of land described in deed to Kevin Reeves, recorded in Instrument Number 2017-02400, Official Public Records, Parker County, Texas, and continuing along the most west line of said Reeves tract, in all, a distance of 1186.42 feet to a point from which a 5/8" iron rod found bears N 60°42'50" W, a distance of 0.42 feet, for reference;

THENCE along the southwesterly lines of said Reeves tract as follows:

S 60°42'50" E, a distance of 230.94 feet to a 5/8" iron rod found;
S 14°49'14" E, a distance of 744.61 feet to a 5/8" iron rod found;
N 72°21'34" E, a distance of 390.26 feet to a point from which a 3" steel pipe fence post bears N 06°43'26" W, a distance of 1.25 feet for reference;
S 00°10'37" W, a distance of 764.25 feet to a 1/2" iron rod found at the southwest corner of said Reeves tract, being in the north line of a Seventy (70) foot wide Transmission Easement and Right-of-Way recorded in Book 2684, Page 531 and Book 2734, Page 1161, Official Public Records, Parker County, Texas;

THENCE along the south line of said Reeves tract and the north line of said Transmission Easement and Right-of-Way, as follows:

N 89°17'27" E, a distance of 766.57 feet to a point;
S 87°58'20" E, a distance of 852.96 feet to a point;

S 87°37'59" E, a distance of 500.58 feet to a point in the west occupied line of said Bear Creek Road, at the southeast corner of said Reeves tract;

THENCE S 20°01'40" E, along the west occupied line of said Bear Creek Road, a distance of 75.70 feet to a 5/8" capped iron rod found stamped "Brooks Baker", being in the most easterly south line of said Parcel No. 2;

THENCE along the most easterly south line of said Parcel No. 2, as follows:

N 87°38'33" W, a distance of 529.23 feet to a point;
N 87°58'55" W, a distance of 851.08 feet to a point;
S 89°16'51" W, a distance of 765.97 feet to a point at the most southerly southwest corner of said Parcel No. 2 and being in the east line of said Parcel No. 1;

THENCE S 03°54'04" E, along the east line of said Parcel No. 1 and along the called east line of said BENDERMAN SURVEY, a distance of 10017.79 feet to a 2" pipe in concrete at the southeast corner of said Parcel No. 1 and being the called southeast corner of said BENDERMAN SURVEY;

THENCE S 89°26'10" W, along the south line of said Parcel No. 1 and along the called south line of said BENDERMAN SURVEY, a distance of 1606.98 feet to a 5/8" capped iron rod found stamped "Brooks Baker";

THENCE S 89°48'07" W, continuing along the south line of said Parcel No. 1 and continuing along the called south line of said BENDERMAN SURVEY, a distance of 3711.27 feet to a 2" pipe in concrete found at the most southerly southwest corner of said Parcel No. 1;

THENCE N 01°35'25" W, along the most southerly west line of said Parcel No. 1, a distance of 1216.91 feet to a 2" pipe in concrete found at an interior corner of said Parcel No. 1 and being in the called south line of said J.H. REAN SURVEY;

THENCE N 89°19'15" W, along the most westerly south line of said Parcel No. 1 and along the called south line of said J.H. REAN SURVEY, a distance of 660.00 feet to a 2" pipe in concrete found at the most westerly southwest corner of said Parcel No. 1 and being the called southwest corner of said J.H. REAN SURVEY;

THENCE along the west line of said Parcel No. 1 and along the called west line of said J.H. REAN SURVEY, as follows:

N 00°01'41" W, a distance of 2676.89 feet to a 5/8" iron rod found;
N 00°04'03" W, a distance of 1981.74 feet to a 5/8" iron rod found;
N 00°10'29" E, a distance of 1520.50 feet to a 5/8" iron rod found;
N 00°04'43" W, a distance of 1097.99 feet to a 5/8" iron rod found;
N 00°02'24" W, a distance of 901.55 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";
N 00°25'07" W, a distance of 984.78 feet to a 2" pipe in concrete found at an interior corner of said Parcel No. 1;

THENCE N 89°37'52" W along the most northerly south line of said Parcel No. 1, a distance of 2013.88 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084, at the most westerly southwest corner of said Parcel No. 1;

THENCE N 00°45'08" W, along the most westerly west line of said Parcel No. 1, a distance of 1196.14 feet to a 5/8" rod found;

THENCE N 01°17'22" W, continuing along the most westerly west line of said Parcel No. 1, a distance of 1964.12 to a 5/8" capped iron rod found stamped "Brooks Baker" at the northwest corner of said Parcel No. 1 and being the southwest corner of said Parcel No. 2, from which a 5/8" capped iron rod found (not legible) bears S 88°46'12" E, a distance of 728.31 feet for reference;

THENCE N 01°17'05" W, along the west line of said Parcel 2, a distance of 3591.76 feet to the POINT OF BEGINNING and containing 2055.70 acres, more or less.

**SAVE AND EXCEPT** that certain 381.66 acres tract of land as conveyed to GH Lumar JV in Warranty Deed, filed 09/13/2019, recorded in cc#2019-24134, Real Property Records, Parker County, Texas.

**SAVE AND EXCEPT** that certain 23.95 acres of land, situated in Parker County, Texas, out of the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 119, the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 120, the JOHN D. BAY SURVEY, ABSTRACT NUMBER 195 and the J. H. REAN SURVEY, ABSTRACT NUMBER 1106, and being part of a 2055.70 acre tract of land that is described in a deed from The Dixon Water Foundation to BM 318, LLC, dated November 26, 2018, recorded in Instrument No. 201829926, Official Public Records of Parker County, Texas and further described as follows:

BEGINNING at a railroad spike set in Bear Creek Road, and being an internal corner of said 2055.70 acre tract, and being in the East line of a 381.66 acres tract of land that is described in a deed from BM 318, LLC to GH Lumar JV, dated September 11, 2019, recorded in Instrument No. 201924134, Official Public Records of Parker County, Texas, for the Northwest corner of this tract;

THENCE South 55 degrees 59 minutes 27 seconds East, 840.04 feet, along Bear Creek Road, with the North line of said 2055.70 acre tract, to a railroad spike set at the calculated Northeast corner of a 60 foot wide access easement that is described in deed to GH Lumar JV, for the Northeast corner of this tract;

THENCE South 33 degrees 46 minutes 16 seconds West, 811.29 feet, to a 1/2 inch iron rod set, South 09 degrees 44 minutes 07 seconds West, 103.49 feet to a 1/2 inch iron rod set, South 32 degrees 59 minutes 06 seconds East 349.92 feet, to a 1/2 inch iron rod set, South 09 degrees 47 minutes 14 seconds East, 797.08 feet, to a 1/2 inch iron rod set, and South 00 degrees 31 minutes 28 seconds East, 655.53 feet, to a 1/2 inch iron rod set, for the Southeast corner of this tract;

THENCE North 80 degrees 56 minutes 20 seconds West, 369.25 feet, to a 1/2 inch iron rod set in the East line of said 381.66 acre tract, for the Southwest corner of this tract;

THENCE with the East line of said 381.66 acre tract, as follows North 02 degrees 12 minutes 27 seconds West, 1405.48 feet, to a 1/2 inch iron rod set, North 69 degrees 20 minutes 36 seconds West, 89.55 feet, to a 1/2 inch iron rod set, and North 02 degrees 12 minutes 27 seconds West, 1487.68 feet, to the Point of Beginning and containing 23.95 acres of land.

**SAVE AND EXCEPT**

BEING 118.34 acres situated in the JAMES BRADLEY SURVEY, ABSTRACT NO. 120, Parker County, Texas, being a portion of that certain tract of land described in deed as Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 118.34 acres being more particularly described as follows:

BEGINNING at the most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (Right-of-Way varies), from which a 2" steel

fence corner post found in the south line of said Bear Creek Road bears S 01°12'56" E, a distance of 40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6918277.984 and EAST: 2233063.538, for reference;

THENCE S 67°36'03" E, along the approximate centerline of said Bear Creek Road and along the most north line of said Parcel No. 2, a distance of 2856.45 feet to a point for the northeast corner of the herein described 118.34 acre tract;

THENCE S 24°50'49" W, leaving the approximate centerline of said Bear Creek Road, and being along the west line of a Fifty (50) foot wide Right-of-Way Agreement to ONEOK Arbuckle Pipeline, L.L.C., recorded in Book 2651, Page 405, Official Public Records, Parker County, Texas, at a distance of 23.85 feet, passing a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084", and continuing, along the west line of said Fifty (50) foot wide Right-of-Way Agreement, in all, a distance of 205.78 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";

THENCE S 04°46'43" W, continuing along the west line of said Fifty (50) foot wide Right-of-Way Agreement, a distance of 1684.81 feet to a point in the approximate centerline of Bear Creek for the southeast corner of the herein described 118.34 acre tract;

THENCE along the approximate centerline of said Bear Creek, as follows:

N 61°36'37" W, a distance of 807.44 feet to a point;

N 71°14'04" W, a distance of 217.93 feet to a point;

N 85°16'07" W, a distance of 121.44 feet to a point;

S 77°05'53" W, a distance of 141.01 feet to a point;

S 82°12'59" W a distance of 239.64 feet to a point;

S 49°32'26" W, a distance of 208.64 feet to a point;

N 86°11'59" W, a distance of 114.28 feet to a point;

N 53°45'49" W a distance of 175.97 feet to a point;

N 47°13'56" W, a distance of 200.18 feet to a point;

N 80°08'35" W, a distance of 392.40 feet to a point in the west line of said Parcel No. 2, for the southwest corner of the herein described 118.34 acre tract, from which a 5/8" capped iron rod found at the southwest corner of said Parcel No. 2 bears S 01°17'05" E, a distance of 1216.41 feet, for reference;

THENCE N 01°17'05" W, along the west line of said Parcel No. 2, a distance of 2375.35 to the POINT OF BEGINNING and containing 118.34 acres of land, more or less.

---

**TRACT 2**

TOGETHER WITH ACCESS EASEMENT CREATED BY THAT CERTAIN ACCESS EASEMENT, FILED 02/06/2020, RECORDED IN CC#202003138, REAL PROPERTY RECORDS, PARKER COUNTY, TEXAS.

# EXHIBIT E

## RELEASE OF BORROWER

THIS RELEASE OF BORROWER (this "**Release of Borrower**") is made as of ____________________, 2020 by THE DIXON WATER FOUNDATION F/K/A THE DIXON FOUNDATION, a Texas non-profit corporation ("**Lender**"). For value received, Lender hereby releases all obligations of BM318, LLC, ("**Borrower**") a Texas limited liability company, along with any and all related parties as set forth in and as related to the following:

> Promissory Note (the "**Note**"), dated November 26, 2018, executed by, BM318, LLC, ("**Borrower**") a Texas limited liability company payable to the order of THE DIXON WATER FOUNDATION F/K/A THE DIXON FOUNDATION , a Texas non-profit corporation in the original principal amount of $32,946,900.00, which Note was secured by that certain Deed of Trust, Security Agreement and Financing Statement ("**Deed of Trust**") dated as of November 26, 2018 and filed under Document Number 201829927 with the Official Public Records of Parker County, Texas of which $27,500,658.00 in principal and accrued interest is owed as of February 17, 2020 including as modified therein.
>
> Notwithstanding anything herein to the contrary, this Release of Borrower is not intended to be a release of, and Lender does not release Borrower from its obligations under the Deed in Escrow Agreement dated February __, 2020, executed by and among Borrower, Lender and American Escrow Company, nor does this release Borrower from any of its obligations under the Loan Documents that survive repayment thereof.

[Signature Page to Follow.]

EXECUTED this ___ day of ____________________, 2020.

**LENDER:**

THE DIXON WATER FOUNDATION F/K/A THE DIXON FOUNDATION, a Texas non-profit corporation

By: ________________________________
Name: ________________________________
Title: ________________________________

STATE OF ____________ §
§
COUNTY OF __________ §

The foregoing Release was ACKNOWLEDGED before me this _____ day of ____________, 2020, by Robert Potts, President of the Dixon Water Foundation F/K/A The Dixon Foundation, a Texas non-profit corporation, on behalf of said corporation.

[S E A L]

______________________________________
Notary Public, State of Texas

My Commission Expires:

______________________

______________________________________
Printed Name of Notary Public

Notary No.: _________________________

# EXHIBIT F

## RELEASE OF LENDER

Reference is hereby made to that certain Deed in Escrow Agreement dated on or about February __, 2020 (the "**Agreement**"). Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Agreement.

BM318, LLC, ("**Borrower**"), on its own behalf and on behalf of its representatives, officers, directors, agents, employees, shareholders, members, subsidiary and related companies, members, successors, and assigns (collectively, the "**Borrower Parties**"), for and in consideration of the sum of Ten and No/ 100 Dollars ($10.00) in hand paid, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and confessed, does hereby voluntarily and knowingly release and discharge THE DIXON WATER FOUNDATION F/K/A THE DIXON FOUNDATION, a Texas non-profit corporation (the "**Lender**"), and its representatives, officers, directors, agents, employees, shareholders, members, subsidiary and related companies, heirs, successors, assigns, attorneys, accountants, assets, and properties, as the case may be (all of whom are expressly made third party beneficiaries of this Release of Lender) (collectively the "**Lender Parties**"), from any and all claims, causes of action, demands, damages, causes of action, expenses, liabilities or suits whatsoever, known or unknown, anticipated or unanticipated, suspected or unsuspected, fixed, contingent, or conditional, at law or in equity, which any Borrower Party may now or hereafter have against the Lender Parties and their assets, and properties, as the case may be, if any, and irrespective of whether any such claims arise out of contract, tort, violation of law or regulations, or otherwise, that arise from any of the obligations, the exercise of any rights and remedies under the Loan Documents, or the operation of the Property, and negotiation for and execution of this Release of Lender, and any other act, omission, event or circumstance that occurred prior to the date of this Release of Lender. Notwithstanding anything herein to the contrary, this release is not intended to be a release of, and none of the Borrower Parties releases the Lender Parties from their obligations under the Agreement.

[Signature Page to Follow.]

EXECUTED this ___ day of ____________________, 2020.

**BORROWER**

BM318, LLC,
a Texas limited liability company

By: TRWF, LLC
a Texas limited liability company
its managing member

By:_____________________________
Tim Barton, President

STATE OF _____________ §
§
COUNTY OF ___________ §

The foregoing instrument was ACKNOWLEDGED before me this _____ day of ____________, 2020, by Tim Barton, President of TRWF, LLC, a Texas limited liability company, the managing member of BM318, LLC, a Texas limited liability company, on behalf of said limited liability company.

[S E A L]

_____________________________________
Notary Public, State of Texas

My Commission Expires:

_____________________________________
Printed Name of Notary Public

______________________

Notary No.: _________________________