# SPECIAL WARRANTY DEED

THE STATE OF TEXAS §
§ KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF PARKER §

THAT BM318, LLC, a Texas limited liability company ("**Grantor**"), for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to Grantor, cash in hand paid by Grantee, herein below named, the receipt and sufficiency of which are hereby acknowledged and confessed, has GRANTED, BARGAINED, SOLD and CONVEYED, and by these presents does hereby GRANT, BARGAIN, SELL and CONVEY unto THE DIXON WATER FOUNDATION F/K/A THE DIXON FOUNDATION, a Texas non-profit corporation (herein the "**Grantee**"), all of the following ("**Property**"):

(a) the real property (the "**Land**") located in Parker County, Texas and more particularly described in Exhibit "A" attached hereto and made a part hereof for all purposes;

(b) all buildings and other improvements of every type or character situated upon, under, through or within the Land, as well as all appurtenances, betterments and additions thereto;

(c) all of Grantor's right, title and interest in and to all strips, gores and rights-of-way abutting, adjacent, contiguous or adjoining the Land; and

(d) all and singular, the benefits, privileges, easements, tenements, hereditaments, and appurtenances to the Land, or in anywise appertaining to the Land, and any and all right, title, and interest of Grantor in and to adjacent roads, and rights-of-way.

TO HAVE AND TO HOLD the Property, together with all and singular any other rights and appurtenances thereto in anywise belonging unto Grantee, and its successors and assigns, FOREVER; and Grantor does hereby bind itself and its successors and assigns to WARRANT AND FOREVER DEFEND, all and singular, the Property, subject to the permitted encumbrances set forth in Exhibit "B" attached hereto and made a part hereof for all purposes ("**Permitted Encumbrances**") and the Indebtedness (as defined below), unto Grantee, and its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof by, through, or under Grantor, but not otherwise.

BUT IT IS HEREBY EXPRESSLY ACKNOWLEDGED AND AGREED that:

A. This Special Warranty Deed, and the conveyances being made hereby, are being executed, delivered and accepted and shall be interpreted and construed as an absolute conveyance to Grantee of all of the right, title and interest of Grantor in and to the Property, including specifically but without limitation, any equity or rights of redemption of Grantor therein or thereto; the conveyances being made hereby are not intended as a mortgage, trust conveyance, deed of

trust, or security instrument of any kind whatsoever; and Grantor shall have no further interest (including rights of redemption) or claims in and to the Property or to the rents, issues, proceeds and profits that may be derived thereof, of any kind whatsoever;

B. Notwithstanding the above provisions hereof, all of the liens and security interests (hereinafter collectively called the "**Liens**") that evidence or secure the payment of the indebtedness owned and held by Grantee, said indebtedness being described in Exhibit "C" attached hereto (the "**Indebtedness**"), including, without implied limitation, (i) the liens and security interests described in Exhibit C attached hereto, and (ii) other liens and security interests related to the foregoing, are NOT RELEASED or RELINQUISHED in any manner or respect whatsoever, which Liens shall remain valid and continuous and in full force and effect, until the earlier to occur of (a) the release of the Liens by written instrument (the "**Release**") executed by Grantee, or its successors and assigns, and recorded in the applicable real estate records, which Release may be made as, if and when Grantee, or its successors and assigns, shall determine in the exercise of its sole discretion; or (b) the expiration of one hundred eighty (180) days following the date hereof if, during such one hundred eighty (180) days, Grantee has not initiated any foreclosure proceedings related to such Liens or Indebtedness; provided, if such one hundred eighty (180) day period ends prior to the expiration of the thirty (30) day contractual cure period agreed upon by Grantee and Grantor for the benefit of Grantor, then the one hundred eighty (180) day period will be extended until sixty (60) days after the expiration of such cure period.

C. Neither Grantor nor Grantee intend that there be, and there shall not in any event be, a merger of any of the Liens with the title or other interest of Grantee by virtue of this conveyance and the parties expressly provide that each such interest in the Liens on one hand and title on the other be, and remain at all times, SEPARATE and DISTINCT;

D. The title and other interest of Grantee in the Property acquired under this Special Warranty Deed will not merge with the liens and security interests of Grantee in the Property under the Liens and for purposes of priority as between (i) intervening or inferior liens, claims or encumbrances on or against the Property, and (ii) the Liens, any and all rights of Grantee to exercise its remedies of foreclosure by private power of sale pursuant to nonjudicial foreclosure or by judicial foreclosure of any of the Liens or any other remedies to enforce the Liens are expressly preserved hereby and for purposes of limitations and any other applicable time bar defenses, the same are hereby expressly extended;

E. The priority of the Liens is intended to be and shall remain in full force and effect and nothing herein or in any instruments executed in connection herewith shall be construed to subordinate the priority of the Liens to any other liens or encumbrances whatsoever;

F. If the conveyance of the Property from Grantor to Grantee is voided, avoided, or set aside for any reason whatsoever, then (i) if the Liens shall have been previously released in whole or in part, the same shall be automatically revived and reinstated; (ii) Grantee shall have the right to foreclose the Liens and take such other action as is permitted thereby or pursuant to the other documents evidencing the Liens to enforce the Liens; and (iii) all costs incurred by Grantee in connection with this Special Warranty Deed and any other cost of enforcement of the Liens shall be deemed a part of the Indebtedness secured by the Liens and shall be due and payable by Grantor upon demand of Grantee.

G. Grantor hereby acknowledges that, after the recording of conveyance hereunder, among other changes of ownership named therein, Grantor shall have no further interest or claim with respect to the Property including, without limitation, the rights to the following:

1. the rights to manage the Property;

2. the right to occupy or use the Property in any manner;

3. the right to receive any revenues from the Property;

4. the right to receive any proceeds from the sale, transfer, financing or operation of the Property; or

5. the right to repurchase, redeem or regain any right, title or interest in the Property or any portion thereof.

H. Grantor is duly authorized to execute and deliver this Special Warranty Deed and any and all other related documents and instruments, and to consummate the transactions and perform the obligations contemplated hereby and thereby.

I. This Special Warranty Deed constitutes the legal, valid and binding obligation of Grantor enforceable in accordance with its terms, except as may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws or by legal or equitable principles relating to or limiting rights of creditors generally. Neither the execution and delivery of this Special Warranty Deed, nor the consummation of the transactions contemplated hereby will (a) violate any judgment, order, ruling, injunction, decree or award of any court, administrative agency or governmental body against, or binding upon, Grantor; or (b) to Grantor's knowledge, constitute a violation by Grantor of any law or regulation of any jurisdiction as such law or regulation relates to or affects Grantor or its properties or businesses.

J. All representations, warranties, covenants and agreements of the parties made in this Special Warranty Deed shall survive the execution and delivery hereof.

K. Grantor agrees not to take any action, or cause any action to be taken, to attempt to modify, rescind, revoke, avoid or otherwise invalidate this Special Warranty Deed or the transfer of any property or other consideration received by Grantee hereunder or provided for herein. It is expressly agreed and understood and the parties intend that all payments, property and other consideration paid or conveyed to Grantee by Grantor hereunder shall be final and forever.

L. This Special Warranty Deed and all documents and instruments to be executed and delivered in connection herewith and therewith and all information furnished to Grantee, is made and furnished in good faith, for value and valuable consideration, and have not been made under or induced by any fraud, duress, or undue influence exercised by Grantee or any other person.

M. If any provision of this Special Warranty Deed is held to be illegal, invalid, or unenforceable, such provision shall be fully severed from this Special Warranty Deed. This Special Warranty Deed shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part hereof, and the remaining provisions shall remain in full

force and effect and shall not be affected by the illegal, invalid, or unenforceable provision or by its severance from this Special Warranty Deed. Furthermore, in lieu of each such illegal, invalid, or unenforceable provision, there shall be added automatically, as a part of this Special Warranty Deed, a provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible and be legal, valid, and enforceable.

N. This Special Warranty Deed shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, successors, and assigns.

[Signatures on following pages.]

202019524 07/02/2020 10:55:20 AM Page 5 of 14

EXECUTED as of the 2nd day of July, 2020.

**GRANTOR:**

BM318, LLC,
a Texas limited liability company

By: TRWF, LLC
a Texas limited liability company
its managing member

By: ______________________
Tim Barton, President

STATE OF TEXAS §
§
COUNTY OF DALLAS §

The foregoing instrument was ACKNOWLEDGED before me this 18 day of February, 2020, by Tim Barton, President of TRWF, LLC, a Texas limited liability company, the managing member of BM318, LLC, a Texas limited liability company, on behalf of said limited liability company.

[S E A L]

______________________
Notary Public, State of Texas

My Commission Expires:
09/24/2022

Bella D Khusal
Printed Name of Notary Public

Notary No.: 131734480

Bella D Khusal
My Commission Expires
09/24/2022
ID No. 131734480
NOTARY PUBLIC STATE OF TEXAS

Attachments:

Exhibit A - Land
Exhibit B - Permitted Encumbrances
Exhibit C - Liens and Indebtedness

AFTER RECORDING RETURN TO:
The Dixon Water Foundation f/k/a/ The Dixon Foundation
Attention: Robert Potts
P. O. Box 177
Marfa, Texas 79843

# EXHIBIT A

The Land

**TRACT 1**

BEING 2055.70 acres of land situated in the JAMES BRADLEY SURVEY, ABSTRACT No. 119, JAMES BRADLEY SURVEY, ABSTRACT No. 120, JOHN D. BAY SURVEY, ABSTRACT NO. 195, J.H. REAN SURVEY, ABSTRACT No. 1106, T.J. BENDERMAN SURVEY, ABSTRACT No. 2519, I. & G.N. RR. CO., SECTION NO. 3, BLOCK 1, ABSTRACT NO. 1799 and the PETER B. HOLDER SURVEY, ABSTRACT No. 614, Parker County, Texas, being a portion of those certain tracts of land described in deed as Parcel No. 1 and Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 2055.70 acres being more particularly described as follows:

BEGINNING at the most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (Right-of-Way varies), from which a 2" steel fence corner post found in the south line of said Bear Creek Road bears S 01°12'56" E, a distance of 40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6918277.984 and EAST: 2233063.538, for reference;

THENCE along Bear Creek Road, as follows:
S 67°36'03" E, a distance of 3869.57 feet to the most northerly northeast corner of said Parcel No. 2;
S 02°12'27" E, a distance of 1472.57 feet to a point;
S 55°59'27" E, a distance of 1165.45 feet to a point;
S 71°46'27" E, a distance of 801.00 feet to a point;
S 70°43'19" E, a distance of 221.91 feet to a point;
S 70°45'54 E, a distance of 1742.88 feet to a point for the most northerly northeast corner of the herein described 2055.70 acre tract;

THENCE S 24°06'27" W, leaving said Bear Creek Road, passing the northwest corner of that certain tract of land described in deed to Kevin Reeves, recorded in Instrument Number 2017-02400, Official Public Records, Parker County, Texas, and continuing along the most west line of said Reeves tract, in all, a distance of 1186.42 feet to a point from which a 5/8" iron rod found bears N 60°42'50" W, a distance of 0.42 feet, for reference;

THENCE along the southwesterly lines of said Reeves tract as follows:

S 60°42'50" E, a distance of 230.94 feet to a 5/8" iron rod found;
S 14°49'14" E, a distance of 744.61 feet to a 5/8" iron rod found;
N 72°21'34" E, a distance of 390.26 feet to a point from which a 3" steel pipe fence post bears N 06°43'26" W, a distance of 1.25 feet for reference;
S 00°10'37" W, a distance of 764.25 feet to a 1/2" iron rod found at the southwest corner of said Reeves tract, being in the north line of a Seventy (70) foot wide Transmission Easement and Right-of-Way recorded in Book 2684, Page 531 and Book 2734, Page 1161, Official Public Records, Parker County, Texas;

THENCE along the south line of said Reeves tract and the north line of said Transmission Easement and Right-of-Way, as follows:

N 89°17'27" E, a distance of 766.57 feet to a point;
S 87°58'20" E, a distance of 852.96 feet to a point;
S 87°37'59" E, a distance of 500.58 feet to a point in the west occupied line of said Bear Creek Road, at the southeast corner of said Reeves tract;

THENCE S 20°01'40" E, along the west occupied line of said Bear Creek Road, a distance of 75.70 feet to a 5/8" capped iron rod found stamped "Brooks Baker", being in the most easterly south line of said Parcel No. 2;

THENCE along the most easterly south line of said Parcel No. 2, as follows:

N 87°38'33" W, a distance of 529.23 feet to a point;
N 87°58'55" W, a distance of 851.08 feet to a point;
S 89°16'51" W, a distance of 765.97 feet to a point at the most southerly southwest corner of said Parcel No. 2 and being in the east line of said Parcel No. 1;

THENCE S 03°54'04" E, along the east line of said Parcel No. 1 and along the called east line of said BENDERMAN SURVEY, a distance of 10017.79 feet to a 2" pipe in concrete at the southeast corner of said Parcel No. 1 and being the called southeast corner of said BENDERMAN SURVEY;

THENCE S 89°26'10" W, along the south line of said Parcel No. 1 and along the called south line of said BENDERMAN SURVEY, a distance of 1606.98 feet to a 5/8" capped iron rod found stamped "Brooks Baker";

THENCE S 89°48'07" W, continuing along the south line of said Parcel No. 1 and continuing along the called south line of said BENDERMAN SURVEY, a distance of 3711.27 feet to a 2" pipe in concrete found at the most southerly southwest corner of said Parcel No. 1;

THENCE N 01°35'25" W, along the most southerly west line of said Parcel No. 1, a distance of 1216.91 feet to a 2" pipe in concrete found at an interior corner of said Parcel No. 1 and being in the called south line of said J.H. REAN SURVEY;

THENCE N 89°19'15" W, along the most westerly south line of said Parcel No. 1 and along the called south line of said J.H. REAN SURVEY, a distance of 660.00 feet to a 2" pipe in concrete found at the most westerly southwest corner of said Parcel No. 1 and being the called southwest corner of said J.H. REAN SURVEY;

THENCE along the west line of said Parcel No. 1 and along the called west line of said J.H. REAN SURVEY, as follows:

N 00°01'41" W, a distance of 2676.89 feet to a 5/8" iron rod found;
N 00°04'03" W, a distance of 1981.74 feet to a 5/8" iron rod found;

N 00°10'29" E, a distance of 1520.50 feet to a 5/8" iron rod found;
N 00°04'43" W, a distance of 1097.99 feet to a 5/8" iron rod found;
N 00°02'24" W, a distance of 901.55 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";
N 00°25'07" W, a distance of 984.78 feet to a 2" pipe in concrete found at an interior corner of said Parcel No. 1;

THENCE N 89°37'52" W along the most northerly south line of said Parcel No. 1, a distance of 2013.88 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084, at the most westerly southwest corner of said Parcel No. 1;

THENCE N 00°45'08" W, along the most westerly west line of said Parcel No. 1, a distance of 1196.14 feet to a 5/8" rod found;

THENCE N 01°17'22" W, continuing along the most westerly west line of said Parcel No. 1, a distance of 1964.12 to a 5/8" capped iron rod found stamped "Brooks Baker" at the northwest corner of said Parcel No. 1 and being the southwest corner of said Parcel No. 2, from which a 5/8" capped iron rod found (not legible) bears S 88°46'12" E, a distance of 728.31 feet for reference;

THENCE N 01°17'05" W, along the west line of said Parcel 2, a distance of 3591.76 feet to the POINT OF BEGINNING and containing 2055.70 acres, more or less.

**SAVE AND EXCEPT** that certain 381.66 acres tract of land as conveyed to GH Lumar JV in Warranty Deed, filed 09/13/2019, recorded in cc#2019-24134, Real Property Records, Parker County, Texas.

**SAVE AND EXCEPT** that certain 23.95 acres of land, situated in Parker County, Texas, out of the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 119, the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 120, the JOHN D. BAY SURVEY, ABSTRACT NUMBER 195 and the J. H. REAN SURVEY, ABSTRACT NUMBER 1106, and being part of a 2055.70 acre tract of land that is described in a deed from The Dixon Water Foundation to BM 318, LLC, dated November 26, 2018, recorded in Instrument No. 201829926, Official Public Records of Parker County, Texas and further described as follows:

BEGINNING at a railroad spike set in Bear Creek Road, and being an internal corner of said 2055.70 acre tract, and being in the East line of a 381.66 acres tract of land that is described in a deed from BM 318, LLC to GH Lumar JV, dated September 11, 2019, recorded in Instrument No. 201924134, Official Public Records of Parker County, Texas, for the Northwest corner of this tract;

THENCE South 55 degrees 59 minutes 27 seconds East, 840.04 feet, along Bear Creek Road, with the North line of said 2055.70 acre tract, to a railroad spike set at the calculated Northeast corner of a 60 foot wide access easement that is described in deed to GH Lumar JV, for the Northeast corner of this tract;

THENCE South 33 degrees 46 minutes 16 seconds West, 811.29 feet, to a 1/2 inch iron rod set, South 09 degrees 44 minutes 07 seconds West, 103.49 feet to a 1/2 inch iron rod set, South 32 degrees 59 minutes 06 seconds East 349.92 feet, to a 1/2 inch iron rod set, South 09 degrees 47 minutes 14 seconds East, 797.08 feet, to a 1/2 inch iron rod set, and South 00 degrees 31 minutes 28 seconds East, 655.53 feet, to a 1/2 inch iron rod set, for the Southeast corner of this tract;

THENCE North 80 degrees 56 minutes 20 seconds West, 369.25 feet, to a 1/2 inch iron rod set in the East line of said 381.66 acre tract, for the Southwest corner of this tract;

THENCE with the East line of said 381.66 acre tract, as follows North 02 degrees 12 minutes 27 seconds West, 1405.48 feet, to a 1/2 inch iron rod set, North 69 degrees 20 minutes 36 seconds West, 89.55 feet, to a 1/2 inch iron rod set, and North 02 degrees 12 minutes 27 seconds West, 1487.68 feet, to the Point of Beginning and containing 23.95 acres of land.

## SAVE AND EXCEPT

**BEING 118.34 acres situated in the JAMES BRADLEY SURVEY, ABSTRACT NO. 120, Parker County, Texas, being a portion of that certain tract of land described in deed as Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 118.34 acres being more particularly described as follows:**

**BEGINNING at the most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (Right-of-Way varies), from which a 2" steel**

**fence corner post found in the south line of said Bear Creek Road bears S 01°12'56" E, a distance of 40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6918277.984 and EAST: 2233063.538, for reference;**

**THENCE S 67°36'03" E, along the approximate centerline of said Bear Creek Road and along the most north line of said Parcel No. 2, a distance of 2856.45 feet to a point for the northeast corner of the herein described 118.34 acre tract;**

**THENCE S 24°50'49" W, leaving the approximate centerline of said Bear Creek Road, and being along the west line of a Fifty (50) foot wide Right-of-Way Agreement to ONEOK Arbuckle Pipeline, L.L.C., recorded in Book 2651, Page 405, Official Public Records, Parker County, Texas, at a distance of 23.85 feet, passing a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084", and continuing, along the west line of said Fifty (50) foot wide Right-of-Way Agreement, in all, a distance of 205.78 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";**

**THENCE S 04°46'43" W, continuing along the west line of said Fifty (50) foot wide Right-of-Way Agreement, a distance of 1684.81 feet to a point in the approximate centerline of Bear Creek for the southeast corner of the herein described 118.34 acre tract;**

**THENCE along the approximate centerline of said Bear Creek, as follows:**

**N 61°36'37" W, a distance of 807.44 feet to a point;**

202019524 07/02/2020 10:55:20 AM Page 10 of 14

N 71°14'04" W, a distance of 217.93 feet to a point;

N 85°16'07" W, a distance of 121.44 feet to a point;

S 77°05'53" W, a distance of 141.01 feet to a point;

S 82°12'59" W a distance of 239.64 feet to a point;

S 49°32'26" W, a distance of 208.64 feet to a point;

N 86°11'59" W, a distance of 114.28 feet to a point;

N 53°45'49" W a distance of 175.97 feet to a point;

N 47°13'56" W, a distance of 200.18 feet to a point;

N 80°08'35" W, a distance of 392.40 feet to a point in the west line of said Parcel No. 2, for the southwest corner of the herein described 118.34 acre tract, from which a 5/8" capped iron rod found at the southwest corner of said Parcel No. 2 bears S 01°17'05" E, a distance of 1216.41 feet, for reference;

THENCE N 01°17'05" W, along the west line of said Parcel No. 2, a distance of 2375.35 to the POINT OF BEGINNING and containing 118.34 acres of land, more or less.

---

**TRACT 2**

TOGETHER WITH ACCESS EASEMENT CREATED BY THAT CERTAIN ACCESS EASEMENT, FILED 02/06/2020, RECORDED IN CC#202003138, REAL PROPERTY RECORDS, PARKER COUNTY, TEXAS.

**EXHIBIT B**

Permitted Encumbrances

1. Easement granted by Aleene, Princess of Liechtenstein to James P. Dunigan, filed 12/08/1976, recorded in Volume 657, Page 418, Real Property Records, Parker County, Texas.

2. Easement granted by Jane McFarland Dixon to James P. Dunigan, Inc., filed 12/08/1976, recorded in Volume 657, Page 421, Real Property Records, Parker County, Texas.

3. Easement granted by Aleene McFarland Liechtenstein, et al to James P. Dunigan, filed 12/08/1976, recorded in Volume 657, Page 437, Real Property Records, Parker County, Texas.

4. Easement granted by Aleene McFarland Liechtenstein to Southwestern Gas Pipeline, Inc., filed 05/03/1978, recorded in Volume 723, Page 630, Real Property Records, Parker County, Texas.

5. Easement granted by R. McFarland Dixon to Tri-County Electric Cooperative, Inc., filed 01/26/1997, recorded in Volume 1720, Page 479, Real Property Records, Parker County, Texas.

6. Easement granted by R. McFarland Dixon to Devon Gas Services, LP, filed 04/04/2003, recorded in Volume 2094, Page 1408, Real Property Records, Parker County, Texas.

7. Easement granted by R. McFarland Dixon to Southwestern Gas Pipeline, Inc., filed 11/22/2004, recorded in Volume 2276, Page 466, Real Property Records, Parker County, Texas.

8. Easement granted by R. McFarland Dixon to Southwestern Gas Pipeline, Inc., filed 02/13/2005, recorded in Volume 2299, Page 938, Real Property Records, Parker County, Texas.

9. Easement granted by Estate of R. McFarland Dixon to Eagle Mountain Pipeline Company, LP, filed 04/21/2005, recorded in Volume 2319, Page 1469, Real Property Records, Parker County, Texas.

10. Easement granted by Estate of R.M. Dixon to Southwestern Gas Pipeline, Inc., filed 05/18/2005, recorded in Volume 2328, Page 1493, Real Property Records, Parker County, Texas.

11. Easement granted by The Dixon Foundation to Southwestern Gas Pipeline, Inc., filed 07/19/2006, recorded in Volume 2454, Page 601, Real Property Records, Parker County, Texas.

12. Easement granted by The Dixon Foundation to Southwestern Gas Pipeline, Inc., filed 03/13/2007, recorded in Volume 2519, Page 240, Real Property Records, Parker County, Texas.

202019524 07/02/2020 10:55:20 AM Page 12 of 14

13. Easement granted by The Dixon Foundation to Southwestern Gas Pipeline, Inc., filed 03/13/2007, recorded in Volume 2519, Page 246, Real Property Records, Parker County, Texas.

14. Easement granted by The Dixon Water Foundation to Tri-County Electric Cooperative, Inc., filed 05/19/2008, recorded in Volume 2635, Page 862, Real Property Records, Parker County, Texas.

15. Easement granted by The Dixon Water Foundation to Oneok Arbuckle Pipeline, LLC, filed 07/28/2008, recorded in Volume 2651, Page 405, Real Property Records, Parker County, Texas.

16. Easement rights as awarded to Brazos Electric Power Cooperative, Inc., in Cause #CIV 08-0739, certified copy filed 01/07/2009, recorded in Volume 2684, Page 531, Real Property Records, Parker County, Texas.

    Modification of Easement filed 08/25/2009, recorded in Volume 2734, Page 1161, Real Property Records, Parker County, Texas.

17. Easement granted by The Dixon Water Foundation to Oneok Arbuckle Pipeline, LLC, filed 04/06/2009, recorded in Volume 2703, Page 1266, Real Property Records, Parker County, Texas.

18. Easement granted by The Dixon Water Foundation to Oneok Arbuckle Pipeline, LLC, filed 04/06/2009, recorded in Volume 2703, Page 1275, Real Property Records, Parker County, Texas.

19. Easement granted by Dixon Water Foundation to Crosstex North Texas Gathering, LP, filed 02/11/2011, recorded in Volume 2829, Page 14, Real Property Records, Parker County, Texas.

20. Easement granted by The Dixon Water Foundation to Targa NGL Pipeline Company, LLC, filed 04/16/2018, recorded in cc#2018-8660, Real Property Records, Parker County, Texas.

21. Easement granted by The Dixon Water Foundation to Targa NGL Pipeline Company, LLC, filed 04/16/2018, recorded in cc#2018-8659, Real Property Records, Parker County, Texas.

    Amendment, filed 01/22/2019, recorded in cc#2019-1501, Real Property Records, Parker County, Texas.

22. Overhead electric lines and power poles along the Northerly portion of property, as shown on survey by Charles F. Stark, RPLS #5084, dated 11/13/2018.

23. Easement rights as granted to GH Lumar JV, in Warranty Deed, filed 09/13/2019, recorded in cc#2019-24134, Real Property Records, Parker County, Texas.

# EXHIBIT C

Liens and Indebtedness

Promissory Note (the "**Note**"), dated November 26, 2018, executed by, BM318, LLC, a Texas limited liability company payable to the order of THE DIXON WATER FOUNDATION F/K/A THE DIXON FOUNDATION, a Texas non-profit corporation in the original principal amount of $32,946,900.00, which Note is secured by that certain Deed of Trust, Security Agreement and Financing Statement dated as of November 26, 2018 and filed under Document Number 201829927 with the Official Public Records of Parker County, Texas of which $27,500,658.00 in principal and accrued interest is owed as of February 17, 2020, plus any and all costs and expenses of Lender as of the date of such payment.

# FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

Lila Deakle

**202019524**
**07/02/2020 10:55:20 AM**
**Fee: $74.00**
**Lila Deakle, County Clerk**
**Parker County, Texas**
**DEED**