UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | . | Case No. 20-42789-mxm11 |
| | . | |
| BM318, LLC | . | Eldon B. Mahon U.S. Courthouse |
| | . | 501 W. 10th St. |
| | . | Fort Worth, TX 76102-3643 |
| | . | |
| | . | May 22, 2024 |
| | . | 1:00 p.m. |
| . . . . . . . . . . . . . . . | . | (In Court, Video, and Phone) |

RULING
BEFORE THE HONORABLE MARK X. MULLIN
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

| | |
|---|---|
| For Court Appointed Receiver: | ALAN CARRILLO, ESQ.<br>Brown Fox<br>8111 Preston Road, Ste. 300<br>Dallas, Texas 75225 |
| For Dixon Water Foundation: | DEBORAH M. PERRY, ESQ.<br>Munsch Hardt Kopf & Harr, P.C.<br>3800 Lincoln Plaza<br>500 North Akard Street<br>Dallas, Texas 75201-6659 |
| For Lumar Land & Castle: | JOSHUA L. SHEPHERD, ESQ.<br>Quilling, Selander, Lownds, Winslett & Moser, PC<br>2001 Bryan Street, Ste. 1800<br>Dallas, Texas 75201 |
| | EMILY CHOU, ESQ.<br>ForsheyProstok, LLP<br>777 Main Street, Ste. 1550<br>Fort Worth, Texas 76102 |

APPEARANCES (CONT.):

| | |
|---|---|
| For Joyce W. Lindauer Attorney, PLLC: | JOYCE W. LINDAUER, ESQ.<br>Joyce W. Lindauer Attorney, PLLC<br>1412 Main Street, Ste. 500<br>Dallas, Texas 75202 |
| Transcribed by: | GILLIAN LAWRENCE, CER-255, CET-255<br>Lawrence Court Transcription & Video<br>P.O. Box 530790<br>DeBary, FL 32753 |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

FORT WORTH, TEXAS - MAY 22, 2024 - 1:00 P.M.

THE COURT: Good afternoon, everyone. This is Judge Mullin. We're here this afternoon for our one o'clock docket. And this afternoon all we have is the BM318 LLC matter, and the only purpose for the hearing today is for the Court to issue its oral ruling on the two motions found at Dockets 147 and 149.

There's no -- noone is in the courtroom so -- other than my staff. So if you'd like to make an appearance as counsel of record, we can do that at this time. If your video is on, I'll recognize you. There we go.

And I see we have Mr. Carrillo. Good afternoon, to you, sir.

MR. CARRILLO: Good afternoon, sir. Alan Carrillo for -- of Brown Fox on behalf of the court appointed receiver, Courtney Thomas for the debtor.

THE COURT: All right. Thank you, sir.

Ms. Perry, good afternoon.

MS. PERRY: Good afternoon, Your Honor. Deborah Perry on behalf of the Dixon Water Foundation.

THE COURT: All right.

Mr. Shepherd, good afternoon.

MR. SHEPHERD: Thank you, Your Honor. Webex trolls this morning, so I had to dial in. Josh Shepherd on behalf of Lumar Land and Cattle.

THE COURT: All right. You're coming in loud and clear. Thank you.

Ms. Lindauer, good afternoon. And you're on mute.

MS. LINDAUER: Is that picking up?

THE COURT: There you go. Now we hear you.

MS. LINDAUER: Can you hear me now?

THE COURT: Yes.

MS. LINDAUER: And Joyce Lindauer, I'm here on behalf of my firm. Thank you.

THE COURT: All right.

Any other counsel wish to make an appearance?

MS. CHOU: Your Honor, this Emily Chou of ForsheyProstok on behalf of Lumar. And I apologize, I just dialed in on the telephone.

THE COURT: No worries. All right. Thank you, Ms. Cho. And good afternoon to you as well.

Any other counsel wish to make an appearance?

All right. With that then, the Court will get --

MR. BARTON: Excuse me, Your Honor. This is Tim Barton. I'd just like to be on the record that I'm here as well.

THE COURT: All right. Good afternoon. Good afternoon to you, sir, and thank you for making your appearance. The record will reflect that you are in presence as well. Thank you for that appearance.

Any other -- any other party or counsel wishing to make an appearance?

All right. With that then, the Court will get right to the Court's ruling.

This Oral Ruling shall constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as incorporated by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.

Before the Court are the following motions: Number 1, the Joint Motion of BM318, LLC and the Dixon Water Foundation for Approval of Compromise and Settlement of Adversary Proceeding No. 21-04051. And that is filed at ECF No. 147. And I'll refer to it as the "Dixon Motion."

And 2, the Joint Motion of BM318 LLC and Lumar Land & Cattle, LLC for Approval of Compromise and Settlement of Adversary Proceeding No. 21-04051. And that can be found and is filed at ECF No. 149. I'll refer to that motion as the "Lumar Motion." And in this oral ruling, I'll refer to both the Dixon Motion and Lumar Motions together as the "Motions."

In addition to the Motions, the Court also reviewed, analyzed, and carefully considered the objection to filed to each of the motions by Joyce W. Lindauer, PLLC, filed at ECF No. 153, which I'll refer to as the "Lindauer Objection." And the Court also considered the oral objection raised during the hearing on behalf of Mr. Timothy L. Barton, which I'll refer to

as the "Barton Objection."

Finally, the Court reviewed, analyzed, and carefully considered the testimony of Mr. Courtney C. Thomas, Receiver for BM318, LLC; the exhibits submitted into evidence; and the arguments of counsel for each of the parties.

And after due deliberation, the Court finds and concludes as follows: The Court has subject matter jurisdiction to consider the Motions pursuant to 28 U.S.C. §§ 157and 1334. The Motions constitute core proceedings over which the Court has both statutory and constitutional authority to enter final orders pursuant to 28 U.S.C. §§ 157(b)(2)(A),(B),(F),(H), and (O).

Notice of the Motions and the Hearing on the Motions was proper, timely, adequate, and sufficient. A reasonable opportunity to conduct discovery, object, and to be heard was afforded to all creditors and parties-in-interest in this case.

Bankruptcy Rule 9019 governs the proposed compromise and settlement agreements south in the Motions.

Approval of a proposed compromise and settlement should be given only if the settlement is "fair and equitable and in the best interest of the estate." That's from the Official Committee of Unsecured Creditors vs. Cajun Elec. Power Coop., Inc. found at 119 F.3d 349, page 355 (5th Cr. 1997).

When considering whether a compromise meets this standard, the Court must weigh the "terms of the compromise

with the likely rewards of litigation." See Rivercity v. Herpel, which is In re Jackson Brewing Co, 624 F.2d 599, at page 502 [sic]. That's a 5th Cir. in 1980.

Even though the settlement need not result in the best possible outcome for the estate, it must not "fall beneath the lowest point in the range of reasonableness." And that can be found at In re Idearc Inc., 423 B.R. 138, page 182, which is a District Court opinion from the Northern District of Texas, 2009.

When reviewing settlements and compromises, courts in the 5th Circuit consider the following factors:

i. the probability of success in the litigation, with due consideration for the uncertainty in fact and law,

ii. the complexity and likely duration of the litigation and any attendant expenses, inconvenience, and delay,

iii. the interest of creditors with proper deference to their reasonable views,

iv. the extent to which the settlement is truly the product of arm's length negotiations, and

v. all other factors bearing on the wisdom of the compromise. See Canjun Elect., 119 F.3d at pages 355-56, as well as Official Committee of Unsecured Creditors v. Moeller (In re Age Refining, Inc.), 801 F.3d 530, page 540. And that's a 5th Circuit decision out of 2015.

It is not necessary to conduct a mini-trial to determine the probable outcome of claims waived, released, or compromised in the settlement. The Court need only apprise itself of the relevant facts and law so that the Court can make an informed and intelligent decision. See La Salle Nat'l Bank v. Holland (In re American Reserve Corp.), 841 F.2d 159, page 163. And that is a 7th Circuit case in 1987.

Here, Mr. Thomas, the Receiver, and Dixon Water Foundation, and Lumar Land &Cattle, LLC bear the burden of establishing that the proposed -- that the balance of the above factors Courts consider and support -- to support a finding that the proposed compromises are fair and reasonable, and in the best interest of the estate. See In re Roqumore, 393 B.R. 474, page 480, a Bankruptcy Court decision out of the Southern District of Texas, 2008.

First, the Court finds and concludes that the Receiver, Mr. Thomas, was credible and largely uncontroverted. Mr. Thomas has been appointed to serve as a Federal Court Appointed Receiver in two unrelated matters: (i) the SEC v. Barton action currently pending before Judge Starr in the Northern District of Texas, which includes BM318, LLC, the Debtor currently before this Court; and (ii) Mr. Thomas also serves as a Federal Court Appointed Receiver in a second SEC actions that is not related to this case.

In his role as a Federal Court Appointed Receiver,

Mr. Thomas testified that he has negotiated and entered into dozens of compromise and settlement agreements and that he is very familiar with the elements he must satisfy to obtain approval of such compromise and settlement agreements.

Mr. Thomas testified further that he, with the assistance and in consultation with his professionals, personally performed sufficient due diligence in the case to become familiar with BM318, LLC’s financial matters, relevant affairs, and more specifically, the Debtor’s disputes with Dixon and Lumar.

Mr. Thomas testified further that he analyzed the Debtor’s potential claims and causes of actions against Dixon and Lumar as well as their alleged defenses to such claims. Mr. Thomas also considered the likelihood of success, if any, the Debtor might obtain in prosecuting through litigation the Debtor’s claims against Dixon and Lumar.

Mr. Thomas testified further that he also considered the complexity and likely direction of litigation against Dixon and Lumar and any attendant expense, inconvenience, and delay in prosecuting the Debtor’s claims against Dixon and Lumar.

Finally, Mr. Thomas testified that, based on his analysis of each of the abo e factors, he has concluded, in his business judgment that the proposed settlement agreements with Dixon and Lumar are in the best of interest of the BM318, LLC bankruptcy estate.

The Court finds and concludes that Mr. Thomas's testimony in explaining his analysis and resulting conclusion to enter into the proposed settlement agreements with Dixon and Lumar was clear, concise, and credible.

In support of Mr. Thomas's testimony, both Dixon and Lumar offered several exhibits into evidence to support their contentions that they believe both Dixon and Lumar would be successful in defending against the Debtor's alleged claims and causes of action.

For example, but not by way of limitation, both Dixon and Lumar contend that the Debtor's claims for preferences would fail because BM318, LLC was solvent at the time of the alleged transfers to Dixon and Lumar. In support of their contention, Dixon and Lumar point to the Debtor's own admissions, some of which were made under penalty of perjury, included in the following exhibits: Dixon Exhibits G, H, I, J, K, and M, as well as Lumar Exhibits 5, 6, 7, 10, 11, and 12.

Neither Ms. Lindauer nor Mr. Barton called any witnesses or offered into evidence any exhibits to controvert the contentions made by Dixon and Lumar in these Exhibits.

Additionally, Dixon and Lumar contend that the Debtor holds, at best, only bare legal title to the underlying real property that is the subject of the dispute between the Debtor and Dixon. And, in turn, the portion of the real property acquired by Lumar from Dixon. Therefore, Dixon and Lumar

contend that the Debtor's claims against them fail under applicable law, and to that they point to Dixon Exhibit Q and the authorities cited therein to support their contentions. Additionally, Dixon and Lumar also point to the following exhibits: Dixon Exhibits D, E, and F, as well as Lumar Exhibits 4 and 16 as further support for their contention on this point.

Again, neither Ms. LIndauer nor Mr. Barton called any witnesses or offered any exhibits into evidence, or filed any briefs citing to any case law controverting the contentions made by Dixon and Lumar on those points.

Finally, Dixon and Lumar contend that they have other substantial legal and factual arguments in opposition to the Debtor's claims against them, again, as detailed in Dixon Exhibit Q. And, finally, again, neither Ms. Lindauer nor Mr. Barton called any witnesses, offered into -- exhibits in -- offered any exhibits into evidence, or filed any pleading controverting the contentions made by the Receiver, Mr. Thomas, Dixon, and Lumar.

Both Ms. Lindauer and Mr. Barton object to the Motions and contend that the Motions should be denied. In contesting the Motions, Ms. Lindauer first argued that Mr. Thomas did not reach out to her or her office to discuss the disputes with Dixon and Lumar; therefore, he did not conduct sufficient due diligence to arrive at his business judgment conclusions.

In response, Mr. Thomas testified, credibly, that he did reach out to Mr. Barton and had a general conversation with Mr. Barton and primarily with his counsel about the entities that are the subject of the Receivership, but neither Mr. Barton nor his attorneys provided him with useful information specifically related to BM318, LLC.

Additionally, Mr. Thomas testified, credibly, that he did no believe it was necessary for him to reach out to Ms. Lindauer or her office because he made his own independent investigation of the claims asserted by the Debtor against Dixon and Lumar by reviewing all the pleadings and discovery that had taken place prior to his appointment as Receiver.

Further Mr. Thomas testified, credibly, that in his experience as a Receiver, prior counsel in litigation many times have an inflated view of the merits of claims and lawsuits. And, typically, he believes, it is not in the best interest of the Receivership for him as Receiver to expend funds interviewing prior counsel.

The Court notes further that there was no evidence in the rec ord to suggest that Ms. Lindauer ever attempted to reach out to Mr. Thomas about the disputes the debtor had with Dixon and Lumar. Further, Ms. Lindauer offered no credible evidence that she or her office had specific information that could have been provided to Mr. Thomas that would cause him to question or change his business judgment relevant to the

Motions.

The Court finds and concludes that Ms. Lindauer's and Mr. Barton's contention that Mr. Thomas failed to conduct sufficient due diligence prior to arriving at his informed business judgment conclusion, fails.

The Court further finds and concludes that the credible evidence in the record established that Mr. Thomas conducted sufficient due process -- or excuse me, conducted sufficient due diligence to arrive at his reasonable business judgment conclusions.

Next, Ms. Lindauer and Mr. Barton argue that Mr. Thomas, as Receiver, failed to attempt to sell or convey BM318, LLC's claims and causes of action against Dixon and Lumar. Therefore, the Motions must fail.

In support of their contention, both Ms. Lindauer and Mr. Barton alluded to an alleged "offer" purportedly made approximately five minutes before the start of the hearing by a third party to allegedly purchase the Debtor's claims against Dixon and Lumar for $200,000, which on its face, is $25,000 more than the proposed settlements that are the subject of the Motions.

The Court first notes that this alleged "offer" made by an alleged third party was never offered into evidence by either Ms. Lindauer or Mr. Barton. Nor did Ms. Lindauer or Mr. Barton attempt to call the third party maker of the alleged

"offer" as a witness.

Next, Mr. Thomas testified, credibly, that he -- that the alleged "offer" he received by email minutes before the start of the hearing, on its face was contingent on the third party conducting due diligence on the Debtor's alleged claims against Dixon and Lumar. Consequently, Mr. Thomas testified that the viability of the "offer" is suspect, at best, and the risk of the "offer" would be -- the risk that the "offer" would be withdrawn following the third party's completion of "due diligence" far outweighed the cost and expense of delay, especially since the "offer" was only $25,000 more consideration than the terms of the proposed settlements with Dixon and Lumar.

The Court agrees and this is not a close call -- again, the terms of the proposed settlement have been known to parties, including potentially Ms. Lindauer and certainly to Mr. Barton, since January of 2024. And the last minute arrival of the "offer" five minutes prior to the start of the hearing is dubious, at best, and is not credible. And, again, the alleged "offer" touted by Ms. Lindauer and Mr. Barton was never offered into evidence nor was the third-party maker of the "offer" called as a witness.

Finally, Mr. Thomas testified, credibly, that he believed the claims against Dixon and Lumar -- if he believed the claims against Dixon and Lumar had significant value, he,

as Receiver, would pursue those claims as opposed to seeking to sell or assign those clams.

Finally, Ms. Lindauer and Mr. Barton contend that there is no reason to proceed with the proposed settlement at this time because the Receiver should attempt to sell the real estate at issue in the disputes against Dixon and Lumar. Setting aside the many legal defenses that Dixon and Lumar have raised in opposition to the Receiver having the ability to convey title to the real estate, neither Ms. Lindauer nor Mr. Barton offered a shred of evidence to suggest that the real estate had sufficient value and could be marketed and sold in a reasonable period of time at a sale price that would payoff Dixon's liens and claims, and any potential claims of Lumar, with sufficient excess funds that would exceed the $175,000 that is being offered in the proposed settlement agreements.

Finally, Ms. Lindauer and Mr. Barton contend that there is no reason to proceed with the proposed settlements at this time because the Receiver should attempt to sell the real estate at issue in the disputes against Dixon and Lumar. Setting aside the many legal defenses that Dixon and Lumar have raised in opposition to the Receiver having the ability to convey title to the real estate, neither Ms. Lindauer nor Mr. Barton offered a shred of evidence to suggest that the real estate had sufficient value and could be marketed and sold in a reasonable period of time at a sale price that would payoff

Dixon's liens and claims (and any potential claims of Lumar) with excess funds exceeding the $175,000 that is being offered in the proposed settlement agreements.

Additionally, the Court disagrees with Ms. Lindauer's and Mr. Barton's contentions that neither Dixon nor Lumar would be harmed by a further delay to market the real estate with the mere hope that an offer from a viable purchaser might materialize.

Finally, the evidence in the record supports, and this Court so finds and concludes, that the negotiations of the proposed Settlement Agreement between Receiver Thomas, Dixon, and Lumar were at arm's length and in good faith and ultimately achieved -- and were ultimately achieved through a full day mediation process.

On this point, Ms. Lindauer and Mr. Barton argue that they were not parties to the mediation; therefore, the mediation was somehow defective. But given the Receivership and the appointment of Mr. Thomas as the Receiver for BM318, LLC, neither Ms. Lindauer nor Mr. Barton had a right to attend the mediation. Consequently, this objection by Ms. Lindauer and Mr. Barton has no merit and also fails.

In conclusion and based upon the evidentiary record before the Court, the Court finds and concludes that the Receiver's decision to seek approval to enter into the proposed compromise and settlement agreements with Dixon and Lumar

constitutes (i) the reasonable -- or the exercise of the Receiver's reasonable and sound business judgment consistent with the Debtor's fiduciary duties, (ii) is in the best interest of the BM318, LLC bankruptcy estate, its creditors and parties in interest; and (iii) is clearly within the range of reasonableness necessary for approval of a compromise agreement under Bankruptcy Rule 9019.

Therefore, based upon the Court's findings of fact and conclusions of law, the Court overrules both the Lindauer Objection at ECF No. 153 and the oral Barton Objection. And the Court grants the Dixon Motion at ECF No. 147 and the Lumar Motion at ECF No. 149.

That concludes the Court's finding -- oral findings of fact and conclusions of law regarding the Motions. The Court, however, does reserve the right to supplement these findings of fact and conclusions of law. That concludes the oral ruling today.

So with that, since the Court is granting the Motion, would one of the parties for either the Receiver Dixon or Lumar care to draft the order granting the motion? You can simply -- you don't need to recite all the findings and conclusions just made. You can certainly incorporate by reference this oral ruling.

But if any of the movants do have additional findings and conclusions that you proposed that the Court didn't

address, you may include those in your proposed order. The Court will review those, and if the Court agrees that those are additional findings that I'm willing to make, or conclusions I'm willing to make, I will, of course, include them or strike them and enter a revised form of order.

But who would like to take that laboring oar?

MR. CARRILLO: Your Honor, this Alan Carrillo for the Receiver. I'm happy to take the oar and work with Lumar and Dixon to provide a joint proposed order for you.

THE COURT: All right. Terrific. And once you do that I guess -- you can also just share it with Ms. Lindauer and counsel for Mr. Barton so that they -- they will have an opportunity to make comments. But once that's uploaded, then the Court will review it, and if the Court finds it acceptable, the Court will sign it and enter it quickly.

All right. Anything else for today?

All right. Hearing none, thank you for appearing, everyone, today. And with that the Court will be in recess.

(The proceeding concluded at 1:21 p.m.)

**C E R T I F I C A T I O N**

I, Gillian Lawrence, CER-255, CET-255, court approved transcriber, certify that the foregoing pages 1 to 18 is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.

Gillian Lawrence

___________________________________

CER-255, CET-255, COURT TRANSCRIBER    DATE: May 22, 2024