Deborah M. Perry
Texas Bar No. 24002755
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 4000
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: dperry@munsch.com

***Attorneys for The Dixon Water Foundation***

Charlene C. Koonce
Texas Bar No. 11672850
C. Alan Carrillo
Texas Bar No. 24109693
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000
Facsimile: (214) 327-5001
Email: charlene@brownfoxlaw.com
Email: alan@brownfoxlaw.com

***Attorneys for Receiver for BM318, LLC***

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BM318, LLC, | § | Case No. 20-42789-MXM |
| | § | |
| Debtor. | § | Hearing Date: May 20, 2024 |
| | § | Hearing Time: 9:30 a.m. (CT) |

**JOINT MOTION OF BM318, LLC AND THE DIXON WATER FOUNDATION FOR APPROVAL OF COMPROMISE AND SETTLEMENT OF <u>ADVERSARY PROCEEDING NO. 21-04051</u>**

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 500 W. TENTH STREET, FORT WORTH, TEXAS 76102-3643 BEFORE CLOSE OF BUSINESS ON MAY 16, 2024, WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING WILL BE HELD ON MAY 20, 2024 AT 9:30 A.M. (CT) WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

TO THE HONORABLE MARK X. MULLIN, U.S. BANKRUPTCY JUDGE:

COME NOW, BM318, LLC ("BM318") and The Dixon Water Foundation, a Texas non-profit corporation ("Dixon"), and file this their *Joint Motion of BM318, LLC and The Dixon Water Foundation for Approval of Compromise and Settlement of Adversary Proceeding No. 21-04051* (the "Motion"), and in support of the Motion, would respectfully show the Court as follows:

## I. BACKGROUND

1. On September 1, 2020, BM318 filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code initiating the above-captioned bankruptcy proceeding (the "Bankruptcy Case").

2. On November 19, 2020, BM318 filed the *Debtor's First Amended Plan of Reorganization* [BK Doc. No. 39], which was modified by the *First Modification to Debtor's First Amended Plan of Reorganization* [BK Doc. No. 79] and the *Third Modification to Debtor's First Amended Plan of Reorganization* [BK Doc. No. 100] (together, the "Plan").

3. On August 2, 2021, the Court entered the order confirming the Plan [BK Doc. No. 106].

4. On August 10, 2021, BM318 filed its *Complaint to Avoid and Recover Preferential and/or Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550*, commencing adversary proceeding No. 21-04051 (the "Adversary Proceeding").

5. On October 18, 2022, the United States District Court for the Northern District of Texas (the "District Court") entered an *Order Appointing Receiver* (the "Initial Receivership Order") in the case of *Securities and Exchange Commission v. Timothy Barton, et al.*, Case No. 3:22-cv-2118-X (N.D.Tex.) (the "Receivership Proceeding"). The receivership order placed into receivership all entities controlled, directly or indirectly, by Timothy Barton, including BM318. The District Court appointed Cortney C. Thomas as receiver (the "Receiver").

6. On April 25, 2023, Dixon and the Receiver engaged in a mediation conducted by the Honorable Harlin D. Hale (Ret.) and reached a mediated settlement of the Adversary Proceeding, which is the subject of this Motion.

7. Confirmation of the settlement was interrupted by a vacatur of the Initial Receivership Order by the Fifth Circuit.

8. On remand, this was remedied by the entry of a new receivership order that the District Court entered on November 29, 2023 (the "Receivership Order"). The Receivership Order continued the receivership with regard to BM318.

9. On January 5, 2024, the Receiver filed the *Receiver's Motion to Lift Litigation Stay of BM318 Bankruptcy Case* (the "Lift Stay Motion") [Doc No. 450]. On April 15, 2024, the District Court entered its *Order* granting the Lift Stay Motion so that this Bankruptcy Court may consider the Settlement Agreement, entered into between the Receiver and Dixon (the "Lift Stay Order") [Doc. 486] (copy attached hereto as Exhibit "A".)

## II. JURISDICTION

10. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Section 105(a) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019.

## III. RELIEF REQUESTED

11. BM318 and Dixon (the "Parties") have negotiated the material terms of an agreement providing for the compromise and resolution of the claims brought by BM318 against Dixon in the Adversary Proceeding. Pursuant to § 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the Parties request that the Bankruptcy Court approve those terms and authorize

them to enter into such agreement, which shall be substantially identical in form and substance to the settlement agreement attached hereto as Exhibit "B" (the "Settlement Agreement").

12. As more fully set forth therein, the terms of the Settlement Agreement provide for the following:[1]

a. Payment by Dixon to BM318 of $100,000.00;

b. Mutual release of all claims between Dixon and BM318 (the "Claims");

c. Final judgment entered in the Adversary Proceeding that provides for dismissal of the Adversary Proceeding with prejudice;

d. Release of lis pendens by BM318 concerning the property that is the subject of the Adversary Proceeding; and

e. Reservation by the Receiver of certain alleged non-debtor claims.

## IV. THE LEGAL STANDARDS

13. For the reasons discussed below, BM318 has determined that it is in the best interest of BM318, as the Reorganized Debtor,[2] and its creditors if the Claims are compromised and resolved under the terms of the Settlement Agreement.

14. Under the terms of the Plan, the Reorganized Debtor has the right to pursue and to resolve certain preserved claims of BM318 and the Debtor's Estate. See Plan § 8.01.

15. Bankruptcy Rule 9019(a) provides, in pertinent part: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Section 105(a) of the Bankruptcy Court further provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

[1] The following is only meant as a summary of the material terms of the Settlement Agreement. To the extent of an inconsistency between the summary and the Settlement Agreement, the terms of the Settlement Agreement control.

[2] All capitalized terms not otherwise defined shall have the meaning provided in the Plan.

16. In reviewing proposed settlements, the Fifth Circuit has instructed courts to apply the following factors, in addition to reviewing the terms and conditions of the settlement itself:

a. The probability of success in the litigation with due consideration for the uncertainty in fact and law;

b. The complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and

c. All other factors bearing on the wisdom of the compromise.

*Connecticut General Life Ins. Co. v. United Companies Fin. Corp. (In re Foster Mortgage Corp.), 68 F.3d 914, 917 (5th Cir. 1995)* (citing *Jackson Brewing Co.,* 624 F.2d at 602). The Parties submit that those settlement factors weigh in favor of approval of the Settlement Agreement.

17. The Fifth Circuit has further supplemented the provisions of Bankruptcy Rule 9019 to require, as a condition to approval of a settlement, that the settlement is "fair and equitable and in the best interest of the estate." *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980); see also *Connecticut General Life Ins. Co. v. United Companies Fin. Corp. (In re Foster Mortgage Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995).

18. Moreover, as set forth above, the standards by which a court evaluates a proposed compromise and settlement are well established. A court need not conduct an independent investigation in formulating an opinion as to the reasonableness of a settlement. Rather, a court is permitted to defer to the judgment of the parties, and the court's responsibility is to canvass the issues to see whether the proposed settlement "falls below the lowest point in the range of reasonableness." *In re Pennsylvania Truck Lines, Inc.,* 150 B.R. 595, 601 (E.D. Pa. 1992), *aff'd*, 8 F.3d 812 (3d Cir. 1993); *In re Grant Broadcasting of Philadelphia, Inc.,* 71 B.R. 390, 395 (Bankr. E.D. Pa. 1987). Approval of a compromise is committed to the sound discretion of the trial court

and will not be disturbed unless such court has abused its discretion. *Rivercity v. Herpel (In re Jackson Brewing Co.,* 624 F.2d 599, 602-03 (5th Cir. 1980)).

19. Probability of Success. First, in relation to the probability of success in the litigation, it is unnecessary for a court to conduct a mini-trial on the various claims and defenses to be resolved under the settlement. "[T]he approval of a proposed settlement does not depend on establishing as a matter of legal certainty that the subject claim or counterclaim is or is not worthless or valuable." *Jackson Brewing Co.*, 624 F.2d at 604. "The judge need only apprise himself of the relevant facts and law so that he can make an informed and intelligent decision." *Official Committee of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 356 (5th Cir. 1997) (quoting *La Salle Nat'l Bank v. Holland (In re American Reserve Corp.)*, 841 F.2d 159, 163 (7th Cir. 1987)); see also *Official Committee of Unsecured Creditors of Int'l Distrib. Ctrs., Inc. v. James Talcott, Inc. (In re International Distrib. Ctrs., Inc.)*, 103 B.R. 420, 423 (S.D.N.Y. 1989); *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496-97 (Bankr. S.D.N.Y. 1991).

20. The Adversary Proceeding was pending for over one year prior to the institution of the Receivership Proceeding. Substantial written discovery was engaged in and the Court held multiple hearings in connection with a Motion to Compel filed by Dixon. The Court also held multiple hearings on BM318's Motion to Amend its Complaint which the Court ultimately denied. As a result of the foregoing activity and the types of common bankruptcy claims brought by BM318 against Dixon pursuant to §§ 547, 548 and 550 in the Adversary Proceeding, the Court is well situated to assess the probability of success in the litigation with due consideration for the uncertainty in fact and law.

Case 20-42789-mxm11 Doc 174-7 Filed 01/18/24 Entered 01/18/24 14:53:12 Desc Exhibit 7 Page 6 of 9

21. The Parties submit that the payment provided for in the Settlement Agreement duly reflects BM318's probability of success on its Claims. While neither party admits or denies the assertions of the other, BM318 recognizes that there are substantial disputes and potential defenses to the Claims it has asserted in the Adversary Proceeding.

22. Complexity and Expense Of Litigation. As explained by the Fifth Circuit, "compromises are a normal part of the process of reorganization, oftentimes desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated and costly." *Cajun Elec.*, 119 F.3d at 354 (quoting *Jackson Brewing Co*., 624 F.2d at 602). The issues raised in the Adversary Proceeding would require the expenditure of substantial additional fees and expenses in connection with both fact discovery and expert discovery as well as trying the Adversary Proceeding and appellate proceedings that might flow therefrom.

23. Finally, as for all other factors bearing on the wisdom of the compromise, the Fifth Circuit has identified at least two such other factors: (a) the best interests of the creditors with proper deference to their reasonable views; and (b) the extent to which the settlement is truly the product of arms-length bargaining, and not fraud or collusion. *See Cajun Elec.,* 119 F.3d at 354, 356; *See also Foster Mortgage Corp*., 68 F.3d at 917. First the settlement came about as a result of a mediation conducted by the Honorable Harlin D. Hale (Ret.) which was conducted at arms-length and was intensely negotiated by the Parties. Second, the Settlement is in the best interests of the creditors of the Reorganized Debtor given the amount of the settlement and the Claims that will be resolved.

## V. CONCLUSION

24. The Settlement Agreement, as set forth in the attached Exhibit "B", is the product of arm's-length negotiations between the Parties. The Settlement Agreement represents a fair and reasonable resolution of the Claims and the Adversary Proceeding in relation to the Parties. Thus,

the Settlement Agreement is fair and reasonable, is in the best interests of the Reorganized Debtor and its creditors, and is the result of the exercise of sound business judgment.

WHEREFORE, PREMISES CONSIDERED, the Parties request that this Court (a) enter an order: substantially in the form of the order attached hereto as Exhibit "C": (i) approving the material terms set forth in the Settlement Agreement; (ii) authorizing BM318 to enter into a settlement and compromise agreement in substantially the same form as the Settlement Agreement; (b) enter Final Judgment in the Adversary Proceeding in substantially the same form as the Final Judgment attached hereto as Exhibit "D," and (c) grant such other and further relief as is just and proper.

RESPECTFULLY SUBMITTED this 25th day of April, 2024.

**BROWN FOX PLLC**

By: *\/s/ C. Alan Carrillo*

Charlene C. Koonce
State Bar No. 11672850
charlene@brownfoxlaw.com
C. Alan Carrillo
State Bar No. 24109693
alan@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000
Fax: (214) 327-5001

*Attorneys for Receiver for BM318, LLC*

**MUNSCH HARDT KOPF & HARR, P.C.**

By: *   /s/ Deborah M. Perry*

Deborah M. Perry
Texas Bar No. 24002755
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 4000
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: dperry@munsch.com

*Attorneys for The Dixon Water Foundation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 25th day of April, 2024, true and correct copies of this document were served via the Court's ecf system on parties entitled to receive electronic notice in the Bankruptcy Case and by regular U.S. first class mail on the parties on the attached Service List.

*/s/ Deborah M. Perry*
Deborah M. Perry

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>*Plaintiff*,<br><br>v.<br><br>TIMOTHY BARTON, et al.,<br><br>*Defendants*,<br><br>DJD LAND PARTNERS, LLC, and LDG001, LLC,<br><br>*Relief Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:22-CV-2118-X |

**ORDER**

Before the Court is the Receiver's motion to lift the litigation stay of the BM318 bankruptcy case. (Doc. 450). After carefully considered the motion, the Court **GRANTS** the motion and **LIFTS THE STAY** of *In re BM318, LLC*, Case No. 20-042789-mxm in the U.S. Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Bankruptcy Case") and *BM318, LLC, Plaintiff v. The Dixon Water Foundation, Defendant, Lumar Land & Cattle, LLC, Plaintiff-in-intervention*, Adv. No. 21-04051-mxm in the U.S. Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Adversary Proceeding"), so that the Bankruptcy Court may consider the settlement agreements from litigation that progressed before the litigation stay.

The Court's Receivership Order imposed a blanket stay of litigation, including over "bankruptcy proceedings."[1] The Receiver seeks to lift the stay of a bankruptcy proceeding and a related adversary proceeding, both involving BM318, LLC, a Receivership Entity, "to allow the Bankruptcy Court to consider the settlement agreements because litigation in the Bankruptcy Case had progressed for several years prior to the Litigation Stay and the Bankruptcy Court is very familiar with the facts and merits of the claims."[2]

The Court looks to the *Wencke* factors to "determine whether an exception should be made to a stay of proceedings in a case such as this": "(1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim."[3] The Court finds the three *Wencke* factors weigh in favor of granting the motion. The first factor looks at the moving party's interests.[4] Here, the Receiver is the moving party, and he argues "he has had ample time to get up to speed on the Bankruptcy Case and to address it."[5] As the Receiver, "is in the best position to decide[] whether the . . . litigation would interfere with the

---

[1] Doc. 417 at 19–20.

[2] Doc. 450 at 2.

[3] *SEC v. Stanford Int'l Bank, Ltd.*, 424 F. App'x 338, 341 (5th Cir. 2011) (quoting *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984) (*Wencke II*)).

[4] *SEC v. Provident Royalties, L.L.C.*, No. 3:09-cv-1238-l, 2011 WL 2678840, at *2 (N.D. Tex. July 7, 2011).

[5] Doc. 458 at 4.

interests of the receivership,"[6] the Court finds this factor to weigh in favor of lifting the stay for the limited proceedings sought here. As for the timing factor, the underlying parties mediated in May 2023, entered settlement agreements in June 2023, and have since been waiting for bankruptcy court approval and ratification in this Court. The Court finds that the timing warrants granting the motion. The merits factor too weighs in favor of lifting the litigation stay for the bankruptcy and related adversary proceedings. Because the parties entered into settlement agreements, it stands to reason that there are "colorable claims that justify lifting the stay."[7]

Barton raises three arguments in objection. First, Barton claims the Court should maintain the status quo and not make determinations as to real property while his Fifth Circuit appeal of the Receivership Order is pending.[8] Importantly, there is no stay in this case while Barton's appeal is pending. And lifting the litigation stay for the bankruptcy proceeding and related adversary proceeding is not a determination by this Court as to any real property, it's allowing the bankruptcy court to do so. Further, the Receiver claims that BM318 holds no real property because "Barton lost possession of BM318's real property prior to the appointment of the Receiver as a result of defaulting on the 'First Buyback Contract' with Dixon."[9] Barton's second and third objections are premature. Barton's next objection is that

---

[6] *Provident Royalties*, 2011 WL 2678840, at *2.

[7] *SEC v. Provident Royalties, L.L.C.*, No. 3:09-CV-1238-L, 2011 WL 2678840, at *2 (N.D. Tex. July 7, 2011) (citing *Wencke II*, 472 F.2d at 1232).

[8] Doc. 455 at 2–3.

[9] Doc. 458 at 6 n. 5.

the underlying settlement is not in the best interest of the Receivership Estate—or at least that the Receiver hasn't argued such sufficiently.[10] Whether the settlement agreement is in the Receivership Estate's best interest is a determination the Court will make after the Bankruptcy Court issues its opinion and this Court decides to ratify "any approval of the agreements by the Bankruptcy Court."[11] And finally, Barton claims that the Court must hold a 28 U.S.C. § 2001 hearing before making any disposition of the property, such as a settlement agreement.[12] The Court previously disagreed with this argument outright.[13]

Accordingly, the Court **OVERRULES** Barton's objections and **GRANTS** the Receiver's motion.

**IT IS SO ORDERED** this 15th day of April, 2024.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

[10] Doc. 455 at 3.

[11] Doc. 458 at 6.

[12] Doc. 455 at 3–4.

[13] *See* Doc. 163 (Order Granting Receiver's Motion to Ratify Agreement with Lumar Land & Cattle) (the Court held that 28 U.S.C. § 2001 "which governs the sale of real property by a receiver, does not apply to settlement agreements or contractual compromises like the one at issue here.").

# SETTLEMENT AGREEMENT AND RELEASE

This SETTLEMENT AGREEMENT AND RELEASE (the "Settlement Agreement") is entered into between BM318, LLC ("BM318") and The Dixon Water Foundation ("Dixon") as of the last date of the signature of the Parties and it shall become binding on the Parties as of the Effective Date (defined herein). BM318 and Dixon may be collectively referred to as the "Parties" or individually referred to as a "Party."

WHEREAS, on or about August 10, 2021, BM318 filed its *Complaint to Avoid and Recover Preferential and/or Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550*, commencing Adv. Pro. No. 21-04051 (the "Adversary Proceeding") which is related to Bankruptcy Case No. 20-42789-MXM, *In re BM318, LLC* (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Bankruptcy Court");

WHEREAS, in the Adversary Proceeding, BM318 has asserted claims against Dixon under §§ 547, 548 and 550 of the Bankruptcy Code related to 1,531.75 acres of land, being a part of the Bear Creek Ranch, located in Parker County, Texas (the "Property");

WHEREAS, subsequent to the filing of the Adversary Proceeding, the United States District Court for the Northern District of Texas (the "District Court"), in connection with a civil enforcement action captioned *Securities and Exchange Commission v. Timothy Barton, et al.* and numbered Case No. 3:22-cv-2118-X (the "Receivership Proceeding"), appointed Cortney C. Thomas as Receiver for BM318 and other entities controlled by Timothy Barton (the "Receiver");

WHEREAS, the Receiver expressly reserves any claims to recover from Dixon funds allegedly diverted from investors as alleged in the Receivership Proceeding (the "Investor Funds");

WHEREAS, in the Adversary Proceeding, Dixon disputes the allegations asserted against it, and denies any liability to BM318 for any claim asserted against it;

WHEREAS Dixon continues to maintain that it is not liable to BM318;

WHERAS, Dixon denies it has any liability to the Receiver in respect of any Investor Funds and expressly reserves all rights and defenses of any kind;

WHEREAS, without making any admissions of liability or other concessions, the Parties enter into this Settlement Agreement solely to avoid the cost, expense, and inconvenience of litigation.

NOW THEREFORE, in consideration of the foregoing Recitals which are incorporated into and are a part of this Settlement Agreement, and the promises, conditions, and covenants contained in this Settlement Agreement, and other good and valuable consideration, the adequacy of which is acknowledged, the Parties agree as follows:

1. **Court Approval.** This Settlement Agreement is subject to, and it shall not be effective until, an order approving this Settlement Agreement is entered by the Bankruptcy Court and an order ratifying this Settlement Agreement is entered by the District Court ("Court

Approval"). Upon the Parties' execution of this Settlement Agreement, the Receiver shall file a motion in the Receivership Proceeding seeking an order from the District Court lifting the stay of the Bankruptcy Case for the purpose of the Parties seeking approval of this Settlement Agreement by the Bankruptcy Court. Upon the District Court's entry of an order lifting of the stay of the Bankruptcy Case, the Parties shall file a motion (and shall attach an executed copy of this Settlement Agreement thereto) seeking an order from the Bankruptcy Court approving this Settlement Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019. Upon the Bankruptcy Court's entry of an order approving the Settlement Agreement, the Receiver shall file a motion in the Receivership Proceeding (and shall attach an executed copy of this Settlement Agreement thereto) seeking an order from the District Court ratifying this Settlement Agreement. The Parties agree to cooperate in good faith to effectuate the terms and conditions of this Settlement Agreement, including taking all necessary actions to acquire Court Approval. If this Settlement Agreement does not receive Court Approval, it shall be null and void.

2. **Payment.** Dixon agrees to pay BM318 the total sum of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) (the "Settlement Payment"). The Settlement Payment is to be made by a check payable to "Cortney C. Thomas, as Receiver for BM318, LLC." The Settlement Payment is to be delivered to the Receiver within seven (7) days after this Settlement Agreement receives Court Approval ("Payment Deadline").

3. **Event of Default; Right to Cure and Remedies.** Dixon's failure to make the Settlement Payment by the Payment Deadline shall constitute an "Event of Default" under this Settlement Agreement. Dixon shall have seven (7) days to cure an Event of Default for failing to make the timely Settlement Payment. If Dixon fails to make the Settlement Payment, then the Receiver, at his sole discretion, may bring suit against Dixon to enforce this Settlement Agreement.

4. **Release by BM318.** Effective as of the Effective Date, BM318 on its own behalf and on behalf of its creditors (collectively, the "BM318 Releasors") hereby releases Dixon and any of Dixon's past and/or present employees, agents, attorneys, representatives, assigns, members, directors, officers, shareholders, guarantors, insurers, subsidiaries, affiliated entities, related corporations, corporate parents, predecessors, successors and any other persons acting or purporting to act on behalf of Dixon (collectively, the "Dixon Released Parties"), from any and all liability for any and all claims, causes of action, demands, judgments, omissions, duties, obligations, losses, debts, promises, damages, costs, attorneys' fees and expenses, whether in law or in equity, whether known or unknown, direct or contingent, asserted or unasserted, suspected or unsuspected, choate or inchoate, however arising, which any of the BM318 Releasors has or had against any of the Dixon Released Parties, including, but not limited to, those asserted or which could have been asserted in the Adversary Proceeding. It is expressly understood, however, that the Receiver is not a party to this release and accordingly the Receiver is not providing any release of any claims he may hold, including but not limited to, claims for the recovery of any Investor Funds that may have been transferred to Dixon by BM318 or other Receivership Entities.[1]

[1] "Receivership Entities" includes all entities subject to administration in the Receivership Proceeding including, but not limited to, those entities identified in the District Court's *Order Appointing Receiver* [Receivership Proceeding, Docket No. 29] and later supplemental orders entered in the Receivership Proceeding [Receivership Proceeding, Docket Nos. 62, 88, etc.].

5. **Release by Dixon.** Effective as of the Effective Date, Dixon, on its own behalf and on behalf of its agents, attorneys, representatives, assigns, guarantors, and/or creditors (collectively, the "Dixon Releasors"), hereby releases BM318, from any and all liability for any and all claims, causes of action, demands, judgments, omissions, duties, obligations, losses, debts, promises, damages, costs, attorneys' fees and expenses, whether in law or in equity, whether known or unknown, direct or contingent, asserted or unasserted, suspected or unsuspected, choate or inchoate, however arising, which Dixon has or had against BM318, including, but not limited to, those asserted or which could have been asserted in the Adversary Proceeding. It is expressly understood, however, that Dixon does not release any defense whatsoever to any potential claim by the Receiver or any other person seeking to recover any Investor Funds that may have been transferred to Dixon.

6. **No Admissions of Liability by Dixon.** This Settlement Agreement is intended to be and is a compromise between BM318 and Dixon to avoid the cost, expense and inconvenience of litigation and shall not be construed as an admission of liability; nor shall this Settlement Agreement be construed as a waiver, modification, or retraction of the positions of the Parties with respect to the claims asserted by BM318 in the Adversary Proceeding.

7. **Dismissal of the Adversary Proceeding as Against Dixon.** BM318 agrees that within five (5) business days of this Settlement Agreement receiving Court Approval, BM318 shall make all appropriate filings to dismiss, with prejudice, the Adversary Proceeding as against Dixon, with each Party to bear its own costs, expenses, and attorneys' fees. Such filings shall be subject to Dixon's approval.

8. **Release of Lis Pendens.** BM318 agrees that within five (5) business days of this Settlement Agreement receiving Court Approval, BM318 shall file a release of the lis pendens BM318 filed against the Property. Such filing shall be subject to Dixon's approval. To the extent that Timothy Barton or anyone purporting to act on behalf of Mr. Barton files any additional lis pendens against the Property, BM318 will promptly cooperate with Dixon to obtain removal of any such lis pendens.

9. **Authority.** The Parties represent that, subject to Court Approval, they have the legal right and authority required to compromise and settle all claims under the terms and conditions set forth herein. The Parties also represent that the signatures on behalf of the Parties, or their counsel, to this Settlement Agreement, are sufficient, without further approval of third parties, other than Court Approval, to fully bind such party to the terms hereof, including without limitation, the Settlement Payment and releases set forth herein.

10. **Sufficiency of Consideration.** The Parties acknowledge the sufficiency of the consideration referenced herein to compromise and settle all claims, causes of action, demands, judgments, costs, and attorneys' fees and expenses, whatsoever settled, discharged, and/or released herein. The Parties further warrant that no promise or inducement has been offered other than the consideration referenced herein and that this Settlement Agreement is being executed without reliance on any statement or representation by any Party being released herein or by its representatives concerning the nature and extent of losses and damages or the liability therefore or any further future payment.

Doc 147-2 Filed 04/26/24 Entered 04/26/24 13:57:10
Exhibit 7 Page 17 of 60

11. **Counterparts.** This Settlement Agreement may be executed by each of the Parties in counterparts with the same effect as if the Parties had signed the same original. Facsimile signatures or signatures transmitted via electronic means shall be accepted as original signatures.

12. **General.** This Settlement Agreement shall be governed in accordance with the laws of the State of Texas and shall inure to the benefit of and be binding upon the Parties and their respective successors, and assigns. Any litigation arising from this Settlement Agreement shall be brought in the Receivership Proceeding. The Recitals set forth in the beginning of this Settlement Agreement are incorporated herein.

13. **Notice.** Any notice required under this Settlement Agreement shall be submitted in writing and sent via email and overnight delivery service or express mail next day delivery and addressed to:

BM318

Courtney C. Thomas
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000
Email: cort@brownfoxlaw.com

DIXON

Deborah M. Perry
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201
Telephone: (214) 855-7500
Email: dperry@munsch.com

14. **Entire Agreement.** Any and all prior understandings and agreements between the Parties with respect to the subject matter of this Settlement Agreement are merged into and with this Settlement Agreement, which fully and completely expresses the entire agreement and understanding of the Parties with respect to the subject matter of the Settlement Agreement. Neither Party is relying and hereby disclaims reliance on any other representation, omission, or document not expressly contained in this Agreement.

15. **Successors and Assigns.** This Settlement Agreement shall be binding upon and inure to the benefit of the Parties' respective successors and assigns.

16. **Modifications.** This Settlement Agreement shall not be modified except by an instrument in writing signed by the Party against whom the enforcement of any modification is sought.

17. **Necessary Actions.** The Parties shall take any and all steps and actions and execute any and all documents necessary to effectuate the terms and conditions of this Settlement Agreement.

18. **Severability.** All provisions within this Settlement Agreement are to be read in conjunction with each other. Provisions should be read together so as to harmonize the whole. Before declaring any provision of this Settlement Agreement invalid, a court shall first attempt to construe all provisions valid to the fullest extent possible consistent with applicable precedents. If any provision of this Settlement Agreement is found by a court to be void, voidable, or otherwise unenforceable, all remaining provisions of this Settlement Agreement shall remain in full force

and effect so as to carry out the expressed intent of the Parties herein, and the Parties shall promptly attempt in good faith to negotiate a suitable replacement provision.

19. **Headings.** All headings within the Settlement Agreement are provided for convenience and reference only and shall not affect the interpretation of this Settlement Agreement in any way.

20. **Effective Date of Settlement Agreement.** This Settlement Agreement is expressly conditioned on it receiving Court Approval. The "Effective Date" of this Settlement Agreement shall be the date on which the District Court enters an order in the Receivership Proceeding ratifying this Settlement Agreement, following the Bankruptcy Court's entry of an order approving this Settlement Agreement in the Bankruptcy Case, at which time this Settlement Agreement shall become immediately binding on each of the Parties.

**AGREED:**

**BM318, LLC**

By: ________________, Receiver
Cortney C. Thomas, in his capacity as Receiver

Dated: 6/20/23

**THE DIXON WATER FOUNDATION**

By: DocuSigned by: Casey Wade 5DF4F5511AAD475...

Printed Name: Casey Wade

Its: President/CEO

Dated: 6/21/2023

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re:<br><br>BM318, LLC,<br><br>Debtor. | §<br>§<br>§<br>§<br>§<br>§ | Case No. 20-42789-MXM<br><br>Chapter 11 |

**<u>ORDER APPROVING DIXON COMPROMISE AND SETTLEMENT</u>**

CAME ON FOR CONSIDERATION the *Joint Motion of BM318, LLC and The Dixon Water Foundation for Approval of Compromise and Settlement of Adversary Proceeding No. 21-04051* (the "<u>Motion</u>"), and the Court, having considered the Motion and any responses and replies thereto, finds that the Settlement Agreement, as set forth in Exhibit "B" attached to the Motion, is the product of arm's-length negotiations between the Parties; the Settlement Agreement represents a fair and reasonable resolution of the Claims and the Adversary Proceeding in relation to the Parties; and, thus, the Settlement Agreement is fair and reasonable, is in the best interests of the Reorganized Debtor and its creditors, and is the result of the exercise of sound business judgment. It is therefore

ORDERED that the relief requested in the Motion is GRANTED; it is further

ORDERED that the terms of the Settlement Agreement are APPROVED; it is further

ORDERED that BM318, LLC is authorized to enter into a settlement and compromise substantially in the same form as the Settlement Agreement and authorized to take any and all actions deemed necessary and/or appropriate to consummate the settlement set forth therein; and it is further

ORDERED that this Court shall retain jurisdiction over any and all disputes that may arise in relation to the terms and/or enforcement of the Settlement Agreement and/or this Order.

### END OF ORDER ###

Order Submitted By:
MUNSCH HARDT KOPF & HARR, P.C.
Deborah M. Perry
Texas Bar No. 24002755
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: dperry@munsch.com

**ATTORNEYS FOR THE DIXON WATER FOUNDATION**

and

BROWN FOX PLLC
Charlene C. Koonce
Texas Bar No. 11672850
C. Alan Carrillo
Texas Bar No. 24109693
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000
Facsimile: (214) 327-5001
Email: charlene@brownfoxlaw.com
Email: alan@brownfoxlaw.com

**ATTORNEYS FOR RECEIVER FOR BM318, LLC**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| BM318, LLC, | § | Case No. 20-42789-MXM |
| Debtor | § | |
| BM318, LLC, | § | |
| Plaintiff, | § | |
| v. | § | Adv. Pro. No. 21-04051-MXM |
| THE DIXON WATER FOUNDATION, | § | |
| Defendant. | § | |
| LUMAR LAND & CATTLE, LLC | § | |
| Plaintiff-in-Intervention | § | |

**FINAL AGREED JUDGMENT DISMISSING THE ADVERSARY PROCEEDING**

This adversary proceeding was commenced by BM318, LLC ("BM318"), as the plaintiff, against The Dixon Water Foundation ("Dixon"), as the defendant. Thereafter, Lumar Land & Cattle, LLC ("Lumar") was granted leave to intervene in this adversary proceeding. Cortney C. Thomas ("Receiver") has been appointed as Receiver for BM318 through the following lawsuit ("Receivership Lawsuit"):

> *Securities and Exchange Commission v. Timothy Barton, et al.*, Case 3:22-cv-2118-X, in the United States District Court for the Northern District of Texas, Dallas Division.

The Receiver (acting on behalf of BM318) and Dixon have entered into a settlement agreement ("Dixon Settlement Agreement") which fully resolves all matters pending between them in this adversary proceeding. Lumar is not a party to the Dixon Settlement Agreement.

The Dixon Settlement Agreement has been approved by this Court by Order entered as Docket No. __ in the above-captioned chapter 11 bankruptcy case, and has been ratified on behalf of the Receiver, acting on behalf of BM318, by the district court in the Receivership Lawsuit. Pursuant to the Dixon Settlement Agreement, the Receiver and Dixon have agreed to entry of this Final Agreed Judgment fully and finally settling and dismissing all claims and disputes between them in this adversary proceeding.

The Receiver (acting on behalf of BM318) and Lumar have entered into a separate settlement agreement ("Lumar Settlement Agreement") which fully resolves all claims and disputes pending between them in this adversary proceeding. Dixon is not a party to the Lumar Settlement Agreement. The Lumar Settlement Agreement has been approved by this Court by Order entered as Docket No. __ in the above-captioned chapter 11 bankruptcy case, and has been ratified on behalf of the Receiver, acting on behalf of BM318, by the district court in the Receivership Lawsuit. Pursuant to the Lumar Settlement Agreement, the Receiver and Lumar have agreed to the entry of this Final Agreed Judgment fully and finally settling and dismissing all claims and disputes between them in this adversary proceeding.

ACCORDINGLY, it is hereby ORDERED, ADJUDGED and DECREED that:

1. All claims, causes of action, or other claims for any form of relief asserted in this adversary proceeding by any party are hereby dismissed with prejudice to the refiling of the same. This dismissal with prejudice shall encompass not only the claims actually asserted by any party in this adversary proceeding, but also any claim, cause of action or claim for relief which could have been asserted based upon the transactions or occurrences which form the subject matter of this adversary proceeding.

2. All attorney's fees and costs of court shall be borne by the party initially incurring the same.

3. This judgment is a final judgment fully and finally disposing of all claims, causes of action, or claims for relief asserted by any party in this adversary proceeding.

4. Upon the entry of this judgment, the lis pendens filed by BM318 and recorded under Instrument No. 202142097 in the official real property records of Parker County, Texas is hereby dissolved.

5. The form of Release of Lis Pendens attached hereto as Exhibit 1 is confirmed, approved, and legally effective.

6. All relief not specifically granted herein is denied.

7. The Court retains jurisdiction to construe and enforce this Final Agreed Judgment.

### END OF ORDER ###

**Approved for Entry**:

______________________________
Charlene C. Koonce
State Bar No. 11672850
Email: charlene@brownfoxlaw.com
C. Alan Carillo
State Bar No. 24109693
Email: alan@brownfoxlaw.com
**BROWN FOX PLLC**
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000
Facsimile: (214) 327-5001

**ATTORNEYS FOR CORTNEY C. THOMAS, RECEIVER FOR BM318, LLC, ET AL.**

Case 20-42789-mxm11 Doc 172-7 Filed 11/08/24 Entered 11/08/24 13:53:16 Desc
Exhibit 7 Page 4 of 39

______________________________

Deborah M. Perry
Texas Bar No. 24002755
Email: dperry@munsch.com
**MUNSCH HARDT KOPF & HARR, P.C.**
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

**ATTORNEYS FOR THE DIXON WATER FOUNDATION**

______________________________

J. Robert Forshey
Texas Bar No. 07264200
Email: bforshey@forsheyprostok.com
**FORSHEY & PROSTOK, LLP**
777 Main Street, Suite 1550
Fort Worth, Texas 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151

and

Kimberly P. Harris
Texas Bar No. 24002234
Email: kharris@qslwm.com
Joshua L. Shepherd
Texas Bar No. 24058104
Email: jshepherd@qslwm.com
**QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, PC**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 871-2100
Facsimile: (214) 871-2111

**ATTORNEYS FOR LUMAR LAND AND CATTLE, LLC**

**EXHIBIT 1 TO JUDGMENT**

**RELEASE OF LIS PENDENS**

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | |
| COUNTY OF PARKER | § | |

On October 27, 2021, BM318, LLC filed a Notice of Lis Pendens in the real property records of Parker County, Texas, pursuant to an adversary proceeding filed in the United States Bankruptcy Court for the Northern District of Texas as a part of the Chapter 11 Case *In re BM318, LLC,* Case No. 20-42789 with the adversary proceeding itself being styled *BM318, LLC v. Dixon Water Foundation* and numbered Adversary Proceeding 21-04051-MXM (the "Notice of Lis Pendens").

A. The Notice of Lis Pendens was recorded under Instrument No. 202142097, in the official real property records of Parker County, Texas.

B. The lawsuit described above has been settled, and the approval of the settlement pursuant to Bankruptcy Rule 9019 has been entered on the docket of the adversary proceeding.

**RELEASE**

NOW, THEREFORE, BM318, LLC, by and through its Receiver Cortney C. Thomas (appointed in case of *Securities and Exchange Commission v. Timothy Barton, et al.*, Case No. 3:22-cv-2118-X (N.D. Tex.))[1] cancels and releases the Notice of Lis Pendens previously filed upon the property more particularly described as:

> 2055.70 acres of land situated in the JAMES BRADY SURVEY, ABSTRACT No. 119, JAMES BRADLEY SURVEY, ABSTRACT No. 120, JOHN D. BAY SURVEY, ABSTRACT NO. 195, J.H. REAM SURVEY, ABSTRACT No. 1106, T.J. BENDERMAN SURVEY, ABSTRACT No. 2519, I. & G.N. RR. CO., SECTION NO. 3, BLOCK 1, ABSTRACT NO. 1799 and the PETER B. HOLDER SURVEY, ABSTRACT No. 614, Parker County, Texas, being a portion of those certain tracts of land described in deed as Parcel No. 1 and Parcel No. 2, said 2055.70 acres being more particularly described as Tract 1 on the attached Exhibit

[1] A copy of the Order appointing the Receiver is attached hereto as Exhibit B.

Case 20-42789-mxm11 Doc 172-7 Filed 04/23/24 Entered 04/23/24 16:57:16 Desc
Proposed Judgment Page 6 of 39

**EXHIBIT 1 TO JUDGMENT**

A, and the access easement more particularly described as Tract 2 on the attached Exhibit A.

Witness my hand, this ____ day of ________________, 2024.

**BM318, LLC**

/s/ ______________________________
Its Receiver Courtney C. Thomas

c/o Charlene C. Koonce
charlene@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000

**ACKNOWLEDGMENT**

STATE OF TEXAS §
§
COUNTY OF DALLAS §

This instrument was acknowledged before me on the ____ day of ________________, 2024 by Courtney C. Thomas, Receiver for BM318, LLC.

______________________________________

Name: _______________________________

Notary Public, State of Texas

My commission expires: ________________

Seal:

After Recording Return to:

Munsch Hardt Kopf & Harr, P.C.
c/o Deborah M. Perry
500 N. Akard Street, Suite 4000
Dallas, Texas 75201
(214) 855-7500

**EXHIBIT 1 TO JUDGMENT**

EXHIBIT A

PROPERTY DESCRIPTION

**TRACT 1**

**2055.70 acres of land situated in the JAMES BRADY SURVEY, ABSTRACT No. 119, JAMES BRADLEY SURVEY, ABSTRACT No. 120, JOHN D. BAY SURVEY, ABSTRACT NO. 195, J.H. REAM SURVEY, ABSTRACT No. 1106, T.J. BENDERMAN SURVEY, ABSTRACT No. 2519, I. & G.N. RR. CO., SECTION NO. 3, BLOCK 1, ABSTRACT NO. 1799 and the PETER B. HOLDER SURVEY, ABSTRACT No. 614, Parker County, Texas, being a portion of those certain tracts of land described in deed as Parcel No. 1 and Parcel No. 2, said 2055.70 acres being more particularly described as follows:**

BEGINNING at the most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (Right-of-Way varies), from which a 2" steel fence corner post found in the south line of said Bear Creek Road bears S 01°12'56" E, a distance of 40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6918277.984 and EAST: 2233063.538, for reference;

THENCE along Bear Creek Road, as follows:
S 67°36'03" E, a distance of 3869.57 feet to the most northerly northeast corner of said Parcel No. 2;
S 02°12'27" E, a distance of 1472.57 feet to a point;
S 55°59'27" E, a distance of 1165.45 feet to a point;
S 71°46'27" E, a distance of 801.00 feet to a point;
S 70°43'19" E, a distance of 221.91 feet to a point;
S 70°45'54 E, a distance of 1742.88 feet to a point for the most northerly northeast corner of the herein described 2055.70 acre tract;

THENCE S 24°06'27" W, leaving said Bear Creek Road, passing the northwest corner of that certain tract of land described in deed to Kevin Reeves, recorded in Instrument Number 2017-02400, Official Public Records, Parker County, Texas, and continuing along the most west line of said Reeves tract, in all, a distance of 1186.42 feet to a point from which a 5/8" iron rod found bears N 60°42'50" W, a distance of 0.42 feet, for reference;

THENCE along the southwesterly lines of said Reeves tract as follows:

S 60°42'50" E, a distance of 230.94 feet to a 5/8" iron rod found;
S 14°49'14" E, a distance of 744.61 feet to a 5/8" iron rod found;
N 72°21'34" E, a distance of 390.26 feet to a point from which a 3" steel pipe fence post bears N 06°43'26" W, a distance of 1.25 feet for reference;
S 00°10'37" W, a distance of 764.25 feet to a 1/2" iron rod found at the southwest corner of said Reeves tract, being in the north line of a Seventy (70) foot wide Transmission Easement and Right-of-Way recorded in Book 2684, Page 531 and Book 2734, Page 1161, Official Public Records, Parker County, Texas;

**EXHIBIT 1 TO JUDGMENT**

THENCE along the south line of said Reeves tract and the north line of said Transmission Easement and Right-of-Way, as follows:

N 89°17'27" E, a distance of 766.57 feet to a point;
S 87°58'20" E, a distance of 852.96 feet to a point;
S 87°37'59" E, a distance of 500.58 feet to a point in the west occupied line of said Bear Creek Road, at the southeast corner of said Reeves tract;

THENCE S 20°01'40" E, along the west occupied line of said Bear Creek Road, a distance of 75.70 feet to a 5/8" capped iron rod found stamped "Brooks Baker", being in the most easterly south line of said Parcel No. 2;

THENCE along the most easterly south line of said Parcel No. 2, as follows:

N 87°38'33" W, a distance of 529.23 feet to a point;
N 87°58'55" W, a distance of 851.08 feet to a point;
S 89°16'51" W, a distance of 765.97 feet to a point at the most southerly southwest corner of said Parcel No. 2 and being in the east line of said Parcel No. 1;

THENCE S 03°54'04" E, along the east line of said Parcel No. 1 and along the called east line of said BENDERMAN SURVEY, a distance of 10017.79 feet to a 2" pipe in concrete at the southeast corner of said Parcel No. 1 and being the called southeast corner of said BENDERMAN SURVEY;

THENCE S 89°26'10" W, along the south line of said Parcel No. 1 and along the called south line of said BENDERMAN SURVEY, a distance of 1606.98 feet to a 5/8" capped iron rod found stamped "Brooks Baker";

THENCE S 89°48'07" W, continuing along the south line of said Parcel No. 1 and continuing along the called south line of said BENDERMAN SURVEY, a distance of 3711.27 feet to a 2" pipe in concrete found at the most southerly southwest corner of said Parcel No. 1;

THENCE N 01°35'25" W, along the most southerly west line of said Parcel No. 1, a distance of 1216.91 feet to a 2" pipe in concrete found at an interior corner of said Parcel No. 1 and being in the called south line of said J.H. REAN SURVEY;

THENCE N 89°19'15" W, along the most westerly south line of said Parcel No. 1 and along the called south line of said J.H. REAN SURVEY, a distance of 660.00 feet to a 2" pipe in concrete found at the most westerly southwest corner of said Parcel No. 1 and being the called southwest corner of said J.H. REAN SURVEY;

THENCE along the west line of said Parcel No. 1 and along the called west line of said J.H. REAN SURVEY, as follows:

N 00°01'41" W, a distance of 2676.89 feet to a 5/8" iron rod found;
N 00°04'03" W, a distance of 1981.74 feet to a 5/8" iron rod found;

N 00°10'29" E, a distance of 1520.50 feet to a 5/8" iron rod found;
N 00°04'43" W, a distance of 1097.99 feet to a 5/8" iron rod found;
N 00°02'24" W, a distance of 901.55 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";
N 00°25'07" W, a distance of 984.78 feet to a 2" pipe in concrete found at an interior corner of said Parcel No. 1;

THENCE N 89°37'52" W along the most northerly south line of said Parcel No. 1, a distance of 2013.88 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084, at the most westerly southwest corner of said Parcel No. 1;

THENCE N 00°45'08" W, along the most westerly west line of said Parcel No. 1, a distance of 1196.14 feet to a 5/8" rod found;

THENCE N 01°17'22" W, continuing along the most westerly west line of said Parcel No. 1, a distance of 1964.12 to a 5/8" capped iron rod found stamped "Brooks Baker" at the northwest corner of said Parcel No. 1 and being the southwest corner of said Parcel No. 2, from which a 5/8" capped iron rod found (not legible) bears S 88°46'12" E, a distance of 728.31 feet for reference;

THENCE N 01°17'05" W, along the west line of said Parcel 2, a distance of 3591.76 feet to the POINT OF BEGINNING and containing 2055.70 acres, more or less.

**SAVE AND EXCEPT** that certain 381.66 acres tract of land as conveyed to GH Lumar JV in Warranty Deed, filed 09/13/2019, recorded in cc#2019-24134, Real Property Records, Parker County, Texas.

**SAVE AND EXCEPT** that certain 23.95 acres of land, situated in Parker County, Texas, out of the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 119, the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 120, the JOHN D. BAY SURVEY, ABSTRACT NUMBER 195 and the J. H. REAN SURVEY, ABSTRACT NUMBER 1106, and being part of a 2055.70 acre tract of land that is described in a deed from The Dixon Water Foundation to BM 318, LLC, dated November 26, 2018, recorded in Instrument No. 201829926, Official Public Records of Parker County, Texas and further described as follows:

BEGINNING at a railroad spike set in Bear Creek Road, and being an internal corner of said 2055.70 acre tract, and being in the East line of a 381.66 acres tract of land that is described in a deed from BM 318, LLC to GH Lumar JV, dated September 11, 2019, recorded in Instrument No. 201924134, Official Public Records of Parker County, Texas, for the Northwest corner of this tract;

THENCE South 55 degrees 59 minutes 27 seconds East, 840.04 feet, along Bear Creek Road, with the North line of said 2055.70 acre tract, to a railroad spike set at the calculated Northeast corner of a 60 foot wide access easement that is described in deed to GH Lumar JV, for the Northeast corner of this tract;

Doc 142-7 Filed 01/26/24 Entered 01/26/24 13:57:12 Exhibit 7 Page 10 of 39



THENCE South 33 degrees 46 minutes 16 seconds West, 811.29 feet, to a 1/2 inch iron rod set, South 09 degrees 44 minutes 07 seconds West, 103.49 feet to a 1/2 inch iron rod set, South 32 degrees 59 minutes 06 seconds East 349.92 feet, to a 1/2 inch iron rod set, South 09 degrees 47 minutes 14 seconds East, 797.08 feet, to a 1/2 inch iron rod set, and South 00 degrees 31 minutes 28 seconds East, 655.53 feet, to a 1/2 inch iron rod set, for the Southeast corner of this tract;

THENCE North 80 degrees 56 minutes 20 seconds West, 369.25 feet, to a 1/2 inch iron rod set in the East line of said 381.66 acre tract, for the Southwest corner of this tract;

THENCE with the East line of said 381.66 acre tract, as follows North 02 degrees 12 minutes 27 seconds West, 1405.48 feet, to a 1/2 inch iron rod set, North 69 degrees 20 minutes 36 seconds West, 89.55 feet, to a 1/2 inch iron rod set, and North 02 degrees 12 minutes 27 seconds West, 1487.68 feet, to the Point of Beginning and containing 23.95 acres of land.

## SAVE AND EXCEPT

**BEING 118.34 acres situated in the JAMES BRADLEY SURVEY, ABSTRACT NO. 120, Parker County, Texas, being a portion of that certain tract of land described in deed as Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 118.34 acres being more particularly described as *follows*:**

**BEGINNING at the most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (*Right-of-Way varies*), from which a 2" steel**

**fence corner post found in the south line of said Bear Creek Road bears S 01°12'56" E, a distance of 40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6918277.984 and EAST: 2233063.538, for reference;**

**THENCE S 67°36'00" E, along the approximate centerline of said Bear Creek Road and along the most north line of said Parcel No. 2, a distance of 2856.45 feet to a point for the northeast corner of the herein described 118.34 acre tract;**

**THENCE S 24°50'49" W, leaving the approximate centerline of said Bear Creek Road, and being along the west line of a Fifty (50) foot wide Right-of-Way Agreement to ONEOK Arbuckle Pipeline, L.L.C., recorded in Book 2651, Page 405, Official Public Records, Parker County, Texas, at a distance of 23.85 feet, passing a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084", and continuing, along the west line of said Fifty (50) foot wide Right-of-Way Agreement, in all, a distance of 205.78 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";**

**THENCE S 04°46'43" W, continuing along the west line of said Fifty (50) foot wide Right-of-Way Agreement, a distance of 1684.81 feet to a point in the approximate centerline of Bear Creek for the southeast corner of the herein described 118.34 acre tract;**

**THENCE along the approximate centerline of said Bear Creek, as follows:**

**N 61°36'37" W, a distance of 807.44 feet to a point;**

N 71°14'04" W, a distance of 217.93 feet to a point;

N 85°16'07" W, a distance of 121.44 feet to a point;

S 77°05'53" W, a distance of 141.01 feet to a point;

S 82°12'59" W a distance of 239.64 feet to a point;

S 49°32'26" W, a distance of 208.64 feet to a point;

N 86°11'59" W, a distance of 114.28 feet to a point;

N 53°45'49" W a distance of 175.97 feet to a point;

N 47°13'56" W, a distance of 200.18 feet to a point;

N 80°08'35" W, a distance of 392.40 feet to a point in the west line of said Parcel No. 2, for the southwest corner of the herein described 118.34 acre tract, from which a 5/8" capped iron rod found at the southwest corner of said Parcel No. 2 bears S 01°17'05" E, a distance of 1216.41 feet, for reference;

THENCE N 01°17'05" W, along the west line of said Parcel No. 2, a distance of 2375.35 to the POINT OF BEGINNING and containing 118.34 acres of land, more or less.

---

**TRACT 2**

TOGETHER WITH ACCESS EASEMENT CREATED BY THAT CERTAIN ACCESS EASEMENT, FILED 02/06/2020, RECORDED IN CC#202003138, REAL PROPERTY RECORDS, PARKER COUNTY, TEXAS.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>*Plaintiff*,<br><br>v.<br><br>TIMOTHY BARTON,<br>CARNEGIE DEVELOPMENT, LLC,<br>WALL007, LLC,<br>WALL009, LLC,<br>WALL010, LLC,<br>WALL011, LLC,<br>WALL012, LLC,<br>WALL016, LLC,<br>WALL017, LLC,<br>WALL018, LLC,<br>WALL019, LLC,<br>HAOQIANG FU (a/k/a MICHAEL FU),<br>STEPHEN T. WALL,<br><br>*Defendants*,<br><br>DJD LAND PARTNERS, LLC, and<br>LDG001, LLC,<br><br>*Relief Defendants*. | Civil Action No. 3:22-CV-2118-X |

**ORDER APPOINTING RECEIVER**

For the reasons set out in a memorandum opinion and order filed today, the Court enters the following order.

**WHEREAS** this matter has come before this Court upon motion of Plaintiff Securities and Exchange Commission ("SEC") to appoint a receiver in the above-captioned action; and,

**WHEREAS** the Court finds that, based on the record in these proceedings, the appointment of a receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets of the Receivership Entities (defined below);

**WHEREAS** the Court finds that: (a) there is a clear necessity for the receivership to protect defrauded investors' interest in property; (b) legal and less drastic equitable remedies are inadequate; and (c) the benefits of a receivership outweigh the burdens on the affected parties.

**WHEREAS** the Court finds that: (a) a receiver is necessary to manage the Receivership Entities' properties to preserve and protect the value of such properties; (b) Defendant Timothy Barton ("Barton") has misused and mismanaged the Receivership Entities' properties and has, and is likely to continue to, misuse, dissipate and/or conceal investor funds and assets obtained with, or that otherwise benefited from, investor funds; (c) certain Receivership Entities and their assets are subject to liens, lawsuits, and foreclosures that threaten to further diminish their value without the protection of a receiver that would have the power to stay litigation and foreclosures, among other powers; (d) there is a substantial risk that Barton, the Receivership Entities, and other entities that Barton directly or indirectly controls do not hold assets sufficient to satisfy the potential disgorgement of ill-gotten gains for the benefit of investors; (e) absent a receiver to manage, maximize, and protect the value of the Receivership Entities' assets, the investors' interest in these properties is at substantial risk; and (f) these benefits outweigh the burden on Barton.

**WHEREAS** the Court finds that each of the Receivership Entities received or

benefited from assets traceable to Barton's alleged fraudulent activities that are the subject of this litigation.

**WHEREAS** this Court has subject matter jurisdiction over this action and personal jurisdiction over the Receivership Entities, and venue properly lies in this district.

**WHEREAS**, the Court finds that the SEC has brought this action to enforce the federal securities laws, in furtherance of the SEC's police and regulatory powers, and the relief sought by the SEC and provided in this Order is in the public interest by preserving the illicit proceeds of fraudulent conduct, penalizing past unlawful conduct and deterring future wrongdoing, and is not in furtherance of a pecuniary purpose, and therefore, the Court concludes that the entry of this Order is excepted from the automatic stay pursuant to 11 U.S.C. §362(b)(4).

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The Court hereby takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of the following entities, each of which received or benefited from assets traceable to Barton's alleged fraudulent activities that are the subject of this litigation (collectively, "Receivership Entities"):

2. 126 Villita, LLC

3. 2999TC Acquisitions LLC

4. 2999TC JMJ CMGR, LLC (Delaware)

5. AVG West, LLC

6. BEE2019, LLC

7. BM318, LLC

8. Broadview Holdings Trust

9. Carnegie Development, LLC

10. D4DS LLC

11. D4FR LLC

12. D4IN, LLC (Texas)

13. D4KL, LLC

14. D4MC, LLC (Texas)

15. D4OP, LLC

16. DJD Land Partners, LLC

17. Enoch Investments, LLC

18. FHC Acquisition, LLC

19. Gillespie Villas, LLC

20. Goldmark Hospitality, LLC

21. HR Sterling, LLC

22. JMJ Acquisitions, LLC

23. JMJ Development LLC (f/k/a JMJ Development, Inc.)

24. JMJ Hospitality, LLC

25. JMJ VC Management, LLC

26. JMJAV, LLC

27. JMJD4, LLC (Delaware)

28. JMR100, LLC

29. LaJolla Construction Management, LLC

30. LC Aledo TX, LLC

31. LDG001, LLC

32. Lynco Ventures, LLC

33. Mansions Apartment Homes at Marine Creek, LLC

34. Marine Creek SP, LLC

35. MO 2999TC, LLC

36. Northstar PM, LLC (Texas)

37. Orchard Farms Village, LLC

38. Ridgeview Addition, LLC (Texas)

39. Seagoville Farms, LLC

40. SF Rock Creek, LLC

41. TC Hall, LLC

42. Titan Investments, LLC a/k/a Titan 2022 Investments, LLC

43. Venus59, LLC

44. Villita Development, LLC

45. Villita Towers, LLC

46. WALL007, LLC

47. WALL009, LLC

48. WALL010, LLC

49. WALL011, LLC

50. WALL012, LLC

51. WALL016, LLC

52. WALL017, LLC

53. WALL018, LLC

54. WALL019, LLC

55. WRL2019, LLC (Texas)

2. Until further Order of this Court, Cortney C. Thomas is hereby appointed to serve without bond as receiver (the "Receiver") of the Receivership Entities.

3. The Receiver shall have all powers, authorities, rights, and privileges heretofore possessed by the officers, directors, trustees, managers and general and limited partners of the entity Receivership Entities under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Rule 66 of the Federal Rules of Civil Procedure.

## I. GENERAL POWERS AND DUTIES OF RECEIVER

4. The trustees, directors, officers, managers, employees, investment advisers, accountants, attorneys and other agents of the Receivership Entities are hereby dismissed and the powers of any general partners, directors and/or managers are hereby suspended. Such persons and entities shall have no authority with respect to the Receivership Entities' operations or assets, except to the extent as may hereafter be expressly granted by the Receiver. The Receiver shall assume and control the operations of the Receivership Entities and shall pursue and preserve all of their claims.

5. No person holding or claiming any position of any sort with any of the Receivership Entities shall possess any authority to act by or on behalf of any of the Receivership Entities.

6. Subject to the specific provisions in Sections II through XII below, the Receiver shall have the following general powers and duties:

A. To use reasonable efforts to determine the nature, location, and value of all property interests of the Receivership Entities, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Entities own, possess, have a beneficial interest in, or control directly or indirectly ("Receivership Property" or, collectively, the "Receivership Estates");

B. To take custody, control, and possession of all Receivership Property and records relevant thereto from the Receivership Entities; to sue for and collect, recover, receive, and take into possession from third parties all Receivership Property and records relevant thereto;

C. To manage, control, operate, and maintain the Receivership Estates and hold in his possession, custody, and control all Receivership Property, pending further Order of this Court;

D. To use Receivership Property for the benefit of the Receivership Estates, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

E. To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, trustees, and agents of the Receivership Entities;

F. To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders, or auctioneers;

G. To take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation, concealment, or inequitable distribution of Receivership Property;

H. Enter into and cancel contracts and purchase insurance as the Receiver deems necessary or advisable;

G. The Receiver is authorized to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure;

I. To bring such legal actions based in law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver;

J. To pursue, resist, defend, compromise or otherwise dispose of all suits, actions, claims, and demands which may now be pending or which may be brought by or asserted against the Receivership Entities; and,

K. To take such other action as may be approved by this Court.

## II. ACCESS TO INFORMATION

7. The individual Receivership Entities and the past and/or present officers, directors, agents, managers, general and limited partners, trustees, attorneys, accountants, and employees of the entity Receivership Entities, as well as those acting in their place, are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Entities and/or all Receivership Property; such information shall include but not be limited to books, records, documents, accounts, and all other instruments and papers.

8. Within ten (10) days of the entry of this Order, the Receivership Entities shall file with the Court and serve upon the Receiver and the SEC a sworn statement, listing: (a) the identity, location, and estimated value of all Receivership Property; (b) all employees (and job titles thereof), other personnel, attorneys, accountants, and

any other agents or contractors of the Receivership Entities; and, (c) the names, addresses, and amounts of claims of all known creditors of the Receivership Entities.

9. Within twenty (20) days of the entry of this Order, the Receivership Entities shall file with the Court and serve upon the Receiver and the SEC a sworn statement and accounting, with complete documentation, covering the period from January 1, 2017 to the present:

> A. Of all Receivership Property, wherever located, held by or in the name of the Receivership Entities, or in which any of them, directly or indirectly, has or had any beneficial interest, or over which any of them maintained or maintains and/or exercised or exercises control, including, but not limited to: (a) all securities, investments, funds, real estate, automobiles, jewelry, and other assets, stating the location of each; and (b) any and all accounts, including all funds held in such accounts, with any bank, brokerage, or other financial institution held by, in the name of, or for the benefit of any of them, directly or indirectly, or over which any of them maintained or maintains and/or exercised or exercises any direct or indirect control, or in which any of them had or has a direct or indirect beneficial interest, including the account statements from each bank, brokerage, or other financial institution;
>
> B. Identifying every account at every bank, brokerage, or other financial institution: (a) over which Receivership Entities have signatory authority; and (b) opened by, in the name of, or for the benefit of, or used by, the Receivership Entities;
>
> C. Identifying all credit, bank, charge, debit, or other deferred payment card issued to or used by each Receivership Defendant, including but not limited to the issuing institution, the card or account number(s), all persons or entities to which a card was issued and/or with authority to use a card, the balance of each account and/or card as of the most recent billing statement, and all statements for the last twelve (12) months;
>
> D. Of all assets received by any of them from any person or entity, including the value, location, and disposition of any assets so received;
>
> E. Of all funds received by the Receivership Entities, and each of them, in any way related, directly or indirectly, to the conduct alleged in the SEC's Complaint. The submission must clearly identify, among other things,

all investors, the securities they purchased, the date and amount of their investments, and the current location of such funds;

F. Of all expenditures exceeding $1,000 made by any of them, including those made on their behalf by any person or entity; and

G. Of all transfers of assets made by any of them.

10. Within thirty (30) days of the entry of this Order, the Receivership Entities shall provide to the Receiver and the SEC copies of the Receivership Entities' federal income tax returns for the years 2017 through 2021 with all relevant and necessary underlying documentation.

11. The Receivership Entities and the Receivership Entities' past and/or present officers, directors, agents, attorneys, managers, shareholders, employees, accountants, debtors, creditors, managers and general and limited partners, and other appropriate persons or entities shall answer under oath to the Receiver all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the Receivership Entities, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Entities.

12. The Receivership Entities are required to assist the Receiver in fulfilling his duties and obligations. As such, they must respond promptly and truthfully to all requests for information and documents from the Receiver.

## III. <u>ACCESS TO BOOKS, RECORDS, AND ACCOUNTS</u>

13. The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books and records, and all other documents or instruments relating to the Receivership Entities. All persons and entities having

control, custody, or possession of any Receivership Property are hereby directed to turn such property over to the Receiver.

14. The Receivership Entities, as well as their agents, servants, employees, attorneys, any persons acting for or on behalf of the Receivership Entities, and any persons receiving notice of this Order by personal service, email, facsimile transmission, or otherwise, having possession of the property, business, books, records, accounts, or assets of the Receivership Entities are hereby directed to deliver the same to the Receiver, his agents, and/or employees.

15. All banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody, or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, any of the Receivership Entities that receive actual notice of this Order by personal service, email, facsimile transmission, or otherwise shall:

A. Not liquidate, transfer, sell, convey, or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Entities except upon instructions from the Receiver;

B. Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

C. Within five (5) business days of receipt of that notice, file with the Court and serve on the Receiver and counsel for the SEC a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and,

D. Cooperate expeditiously in providing information and transferring funds, assets, and accounts to the Receiver or at the direction of the Receiver.

## IV. ACCESS TO REAL AND PERSONAL PROPERTY

16. The Receiver is authorized to take immediate possession of all personal property of the Receivership Entities, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies, and equipment.

17. The Receiver is authorized to take immediate possession of all real property of the Receivership Entities, wherever located, including but not limited to all ownership and leasehold interests and fixtures. Upon receiving actual notice of this Order by personal service, email, facsimile transmission or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing, or erasing anything on such premises.

18. The Receivership Entities, all persons acting on behalf of any Receivership Defendant, and any person who receives actual or constructive notice of this Order who has or had possession or control over any Receivership Assets, is directed to:

A. Hold and retain any such Receivership Assets that are within his or her control and prohibit any person or entity from assigning, concealing, converting, disbursing, dissipating, encumbering, liquidating, loaning,

pledging, selling, spending, transferring, or withdrawing any such Asset except:

1. As directed by further order of the Court; or

2. As directed in writing by the Receiver.

B. Within five (5) business days after being served a copy of this Order, provide the Receiver a sworn statement setting forth:

1. The account number and other identifying information for any such Receivership Asset belonging to, for the use or benefit of, under the control of, or subject to access by any Defendant or Receivership Defendant;

2. The balance of each such account, or a description of the nature and value of such Asset as of the close of business on the day on which this Order is received, and, if the account or other Asset has been closed or removed, or more than $5,000 withdrawn or transferred from it, on or after March 1, 2021, the date of the closure or removal of the funds, the total funds removed or transferred, and the name of the person or entity to whom such account or other Asset was remitted;

3. All keys, codes, and passwords, entry codes, combinations to locks, and information or devices required to open or gain access to any Asset or Document, including, but not limited to, access to the business premises, computer servers, networks, or databases, or telecommunications systems or devices;

4. The identification and location of any safe deposit box, commercial mailbox, or storage facility belonging to, for the use or benefit of, under the control of, or subject to access by any Defendant or Receivership Entity, and if the safe deposit box, storage facility, commercial mailbox, or storage facility has been closed or removed, the date closed or removed;

5. Within five (5) business days of a written request from the Receiver, provide the Receiver copies of all Documents relating to each Receivership Asset, including, but not limited to account applications, statements, corporate resolutions, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

19. In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the premises described above. The Receiver shall have exclusive control of the keys. The Receivership Entities, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

20. The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of the Receivership Entities, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

21. Upon the request of the Receiver, the United States Marshal Service, in any judicial district, is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody, and control of, or identify the location of, any assets, records, or other materials belonging to the Receivership Estate.

## V. REPATRIATION OF ASSETS AND DOCUMENTS

22. Immediately upon service of this Order, any person or entity with possession or control over any Receivership Assets shall:

> A. Take such steps as are necessary to transfer to the United States all Documents and Assets that are located outside the United States and belong to, are for the use or benefit of, under the control of, or subject to access by any Defendant or Receivership Entity; and
>
> B. Hold and retain all repatriated Assets and prevent the disposition, transfer, or dissipation of such Assets except as required by this Order.

23. Receivership Entities, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are preliminarily restrained and enjoined from taking any action that may result in the encumbrance or dissipation of foreign Assets, or in the hindrance of the repatriation required by this Order, including:

A. Sending any statement, letter, fax, email or wire transmission, telephoning, or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time as all Assets have been fully repatriated according to Section VIII of this Order; or

B. Notifying any trustee, protector, or other agent of any Defendant or Receivership Entity of the existence of this Order, or of the fact that repatriation is required under a court Order, until such time as all Assets have been fully repatriated according to Section VIII of this Order.

## VI. NOTICE TO THIRD PARTIES

24. Defendants and the Receivership Entities shall immediately provide a copy of this Order to each affiliate, sales entity, successor, assign, member, officer, director, employee, agent, independent contractor, client, servant, attorney, subsidiary, division, and representative of any Defendant or Receivership Defendant. Within ten (10) business days following service of this Order, Defendants and Receivership Entities shall serve on the Receiver a declaration identifying the name, title, address, telephone number, date of service, and manner of service of each person Defendants or Receivership Entities served with a copy of this Order in compliance with this provision.

25. Copies of this Order may be served by the Receiver by any means, including U.S. first class mail, overnight delivery, facsimile, electronic mail, or personally by agents or employees of the Receiver, by any law enforcement agency, or by process server, upon any person, including financial institutions, that may have possession, custody, or control over any Asset or Document belonging to, for the use or benefit of, under the control of, or subject to access by any Receivership Defendant, or that may otherwise be subject to any provision of this Order. Service upon any branch or office of any financial institution shall constitute service upon the entire financial institution.

26. The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers, and general and limited partners of the Receivership Entities, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

27. All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Receivership Defendant shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the Receivership Defendant had received such payment.

28. In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity, or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estates. All government

offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the SEC.

29. The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations, or activities of any of the Receivership Entities (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Entities.

30. The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail. The Receivership Entities shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. All personal mail of any individual Receivership Entities, and/or any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mailbox, depository, business or service, or mail courier or delivery service, hired, rented, or used by the Receivership Entities. The Receivership Entities shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository, or courier service.

31. Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, garbage, or trash removal services to the Receivership

Entities shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

## VII. INJUNCTION AGAINST INTERFERENCE WITH RECEIVER

32. The Receivership Entities and all persons receiving notice of this Order by personal service, email, facsimile or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

A. Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include but are not limited to using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property;

B. Hinder, obstruct, or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to concealing, destroying, or altering records or information;

C. Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to releasing claims or disposing, transferring, exchanging, assigning, or in any way conveying any Receivership Property, enforcing judgments, assessments, or claims against any Receivership Property or any Receivership Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke, or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement, or other agreement executed by any Receivership Defendant or which otherwise affects any Receivership Property;

D. Create, operate, or exercise any control over any new business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship or corporation, without first providing the Receiver with a written statement disclosing: (1) the name of the business entity; (2) the address, telephone number, e-mail address, and website address of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities; or,

E. Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estates.

## VIII. COOPERATION WITH THE RECEIVER

33. Defendants and Receivership Entities, and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, whether acting directly or indirectly and all persons who receive actual notice of this Order, shall fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the Assets and Documents of the Receivership Entities. This cooperation and assistance shall include, but is not limited to:

A. Providing information to the Receiver as directed above or that the Receiver deems necessary to exercise the authority and discharge the responsibilities delegated to the Receiver under this Order;

B. Advising all persons who owe money to the Receivership Entities that all debts should be paid directly to the Receiver; and

C. Transferring funds at the Receiver's direction and producing Documents related to the Assets and sales of the Receivership Entities. The entities obligated to cooperate with the Receiver under this provision include financial institutions and persons that have transacted business with the Receivership Entities. The Receiver shall promptly notify the Court and SEC counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

## IX. STAY OF LITIGATION

34. As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the SEC related to the above-captioned enforcement action, are stayed until further Order of this Court:

All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever located; (c) any of the Receivership Entities, including subsidiaries and partnerships; or, (d) any of the Receivership Entities' past or present officers, directors, managers, agents, parent or affiliated entities, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

35. The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

36. All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court. Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Entities against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

## X. MANAGING ASSETS

37. For each of the Receivership Estates, the Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent Receivership Property (the "Receivership Funds").

38. The Receiver's deposit account shall be entitled "Receiver's Account, Estate of Barton Companies" together with the name of the action.

39. The Receiver may, without further Order of this Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property.

40. Subject to Paragraph 42 immediately below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estates, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property.

41. Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estates.

42. The Receiver is authorized to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Estates, including making legally required payments to creditors, employees, and agents of the Receivership Estates and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

43. The Receiver shall take all necessary steps to enable the Receivership Funds to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations.

## XI. INVESTIGATE AND PROSECUTE CLAIMS

44. The Receiver is authorized, empowered, and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal, or foreign court or proceeding of any kind as may in his discretion, and in consultation with SEC counsel, be advisable or proper to recover and/or conserve Receivership Property.

45. Subject to his obligation to expend receivership funds in a reasonable and cost-effective manner, the Receiver is authorized, empowered, and directed to investigate the manner in which the financial and business affairs of the Receivership Entities were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate; the Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from this Court as may be necessary to enforce this Order. Where appropriate, the Receiver should provide prior notice to Counsel for the SEC before commencing investigations and/or actions.

46. The Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by all entity Receivership Entities.

47. The Receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, his Retained Personnel (as that term is defined below), and the Receivership Estate.

## XII. BANKRUPTCY FILING

48. Effective immediately, the Receiver, as sole and exclusive officer, director and managing member of Wall007, LLC, Wall009, LLC, Wall010, LLC, Wall011, LLC, Wall012, LLC, Wall016, LLC, Wall017, LLC, Wall018, LLC, and Wall019, LLC (collectively, "Wall Entities"), shall possess sole and exclusive authority and control over the Wall Entities, as debtors-in-possession, in their respective Chapter 11 cases titled *In re WALL007 LLC, et al.*, No. 22-41049 (Bankr. E.D. Tex.) (the "Bankruptcy Cases") pending in the U.S. Bankruptcy Court for the Eastern District of Texas (the "Bankruptcy Court"). The employment of any and all other officers, directors, managers or other employees of the Wall Entities is and are hereby terminated by the Court. All such persons shall comply with the applicable provisions of this Order.

49. Within thirty (30) days of the entry of this Order, the Receiver shall report to this Court as to whether the Bankruptcy Cases should continue in Chapter 11, or be converted to Chapter 7, dismissed or suspended during the course of the receivership. The Receiver shall file the appropriate pleadings with the Court and the Bankruptcy Court effectuating this Order.

50. The Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for other Receivership Entities. If a Receivership Defendant is (or has been) placed in

bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estates as, a debtor in possession. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity. Pursuant to Paragraph 3 above, the Receiver is vested with management authority for all entity Receivership Entities and may therefore file and manage a Chapter 11 petition.

51. All persons and entities, other than the Receiver, are barred from commencing any bankruptcy proceedings against any of the Receivership Entities.

## XIII. LIABILITY OF RECEIVER

52. Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

53. The Receiver and his agents, acting within scope of such agency ("Retained Personnel"), are entitled to rely on all rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel.

54. This Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

55. In the event the Receiver decides to resign, the Receiver shall first give written notice to the SEC's counsel of record and the Court of its intention, and the

resignation shall not be effective until the Court appoints a successor. The Receiver shall then follow such instructions as the Court may provide.

## XIV. RECOMMENDATIONS AND REPORTS

56. The Receiver is authorized, empowered, and directed to develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Property (the "Liquidation Plan").

57. Within ninety (90) days of the entry date of this Order, the Receiver shall file the Liquidation Plan in the above-captioned action, with service copies to counsel of record.

58. Within thirty (30) days after the end of each subsequent calendar quarter following the date on which the Receiver files his Liquidation Plan, the Receiver shall file and serve a full report and accounting of each Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Property, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estates.

59. The Quarterly Status Report shall contain the following:

A. A summary of the operations of the Receiver;

B. The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

C. A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

D. A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

E. A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments);

F. A list of all known creditors with their addresses and the amounts of their claims;

G. The status of Creditor Claims Proceedings, after such proceedings have been commenced; and,

H. The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

60. On the request of the SEC, the Receiver shall provide the SEC with any documentation that the SEC deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the SEC's mission.

## XV. FEES, EXPENSES, AND ACCOUNTINGS

61. Subject to the paragraphs below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership. Further, prior Court approval is not required for payments of applicable federal, state, or local taxes.

62. Subject to the paragraph immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order. The Receiver shall not engage any

Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

63. The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates. Such compensation shall require the prior approval of the Court.

64. Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estates (the "Quarterly Fee Applications"). At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the SEC a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by SEC staff.

65. All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership. At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

66. Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court. The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

67. Each Quarterly Fee Application shall:

A. Contain representations that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) unless previously disclosed to and approved by the Court, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

68. At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by SEC staff, as well as the Receiver's final application for compensation and expense reimbursement.

**IT IS SO ORDERED**, this 29th day of November, 2023.



BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

| | | |
|---|---|---|
| BM318, LLC<br>13901 Midway Road<br>Suite 102<br>Dallas, TX 75244-4388 | Joyce W. Lindauer Attorney, PLLC<br>c/o Ross & Smith, PC<br>Attn: Frances A. Smith<br>700 N. Pearl Street, Ste. 1610<br>Dallas, TX 75201-7549 | Citizens Bank<br>c/o Scott A. Ritcheson<br>Ritcheson, Lauffer & Vincent, P.C.<br>821 ESE Loop 323, Ste. 530<br>Tyler, TX 75701-9779 |
| First Bank Texas<br>100 Willow Bend Dr.<br>Willow Park, TX 76008-5746 | Parker CAD<br>Linebarger Goggan Blair & Sampson<br>c/o John Turner<br>2777 Stemmons Frwy., Ste. 1000<br>Dallas, TX 75207-2328 | Attorney General of Texas<br>Bankruptcy Div.<br>P. O. Box 12548<br>Austin, TX 78711-2548 |
| Barron Stark Engineers<br>6221 Southwest Blvd., Ste. 100<br>Fort Worth, TX 76132-1078 | Carnegie Development LLC<br>1755 Wittington Pl., Ste. 340<br>Dallas, TX 75234-1930 | Coats Rose<br>14755 Preston Rd., Ste. 600<br>Dallas, TX 75254-6825 |
| Texas Comptroller of Public Accounts<br>Revenue Accounting Div. – Bankruptcy Section<br>P. O. Box 13528<br>Austin, TX 78711-3528 | Dixon Water Foundation<br>c/o Josh Botts<br>Munsch Hardt Kopf & Harr, P.C.<br>500 N. Akard St., Ste. 4000<br>Dallas, TX 75201-6659 | GEO Services LLC<br>P. O. Box 32564<br>Knoxville, TX 37930-2564 |
| HR Sterling LLC<br>14819 Frisco Ranch Dr.<br>Little Elm TX 75058-2753 | Internal Revenue Service<br>Mail Code DAL-5020<br>1100 Commerce St.<br>Dallas, TX 75242-1100 | JMJ Development LLC<br>1755 Wittington Pl., Ste. 340<br>Dallas, TX 75234-1930 |
| Khudabuksh Walji<br>Law Office of K. Walji<br>10701 Corporate Dr., Ste. 350<br>Stafford, TX 77477-4091 | Robert W. Buchholz<br>420 S. Cesar Chavez Blvd., Ste. 300<br>Dallas, TX 75201-5817 | South Central Water Company<br>P. O. Box 570177<br>Houston, TX 77257-0177 |
| Southern Star Capital<br>d/b/a Reliance Mortgage Company<br>5220 Spring Valley Rd., Ste. 602<br>Dallas, TX 75254-1952 | Southern Star Capital, LLC<br>c/o Robert W. Buchholz<br>555 Republic Dr., Ste. 490<br>Plano, TX 75074-8848 | U. S. Trustee's Office<br>1100 Commerce St., Rm. 9C60<br>Dallas, TX 75242-1011 |
| U. S. Attny. General<br>10th and Constitution Ave., NW<br>Main Justice Bldg., Rm. 5111<br>Washington, DC 20530-0001 | United States Trustee<br>1100 Commerce St., Rm. 976<br>Dallas, TX 75242-1011 | Joyce W. Lindauer<br>Joyce W. Lindauer Attorney, PLLC<br>1412 Main St., Ste. 500<br>Dallas, TX 75202-4042 |
| Cort Thomas<br>c/o Charlene Koonce<br>Brown Fox PLLC<br>8111 Preston Rd., Ste. 300<br>Dallas, TX 75225 | Lumar Land & Cattle<br>c/o Bobby Forshey<br>Forshey & Prostok, LLP<br>777 Main Street, Suite 1550<br>Fort Worth, TX 76102 | Lumar Land & Cattle<br>c/o Kimberly Harris, Josh Shephard<br>Quilling Selander<br>2001 Bryan St., Suite 1800<br>Dallas, TX 75201 |
| First Bank Texas<br>c/o Mark Petrocchi<br>Griffith, Jay & Michel, LLP<br>2200 Forest Park Blvd.<br>Fort Worth, TX 76110 | | |