IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | . | Case No. 20-42789-MXM-11 |
| BM318, LLC, | . | |
| Debtor. | . | |
| BM318, LLC, *et al.*, | . | Adv. No. 21-04051-MXM |
| Plaintiffs, | . | |
| v. | . | |
| THE DIXON WATER FOUNDATION, *et al.*, | . | |
| Defendants. | . | Tuesday, November 12, 2024<br>10:39 A.M. |

TRANSCRIPT OF HEARING ON
MOTION TO ENFORCE SETTLEMENT AND TO DISSOLVE AND EXPUNGE SECOND LIS PENDENS FILED BY TIMOTHY BARTON FILED BY INTERESTED PARTY LUMAR LAND & CATTLE, LLC (166)
AND MOTION TO ENFORCE SETTLEMENT AND TO DISSOLVE AND EXPUNGE SECOND LIS PENDENS FILED BY TIMOTHY BARTON FILED BY INTERVENOR-PLAINTIFF LUMAR LAND & CATTLE, LLC (163)
BEFORE THE HONORABLE MARK X. MULLIN
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES VIA WEBEX ON THE NEXT PAGE.

Audio Recorder: Jeanette Almaraz
Eldon B. Mahon U.S. Courthouse
501 West 10th Street
Fort Worth, Texas 76102

Transcription Service: Liberty Transcripts
9107 Topridge Drive
Austin, Texas 78750
(847) 848-4907
dbpatel1180@gmail.com
www.libertytranscripts.com

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

APPEARANCES VIA WEBEX:

For the Plaintiff Lumar Land & Cattle, LLC:
Forshey & Prostok, LLP
BY: J. ROBERT FORSHEY, ESQUIRE
777 Main Street, Suite 1550
Fort Worth, Texas 76102
(817) 877-8855
bforshey@forsheyprostok.com

Quilling, Selander, Lownds, Winslett & Moser
BY: JOSHUA LEE SHEPHERD, ESQ.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201

For the Defendant The Dixon Water Foundation:
Munsch Hardt Kopf & Harr, P.C.
BY: DEBORAH M. PERRY, ESQUIRE
3800 Lincoln Plaza
500 North Akard Street
Dallas, Texas 75201
(214) 855-7565
dperry@munsch.com

Munsch Hardt Kopf & Harr, P.C.
BY: JULIAN PRESTON VASEK, ESQUIRE
3800 Lincoln Plaza
500 North Akard Street
Dallas, Texas 75201
(214) 855-7528
jvasek@munsch.com

For Interested Party Timothy Barton:
Farmer & Coker, PLLC
BY: KAITLYN COKER, ESQUIRE
901 Main Street, Suite 5330
Dallas, Texas 75202
(254) 640-9510
kaitlyn@farmercoker.com

For Cortney C. Thomas, Receiver:
Brown Fox PLLC
BY: C. Alan Carrillo
8111 Preston Road, Suite 300
Dallas, Texas 75225
(214) 327-5000
alan@brownfoxlaw.com

* * * * *

I N D E X


| | | Page |
|---|---|---|
| WITNESSES: | | |
| FOR INTERESTED PARTY TIMOTHY BARTON: | | |
| TIMOTHY BARTON | | |
| | Direct Examination by Ms. Coker | 24 |
| | Cross-Examination by Mr. Forshey | 31 |

EXHIBITS:

FOR THE PLAINTIFFS:

| | | ID | EVD |
|---|---|---|---|
| 3 | Order approving settlement | 8 | 9 |
| 4 | Mirror order approving settlement | 8 | 9 |
| 5 | Transcript of ruling | 8 | 9 |
| 6 | Final agreed order | 8 | 9 |
| 7 | Document found at Docket 171 | 8 | 9 |
| 8 | Document found at Docket 171 | 8 | 9 |
| 9 | Document found at Docket 171 | 8 | 9 |
| 10 | Form of release of lis pendens | 8 | 9 |
| 11 | Notice of lis pendens | 8 | 9 |
| 12 | Order appointing Receiver | 8 | 9 |
| 13 | Document found at Docket 171 | 8 | 9 |
| 14 | Document found at Docket 171 | 8 | 9 |

(Proceedings commenced at 10:39 a.m.)

THE COURT: Okay. All right. I think we're ready for appearances. The Court will call both of the BM318, LLC bankruptcy case as well as the adversary, BM318, LLC *et al.* versus Dixon Water.

Ms. Chou?

MS. CHOU: Good morning, Your Honor.

Emily Chou, Forshey Prostok, along with my partner, Bobby Forshey, here for Lumar Land & Cattle.

THE COURT: All right.

Ms. Coker? Good morning, ma'am.

MS. COKER: Good morning.

Kaitlyn Coker of Farmer & Coker here on behalf of Timothy Barton.

THE COURT: All right.

Ms. Perry, good morning.

MS. PERRY: Good morning, Your Honor.

Deborah Perry on behalf of the Dixon Water Foundation.

THE COURT: All right. That takes care of the appearances here in the courtroom. Now we'll venture off to the video. And if your video is turned on, I'll recognize you. And once I do, if you could simply restate your name and the party you represent for the record, that would be very much appreciated.

Mr. Forshey, you don't need to since Ms. Chou has already entered your appearance, but I wanted to say good morning to you, sir. And your mouth went, but your voice did not come across. So you can try to work on that while we get the other appearances.

Mr. Shepherd, good morning to you.

MR. SHEPHERD: Good morning, Your Honor.

Josh Shepherd on behalf of Lumar Land & Cattle, as well.

THE COURT: All right. And Ms. Lindauer?

MS. LINDAUER: Your Honor, Joyce Lindauer here on behalf of my firm. I'm logged in twice. I'm going to exit and come back.

THE COURT: All right.

MS. LINDAUER: Thank you.

THE COURT: Thank you.

Mr. Carrillo, good morning to you, sir.

MR. CARRILLO: Good morning, Your Honor.

Alan Carrillo on behalf of the Receiver, Cort Thomas.

THE COURT: All right. Do any other counsel wish to make an appearance? All right, it does appear that Mr. Forshey and Ms. Lindauer are going to re-engage.

Well we do have, it's similar matters, although I do want to make the record pretty clear. In the underlying

bankruptcy case, we have the motion to enforce at Docket 166, which has been joined by Dixon Water Foundation at Docket 171. Then in the adversary proceeding, we have, again, the motion to enforce filed at Docket 163. We have the joinder again by Dixon Water at Docket 170. But now we also have the objection by Mr. Barton at 169, and then a reply to that by Lumar Land & Cattle at Docket 172.

So I think for purposes of today, to make the record as clear as possible, the Court's going to deem the objection that was filed not only having been filed in the adversary proceeding, but also in the underlying bankruptcy case. I don't know if that was an argument you were going to make or not, but I think it's obvious that there has been an objection. It should apply to both motions, whether it's the bankruptcy or the underlying adversary. And the entire record for today will be the record for both the underlying bankruptcy as well as the adversary proceeding.

So with that, how would you like to proceed? Are we waiting for Mr. Forshey? Or, Ms. Chou, are you taking the lead?

MR. FORSHEY: Your Honor?

THE COURT: Yes.

MR. FORSHEY: Bobby Forshey. If you'll give me two minutes, I'll move downstairs to get a different computer. I've learned to have multiple computers ready in case

something goes wrong. So if you give me about two seconds, Your Honor, I'll be able to get back on to that computer.

THE COURT: Okay. I'm going to take about a minute because I'm going to go refill. So I'll be back in about a minute.

(Recess at 10:42 a.m./Reconvened at 10:43 a.m.)

THE COURT: All right. We are back on the record, and I see Mr. Forshey has rejoined.

All right. Mr. Forshey, can you hear us?

MR. FORSHEY: Yes, sir. I can hear you perfectly. Can you hear me, Your Honor?

THE COURT: Loud and clear. Thank you very much. So, Mr. Forshey --

MR. FORSHEY: I've learned through bitter experience to have a backup computer plugged in and ready to go, so run downstairs if there's a problem upstairs. So thank you for your patience.

THE COURT: Understood. No worries. The tech gremlins always seem to attack regardless of how well-prepared you might be. So with that --

MR. FORSHEY: And the screen showed the microphone should have been working, but anyway, that's (indiscernible).

Your Honor, Bobby Forshey. I'm here with Ms. Chou on behalf of Lumar Land & Cattle, the movant herein. I've conferred with Ms. Coker ahead of time, and we'd like to

offer our Exhibits 3 through 13 into evidence. My understanding is she has no objections. And I think that that also encompasses everything that she had marked on her witness and exhibit list.

THE COURT: Okay. So you said 1 through 13. You did file a witness and exhibit list 1 through 14. 14 -- do you want 1 through 13 or 1 through 14? I just want to make sure the record's clear.

MR. FORSHEY: I was going to offer 3 through 13.

THE COURT: Oh, 3 through 13.

MR. FORSHEY: Exhibit 1 is our motion. I just put it there for convenience for you to look at, whether you were a flipper or a clicker today. And then 2 is their response again, but they're just for convenience of reference.

THE COURT: All right. And I assume the Exhibit 14 is the same, or did you want to offer that?

MR. FORSHEY: Yes, sir.

THE COURT: All right. So --

MR. FORSHEY: I'll go ahead and offer --

THE COURT: Go ahead?

MR. FORSHEY: I'll go ahead and offer 14, as well.

THE COURT: All right. So Exhibits 3 through 14. No objection?

MS. COKER: No objection.

THE COURT: All right. Then Exhibits 3 through 14

are each admitted.

(Plaintiff's Exhibits 3 through 14 admitted into evidence)

THE COURT: And again, those can all be found at Docket Number 171 in the adversary proceeding.

MR. FORSHEY: Your Honor, to try to keep things very, very simple and straightforward, as you'll recall, we had a hearing and a settlement was approved. And after that was done and the initial lis pendens filed by BM318 was resolved, Mr. Barton struck back and filed another lis pendens over in Parker County based on an appeal of the receiver order.

And there are three simple reasons why that lis pendens doesn't work and should be struck. And they're very simple and very straightforward. Reason one, and the biggest thing we're arguing, is that that lis pendens is inconsistent with your orders that you entered approving the settlement.

Reason number two is that under the terms of the receivership order, Mr. Barton has been ousted from any post with BM318, and the only person that can exercise any responsibility or act on behalf of that entity is the Receiver, Cort Thomas.

Three, under the Texas statute, in order to file a lis pendens, the lawsuit must relate to Title II or an interest in real estate. On the face of it, the appeal of

the receiver order, which is in place now, does not deal with Title II or an interest in real property. For those reasons, we have asked you to strike this so that it no longer burdens our property, we can go forth and sell it.

To refresh the Court's memory briefly, and you probably remember this, we had a settlement that was approved. Mr. Thomas had two separate settlement agreements. One was with my client, Lumar. And the second one was with the Dixon Water Foundation, who was the owner of a large tract of land and who was our grantor.

Ultimately, the settlements were reached, motions were filed to approve the settlement, and on the day of the hearing, Mr. Barton appeared through counsel. He did not file a formal objection, but he did appear through counsel. He argued vehemently against the settlements. The Court listened to that, came back a few days later, made a rather extensive finding on the record overruling Barton's objections, and then the settlement was consummated.

There were two settlement orders. They have long since become final. They are final, and they, as I will show you, are entitled to full res judicata effect. What Barton has said is the Receiver order is subject to an appeal. And one of the things, if the Court -- we filed our response yesterday. I forgot yesterday was Veterans Day. Has the Court, I hope, had a chance to review our response?

THE COURT: Yes.

MR. FORSHEY: As we pointed out in there, an appeal under federal jurisprudence doesn't affect the validity of an order. You have to get a stay pending appeal. Mr. Barton did not get, not seek, nor did he obtain a stay pending appeal of the receiver order. And so where we find ourselves today is, even though he has appealed that, the receiver order still remains completely valid and effective in accordance with its terms.

I would ask the Court to look at a few of the exhibits that we have marked. Exhibit 3 is your order approving the settlement with the Foundation. Exhibit Number 4 is basically a mirror order that approves your settlement, or approves the settlement with my client, Lumar. Exhibit Number 5 is the transcript of your ruling where you overruled Mr. Barton's objections to that settlement.

Exhibit 6 is the final agreed order that was entered in connection with that lawsuit. BM318's claim to title in that land was based upon the adversary proceedings and some Chapter 5 avoidance actions. One, they asserted that the deed in lieu of foreclosure was a preference. The other, they said it was a Section 548 fraudulent transfer.

You will note that in Exhibit Number 6, all of those claims are dismissed with prejudice, and it encompasses not only claims actually asserted by any party, but any claim or

cause of action which could be asserted based upon the relief or the facts that are the subject matter of the lawsuit.

Then, if you would look back at Exhibit Number 10, we attach the form of our release of lis pendens to the final judgment. And Ms. Perry did the same on the one for our client. Exhibit Number 10 is actually the signed release of the lis pendens. And what I wanted to ask the Court to notice on that, at the bottom of Page 3 and over on the top of Page 4, for title purposes, we drafted this broader than just to release the lis pendens.

What it says is that the Receiver also releases all rights, title, interest, claims, and causes of action against the Lumar Land. They didn't just release the lis pendens. The Receiver released everything that could be raised in that.

Exhibit Number 11, Your Honor, is Barton's notice of lis pendens. We were very disappointed, as we were trying to close some transactions on our land, that the title company sent us and said, what about the lis pendens? I immediately sent back and said, well, what about it? It's been released of record. And they said, no, you need to look at this. And this is what they sent us.

This second notice of lis pendens is filed by Mr. Barton based upon his appeal of the receiver order. Now, you'll recall there are two separate lawsuits. There's the

lawsuit in front of you, and that lawsuit involved you exercising your exclusive in rem jurisdiction over this property, including the avoidance actions, to approve the settlement.

The other one is the SEC lawsuit over in district court in Dallas, which doesn't have any direct relationship to this property or these claims. However, I'd like the Court to notice on the bottom where Mr. Barton says, "This instrument was acknowledged for me by Tim Barton, manager and president of BM318, LLC, on behalf of such entity."

We would submit, Your Honor, that under Exhibit 12, which is the order appointing the Receiver, Mr. Barton is precluded from taking any such action. The order appointing Receiver was entered November 29, 2023. If you will look on Page 4 of that order, there's a long list of what Judge Starr called in his order the Receivership Entities. And the Receivership Entities are Barton entities that are believed to have received some fruits of his alleged fraudulent conduct.

Number seven, at the top of that page, is BM318, LLC, our Debtor. That ties in over on Page 6 and 7, Paragraphs 4 and 5 of Exhibit 12. Paragraph 4 in effect says that the current officers, managers, what have you, of the Receivership Entities are basically ousted. And the last sentence says, "The Receiver shall assume and control the

operations of the Receivership Entities and shall pursue and preserve all their claims."

Then if you look at the next paragraph, 5, it's very specific. "No person holding or claiming any position of any sort with any of the Receivership Entities shall possess any authority to act by or on behalf of any of the State Receivership Entities." Based on that, Your Honor, our position is that Barton simply could not execute anything on behalf of 318.

He did appeal, and we put that in the record. He did appeal that receivership order, and that is now currently on appeal at the Fifth Circuit. I checked it yesterday, and I didn't see that anything had been entered in terms of a decision. However, the authorities that we've cited to the Court are crystal clear that if he appeals this, unless he gets a stay pending appeal, then this order remains in effect according to its terms.

With that, Your Honor, we've asked the Court to remember that Mr. Barton's response confirmed two things that we suspected but weren't necessarily clear on the face of that lis pendens that he filed. The first one is he is purporting to act on behalf of BM318. He confirms that.

The second is it confirms that he is asserting an interest in the land that was the subject of the settlement. I'd ask the Court, Ms. Chou gave you a group of authorities

with some cases and stuff in there. Has the Court got that?

THE COURT: Yes. Yes.

MR. FORSHEY: Has the Court got that, Your Honor?

THE COURT: Yeah. Mr. Forshey, can you not hear me?

MR. FORSHEY: Yeah. I hear you now.

THE COURT: Okay. And the answer is yes, I have it.

MR. FORSHEY: Okay. The first case in there is called Adam v. Itech Oil Company. And that's a really good case for this because what it holds is that when a compromise is approved by the Bankruptcy Court under Rule 9019, that order is a final, appealable order, appealable as a matter of right. It is entitled to full res judicata treatment, and it forecloses anyone from asserting any rights which are inconsistent with the settlement.

In that particular case, there were some creditors who had asserted that they were creditors, and alternatively that they also had interest in an oil and gas well. The settlement treated them as creditors and not as interest owners. When they came back and sued the operator and the operator's president based on the idea that they were owners, Fifth Circuit said no, you're bound by that settlement, and you can't assert rights contrary to that.

That is exactly what Mr. Barton is doing here. He is asserting rights contrary to the settlement. It's contrary to your final judgment, and it's contrary to the

terms of everything that were done.

The second thing is going to be the receiver order. The parts we show there preclude him from doing anything on behalf of BM318. He clearly doesn't have standing to raise something on his own. He has to do it through BM318. He doesn't have any standing to file any such document or lis pendens.

And finally, we have included in here the statute, Section 12.007 of the Texas Property Code. And we put in here the cases that deal with this, and we don't get into this very often in bankruptcy. But behind Tab 3 is a Supreme Court case called Flores v. Havelman and it's a mercifully very short opinion.

And what they basically confirm there is that if what you're asserting is collateral to a title to or interest in the real estate, it won't support a lis pendens. And then we've got two cases behind that, In re Wolf, that -- a case In re Wolf behind that, behind Tab 4. And then we've got behind Tab Number 6 another case, Overick v. Tucci.

And what those cases basically say is that you have to have some close nexus between the lawsuit and either title to or an interest in the real estate. And if you don't, you can't have a lis pendens to do that. And so based on that, Your Honor, under the Texas statute, his appeal based upon the receivership order doesn't involve title to or an

interest in real estate.

We've also included, there's a specific Texas statute that allows on motion, that's Section 12.0071 of the Texas Property Code. That is clear that we can ask for, by motion, and that's behind Tab Number 10, to expunge the lis pendens. And they have the burden by preponderance evidence to show the probable validity of their real estate claim, which I don't think they can possibly do based on this record.

So we would ask, Your Honor, basically we think it's clear from the face of your orders in the settlement, the receivership order, and on the face of the appeal, that for the three reasons outlined, this lis pendens should be struck. It's contrary to your orders approving the settlement which are entitled full res judicata effect.

Second, it violates the receivership order, which expressly ousts Mr. Barton from ability to do this. And three, it doesn't comply with the Texas statute.

Now, I understand from -- there's a witness and exhibit list filed by Ms. Coker, and she listed Mr. Barton as a witness. I suspect Your Honor is going to be willing to listen to him, but I would point out, I can't imagine what Mr. Barton could testify to that would have any real bearing on this.

This is a legal matter of the interpretation of your

order and the documents in the settlement, and your interpretation of the receiver order and just the face of what he's appealing. And so we would assert that anything he might get up there and say regarding why he did this, his motivation, or what he's hoping to protect is simply irrelevant.

With that, we pass, Your Honor. Thank you.

THE COURT: All right. Thank you, Mr. Forshey.

Ms. Perry?

MS. PERRY: Good morning, Your Honor. Deborah Perry on behalf of the Dixon Water Foundation. I'm not going to rehash everything that Mr. Forshey said, but we join in everything, all the arguments he put forward in his opening.

I wanted to just make a couple of points. From our perspective, what Mr. Barton is seeking to do with the filing of this lis pendens is something he cannot accomplish under federal law. He's essentially trying to do an end run around your order in violation of your order, as well as in violation of another federal district Court's order, the receivership order.

As Mr. Forshey laid out, the settlements were approved by this Court. The claims and causes of action allegedly underpinning the lis pendens were dismissed with prejudice. Barton did not appeal the order approving the settlements, and he has not obtained a stay pending appeal of

the receivership order.

Important to note that, as Mr. Forshey said, the receivership order was entered last fall. It was immediately appealed. It was on appeal when Your Honor originally approved the settlements. There was no argument made that Your Honor should not be able to enter the orders approving the settlement as a result of the pending receivership order.

And a party or non-party, as the case may be, because in this case, I would argue Mr. Barton is a non-party. The parties who entered into the settlement were the Receiver on behalf of BM318, the Dixon Water Foundation, and Lumar Land & Cattle. Parties are always able to dismiss lawsuits with prejudice. That is what happened here.

Mr. Barton was not a party to the adversary proceeding. And I agree with Mr. Forshey, he does not have standing to file the lis pendens or, frankly, even to object, I would argue, to this motion to enforce the settlement. In addition, if a party were allowed to simply file the lis pendens when there is a binding federal court order that disposes of claims and causes of action, that would throw jurisprudence into chaos. It would essentially vitiate the requirement to get stays pending appeal.

If you could simply argue, well, I have appealed this order, so I can go file this lis pendens to protect those rights, then what is the point of the requirement to

get a motion to stay pending appeal?

I also agree with Mr. Forshey. I note that Mr. Barton has been designated as a witness, and I question any relevance of anything Mr. Barton would have to say on this point. It's certainly up to Your Honor as to whether or not the Court will entertain any testimony, but this is a very simple and straightforward motion to enforce the settlement. There really are no fact issues here that Mr. Barton could shed light on.

And for all of those reasons, we would ask the Court to approve and grant the motion to enforce the settlement, enter the order expunging the lis pendens. Thank you.

THE COURT: All right. Thank you, Ms. Perry.

Mr. Carrillo, any position that you'd like to take at this time?

MR. CARRILLO: Yes, Your Honor. Alan Carrillo on behalf of the Receiver, BM318, Cort Thomas. Thank you for your time. I'll keep my remarks brief.

The Receiver would affirm and echo everything that Lumar and Dixon's counsel have argued in this hearing. I'm here to represent the interests of the receivership. And I'm sorry I'm not there in person, Your Honor. I decided to appear virtually to save receivership assets because, frankly, this hearing and this shouldn't have happened. The lis pendens should never have been filed.

This is just another example in a long string of dilatory and obstructionist tactics that Mr. Barton is taking on a receivership that has now been pending for over two years, largely due to his efforts to undermine this Court's orders as well as the District Court's orders.

And so I'm here to represent the Receiver's interests and to echo Dixon and Lumar's arguments that this lis pendens is a brazen violation of the District Court's order appointing Receiver. That can be found at Docket 417 in the Receivership case, which is Number 22-CV-2118.

And in that order, Judge Starr includes quite a few provisions. But two that are incredibly important as it relates to this lis pendens is one in Section 1 of that order, Paragraphs 4 through 6, Cort Thomas, the Receiver, is empowered to act as an officer for all of the Receivership Entities, which includes the debtor, BM318. Mr. Barton, and all of his associates are stripped of their managerial authority over these entities, and only Mr. Thomas, the Receiver, has the ability to act on their behalf.

And the second provision, Your Honor, that's incredibly important is Section 7, Paragraph 32, where all third parties are instructed and ordered by the District Court to not interfere with the Receiver's efforts to reach settlement agreements and other decisions on behalf of the Receivership Entities. This lis pendens should never have

been filed, and the representation that Mr. Barton has made that he's acting on behalf of BM318 is absolutely false and a violation of the receivership order.

And so I would implore Ms. Coker, as an officer of the Court, to advise her client to voluntarily withdraw this lis pendens because it should not even be before the Court today. But if that does not happen, if Mr. Barton does not remove the lis pendens voluntarily, Your Honor, we ask that you would enforce your order, which is clearly in your jurisdiction, which was never appealed by Mr. Barton.

The settlement agreement was approved over his objections. He had an opportunity to object. And as Mr. Forshey and Ms. Perry have argued aptly today, the receivership order is in effect regardless of the appeal. It has not been stayed. It's been affirmed in several appeals and orders from the District Court and the Fifth Circuit up until this point.

And so we ask the Court to simply enforce its order and to grant Lumar's motion today to enforce the settlement agreement and expunge the lis pendens. And thank you so much for your time, Your Honor. And I'm sorry that we have to appear before you today to address this. But we thank you so much for your help in helping the District Court enforce the receivership order today. Thank you.

THE COURT: All right. Thank you. Before I go to

Ms. Coker, any other counsel wishing to make a statement in support of the motions, or the motion and the joinder?

All right, Ms. Coker, the podium is yours.

MS. COKER: Thank you, Your Honor. We are here today because my client, Timothy Barton, filed a lis pendens, not as an attack on this Court's authority, but as a measure of transparency, a notice to inform the public and potential buyers about ongoing litigation that could impact BM318's property interests.

Mr. Barton has an active appeal challenging the Receiver's authority which, if successful, would significantly affect property rights previously managed under that Receivership. The lis pendens serves as a temporary procedural safeguard while this appeal is pending.

Importantly, it does not interfere with Lumar's current ownership or control over the property. It simply provides notice aligning with the principles of fair disclosure. Lumar's request to expunge this lis pendens is premature. Removing it would risk misleading third parties by concealing unresolved litigation, potentially harming my client's appellate rights and future interests.

We ask that this Court maintain the lis pendens until a final decision on the appeal is rendered. Your Honor, that's my opening statement. I would ask if, once the evidence is presented, you'll allow Mr. Barton to share a few

words regarding his intent behind filing this lis pendens and the consequences that may arise from expunging it at this time.

THE COURT: I had assumed that Mr. Forshey had concluded his evidentiary record going through the exhibits that had been admitted. I should have asked, Ms. Perry, did you have any other exhibits?

MS. PERRY: We do not, Your Honor.

THE COURT: And I should have asked Mr. Carrillo the same thing. Any other evidence that you'd like to offer?

MR. CARRILLO: Your Honor, no.

THE COURT: All right. So we're at the evidentiary stage. You may put on -- you may offer whatever evidence you deem appropriate.

MS. COKER: We'd like to call Mr. Barton to the stand.

THE COURT: All right.

MR. BARTON: Good morning, Your Honor.

THE COURT: Good morning. Please raise your right hand, sir.

TIMOTHY BARTON, INTERESTED PARTY BARTON'S WITNESS, SWORN

THE COURT: Thank you, sir. You may have a seat.

DIRECT EXAMINATION

BY MS. COKER:

Q Mr. Barton, will you please state your name and your

relationship to BM318, LLC?

A Timothy Barton. I was the managing member and president of BM318 and created the LLC.

Q Can you describe your role and responsibilities with BM318 prior to the Receiver's appointment?

A I was the person that opened the entity, secured the opportunity to buy the property that was owned by BM318, and all the day-to-day responsibilities were mine.

Q How did you become involved with the property that is currently owned by Lumar?

A Mr. Jim Martin (phonetic) was acting as a broker for us looking at properties, and he brought this property to us. And he was our real estate broker on the acquisition and purchase of BM318.

Q How did you come to believe that you had an interest in ensuring that BM318's property rights were protected?

A Well, as we found in this Receivership, it's been vacated once by the Fifth Circuit for being invalid and totally vacated all the authority. I shouldn't say all the authority because I'm not a lawyer. All I know is the Fifth Circuit vacated the order. And when the Receivership applied for a second order, many of the companies that were in my control had been given back to me. There was -- many of them had been returned to me.

So in the same instance, as we expect a win on this

appeal before the Fifth Circuit, as the evidence still was not a trace for the order of the Fifth Circuit, we expect a win. And then this company, BM318, would be returned to me. The responsibility of BM318's creditors and the bankruptcy estate would fall back on my responsibility, and so I needed to protect all of those interests.

Q Can you explain why you filed an appeal over the second receivership order?

A The Fifth Circuit was very clear that there was supposed to be an exact tracing of the wall lender funds. And that description of what the wall lender funds and the tracing was not carried out per the order of the Fifth Circuit. And the Receiver gave a sampling as well as the non-accountant at the SEC.

Their role and title was accountant, but later we found that she was not an accountant, also gave a sampling. And the Fifth Circuit was clear in their directive of vacating the first time they needed a tracing before any entity could be taken. And therefore, that tracing was not done at all by the SEC before the second order, and there was no tracing evidence provided for that order.

Q What specific issues are you challenging in the appeal of the receivership order?

A For the receivership order, the validity of it and the taking of companies and all of the authority. One thing in

particular that I'm personally objecting to is that Judge Starr ordered that the Defendant, Timothy Barton, should be punished for his previous bad acts when I haven't been in a jury trial, I haven't been in front of a Court of my peers or anybody. So that in particular, we're arguing about the fact that they are taking companies that have no bearing or no involvement with Mr. Steve Wall's Wall Entities as minor JMJ.

Q To your understanding, what impact could a successful appeal have over the BM318's property interest?

A I think we have evidence in the second receivership order where Judge Starr put back the entities that were taken in the first Receivership and vacated by the Fifth Circuit. They were turned back over to me under an injunction at the moment, but nonetheless turned back to my ownership and control. And I would be left with their responsibilities, obligations, and liabilities.

Q Can you explain why you decided to file the lis pendens?

A Simply to put a notification to any buyer. You know, that Jim Martin's a very good broker. He's a very fast broker, and he's been working on selling this. In fact, we understand that it's a significantly improved price that he's marketing it in the public. And we've put forward that evidence.

So we just want to know to protect our assets of BM318, and also anybody that's buying it, there should be a

disclosure that there's a legal matter. And that's all that the lis pendens does. It just simply is a notification there's a legal matter, just like there could be a zoning problem. There could be any other due diligence issue. It could be a water rights problem. There's a notification, and I'm sure that Mr. Martin would be disclosing it anyway to any potential buyer so the lis pendens shouldn't be in effect.

Q What was your understanding of the purpose of the lis pendens?

A The purpose of the lis pendens is to notify anybody that's looking to purchase it that there is a legal challenge out there.

Q To your knowledge, does this lis pendens affect Lumar's current ownership over the property?

A Not at all.

Q Then how does this lis pendens help maintain transparency about the ongoing appeal?

A Because the appeal -- there's three appeals. The appeals do affect the authority, as in the first Receivership. If this Receivership is vacated again, which we expect it will be, the authority at which they entered into this agreement, the authority at which they acted will have been vacated. And not being a lawyer, but what I was explained, it's undone, whatever they've done. Therefore, the authority would be undone. So I think it's important to do it that

way.
Q In your understanding, does the lis pendens change the ownership of the property?
A Not at all.
Q Do you intend to prevent Lumar from using or managing the property by filing this lis pendens?
A Not at all.
Q Why do you believe it's important for potential buyers to know about the appeal?
A Because if they buy it, and there's *caveat emptor*, however they say that, buyer beware. But again, when there's an as-is, where-as sale, there is an obligation on the parties for whatever information they know to disclose to the buyers. So the lis pendens is a way that that's noticed for any potential buyer.
Q Do you believe that allowing potential buyers to be informed of unresolved litigation impacts the marketplace?
A Could you repeat the question?
Q Sure. I'll rephrase. Do you believe that allowing potential buyers to be informed of unresolved litigation benefits the marketplace?
A Yes, because if it's not disclosed, and as we have won in the past, and we pursue all our remedies and receive the property back, that person that in good faith was not told of these facts could be harmed and damaged and drawn into future

litigation where a simple notification would give him an opportunity to decide. He now knows for sure, and he can proceed or not.

Q Do you feel that maintaining the lis pendens until the appeal is resolved is consistent with a fair and transparent approach?

A Yes, because why wouldn't we want to know, why would we want any buyer to know that there is litigation issues out there?

Q If the lis pendens were removed now, do you believe that that could affect your legal rights if the appeal is successful?

A Well, again, not being a lawyer, but I have learned that unless you protect your rights and as they -- you know, no one fails to suggest that I have any resources to fight here. But if you don't file a stay, if you don't do something, then you're put in harm's way because you didn't do something. So not filing the lis pendens, not protecting what we understand are our rights, and somehow could be perceived as an admission that it was okay, and it's not. Sorry for my layman's version.

Q That's okay. Just to wrap up, why do you believe that it's fair and necessary to keep the lis pendens on record until the appeal is resolved?

A I think it's fair because there is the right to file the

lis pendens, and there is legal actions that are ongoing. And, again, when this is vacated and the property is turned back to me, the protection of the BM3 rights can be adhered to. I mean, even the settlement agreement speaks that until all appeals are exercised, the funds cannot be left to Mr. Carrillo's Receivership account. I don't know if they have.

But it says in the settlement agreement that until all appeals are exercised, so everybody knew that there was the likelihood of appeals. They knew that the first appeal was out. This is nothing that nobody didn't know about. So I think as everybody's a professional, there's a lis pendens notification. A sale can proceed with the buyer knowing what's going on.

MS. COKER: We'll pass the witness.

THE COURT: All right. Thank you, Ms. Coker.

Mr. Forshey, any cross-examination questions for Mr. Barton?

MR. FORSHEY: Yes, Your Honor. Could Ms. Coker present him with an exhibit notebook?

THE COURT: Of course.

THE WITNESS: Thank you. I have it, sir.

CROSS-EXAMINATION

BY MR. FORSHEY:

Q Mr. Barton, would you go back and look at Exhibit Number

13?
A Yes, sir.
Q There have been references to an appeal that you've made of the receiver order, correct?
A Yes.
Q Exhibit 13, is that your notice of appeal to which you are referring?
A If you'll give me a minute to read it, sir. That is the notice of appeal, yes.
Q Now, did you seek a stay pending appeal with respect to that appeal of the receiver order?
A We don't have the resources, so we did not.
Q So I would take it then, if you didn't seek one, there was no stay pending appeal ever entered as to the receivership order?
A Could you repeat the question?
Q No stay pending appeal has ever been issued with respect to the receivership order with respect to your appeal reflected in Exhibit 13?
A There is no stay.
Q Would you look at Exhibit 12 now?
A Yes.
Q Now, you recognize that is the receivership order that you're appealing pursuant to the notice of appeal we've marked as Exhibit 13?

A Just give me one minute. Because there was two of them, I just want to make sure.
Q If you look on the last page, that's where the date is.
A Yeah. That's where I'm flipping.
Q November 29th.
A Yeah. Flipping back there.
Q Yeah. Go look at the last page.
A November 2023. This is the receivership order, yes.
Q All right. Now, you don't dispute that BM318 is one of the Receivership Entities named in the receiver order?
A Correct.
Q Then, I'd like you to look at Page 7, Paragraph 5, at the top of that.
A Yes, sir.
Q And then look at Paragraph 4 on the page before that. Do you see that?
A Yes.
Q Now, when you were being questioned by Ms. Coker early on about your tie to BM318, my note said that you stated that you were a manager of BM318. Is that what you said?
A I believe that's what I said, yes.
Q All right. And the reason for that is under this Paragraph 4 on Page 6 of Exhibit Number 12, Judge Starr removed all existing managers and managements for BM318, didn't he?

A Yes. Did you hear my answer, or do you want me to say it again?
Q Oh, I didn't hear it.
A Oh, I'm sorry. Yes, I said yes. Sorry.
Q All right. And then on the next page, Paragraph 5, it says, "No person holding or claiming any position of any sort with any Receivership Entity shall possess any authority to act by or on behalf of any of the Receivership Entities." Do you see that?
A Yes.
Q And that would -- to your understanding, that would cover you as a former manager of BM318, would it not?
A Correct.
Q Okay. Then I'd like you to look at the lis pendens, which is Exhibit 11.
A Yes.
Q Did you ever serve that on any of the parties to the appeal or the adversary proceeding?
A No. I talked to -- you know, I did this pro se without any lawyers. So when I was at the, actually I think it was in this building, I asked them what to do and that I needed to file this. When I filed the appeal, I also asked them what to do, and that's when they told me how to frame and file that. But this document here, I filed by myself in this building without a lawyer.

MR. FORSHEY: Your Honor, I want to object. That's non-responsive. All I asked him was, did you serve it? And I would move to strike what he said because it's simply unresponsive.

THE WITNESS: Oh, I'm sorry.

THE COURT: No. Hold on, hold on. Sir, I've got to rule. Sustained. So the answer is struck. Back to Mr. Foshay to ask a new question.

BY MR. FORSHEY:

Q Okay. The question is simple. You never served Exhibit 11 on the parties to the appeal or the adversary proceeding, did you?

A Right, because what I was getting to was here in the courtroom when I -- when I did this file of the lis pendens, I understood in the conversation that it would be filed with the Court. So I did not know that it would not be put in the court record for everybody's notice.

MR. FORSHEY: Yeah, I object again. That's non-responsive, Your Honor. Move to strike.

THE COURT: Sustained.

BY MR. FORSHEY:

Q Look, it's just a yes or no. You didn't serve this on the parties to the appeal or the adversary, did you?

A What do you --

Q That's an accurate statement.

A What do you mean by serve it? I don't know -- you mean I put it in the Court record? What do you mean by serving it?
Q No. I mean you didn't put it in the mail and send copies.
A No, sir. No. No. I didn't put it in the mail. I thought that this would be filed within the Court.
Q All right. Now, it shows that this was filed September 6th, 2024. Do you see that?
A Yes.
Q And there it says, "Acknowledged before me by Tim Barton, Manager and President of BM318, LLC." Do you see that?
A Where are you seeing that? You're talking about Page --
Q Okay. Look down kind of on the bottom.
A -- 711?
Q Yeah. Look down kind of on the bottom. There's the State of Texas, County of Parker, down there --
A Yeah.
Q -- where the notary is.
A Yes, sir.
Q You see that now?
A Yes.
Q That says that it was acknowledged before me by Tim Barton, Manager and President of BM318, LLC on behalf of such entity. Do you see that?
A Yes.

Q Now, on September 6, 2024, pursuant to Paragraphs 4 and 5 that we just looked at in the receiver order, you were no longer either the president or a manager of BM318 on September 6, 2024. Is that correct?

A Yes. This was a mistake when I prepared this. That is correct. As I said, I prepared it myself, so.

Q Okay.

A Yeah. Mistake was made.

Q And so on September 6, 2024, you had no power to act for BM318, did you?

A No.

MR. FORSHEY: Thank you. Pass the witness, Your Honor.

THE COURT: Thank you, Mr. Forshey.

Ms. Perry, any cross-examination questions for Mr. Barton?

MS. PERRY: No, Your Honor.

THE COURT: All right. Mr. Carrillo, any cross-examination questions?

MR. CARRILLO: No, Your Honor.

THE COURT: All right. Any re-direct?

MS. COKER: No, Your Honor.

THE COURT: Thank you, Mr. Barton. You may step down as witness.

THE WITNESS: Thank you.

THE COURT: All right. Ms. Coker, back to you.

MS. COKER: I believe that concludes our case in chief.

THE COURT: All right. With that, Mr. Forshey, any rebuttal testimony or evidence?

MR. FORSHEY: No, Your Honor.

THE COURT: Ms. Perry?

MR. FORSHEY: No, Your Honor.

THE COURT: Thank you. Ms. Perry, any rebuttal?

MS. PERRY: No, Your Honor.

THE COURT: All right. Mr. Carrillo, any rebuttal?

MR. CARRILLO: Your Honor, briefly.

THE COURT: All right.

MR. CARRILLO: For the record, Alan Carrillo on behalf of the Receiver of BM318. Your Honor, I just would also add and point to the District Court's record for your benefit. Just last month, on October 10th, Judge Starr entered an order on motion to show cause where Mr. Barton and the Receiver reached an agreed order enjoining Mr. Barton from interfering with sales of Receivership assets.

Now, obviously, this lis pendens does not fall under the scope of that order specifically because Lumar's property is not a Receivership asset. But I just want to draw the Court's attention that this has been an active and very recent form of engagement with Mr. Barton in his obstruction

in the Receivership case for Receivership assets. We would say even though that order on motion to show cause does not specifically apply to what he's done with this lis pendens, the receivership order itself still does apply. And it encompasses this behavior because it is restricting the Receiver's ability for the Receiver settlement agreements to take effect.

I just wanted to draw the Court's attention to that agreed order that was just entered a few weeks ago showing that this is just another expression of very similar behavior that is just ongoing that the Receiver is trying to overcome to execute the District Court's orders.

And with that, I'm done. Thank you so much, Your Honor.

THE COURT: All right. I take that as you're requesting the Court to take judicial notice of that order. Is that your request?

MR. FORSHEY: That's correct, Your Honor.

THE COURT: Any objection?

MR. FORSHEY: To take judicial notice of that order on motion to show cause, which is Docket 580 in the District Court case, as well as the receivership order that we discussed earlier.

MS. COKER: There is an objection, Your Honor, as it pertains to the scope of this proceeding. I think it

improperly imputes a pattern or practice upon Mr. Barton that isn't relevant here because counsel specifically stated that the Lumar property is not at issue in that order. And I think it is prejudicial. So for those reasons, we object.

MS. PERRY: Your Honor, Deborah Perry on behalf of the Dixon Water Foundation. That order is actually in Exhibit 14, which the Court already admitted in evidence --

THE COURT: All right.

MS. PERRY: -- and Ms. Coker didn't object to.

THE COURT: All right. Thank you. That was confusing me. All right. So that exhibit, the Court need not take judicial notice since it's already in evidence. Thank you. All right.

All right. So is the evidentiary record now closed? You can go to closing arguments. Going once, going twice. All right. The evidentiary record's closed. Mr. Forshey.

MR. FORSHEY: To be brief, Your Honor, I'm not going to restate what we've said before. I think we've explained exactly why this lis pendens is ineffective. I'm not sure how transparency is promoted by filing a fraudulent lis pendens that's done in violation of your orders by somebody who just admitted on the witness stand he had no power to execute it. I mean, it is a void document.

He just admitted that he's a former manager, he was mistaken, and he had no authority to act on behalf of BM318.

So I don't see how you can say that transparency is promoted when you have a fraudulent document like this that's left in the record.

I would also note, Your Honor, in the very unlikely event Mr. Barton wins the Fifth Circuit, your orders approving that settlement have long since become final. And so that settlement is going to be there anyway. It's going to be binding on the entity, and there's nothing Mr. Barton can do about that.

For the reasons we've articulated, Your Honor, we would ask that this lis pendens be struck. This thing was filed in bad faith by somebody who has had a record of trying to gum everything up and who did it fraudulently, having no authority to act on behalf of BM318. This thing ought to be struck, and this needs to be put to rest. Thank you, Your Honor.

THE COURT: Thank you, Mr. Forshey.

Ms. Perry?

MS. PERRY: Good morning, Your Honor. Deborah Perry on behalf of the Dixon Water Foundation. I want to invoke something that Mr. Barton said on the stand. He talked about fairness and transparency. The first time Mr. Barton filed a lis pendens, back when the litigation was pending, he didn't notify Dixon, and he didn't notify Lumar.

Lumar found out about it after the fact and then

intervened. Mr. -- now we have a second lis pendens where Mr. Barton has filed it. And again, he's admitted he did not notify Dixon or Lumar. We want to talk about fairness or transparency, there's no fairness and transparency when you file a lis pendens and you don't tell the parties that are impacted that the lis pendens has been filed.

In addition, contrary to Mr. Barton's testimony, this absolutely impacts the ability of Dixon to sell the property. This is not just impeding Lumar's ability to sell property, it impedes Dixon's ability to sell property and is a clear violation of this Court's order, entered approving the settlement, and the dismissal of the adversary proceeding.

I'd also like to point Your Honor to the case of In re Duval County Ranch, which can be found at 155 B.R. 723. It's a 1993 case decided by Judge Schmidt, and it has a few similarities to the current situation. In Duval, there was a planned confirmation order that was entered. It was appealed from. There was no stay, and then a lis pendens was filed.

The liquidating trust moved to expunge the lis pendens so they could sell the property. And the Court specifically found confirmation of a plan is not an action involving title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property as set forth in Section

12.007.

Similarly, Your Honor, the order appointing the Receiver does not involve title to real property, the establishment of an interest in real property, the enforcement of an encumbrance against real property in these circumstances. The Duval Court specifically found the fact that a confirmed plan transfers property to a liquidating trust does not bring the case under Section 12.007.

What Mr. Barton's trying to do here is collaterally attack a final order of Your Honor by filing this lis pendens and trying to achieve what he cannot achieve through the federal court system. He failed to appeal the 9019 order. He's appealed the entry of the judgment. Note there's no stay there. He's appealed the receivership order. There's no stay there.

He can't obtain a stay pending appeal in these circumstances, and so he's trying to achieve this by filing this lis pendens. As I stated at the beginning, this simply can't be the law. You cannot use a state statute to vitiate a federal court order. And for all of these reasons, we ask the Court to enter the order expunging this lis pendens. Thank you.

THE COURT: All right. Thank you.

Mr. Carrillo, closing argument?

MR. CARRILLO: No, Your Honor. The Receiver will

rest on the arguments made by counsel today and the evidence that's before the Court, as well as the Receivership Court's orders that Your Honor has agreed to take judicial notice of. We thank you so much for your time and consideration of Lumar's motion.

THE COURT: All right. Thank you.

Ms. Coker.

MS. COKER: Briefly. Your Honor, Caitlin Coker on behalf of Timothy Barton.

To begin, we rebuke the word fraudulent that has been thrown around by counsel in this case. We want to make it clear on the record that what Mr. Barton did was in his own rights individually as a person. His own body is the one thing that the Receiver doesn't control. So going and filing this lis pendens is one of the only things Mr. Barton can do to preserve the property interests of the BM318 estate from afar.

THE COURT: Then he's not trying to act on his -- for himself then. You just contradicted your own statement.

MS. COKER: Everything Mr. Barton has done has been in his individual capacity.

THE COURT: For whose benefit? Is it in his own individual capacity?

MS. COKER: For his --

THE COURT: Or for BM318?

MS. COKER: The fact that Mr. Barton's entity is in receivership doesn't divorce him from wanting to preserve the assets of that entity.

THE COURT: Okay.

MS. COKER: I want to inform the Court there are -- there's not one appeal here. There is one appeal that is the subject of this lis pendens, but we are dealing with three. We have appealed the receivership order. We have appealed this Court's dismissal of the case based on the settlement agreement. And we've appealed the ratification in the District Court of the settlement agreement that is subject to this case.

So I do want to point the Court's attention to the fact that the fact that there's ongoing litigation is indisputable.

THE COURT: Let's take this one at a time just to make sure I'm understanding. So on the receivership order, let's assume Mr. Barton is successful and the Fifth Circuit agrees with Mr. Barton and sets aside the receivership order. How does that affect or impact, if any, the Receiver's settlement agreement with this estate, which this Court approved on the 9019 order, which is a final non-appealable order at this point. It's never been appealed. There's been no stay pending appeal. Does it just go away? Is it void?

MS. COKER: That would be our position.

THE COURT: Do you have any case law to support that?

MS. COKER: Not at this time.

THE COURT: Well, isn't today the time to show me why that would even be something the Court can even entertain?

MS. COKER: Perhaps, Your Honor. But it's not something we have in front of the Court today.

THE COURT: Is it because it doesn't exist?

MS. COKER: I do not believe it doesn't exist.

THE COURT: All right.

MS. COKER: This is a matter of Texas state procedure, and that's what we are maintaining, is that Mr. Barton filed it as somebody who has a right under Texas state procedure to pursue a lis pendens for the benefit of an entity maybe, but it was in his own --

THE COURT: That wasn't my question. Make sure you and I are on the same page.

MS. COKER: Sure.

THE COURT: So, there was a receivership order in place, and Mr. Carrillo's client was acting as manager on behalf of BM318. Do you dispute that?

MS. COKER: No, Your Honor.

THE COURT: All right. And then a motion was filed in this Court that was a motion to compromise and settle

BM318's disputes with Mr. Forshey's client and Ms. Perry's client. Do you dispute that?

MS. COKER: No, Your Honor.

THE COURT: And this Court had a follow up evidentiary hearing on that, whether or not on behalf of 318 the Court should approve that settlement on behalf of 318. Do you dispute that?

MS. COKER: No, Your Honor.

THE COURT: And the Court ultimately approved that, that settlement motion. Do you agree with that?

MS. COKER: Yes.

THE COURT: And there's never been an appeal of that order, has there?

MS. COKER: Correct.

THE COURT: So are you telling me that there's authority out there that if Mr. Barton is successful in the future on setting aside Judge Starr's receivership order, that that would somehow void what was done in this Court by Mr. Carrillo's client on behalf of BM318?

MS. COKER: I have not found it.

THE COURT: Okay. All right. Okay. Just wanted to make sure.

MS. COKER: Sure. To conclude, this truly was a matter of maintaining the status quo pending the outcome of the appeal. We believe it was --

THE COURT: Status quo on behalf of whom and what appeal?

MS. COKER: I'm sorry?

THE COURT: Okay. Maintain the status quo for what party and for which appeal? You've said there's three, so I want to make sure the record is clear.

MS. COKER: For the purposes of record, the appeal is related to the receivership order. That is what was stated in the lis pendens itself.

THE COURT: All right. Okay.

MS. COKER: And so for these reasons, we ask that you deny the motion to expunge.

THE COURT: All right. Thank you. All right. I think what the Court is going to do -- I think I know how the Court's going to rule, but I think it's important that I at least put together a coherent reasoning for the Court's ruling, and I'm just not prepared to do that off the top of my head.

I wanted to hear what the parties had to say, consider what evidence was offered into evidence, whatever testimony there may have been. So I think it's prudent that I look at all the evidence now that's officially of record, as well as the testimony of Mr. Barton.

And I think the Court is going to go ahead and take this under advisement, but I will issue an oral ruling. And

let's get that on the docket here so the parties know when I would do that. Today is the 12th. Why don't we go ahead and just schedule a ruling for next Wednesday, the 20th, at 1:30. All right.

Before I do that, I do know that the Court had set this on an expedited basis. I'm not aware of any -- is there any item that's out there that's pending that the parties would be harmed if the Court didn't rule today, but ruled on the 20th, that the Court should be aware of?

MR. FORSHEY: Not from Lumar, Your Honor.

THE COURT: All right. So then I think it's just prudent, then, the Court to put together at least a coherent ruling in case there are any appeals of this Court's ruling, so it'll be very clear upstairs as to what I was thinking and why I ruled the way I did. All right. So why don't we go ahead and do an oral ruling on Wednesday, November 20th, 2024, at 1:30.

I guess I should ask, does that conflict with any of your schedules?

MS. COKER: We will make it work, Your Honor.

THE COURT: All right. Then the Court will be in recess, and we'll anticipate an oral ruling on next Wednesday, the 20th. Thank you all for appearing. With that, the Court is in recess. Thank you.

(Proceedings adjourned at 11:45 a.m.)

* * * * *

C E R T I F I C A T I O N

I, DIPTI PATEL, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.

__________________________

DIPTI PATEL, AAERT CET-997

Expires: December 6, 2026

LIBERTY TRANSCRIPTS DATE: December 13, 2024