FRB CLEVELAND
>00008677<
OTC NET
JAN 02 2026

FILED
JAN 02 2026
CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **BM318, LLC,** | § | Case No. 20-42789-MXM |
| | § | |
| Debtor. | § | Chapter 11 |

**TIMOTHY L. BARTON, PARTY IN INTEREST'S MOTION TO COMPEL FINAL REPORT / FINAL ACCOUNT AND ACCOUNTING OF SETTLEMENT PROCEEDS; OBJECTION TO ENTRY OF FINAL DECREE; AND, IN THE ALTERNATIVE, MOTION TO REOPEN CASE**

Timothy L. Barton ("Movant" or "Barton"), appearing *pro se* as a party in interest and principal of BM318, LLC ("BM318" or "Debtor"), and not purporting to act on behalf of the Debtor, files this Motion to (i) compel administration and a transparent accounting of BM318's settlement proceeds and estate obligations before any closure, (ii) object to entry of a final decree as premature, and (iii) in the alternative, reopen the case if it has been closed. In support, Movant respectfully states:

## I. LIMITED NATURE OF REQUEST

1. This Motion is not a request to re-litigate the merits of the adversary claims that were settled and dismissed. Movant does not ask this Court to revisit its Rule 9019 approval of the Dixon/Lumar Settlements, disturb the adversary judgment, or interfere with the district court's management of the receivership.

2. This Motion seeks only the core administrative relief that the Bankruptcy Code and Rules contemplate before a Chapter 11 case can be treated as "fully administered": collection, administration, reporting, and final accounting of estate property, including settlement-derived value.

## II. THE COURT HAS A NON-DISCRETIONARY DUTY TO ENSURE FINAL ADMINISTRATION

3. Closure without a final report is legally incomplete. A final report and accounting is the mechanism by which the Court confirms that administration is complete and that fiduciary duties have been satisfied. Without it, the Court cannot verify that all estate assets were

properly administered, that court-ordered fees were collected and paid, or that the estate is ready for lawful closure.

4. This motion is not framed as party relief but as court oversight. The integrity of the bankruptcy process requires that estates be fully administered before closure—not merely terminated procedurally. The Court's supervisory role is implicated whenever the docket reflects that mandatory administrative duties remain unfulfilled.

5. Courts have consistently held that closure without a final report does not constitute full administration as a matter of law. See In re Hatcher, 218 B.R. 441, 447 (B.A.P. 8th Cir. 1998); In re Shotkoski, 420 B.R. 479, 483 (B.A.P. 8th Cir. 2009).

## III. JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. § 1334 and § 157. This matter concerns case administration, closing, and reopening, and is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).

7. Venue is proper in this District and Division under 28 U.S.C. § 1408.

## IV. STATUTORY AND RULE-BASED REPORTING OBLIGATIONS WERE NEVER SATISFIED

8. The Court has authority to reopen a closed case under 11 U.S.C. § 350(b) to "administer assets" or "for other cause," and under Federal Rule of Bankruptcy Procedure 5010. Reporting and accounting duties are imposed by Fed. R. Bankr. P. 2015(a) and 11 U.S.C. § 704(a)(9) (as incorporated through §§ 1106(a)(1) and 1107(a)), and are essential to court supervision.

9. The Fifth Circuit recognizes that bankruptcy courts retain jurisdiction after closure to complete or enforce administrative obligations. See In re Case, 937 F.2d 1014, 1018 (5th Cir. 1991). Courts routinely reopen cases where the estate was not fully administered. See In re Apex Oil Co., 406 F.3d 538, 542 (8th Cir. 2005); In re Arleaux, 229 B.R. 182, 184 (B.A.P. 8th Cir. 1999).

10. These statutory obligations require not only collection of estate assets, but also transparent reporting and a final accounting before closure. Persistent failures to file operating

reports, to provide financial information, or to file a final report are treated as evidence that the estate has not been properly or fully administered.

## V. RELEVANT BACKGROUND

### A. The BM318 Chapter 11 Case and Rule 9019 Settlements

11. BM318, LLC ("BM318") filed this Chapter 11 case in the United States Bankruptcy Court for the Northern District of Texas. The Court confirmed BM318's Chapter 11 plan framework earlier in this case, and BM318 subsequently prosecuted an adversary proceeding against Dixon Water Foundation and related disputes involving Lumar.

12. The parties reached settlement agreements that were presented to this Court for approval under Bankruptcy Rule 9019[1]. One settlement required a cash payment from Dixon (the "Dixon Settlement").

13. The Dixon Settlement requires a $100,000 payment to the Receiver for BM318, due within seven (7) days after Court approval, by delivery of a check payable to the Receiver for BM318 (the "Settlement Payment").

14. The adversary proceeding was dismissed with prejudice pursuant to the Court-approved settlements, and the Court retained jurisdiction to enforce and construe its settlement-related orders and judgment.

### B. The Receiver's Status Update (Dkt. 189) and Current Procedural Posture

15. On December 2, 2025, the Receiver filed a Notice of Status Update (Dkt. 189) that frames BM318 as a completed, self-contained case in which (i) the adversary judgment is now final and non-appealable, and (ii) this Court's orders approving the Dixon and Lumar settlements are "final and non-appealable," such that closure should follow as a matter of course.

16. On December 5, 2025, Movant filed a Response and Objection (Dkt. 190) detailing why closure is premature. As of December 8, 2025, the docket reflects that the related adversary case 4:21-ap-4051 has been administratively closed pursuant to LBR 9070-1.

---

[1] *See Settlement Approval Orders, Dkt. 163 (Dixon) & Dkt. 164 (Lumar).*

## C. Pending Appeals and Stay Proceedings That Bear Directly on BM318

17. The Receiver's Status Update omits critical context: BM318 is now embedded in a broader federal equity receivership in SEC v. Barton, No. 3:22-cv-2118-X (N.D. Tex.), and the key receivership orders that govern BM318—including how its Dixon/Lumar settlements are implemented—are presently under active appellate and stay review.

18. Two separate Fifth Circuit appeals bear directly on BM318:

**(a)** **Case No. 24-10788**: Barton challenges the district court's Settlement Ratification Order (Receivership Dkt. 550), which adopted this Court's Rule 9019 findings and independently approved the BM318 Dixon/Lumar settlements as receivership transactions[2].

**(b)** **Case No. 25-10871**: Barton challenges the third Order Appointing Receiver (Receivership Dkt. 650), entered June 23, 2025, which expressly designates BM318 as a "Receivership Entity" and centralizes control of its assets, claims, and settlements in the Receiver.[3]

**(c) Petition for Writ of Certiorari:** A petition for writ of certiorari is pending before the United States Supreme Court addressing issues directly implicated by the receivership and bankruptcy administration.

19. In the receivership court, Barton has also filed an Emergency Motion to Stay Pending Appeal[4], asking that status-changing sales, settlements, and distributions under the third receivership order[5] be paused while the Fifth Circuit resolves the appeal. That motion remains pending.

## D. The Absence of a Final Report and Accounting

20. Despite the Settlement Payment being due within seven days of Court approval, there is no public record in this case confirming: (a) whether the $100,000 Dixon Settlement Payment was received; (b) the date received, method of receipt, and payor details; (c) the account into which the Settlement Payment (and any other settlement consideration) was

---

[2] See Notice of Interlocutory Appeal, SEC v. Barton, Dkt. 554 in SEC v. Barton, No. 3:22-cv-2118-X (N.D. Tex.)

[3] *See Notice of Interlocutory Appeal, SEC v. Barton, Dkt. 658.*

[4] *See Emergency Motion to Stay Pending Appeal, Dkt. 691,* SEC v. Barton, No. 3:22-cv-2118-X (N.D. Tex.)

[5] See Third Receivership Order, Dkt 650, SEC v. Barton, Dkt. 554 in SEC v. Barton, No. 3:22-cv-2118-X (N.D. Tex.)

deposited; (d) an itemized disbursement ledger for any use of settlement-derived funds; (e) a current claims/distribution status summary showing what creditors (if any) remain unpaid and what distributions have occurred; or (f) whether required operating reports, U.S. Trustee fees, and other administrative prerequisites for closure are complete.

21. No final report or final account of administration has been filed as required by 11 U.S.C. § 704(a)(9), as incorporated through §§ 1106(a)(1) and 1107(a).

## VI. ABSENCE OF A FINAL REPORT MEANS THE ESTATE WAS NEVER FULLY ADMINISTERED

22. A final report is the mechanism by which the Court confirms that administration is complete. Closure without a final report does not constitute full administration as a matter of law. *See In re Hatcher*, 218 B.R. 441, 447 (B.A.P. 8th Cir. 1998); *In re Shotkoski*, 420 B.R. 479, 483 (B.A.P. 8th Cir. 2009).

23. Here, the docket contains no filing establishing: (a) disposition of all estate assets; (b) administration of settlement proceeds; (c) collection and payment of court-ordered fees; or (d) absence of unresolved administrative matters.

24. Without a final report, the docket reflects closure in name only, not in law. Accordingly, the estate cannot be deemed "fully administered" under § 350(a).

## VII. RECORD-BASED PREJUDICE FROM AN INCOMPLETE ADMINISTRATIVE RECORD

25. Without a final report:

(a) The Court cannot verify that all assets were properly administered;
(b) Parties and third parties cannot confirm fee authorization or reasonableness;
(c) Other courts lack a reliable record for finality, reliance, or preclusion;
(d) There is potential for cloud on title, claims, or downstream proceedings.

26. These deficiencies are objective and arise solely from the absence of required reporting—not from any dispute over the merits.

## VIII. RELIEF REQUESTED

27. Movant requests that the Court:

A. **Deny Premature Closure**: DENY any request to close this Chapter 11 case or enter a final decree at this time as premature, until administration is complete and the pending appeals and stay proceedings have concluded or progressed to a point where the treatment of BM318 is clearer;

B. **Compel Verified Accounting**: Order the Receiver (or other fiduciary currently controlling BM318's bankruptcy administration) to file, within fourteen (14) days, a verified accounting that includes at least:

(i) Whether the $100,000 Dixon Settlement Payment was received;

(ii) The date received, method of receipt, and payor details;

(iii) The account into which the Settlement Payment (and any other settlement consideration) was deposited (institution, account identifier last-4 only, and ledger entry reference);

(iv) An itemized disbursement ledger for any use of settlement-derived funds (date, payee, purpose, amount);

(v) A current claims/distribution status summary showing what creditors (if any) remain unpaid and what distributions have occurred;

(vi) Confirmation whether required operating reports, U.S. Trustee fees, and other administrative prerequisites for closure are complete;

C. **Require Final Report**: Require filing of a final report and final account (or a targeted interim report sufficient to resolve the "fully administered" question), with supporting bank statements and redacted source documents as needed;

D. **Set Status Conference**: Set a status conference after the accounting deadline to determine what steps remain for full administration;

E. **Decline Additional Closing Activities**: Decline to authorize or approve any additional BM318-related "closing" activities by the Receiver or his professionals absent a specific, demonstrated benefit to the estate and a concrete showing of need;

F. **Reopen Case If Closed**: In the alternative, if a final decree or closure order has already been entered, reopen the case under 11 U.S.C. § 350(b) and Fed. R. Bankr. P. 5010 (and, to the extent necessary, grant relief under Fed. R. Bankr. P. 9024 / Fed. R. Civ. P. 60) for the limited purpose of administering and accounting for settlement-derived estate value and completing the required final reporting.

## V. LEGAL STANDARDS

### A. Closing a Chapter 11 Case: "Fully Administered" Under § 350(a) and Rule 3022

28. Section 350(a) of the Bankruptcy Code provides that "[a]fter an estate is fully administered, and the court has discharged the trustee, the court shall close the case." 11 U.S.C. § 350(a). Fed. R. Bankr. P. 3022 similarly states that "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case."

29. The "fully administered" standard is a practical one. Courts look to non-exhaustive factors, including: (a) whether the confirmation order is final; (b) whether deposits required by the plan have been distributed; (c) whether property proposed to be transferred has been transferred; (d) whether the debtor or successor has assumed business operations; (e) whether payments under the plan have commenced and, in many cases, been substantially completed; and (f) whether all motions, contested matters, and adversary proceedings have been resolved or otherwise addressed. See *In re JCP Props., Ltd.*, 540 B.R. 596, 605 (Bankr. S.D. Tex. 2015) (applying Rule 3022 and noting that the court must look to the "real status" of administration rather than labels).

30. Importantly, § 350(a) and Rule 3022 confer discretion; they do not require closure whenever a certain amount of time has passed. The Court may defer entry of a final decree if material administration remains incomplete, if estate assets have not been fully accounted for or distributed, or if related proceedings (including appeals) make closure imprudent in light of the case's actual posture.

### B. Trustee and Debtor-in-Possession Duties; Reporting and Accounting

31. A chapter 11 trustee must "collect and reduce to money the property of the estate," "be accountable for all property received," file periodic operating reports, and "make a

final report and file a final account of the administration of the estate." 11 U.S.C. § 704(a)(1), (2), (8), (9); 11 U.S.C. § 1106(a)(1), (7). Under § 1107(a), a debtor-in-possession is vested with the rights and duties of a trustee. These duties extend to property recovered or received by settlement.

32. Courts recognize that these statutory obligations require not only collection of estate assets, but also transparent reporting and a final accounting before closure. See, e.g., *Mendelsohn v. Ozer*, 241 B.R. 503, 509 (E.D.N.Y. 1997) (describing § 704(a)(1) and (9) as imposing duties to collect estate property and to file a final account of administration). Persistent failures to file operating reports, to provide financial information, or to file a final report are treated as evidence that the estate has not been properly or fully administered.

**C. Reopening a Closed Case Under § 350(b) and Rule 5010**

33. Section 350(b) provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Fed. R. Bankr. P. 5010 implements this provision. The decision to reopen a case is committed to the sound discretion of the bankruptcy court. See *In re Case*, 937 F.2d 1014, 1018 (5th Cir. 1991).

34. Courts routinely reopen cases where estate assets were not fully administered before closure, or where administrative duties—such as filing required reports or distributing funds—remain incomplete. See *In re Apex Oil Co.*, 406 F.3d 538, 542 (8th Cir. 2005) (noting that courts may reopen cases to administer previously unadministered assets). Such circumstances present paradigmatic "cause" under § 350(b).

**D. Case-Management, Comity, and Coordination with Related Proceedings**

35. Federal courts possess inherent authority "to control the disposition of the causes on [their] docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). That authority includes the power to defer action in one proceeding in light of related litigation elsewhere, where doing so promotes orderly administration and avoids conflicting or duplicative outcomes.

36. The Fifth Circuit has likewise cautioned that appellate review should not be lightly frustrated by procedural devices that render relief impractical after the fact. See *Texas Grand Prairie Hotel Realty, L.L.C. v. FDIC (In re Texas Grand Prairie Hotel Realty, L.L.C.)*,

710 F.3d 324, 327–29 (5th Cir. 2013) (emphasizing that equitable mootness is a "narrow" doctrine and declining to dismiss an appeal where effective relief could still be fashioned).

## X. ARGUMENT

### A. BM318 Has Not Been Fully Administered and Should Not Be Closed

37. The Receiver's Status Update assumes BM318 can be treated as a finished case ready for closure. The actual record shows the opposite. BM318 has received or is entitled to settlement proceeds; creditors have not been fully paid; required reports and accounts are missing; and there is no final report or final account. Under 11 U.S.C. § 350(a) and Fed. R. Bankr. P. 3022, BM318 is not "fully administered" and cannot properly be closed.

#### *1. Settlement Proceeds Are Estate Property Requiring Administration*

38. Settlement consideration received (or required to be received) for the benefit of BM318 constitutes property of the estate under 11 U.S.C. § 541. This Court approved the Dixon/Lumar Settlements under Rule 9019, and settlement consideration was or should have been received for the benefit of BM318.

39. Once settlement funds are obtained, the Code imposes a non-discretionary duty on the trustee or debtor-in-possession to collect, administer, and account for them. Section 704(a)(1) requires a trustee to "collect and reduce to money the property of the estate for which such trustee serves," and § 704(a)(9) requires the trustee to "make a final report and file a final account of the administration of the estate." See *Mendelsohn v. Ozer*, 241 B.R. 503, 509 (E.D.N.Y. 1997).

40. As to BM318, there is no comprehensive public accounting showing (i) the receipt of settlement proceeds into a DIP or estate account, (ii) any distributions to creditors traceable to those proceeds, or (iii) a final report detailing administration of those funds. Until those basic administration and accounting steps occur, BM318 cannot be deemed fully administered.

#### *2. The Plan Framework and Unpaid Creditors Block Closure*

41. BM318 is not a bare, no-asset Chapter 11. A plan framework exists that contemplated using settlement-derived value to pay claims and address creditor treatment. Yet there is no indication that creditors have been paid as contemplated, that plan-related

distributions have been completed, or that the case has otherwise reached a point of substantial consummation consistent with closure.

42. When applying § 350(a) and Rule 3022, courts consider whether plan payments have commenced and been substantially completed, whether property to be transferred has been transferred, and whether the debtor or successor has taken over operations in a stable fashion. See *In re JCP Props., Ltd.*, 540 B.R. at 605 (listing Rule 3022 factors and focusing on substantial consummation). Where a plan (or plan structure) contemplates distributions and those distributions have not been made, closure is premature.

### *3. BM318 Fails the "Fully Administered" Criteria*

43. Taken together, these facts show that BM318 does not satisfy the "fully administered" standard: settlement proceeds have not been fully traced and distributed; creditors have not been paid as contemplated; operating reports and financial disclosures are incomplete; quarterly fees are likely delinquent; and no final report or final account has been filed.

44. Declaring BM318 fully administered now would be, at best, a legal fiction and, at worst, an abuse of discretion that invites later motions to reopen and further litigation.

## B. Active Appeals and Stay Proceedings Make Closure Imprudent

45. Closing BM318 while critical questions about its administration remain pending before the Fifth Circuit and the district court would be imprudent and contrary to principles of orderly case management.

46. The Settlement Ratification Order (Receivership Dkt. 550) that adopted this Court's 9019 findings is on appeal in No. 24-10788. The third Order Appointing Receiver (Receivership Dkt. 650)—which formally designates BM318 as a Receivership Entity and governs how BM318's assets and settlements are administered—is on appeal in No. 25-10871. And the Emergency Motion to Stay (Receivership Dkt. 691) seeks to pause status-changing distributions while these appeals proceed.

47. Premature closure risks creating equitable-mootness and finality complications. If BM318 is closed while appeals are pending, parties may later argue that meaningful relief

affecting BM318 is now impractical or impossible—a result the Fifth Circuit has cautioned against.[6]

48. The better course—and the one most consistent with the Code, the Rules, and Fifth Circuit guidance—is to defer closure and ensure that BM318 is not declared "fully administered" while its treatment remains the subject of ongoing federal litigation.

## C. Unnecessary "Closing" Activities Would Generate Administrative Expense Without Corresponding Benefit

49. The Receiver's Status Update suggests that he must undertake additional "closing" tasks with respect to BM318. Yet the Status Update does not identify any concrete risk to creditors or to the estate that requires immediate action. BM318 is not presently engaged in active business operations, and no creditor, equity holder, or other party in interest—apart from the Receiver and his professionals—has requested the additional work now being proposed.

50. Under these circumstances, directing the Receiver and his counsel to embark on a new round of "cleanup" or "closing" activity would serve primarily to consume estate resources and increase administrative expense, without delivering any corresponding benefit to creditors or stakeholders. The Bankruptcy Code does not authorize compensation for professional services simply because work can be done; the services must be reasonably calculated to benefit the estate or be necessary to its administration. See 11 U.S.C. § 330(a)(4)(A)(ii) (disallowing compensation for services that were not "reasonably likely to benefit the debtor's estate" or "necessary to the administration of the case").[7]

51. On the current record, the Receiver's proposed "closing" efforts appear designed largely to create billable work around matters as to which there is no showing of harm from inaction. There is no demonstrated downside to maintaining the status quo and deferring non-essential closing work until the appellate landscape is clearer.

## D. In the Alternative, the Case Should Be Reopened If Already Closed

---

[6] *See In re Texas Grand Prairie Hotel Realty, L.L.C., 710 F.3d at 327–29 (emphasizing the narrow application of equitable mootness and the importance of preserving appellate review where practical relief remains available).*

[7] *See also Woerner v. Barron & Newburger, P.C., 784 F.3d 208 (5th Cir. 2015) (emphasizing that courts must evaluate whether services were necessary to administration or reasonably likely to benefit the estate).*

52. If a final decree or closure order has already been entered in this case without Movant's knowledge, the Court should reopen the case under 11 U.S.C. § 350(b) and Fed. R. Bankr. P. 5010.

53. Reopening is warranted because: (a) estate assets (settlement proceeds) have not been fully administered; (b) required reports and final account have not been filed; (c) creditors have not received distributions as contemplated by the plan and settlements; and (d) ongoing appellate proceedings directly affect BM318's administration. These circumstances constitute paradigmatic "cause" under § 350(b).

54. To the extent necessary, relief under Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60 is also appropriate to address any closure order entered while material administration remained incomplete.

## XI. JUDICIAL ECONOMY AND PENDING APPELLATE PROCEEDINGS

55. Multiple appellate proceedings are currently pending, including a petition for writ of certiorari before the Supreme Court, a third receivership appeal, and additional appeals set to be heard. This motion does not seek to influence those proceedings. However, appellate courts necessarily rely on the integrity of the underlying record.

56. Bankruptcy courts are uniquely positioned to prevent inconsistent factual records across forums. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995). Completing the administrative record promotes judicial economy and institutional integrity.

57. Without a final report, the risk of inconsistent factual assumptions across courts is real. Other courts and appellate tribunals lack a reliable record for finality, reliance, or preclusion purposes.

## XII. THIS IS NOT A COLLATERAL ATTACK

58. Movant emphasizes that this motion does not seek to revisit prior rulings, reconsider the merits of any settled claims, or disturb the Court's prior orders. The relief requested is strictly administrative and procedural. Movant seeks only to complete the

administrative record required for lawful closure—not to undo or challenge any substantive determination this Court has made.

## XIII. PRAYER

WHEREFORE, Movant Timothy L. Barton respectfully requests that the Court:

A. DENY any request to close this Chapter 11 case or enter a final decree at this time as premature;

B. ORDER the Receiver (or other fiduciary currently controlling BM318's bankruptcy administration) to file, within fourteen (14) days, a verified accounting as detailed in Section IV.B above;

C. REQUIRE the filing of a final report and final account (or a targeted interim report sufficient to resolve the "fully administered" question), with supporting bank statements and redacted source documents as needed;

D. SET a status conference after the accounting deadline to determine what steps remain for full administration;

E. DECLINE to authorize or approve any additional BM318-related "closing" activities by the Receiver or his professionals absent a specific, demonstrated benefit to the estate and a concrete showing of need;

F. RESERVE jurisdiction solely to review the Final Report, resolve any issues arising from the completion of administration, and enter such further orders as may be necessary;

G. In the alternative, if a final decree or closure order has already been entered, REOPEN the case under 11 U.S.C. § 350(b) and Fed. R. Bankr. P. 5010 (and, to the extent necessary, grant relief under Fed. R. Bankr. P. 9024 / Fed. R. Civ. P. 60) for the limited purpose of administering and accounting for settlement-derived estate value and completing the required final reporting; and

H. GRANT such other and further relief as the Court deems just and proper.

Respectfully submitted.

DATED: December 29, 2025

/s/ Timothy L. Barton

**Timothy L. Barton, Pro Se**
Party in Interest
1846 East Rosemeade Parkway, #232
Carrollton, TX 75007
Telephone: (214) 914-3811
Email: timothy.barton@proton.me

## CERTIFICATE OF SERVICE

I hereby certify that on December 29, 2025, I electronically filed the foregoing Motion with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all counsel of record registered to receive electronic notices in this case, including:

C. Alan Carrillo, Brown Fox PLLC, counsel for Debtor

Cortney C. Thomas, Receiver

Joyce W. Lindauer, Joyce W. Lindauer Attorney, PLLC

Elizabeth Ziegler Young, U.S. Trustee Office

Counsel for Dixon Water Foundation

Counsel for Lumar-related parties

All other parties requesting notice

*/s/ Timothy L. Barton*
Timothy L. Barton, Pro Se

# U.S. TRUSTEE TARGETED SERVICE COVER

**Re: Notice of Motion to Reopen Case and Compel Final Report**

The enclosed Motion is served on the United States Trustee pursuant to 11 U.S.C. § 307 for awareness and oversight purposes. The motion does not seek to relitigate merits or prior rulings. It seeks only to reopen the case for the limited administrative purpose of completing estate administration and compelling a final report where no such report appears on the docket.

Because settlement proceeds were generated and court-ordered fees remain unaccounted for in the public record, Movant believes UST awareness is appropriate to ensure statutory reporting and fiduciary obligations are satisfied.

No response is requested unless the U.S. Trustee deems intervention appropriate.

Respectfully submitted,

*/s/ Timothy L. Barton*
Timothy L. Barton, Pro Se

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **BM318, LLC,** | § | Case No. 20-42789-MXM |
| | § | |
| Debtor. | § | Chapter 11 |

**[PROPOSED ORDER] REOPENING CASE FOR LIMITED**
**ADMINISTRATIVE PURPOSES AND COMPELLING FINAL REPORT**

Upon consideration of the Motion to Compel Final Report, to Direct Completion of Estate Administration, and to Reopen Case for Limited Administrative Purposes, and the Court finding good cause pursuant to 11 U.S.C. § 350(b) and Federal Rule of Bankruptcy Procedure 5010, it is hereby:

**ORDERED** that this case is REOPENED for the limited administrative purpose of completing estate administration and final reporting. Reopening is limited solely to the matters set forth in this Order.

**ORDERED** that the trustee, receiver, or other fiduciary previously charged with administration of the estate (the "Fiduciary") shall complete all remaining administrative duties, including but not limited to:

a. Administration and accounting of all settlement proceeds;

b. Collection, payment, and accounting of all court-ordered fees, costs, and expenses; and

c. Completion of any unresolved administrative matters necessary for lawful closure.

**ORDERED** that the Fiduciary shall file a Final Report and Accounting within 21 days of the entry of this Order, which shall include, at a minimum:

a. The disposition of all estate assets;

b. The receipt, handling, and administration of any settlement proceeds;

c. All fees, costs, and expenses paid or claimed, including the authority for such payments; and

d. A statement identifying whether any administrative matters remain unresolved.

**ORDERED** that, if the Fiduciary contends that a Final Report cannot be filed in whole or in part, the Fiduciary shall, within the same 21-day period, file a written explanation on the record stating with specificity the reasons compliance is not possible.

**ORDERED** that the Court retains jurisdiction solely to review the Final Report, resolve any issues arising from the completion of administration, and enter such further orders as may be necessary to ensure compliance with this Order.

**ORDERED** that this Order does not reopen the case for purposes of relitigating merits, reconsidering prior rulings, or modifying substantive orders, and reopening is strictly limited to the administrative purposes stated herein.

**ORDERED** that, upon approval of the Final Report and satisfaction of administrative requirements, the case may be re-closed without further hearing.

**SO ORDERED.**

Dated: ____________________, 20__

_______________________________________
UNITED STATES BANKRUPTCY JUDGE