FILED
JAN 0 2 2026
CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| | § | **CASE NO. 20-42789-mxm11** |
| **BM318, LLC,** | § | |
| | § | |
| | § | |
| **Debtor.** | § | **Chapter 11** |

**RESPONSE AND OBJECTION OF TIMOTHY L. BARTON TO RECEIVER'S STATUS UPDATE (DKT 189) AND REQUEST TO DEFER ENTRY OF FINAL DECREE AND CASE CLOSURE**

Timothy L. Barton pro se ("Barton"), a party in interest and principal of BM318, LLC ("BM318"), files this Response and Objection to the Receiver's Status Update (Dkt 189) and respectfully requests that the Court decline to move toward entry of a final decree or closure of this case while interlocking receivership orders governing BM318 remain under active appellate and stay review.

## I. PRELIMINARY STATEMENT

1. Receiver's Status Update (Dkt 189) wrongfully frames BM318 as a completed, self-contained case in which (i) the adversary judgment is now final and non-appealable, and (ii) this Court's orders approving the Dixon and Lumar settlements are "final and non-appealable," such that closure should follow as a matter of course. That framing omits critical context. BM318 is now embedded in a broader federal equity receivership, and the key receivership orders that govern BM318—including how its Dixon/Lumar settlements are implemented—are presently under active appellate and stay review in the United States Court of Appeals for the Fifth Circuit and District Court.

2. Two separate Fifth Circuit appeals bear directly on BM318. First, in Case No. 24-10788, Barton challenges the district court's Settlement Ratification Order (Receivership Dkt 550)[1], which adopted this Court's Rule 9019 findings and independently approved the BM318 Dixon/Lumar settlements as receivership transactions. Second, in Case No. 25-10871, Barton challenges the third Order Appointing Receiver (Receivership Dkt 650)[2], which expressly designates BM318 as a "Receivership Entity" and centralizes control of its assets, claims, and settlements in the Receiver. In the receivership court, Barton has also filed an Emergency Motion to Stay (Receivership Dkt 691)[3], asking that status-changing sales, settlements, and distributions under Dkt 650 be paused while the Fifth Circuit resolves the appeal.

3. Against that backdrop, treating BM318 as "finished" for Rule 3022 purposes is neither accurate nor prudent. The estate has received or is entitled to settlement consideration that has not been fully administered, there is no final report or complete accounting of the BM318-related funds within the receivership, and questions remain about whether and how the Dixon/Lumar value will flow through to BM318's creditors. Closing the case now would invite later disputes over whether BM318 was "fully administered" within the meaning of 11 U.S.C. § 350(a) and Fed. R. Bankr. P. 3022.

4. Premature closure also risks creating equitable-mootness and finality complications in the pending appeals. The Fifth Circuit has cautioned that chapter 11 cases should not be closed, or plans treated as irreversible, where important issues remain live and meaningful relief is still possible. See, e.g., *Texas Grand Prairie Hotel Realty, L.L.C. v. FDIC, (In re Texas Grand Prairie Hotel Realty, L.L.C.), 710 F.3d 324, 327–29 (5th Cir. 2013)* (emphasizing the narrow

---

[1] See Notice of Interlocutory Appeal against Order Dkt 550. *SEC v. Barton*, No. 3:22-cv-2118-X (N.D. Tex.), Dkt. 554.
[2] See Notice of Interlocutory Appeal against Order Dkt 650. *SEC v. Barton*, No. 3:22-cv-2118-X (N.D. Tex.), Dkt. 658.
[3] See Emergency Motion for Stay Pending Appeal *SEC v. Barton*, No. 3:22-cv-2118-X (N.D. Tex.), Dkt. 691.

application of equitable mootness and the importance of preserving appellate review where practical relief remains available).

5. Entering a final decree here, while the receivership court and the Fifth Circuit are still sorting out BM318-related settlements and receivership authority, would cut in the opposite direction.

6. Barton does not ask this Court to revisit its Rule 9019 approval of the Dixon/Lumar settlements or to intrude on the district court's management of the receivership. Rather, he asks the Court to exercise the discretion recognized in § 350(a) and Rule 3022: to treat the Status Update as informational only, to defer any final-decree process, and to maintain BM318 as an open case until (i) the receivership appeals and stay proceedings have progressed to a point where the treatment of BM318 is clearer, and (ii) the estate's settlement-related funds have been fully administered and accounted for.

7. In short, this is not a routine, end-of-case housekeeping matter. It is a request to close a Chapter 11 case whose core value and future administration are being actively litigated in a parallel receivership structure. The better course—and the one most consistent with the Code, the Rules, and Fifth Circuit guidance—is to hold the line, defer closure, and ensure that BM318 is not declared "fully administered" while its treatment remains the subject of ongoing federal litigation.

## II. PROCEDURAL AND FACTUAL BACKGROUND

### A. The BM318 Chapter 11 Case and 9019 Settlements

8. BM318, LLC ("BM318") filed this Chapter 11 case in the United States Bankruptcy Court for the Northern District of Texas to address disputes and claims arising out of its role in the broader Barton-related structure. Among other things, BM318's case involved contested

litigation with the Dixon and Lumar parties regarding claims, ownership interests, and the disposition of BM318-related assets.

9. After motion practice and negotiations, this Court over Barton's objections approved settlements under Fed. R. Bankr. P. 9019 resolving the Dixon and Lumar disputes (the "Dixon/Lumar Settlements").[4] Those orders contemplated consideration to be made available for BM318's estate and, ultimately, for the benefit of creditors. No direct appeal was taken from this Court's Rule 9019 approval orders, and Barton does not ask the Court to revisit them here.

10. At the time, the Dixon/Lumar Settlements appeared to be traditional Chapter 11 compromises—approved by this Court and intended to be implemented within the framework of BM318's plan and estate administration, not as free-floating transactions detached from this case.

**B. The Settlement Ratification Order in SEC v. Barton (Receivership Dkt 550) and Appeal No. 24-10788**

11. The BM318 was in a winning position of litigation and under a tortious interference by Lumar and then the receiver took over. The federal equity receivership in *SEC v. Barton*, No. 3:22-cv-2118-X (N.D. Tex.), began to assert control over entities and assets connected to Barton and his affiliates. The Receiver sought ratification of the BM318 Dixon/Lumar Settlements in the receivership proceeding, asking the district court to adopt and incorporate this Court's earlier 9019 rulings.

12. On that request, the district court entered a Settlement Ratification Order (Receivership Dkt 550), which:

---

[4] See Settlement Approval orders Dkt 163(Dixon) & Dkt 164(Lumar).

a) adopted this Court's factual and legal conclusions regarding the BM318 Dixon/Lumar Settlements;

b) independently approved those settlements as receivership transactions; and

c) effectively folded BM318's settlement structure into the receivership estate.

13. Barton appealed that Settlement Ratification Order to the Fifth Circuit, where it is now pending as Case No. 24-10788. That appeal directly concerns how BM318's settlement value is treated within the receivership framework and, by extension, how the Dixon/Lumar Settlements will be implemented in practice. The existence of that live appeal is part of why BM318 cannot be treated as a closed, fully administered Chapter 11 case.

**C. The June 23, 2025 (Third) Order Appointing Receiver (Receivership Dkt 650) and Appeal No. 25-10871**

14. On June 23, 2025, the receivership court entered the third Order Appointing Receiver (Receivership Dkt 650). That order did not simply tweak the existing receivership; it re-appointed the Receiver, consolidated and re-stated his powers, and expanded his authority.

15. Critically for present purposes, the June 23 order expressly designates BM318 as a Receivership Entity and centralizes control of BM318's assets, claims, and settlements in the Receiver. It is this order that now governs how BM318 is administered within the receivership structure, including how BM318-related settlement value may be realized or dissipated during the pendency of the federal enforcement action.

16. Barton filed an interlocutory appeal from the June 23 order, which is pending in the Fifth Circuit as Case No. 25-10871. Among other issues, that appeal challenges the scope and structure of the modified receivership and the propriety of new restraints, including the bar-complaint preclearance requirement and the handling of receivership entities such as BM318.

**D. Barton's Emergency Motion to Stay in the Receivership Court (Receivership Dkt 691)**

17. In light of the ongoing appeals and continuing status-changing activity by the Receiver, Barton filed an Emergency Motion to Stay Pending Appeal in the receivership court (Receivership Dkt 691). That motion seeks a preservation-focused stay of sales, settlements, fee distributions, and other status-changing transactions under the June 23 order, while expressly allowing ordinary-course preservation functions to continue.

18. The Emergency Stay motion asks the receivership court to pause precisely the kinds of actions—dispositions of receivership entities' assets, including BM318-related value—that could otherwise moot or complicate appellate review. The SEC has opposed that stay, and the motion remains under consideration. Its existence underscores that, as to BM318, receivership-level administration and appellate review are very much ongoing.

**E. The Receiver's Status Update (Bankruptcy Dkt 189) and Its Treatment of BM318**

19. Against that backdrop, the Receiver filed for Status Update in this Court (Dkt 189). As to BM318, the Status Update wrongfully suggests that:

a) the adversary judgment is final and non-appealable (currently under appeal at the supreme court, third receivership is under appeal and the ratification of BM318 settlement ratification is under appeal);

b) the Dixon/Lumar Settlements approved by this Court have become final and non-appealable (currently under appeal at the supreme court, third receivership is under appeal and the ratification of BM318 settlement ratification is under appeal); and

c) there is little left to do in this Chapter 11 case beyond ministerial closing steps and coordination with the receivership (currently under appeal at the supreme court, third receivership is under appeal and the ratification of BM318 settlement ratification is under appeal).

20. The Status Update does not squarely acknowledge that the district court's separate Settlement Ratification Order (Receivership Dkt 550) is on appeal in No. 24-10788, that the June 23, 2025 Order Appointing Receiver (Receivership Dkt 650)—which formally sweeps BM318 into the receivership—is on appeal in No. 25-10871, or that Barton's Emergency Motion to Stay (Receivership Dkt 691) seeks to limit status-changing actions and distributions under that order.

21. Nor does the Status Update addresses the incomplete administration of BM318's estate at the bankruptcy level: there is no comprehensive accounting of settlement proceeds, no final report or final account, apparent gaps in operating and financial reporting, and no indication that creditors have been paid in accordance with plan-related expectations. Nevertheless, the Status Update invites the Court to treat BM318 as functionally finished and ready for closure.

22. This Court is not required to accept that invitation. Section 350(a) and Fed. R. Bankr. P. 3022 give the Court discretion to determine whether an estate has been "fully administered" before entering a final decree, and to consider the practical posture of the case, including related proceedings and pending appeals, in making that determination. See, e.g., *In re JCP Props., Ltd.*, 540 B.R. 596, 605 (Bankr. S.D. Tex. 2015) (identifying pragmatic factors under Rule 3022 and emphasizing that the "fully administered" standard must be applied in light of the case's real status). In BM318's current posture, the more accurate and prudent course is to recognize that administration is incomplete and that interlocking receivership proceedings remain live, and to defer any final-decree process accordingly.

## III. LEGAL STANDARDS

### A. Closing a Chapter 11 Case: "Fully Administered" Under § 350(a) and Rule 3022

23. Section 350(a) provides that "[a]fter an estate is fully administered, and the court has discharged the trustee, the court shall close the case." 11 U.S.C. § 350(a). Fed. R. Bankr. P. 3022 similarly states that "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case."

24. The "fully administered" standard is a practical one. Courts look to non-exhaustive factors, including: (a) whether the confirmation order is final; (b) whether deposits required by the plan have been distributed; (c) whether property proposed to be transferred has been transferred; (d) whether the debtor or successor has assumed business operations; (e) whether payments under the plan have commenced and, in many cases, been substantially completed; and (f) whether all motions, contested matters, and adversary proceedings have been resolved or otherwise addressed. See *In re JCP Props., Ltd.*, 540 B.R. 596, 605 (Bankr. S.D. Tex. 2015) (applying Rule 3022 and noting that the court must look to the "real status" of administration rather than labels).

25. Importantly, § 350(a) and Rule 3022 confer discretion; they do not require closure whenever a certain amount of time has passed. The Court may defer entry of a final decree if material administration remains incomplete, if estate assets have not been fully accounted for or distributed, or if related proceedings (including appeals) make closure imprudent in light of the case's actual posture.

**B. Trustee and Debtor-in-Possession Duties; Reporting and U.S. Trustee Fees**

26. A chapter 11 trustee must "collect and reduce to money the property of the estate," "be accountable for all property received," file periodic operating reports, and "make a final report and file a final account of the administration of the estate." 11 U.S.C. § 704(a)(1), (2), (8), (9); 11 U.S.C. § 1106(a)(1), (7). Under § 1107(a), a debtor-in-possession is vested with the rights and duties of a trustee, subject to certain exceptions not relevant here. These duties extend to property recovered or received by settlement.

27. Courts recognize that these statutory obligations require not only collection of estate assets, but also transparent reporting and a final accounting before closure. See, e.g., *Mendelsohn v. Ozer*, 241 B.R. 503, 509 (E.D.N.Y. 1997) (describing § 704(a)(1) and (9) as imposing a duty to collect estate property and to render a final account of administration). Persistent failures to file operating reports, to provide financial information, or to file a final report are treated as evidence that the estate has not been properly or fully administered.

**C. Case-Management, Comity, and Coordination with Related Proceedings**

28. Federal courts possess inherent authority "to control the disposition of the causes on [their] docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). That authority includes the power to defer action in one proceeding in light of related litigation elsewhere, where doing so promotes orderly administration and avoids conflicting or duplicative outcomes.

29. In the chapter 11 context, that discretion operates alongside § 350(a) and Rule 3022. Where a debtor's assets, settlements, or governance are simultaneously at issue in related district court proceedings and pending appeals—as is the case with BM318 and the federal receivership—the bankruptcy court may, and often should, consider those overlapping proceedings when

deciding whether to enter a final decree or instead to maintain the case as open and administratively active.

30. The Fifth Circuit has likewise cautioned that appellate review should not be lightly frustrated by procedural devices that render relief impractical after the fact. See *Texas Grand Prairie Hotel Realty, L.L.C. v. FDIC (In re Texas Grand Prairie Hotel Realty, L.L.C.)*, 710 F.3d 324, 327–29 (5th Cir. 2013) (emphasizing that equitable mootness is a "narrow" doctrine and declining to dismiss an appeal where effective relief could still be fashioned). That caution is particularly relevant where, as here, a request to close a chapter 11 case overlaps with live appeals concerning how the debtor's settlements and assets are treated in a parallel receivership.

## III. ARGUMENT

### A. BM318 Has Not Been Fully Administered and Cannot Be Closed

31. The Receiver's Status Update assumes BM318 can be treated as a finished case ready for closure. The actual record shows the opposite. BM318 has received or is entitled to settlement proceeds; creditors have not been fully paid; required reports and accounts are missing; and there is no final report or final account. Under 11 U.S.C. § 350(a) and Fed. R. Bankr. P. 3022, BM318 is not "fully administered" and cannot properly be closed.

#### 1. Settlement Proceeds Trigger a Duty to Administer and Account

32. This Court approved the Dixon/Lumar Settlements under Rule 9019, and settlement consideration was or should have been received for the benefit of BM318. Those proceeds constitute property of the estate under 11 U.S.C. § 541. Once settlement funds are obtained, the Code imposes a non-discretionary duty on the trustee or debtor-in-possession to collect, administer, and account for them.

33. Section 704(a)(1) requires a trustee to "collect and reduce to money the property of the estate for which such trustee serves," and § 704(a)(9) requires the trustee to "make a final report and file a final account of the administration of the estate." Section 1106(a)(1) incorporates those duties in chapter 11, and § 1107(a) imposes them on a debtor-in-possession. Courts recognize that these provisions obligate the fiduciary not only to collect estate property, but also to provide a final accounting before closure. See *Mendelsohn v. Ozer*, 241 B.R. 503, 509 (E.D.N.Y. 1997) (describing § 704(a)(1) and (9) as imposing duties to collect estate property and to file a final account).

34. As to BM318, there is no comprehensive public accounting showing (i) the receipt of settlement proceeds into a DIP or estate account, (ii) any distributions to creditors traceable to those proceeds, or (iii) a final report detailing administration of those funds. Until those basic administration and accounting steps occur, BM318 cannot be deemed fully administered.

**2. The BM318 Plan Framework and Unpaid Creditors Block Closure**

35. BM318 is not a bare, no-asset Chapter 11. A plan framework exists that contemplated using settlement-derived value to pay claims and address creditor treatment. Yet there is no indication that creditors have been paid as contemplated, that plan-related distributions have been completed, or that the case has otherwise reached a point of substantial consummation consistent with closure.

36. When applying § 350(a) and Rule 3022, courts consider whether plan payments have commenced and been substantially completed, whether property to be transferred has been transferred, and whether the debtor or successor has taken over operations in a stable fashion. See *In re JCP Props., Ltd.*, 540 B.R. 596, 605 (Bankr. S.D. Tex. 2015) (listing Rule 3022 factors and focusing on substantial consummation and completion of plan obligations in

determining whether a case is fully administered). Where a plan (or plan structure) contemplates distributions and those distributions have not been made, closure is premature.

37. Here, creditors remain unpaid, settlement value has not been fully transmitted into an identifiable distribution stream, and the plan framework has not been fully carried out. That reality, standing alone, prevents a finding that BM318 is fully administered.

**3. BM318 Fails the § 350(a) / Rule 3022 "Fully Administered" Criteria**

38. Taken together, these facts show that BM318 does not satisfy the "fully administered" standard. Settlement proceeds have not been fully traced and distributed; creditors have not been paid as contemplated; operating reports and financial disclosures are incomplete; quarterly fees are likely delinquent; and no final report or final account has been filed.

39. Under § 350(a) and Rule 3022, a case in that posture is not ready for closure. See *In re JCP Props., Ltd.*, 540 B.R. at 605 (explaining that courts should look to the real status of administration—payments, transfers, reports, and remaining issues—when applying "fully administered"). Declaring BM318 fully administered now would be, at best, a legal fiction and, at worst, an abuse of discretion that invites later motions to reopen and further litigation.

40. For these reasons alone, the Court should decline to enter any final decree or closure order for BM318 based on the Receiver's Status Update.

**B. The Receiver's Status Update Mischaracterizes BM318's Posture Within the Receivership**

41. The Receiver's Status Update presents BM318 as a largely completed matter whose only remaining steps are administrative "closing" tasks. That portrayal omits the fact that BM318's treatment is now governed in significant part by receivership orders that are actively on appeal and by a pending stay motion in the receivership court. In reality, BM318 sits at the

intersection of this Court's 9019 approvals and the federal receivership's evolving framework—a posture that is far from final.

42. The Status Update also omits any discussion of Barton's Emergency Motion to Stay Pending Appeal (Receivership Dkt 691), which specifically seeks to pause status-changing actions and distributions under the June 23 order while appeals in No. 24-10871 and related matters are pending. That stay motion covers the very type of actions—sales, settlements, and fee payments involving receivership entities—that could affect BM318-related value.

43. If the receivership court grants even part of the requested stay, it will have effectively concluded that preservation-focused relief is appropriate while the appeals proceed. If it denies the stay, the Fifth Circuit may be asked to review that denial. Either way, BM318's treatment remains in flux. Closing BM318 during that flux would encourage arguments in the court of appeals that meaningful relief affecting BM318 is now impractical or impossible—a result the Fifth Circuit has cautioned against. See *Texas Grand Prairie Hotel Realty, L.L.C. v. FDIC (In re Texas Grand Prairie Hotel Realty, L.L.C.)*, 710 F.3d 324, 327–29 (5th Cir. 2013) (describing equitable mootness as a "narrow" doctrine and refusing to deem an appeal moot where effective relief remained available).

**C. The Receiver's Proposed "Closing" Activities Are Unnecessary and Primarily Generate Administrative Expense**

44. The Receiver's Status Update suggests that he must undertake additional "closing" tasks with respect to BM318 and related matters. Yet the Status Update does not identify any concrete risk to creditors or to the estate that requires immediate action. BM318 is not presently engaged in active business operations, and no creditor, equity holder, or other party in interest—apart from the Receiver and his professionals—has requested the additional work now being proposed.

45. Under these circumstances, directing the Receiver and his counsel to embark on a new round of "cleanup" or "closing" activity would serve primarily to consume estate resources and increase administrative expense, without delivering any corresponding benefit to creditors or stakeholders. The Bankruptcy Code does not authorize compensation for professional services simply because work can be done; the services must be reasonably calculated to benefit the estate or be necessary to its administration. See 11 U.S.C. § 330(a)(4)(A)(ii) (disallowing compensation for services that were not "reasonably likely to benefit the debtor's estate" or "necessary to the administration of the case"); *Woerner v. Barron & Newburger, P.C., 784 F.3d 208 (5th Cir. 2015)* (emphasizing that courts must evaluate, at the time services are rendered, whether they were necessary to administration or reasonably likely to benefit the estate, and denying fees where that standard was not met).

46. On the current record, the Receiver's proposed "closing" efforts appear designed largely to create billable work around matters as to which there is no showing of harm from inaction. That approach is inconsistent with the Receiver's fiduciary obligations. A receiver and his professionals are charged with preserving and maximizing value for the estate, not with generating tasks for their own sake. Where there is no evidence that doing nothing will damage assets, impair creditor recoveries, or prejudice the rights of any party, the Court should be sceptical of initiatives that function chiefly as billing opportunities rather than as necessary protective measures.

47. Moreover, rushing to "close" BM318 and perform discretionary wrap-up work while interlocking receivership appeals and stay requests remain pending risks foreclosing potential future revenue opportunities or recoveries that may arise if the appellate courts alter or clarify the governing receivership framework. There is no demonstrated downside to maintaining the status quo and deferring non-essential closing work until the appellate landscape is clearer.

48. By contrast, authorizing the Receiver to undertake discretionary "closing" activities at this stage will almost certainly generate additional fee requests, driven in part by the objections, responses, and motion practice those same activities will require. That dynamic is the opposite of what § 330 contemplates. Consistent with that statute and with the Fifth Circuit's guidance in *Woerner Barron & Newburger*, the Court should decline to incentivize unnecessary work and should make clear that no further BM318-related "closing" efforts will be approved or compensated absent a specific, demonstrated benefit to the estate and a concrete showing of need.

## IV. CONCLUSION AND RELIEF SOUGHT

49. BM318 has not been fully administered. Settlement proceeds have not been fully traced or distributed, required operating and financial reports and quarterly U.S. Trustee obligations appear incomplete, and no final report or final account has been filed. At the same time, BM318's status and settlement value are bound up in receivership orders that are on appeal and subject to a preservation-focused stay motion. On this record, closing the case under 11 U.S.C. § 350(a) and Fed. R. Bankr. P. 3022 would be premature and risk unnecessary conflict with the Fifth Circuit's eventual rulings.

50. Barton does not ask the Court to revisit its Rule 9019 approval of the Dixon/Lumar Settlements, disturb the adversary judgment, or interfere with the district court's management of the receivership. He asks only that the Court recognize that BM318 has not been fully administered and defer any final-decree process until BM318's administration and its receivership treatment are stable.

51. Accordingly, Barton respectfully requests that the Court: (a) decline to enter a final decree or otherwise close the BM318 Chapter 11 case; (b) decline to authorize or approve any additional BM318-related "closing" activities by the Receiver or his professionals absent a

specific, demonstrated benefit to the estate and a concrete showing of need; (c) direct that all BM318 settlement proceeds be administered and distributed through the confirmed bankruptcy plan and Court-approved settlements, including payment of any outstanding allowed creditor claims, and that the case remain open at least until settlement proceeds have been fully accounted for and administered, required operating and financial reports are current, quarterly U.S. Trustee fees are paid, and a final report and final account have been filed; and (d) grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

DATED: December 4, 2025

*/s/Timothy Barton*
Timothy Barton, Pro Se

1846 East Rosemeade Parkway,
#232 Carrollton, TX 75007
(214) 914-3811
timothy.barton@proton.me

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all counsel of record registered to receive electronic notices in this case.

*/s/ Timothy Barton*
Timothy Barton, Pro Se